**Case No. 20-17316**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

BENJAMIN KOHN,

*Plaintiff-Appellant,*

v.

STATE BAR OF CALIFORNIA, CALIFORNIA COMMITTEE OF BAR
EXAMINERS, AND THEIR AGENTS IN THEIR OFFICIAL CAPACITY,

*Defendants-Appellees.*

Appeal from a Decision of the United States District Court
for the Northern District of California, Case No. 4:20-cv-4827-PJH,
Honorable Phyllis J. Hamilton, District Judge Presiding

**DEFENDANTS-APPELLEES STATE BAR OF CALIFORNIA AND
CALIFORNIA COMMITTEE OF BAR EXAMINERS' ANSWERING BRIEF
(REPLACEMENT BRIEF)**

ELLIN DAVTYAN, ESQ., State Bar No. 238608
ROBERT G. RETANA, ESQ., State Bar No. 148677
BRADY R. DEWAR, ESQ., State Bar No. 252776
RITA K. HIMES, ESQ., State Bar No. 194926
OFFICE OF GENERAL COUNSEL
THE STATE BAR OF CALIFORNIA
180 Howard Street
San Francisco, California 94105-1639
Telephone: (415) 538-2012; Facsimile: (415) 538-2321
Attorneys for Defendants-Appellees The State Bar of California,
Committee of Bar Examiners

## TABLE OF CONTENTS

I.  INTRODUCTION…………………………...………………………….....1

II. STATEMENT OF JURISDICTION………………………………….......2

III.  ADDENDUM……………………………………………………………...2

IV.  STATEMENT OF THE CASE……………………………...………...…2

    A.    The State Bar is a Regulatory Agency Controlled by the California Supreme Court, the Legislature, and the Governor…………………..2

    B.    State Bar Testing Accommodation Rules Ensure Consideration of All Accommodation Requests and Provide Opportunities for Administrative and Judicial Review……………………………….. 5

    C.    Before Kohn Passed the October 2020 Bar Exam, He Received Substantial Accommodations for Four Separate Exams, and Meaningful Opportunities to Be Heard on His Denied Requests……8

    D.    The District Court Dismissed Kohn's Remaining Damages Claims..12

V. SUMMARY OF ARGUMENT……………………………………………12

VI.  ARGUMENT………………………………………………………………14

    A.    The State Bar is Entitled to Sovereign Immunity as to All of Kohn's Claims……………………………………………………………….14

        1.    Binding Ninth Circuit Precedent Establishes the State Bar is an Arm of the State Entitled to Sovereign Immunity……………14

        2.    If the Court Decides it May Reconsider *Hirsh*, It Should Reaffirm that the State Bar Has Sovereign Immunity as an Arm of the State………………………………………………………16

            a) The *Mitchell* Test Should Be Updated to Reflect Current Legal Authority on Sovereign Immunity………………….17

            b) The Court Should Reaffirm the State Bar's Sovereign Immunity…………………………………………………..21

c) *Crowe* is Not Persuasive Authority on the State Bar's Sovereign Immunity…………………………………….25

d) The State Bar is an Arm of the State with Sovereign Immunity……………………………………………………27

B. Kohn's ADA Claims Were Properly Dismissed on Sovereign Immunity and 12(b)(6) Grounds……………………………………27

1. Congress Has Not Validly Abrogated States' Sovereign Immunity Under Title II of the ADA as to Kohn's Claims…...27

a) *Georgia* is Intervening Supreme Court Case Law that Must be Applied in Determining Abrogation of Sovereign Immunity under Title II……………………………………28

b) Under *Georgia*, Congress Did Not Validly Abrogate Sovereign Immunity as to Kohn's Title II Claims…………30

(1) Kohn Does Not Allege Constitutional Violations…30

(2) Congress Did Not Effect a Valid Prophylactic Abrogation as to Kohn's Claims……...34

2. Kohn Fails to State Cognizable ADA Claims for Relief……...37

C. The District Court Properly Dismissed Kohn's Rehabilitation Act Claim……………………………………………………………..40

1. The District Court Properly Dismissed the Rehabilitation Act Claims For Lack of Subject Matter Jurisdiction………………41

2. Alternatively, Dismissal was Propoer Under Rule 12(b)(6) for Failuer to Adequately Plead Receipt of Federal Financial Assistance…..……………………………………………..45

3. The Rehabilitation Act Claim Also Fails Because Kohn Does Not Adequately Plead a Substantive Violation………………..46

D. Kohn's Unruh Act Claim Was Properly Dismissed Because Unruh Does Not Apply to the State Bar……………………………………46

1.  Unruh Applies Only to "Business Establishments," Even When Claim is Based on ADA Violation……………………………46

2.  The State Bar is Not a "Business Establishment."……………47

E.  The District Court Did Not Abuse Its Discretion in Denying Leave to Amend……………………………………………………………..50

VII.  CONCLUSION………………………………………………………..50

# TABLE OF AUTHORITIES

## Cases

*Alaska Cargo Transport Inc. v. Alaska R.R. Corp.*
  5 F.3d 378 (9th Cir. 1993) .......................................................... 18, 27

*Alzazar v. Corp. of Catholic Archbishop*
  598 F.3d 668 3 (9th Cir. 2010) ...........................................................50

*Arbogast v. Kansas*
  789 F.3d 1174 (10th Cir. 2015) ...........................................................44

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)...........................................................................45

*Austin v. State Indus. Ins. System*
  939 F.2d 676 (9th Cir. 1991) ........................................................ 19, 20

*Bates v. State Bar of Arizona*
  433 U.S. 350 (1977)...........................................................................23

*Bd. of Trustees of the Univ. of Alabama v. Garrett*
  531 U.S. 356 (2001)..................................................................... 28, 31

*Beentjes v. Placer County Air Pollution Control Dist.*
  397 F.3d 775 (9th Cir. 2005) ........................................................ 19, 20

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544, 127 (2007)...................................................................45

*Bell v. Hood*
  327 U.S. 678 (1946)..................................................................... 42, 43

*Berardinelli v. Castle & Cooke Inc.*
  587 F.2d 37 (9th Cir. 1978) ...............................................................44

*Bergeson v. South Dakota*
  2021 WL 5771183 (N.D.S.D. 2021)...................................................22

*Bishop v. State Bar of Texas*
  791 F.2d 435 (5th Cir. 1986) ............................................................22

iv

*Bowers v. National Collegiate Athletic Ass'n*
475 F.3d 524 (3rd Cir. 2007) ........................................................... 18, 20, 21, 30

*Brennon B. v. Superior Court of Contra Costa County*
13 Cal.5th 662 (2022) ............................................................. 13, 47, 48

*Brooks v. Sulphur Springs Valley Elec. Coop.*
951 F.2d 1050 (9th Cir. 1991) ..............................................................2

*Cal. Assoc. of the Phys. Handicapped, Inc. v. Fed. Comm. Comm'n*
721 F.2d 667 (9th Cir. 1983) ..............................................................31

*Campbell v. United States*
550 F.App'x 496 (9th Cir. 2013) ........................................................44

*Castle v. Eurofresh, Inc.*
731 F.3d 901 (9th Cir. 2013) .................................................... 43, 45

*Clark v. State of California*
123 F.3d 1267 (9th Cir. 1997) .................................................... 27, 30

*Cohran v. State Bar of Georgia*
790 F.Supp. 1568 (N.D. Ga. 1992) ....................................................22

*Crenshaw v. Supreme Court of Indiana*
170 F.3d 725 (7th Cir. 1999) ..............................................................22

*Crosetto v. State Bar of Wisconsin*
12 F.3d 1396 (7th Cir. 1993) ..............................................................18

*Crowe v. Oregon State Bar*
989 F.3d 714 (9th Cir. 2021) .................................................... 12, 15, 18, 24-26

*Davis v. Mississippi*
1997 WL 368353 (5th Cir. 1997) ........................................................22

*Deters v. Kentucky Bar Association*
130 F.Supp.2d 1038 (E.D. Ky. 2015) .................................................22

*Dubuc v. Michigan Bd. of Law Examiners*
342 F.3d 610 (6th Cir. 2003) ..............................................................22

*Duke v. Grady Mun. Schools*
   127 F.3d 972 (10th Cir. 1997) .............................................................21

*Durning v. Citibank, N.A.*
   950 F.2d 1419 (9th Cir. 1991) .................................................... 16, 20

*Duvall v. County of Kitsap*
   260 F.3d 1124 (9th Cir. 2001) .................................................... 37, 39

*Edelman v. Jordan*
   415 U.S. 651 (1974)..................................................................... 17, 18

*Est. of Mejia v. Archambeault*
   No. 20-CV-2454, 2021 WL 4428990 (S.D. Cal. Sept. 27, 2021) ......................46

*Fauconier v. Clarke*
   966 F.3d 265 (4th Cir. 2020) ..............................................................30

*Federal Maritime Comm'n v. South Carolina State Ports Authority*
   535 U.S. 743 (2002).................................................................... 18, 27

*Feliciano v. Tribunal Supremo de Puerto Rico*
   78 F.Supp.2d 4 (D.P.R. 1999)..............................................................22

*Ford Motor Co. v. Department of Treasury*
   323 U.S. 459 (1945)...........................................................................18

*Foster v. City of Lake Jackson*
   28 F.3d 425 (5th Cir. 1994) ................................................................35

*Franceschi v. Schwartz*
   57 F.3d 828 (9th Cir. 1995) ................................................................19

*Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico and
   Caribbean Cardiovascular Center Corp.*
   322 F.3d 56 (1st Cir. 2003)......................................................... 18, 20

*Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*
    280 F.3d 98 (2d Cir. 2001)..................................................... 30, 31, 37

*Giannini v. Real*
   911 F.2d 354 (9th Cir. 1990) ..................................................... 32, 36

*Ginter v. State Bar of Nevada*
  625 F.2d 829 (9th Cir. 1980) .................................................................15

*Gordon v. State Bar of California*
  20-cv-06442-LB, 2020 WL 5816580 (N.D. Cal., Sept. 30, 2020) .. 11, 31, 34, 39

*Green v. State Bar of Texas*
  27 F.3d 1083 (5th Cir. 1994) ................................................................22

*Guttman v. Khalsa*
  446 F.3d 1027 (10th Cir. 2006) .................................................... 29, 30

*Guttman v. Khalsa*
  669 F.3d 110 (10th Cir. 2012) ................................................. 29, 36-37

*Hart v. Massanari*
  266 F.3d 1155 (9th Cir. 2001) ..................................................... 15, 29

*Hirsh v. Justices of the Sup. Ct. of Cal. et al.*
  67 F.3d 708 (9th Cir. 1995) ............................................. 12, 14-16, 23

*Hoover v. Ronwin*
  466 U.S. 558 (1984)..............................................................................23

*In re Rose*
  22 Cal. 4th 430 (2000) ...........................................................................3

*J.C. ex rel. W.P. v. Cambrian School District*
  648 Fed.Appx. 652 (9th Cir. 2016) (Wardlaw, J., con. and diss.).......................30

*Johnson v. Supreme Court of Illinois*
  165 F.3d 1140 (7th Cir. 1999) ...............................................................22

*K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*
  725 F.3d 1088 (9th Cir. 2013) ...............................................................38

*Kaimowitz v. The Florida Bar*
  996 F.2d 1151 (11th Cir. 1993) .............................................................22

*Keller v. State Bar*
  47 Cal.3d 1152 (1989) ............................................................................3

*Keller v. State Bar*
    496 U.S. (1990) .......................................................................... 3, 23, 26

*King v. Marion Circuit Court*
    868 F.3d 589 (7th Cir. 2017) ................................................30

*Klingler v. Director, Dept. of Revenue, State of Mo.*
    455 F.3d 888 (8th Cir. 2006) ................................................30

*Kokkonen v. Guardian Life Ins. Co. of Am.*
    511 U.S. 375 (1994) ...............................................................35

*Kramer v. Grossman*
    2014 WL 937146 (D. Md. 2014) ..........................................22

*In re Lazar*
    237 F.3d 967 (9th Cir. 2001) ........................................ 19, 20

*Leitner v. Westchester Community College*
    779 F.3d 130 (2d Cir. 2015)...................................................20

*Levine v. Supreme Court of Wisconsin*
    679 F.Supp. 1478 (W.D. Wis. 1988) ...................................23

*Lewis v. Louisiana State Bar Ass'n*
    792 F.2d 493 (5th Cir. 1986) ......................................... 22, 24

*Lovell v. Chandler*
    303 F.3d 1039 (9th Cir. 2002) ..............................................28

*Lupert v. State Bar*
    761 F.2d 1325 (9th Cir. 1985) ....................................14, 15, 16

*Maloney v. SSA*
    517 F.3d 70 (2d Cir. 2008)...................................................44

*Marino v. Vasquez*
    812 F.2d 499 (9th Cir. 1987) ..............................................45

*Martin v. California Dept. of Veterans Affairs*
    560 F.3d 1042 (9th Circ. 2009)..............................................31

*Maryland Stadium Authority v. Ellerbe Becket Inc.*
    407 F.3d 255 (4th Cir. 2005) ................................................................21

*Mathews v. Eldridge*
    424 U.S. 319 (1976).............................................................................33

*Mattas v. Supreme Court of Pennsylvania*
    576 F.Supp. 1178 (W.D. Penn. 1983)................................................22

*McMullen v. Wakulla Cnty. Bd. of Cnty Comm'r*
    650 F.Appx 703 (11th Cir. 2016) ......................................................44

*Mitchell v. Los Angeles Community College District*
    861 F.2d 198 (9th Cir. 1989) ......................................... 15, 17, 18, 19, 20, 23, 26

*Mount Healthy City School Dist. Bd. of Educ. v. Doyle*
    429 U.S. 274 (1977).............................................................................17

*National Association of the Deaf v. Florida*
    980 F.3d 763 (11th Cir. 2020) ...........................................................30

*Nevada Dept. of Human Resources v. Hibbs*
    538 U.S. 721 (2003) (Souter, J., diss.) ..............................................35

*Nichols v. Alabama State Bar*
    815 F.3d 726 (11th Cir. 2016) ...........................................................22

*Northern Insurance Company of New York v. Chatham County*
    547 U.S. 189 (2006).............................................................................16

*O'Connor v State of Nevada*
    686 F.2d 749 (9th Cir. 1982) .............................................................15

*O'Connor v. Village Green Owners Association*
    33 Cal.3d 790 (1983) .........................................................................49

*Ohralik v. Ohio State Bar Ass'n*
    436 U.S. 447 (1978).............................................................................23

*Orloff v. Los Angeles Turf Club*
    36 Cal.2d 734 (1951) .........................................................................48

*P.B. v. Koch*
    96 F.3d 1298 (9th Cir. 1996) ...............................................34

*Phiffer v. Columbia River Correctional Inst.*
    384 F.3d 791 (9th Cir. 2004) ...............................................29

*Pickett v. Texas Tech Univ. Health Scis. Ctr.*
    37 F.4th 1013 (5th Cir. 2022) ..............................................30

*Puerto Rico Ports Authority v. Federal Maritime Comm'n,*
    531 F.3d 868 (D.C. Cir. 2008) .............................................21

*Ray v. County of Los Angeles*
    935 F.3d 703 (9th Cir. 2019) ...............................................16

*Renner v. Supreme Court of Florida*
    2022 WL 1658361 (11th Cir. 2022) ....................................... 31, 36

*Robinson v. University of Akron School of Law*
    307 F.3d 409 (6th Cir. 2002) ...............................................30

*Safe Air for Everyone v. Meyer*
    273 F.3d 1035 (9th Cir. 2004) .............................................. 42, 43

*Sanders v. Ennis-Bullock*
    316 Fed.Appx. 610 (9th Cir. 2009)........................................30

*Sato v. Orange County Dept. of Educ.*
    861 F.3d 923 (9th Cir. 2017) ...............................................17

*Schware v. Board of Bar Examiners of State of New Mexico*
    353 U.S. 232 (1957)........................................................ 31, 32

*Seminole Tribe of Florida v. Florida*
    517 U.S. 44 (1996)..........................................................18

*Sinapi v. Rhode Island Board of Bar Examiners*
    910 F.3d 544 (1st Cir. 2018)............................................... 30, 33

*Southwestern Bell Telephone Co. v. City of El Paso*
    243 F.3d 936 (5th Cir. 2001) ...............................................21

*Stoumen v. Reilly*
  37 Cal.2d 713 (1951) .............................................................................49

*Sun Valley Gasoline v. Ernst Enterprises, Inc.*
  711 F.2d 138 (9th Cir.1983) ................................................. 22, 44-45

*T.W. v. New York State Bd. of L. Examiners*
  996 F.3d 87 (2d Cir. 2021)………………………………………………..44

*T.W. v. New York State Board of Law Examiners*
  2022 WL 2819092 (E.D.N.Y. 2022) ...................................................22

*Takle v. University of Wisconsin Hosp. and Clinics Authority*
  402 F.3d 768 (7th Cir. 2005) ..............................................................21

*Tennessee v. Lane*
  541 U.S. 509 (2004).................................................28-29, 32, 35, 37

*Thiel v. State Bar of Wisconsin*
  94 F.3d 399 (7th Cir. 1996) ................................................................22

*Thomas v. St. Louis Board of Police Comm'rs*
  447 F.3d 1082 (8th Cir. 2006) ............................................................21

*Thomlison v. City of Omaha*
  63 F.3d 786 (8th Cir. 1995) ................................................................44

*Toledo v. Sanchez*
  454 F.3d 24 (1st Cir. 2006) ................................................................36

*United States v. Georgia*
  546 U.S. 151 (2006)................................................... 13, 28, 29, 30

*Updike v. Multnomah County*
  870 F.3d 939 (9th Cir. 2017) ............................................... 37-38, 40

*Vartanian v. State Bar*
  794 Fed.Appx. 597 (9th Cir. 2019).....................................................30

*Viriyapanthu v. State Bar*
  813 Fed.Appx. 312 (9th Cir. 2020).....................................................30

*Ware v. Wyoming Board of Law Examiners*
  973 F.Supp. 1339 (D.Wyo. 1997)........................................................22

*Warfield v. Peninsula Golf & Country Club*
  10 Cal.4th 594 (1995) ........................................................49

*Waskul v. Washtenaw County Community Mental Health*
  979 F.3d 426 (6th Cir. 2020)........................................... 20, 21

*Weiner v. San Diego Cnty.*
  210 F.3d 1025 (9th Cir. 2000) ........................................47

*Wood v. City of San Diego*
  678 F.3d 1075, 1082 (9th Cir. 2012) ........................................50

*Wynne v. Tufts University School of Medicine*
  976 F.2d 791, 795 (1st Cir. 1992) ........................................38

*Zukle v. Regents of the University of California*
  166 F.3d 1041 (9th Cir. 1999) ........................................38

**Statutes**

29 U.S.C.
  § 794(a) ........................................................40
  § 794(b) ........................................... 40, 42, 46

42 U.S.C.
  § 12101........................................................36
  § 12189........................................................32
  § 12202........................................................28

California Business & Professions Code
  § 6001 ........................................... 2, 3, 4, 48
  § 6002........................................................1
  § 6002(b)........................................................3, 25
  § 6008........................................... 23, 24
  § 6008.1........................................... 23, 24
  § 6008.2........................................... 23, 24
  § 6013.1........................................... 3, 4, 24, 26
  § 6013.3........................................... 3, 4, 24, 26
  § 6013.5........................................... 3, 4, 24, 26

§ 6046 ............................................................................................4, 24
§ 6046.5 .........................................................................................4, 24
§ 6060(g) ............................................................................................48
§ 6063 ...................................................................................... 4, 24, 28
§ 6076 ..................................................................................................24
§ 6081-6084 ........................................................................................24
§ 6140 ............................................................................................4, 25

California Government Code
§ 1001 .................................................................................................4

Or. Rev. Stat.
§ 9.025 ................................................................................................26
§ 9.200 ................................................................................................25
§ 9.160(1) ...........................................................................................25

**Rules**

Federal Rule of Procedure
rule 12(b)(1) ............................................................................... passim
rule 12(b)(6) .........................................................................................9

California Rules of Court
rule 9.3 ..........................................................................................4, 24
rule 9.4 ..........................................................................................4, 24
rule 9.5 ..........................................................................................4, 24
rule 9.10(g) .........................................................................................24
rule 9.13 ...............................................................................................4
rule 9.13(d) ....................................................................................4, 23

Rules of the State Bar of California
rule 4.80 ........................................................................................4, 39
rules 4.80–4.92 ..............................................................................4, 39
rule 4.88(D) ..........................................................................................5
rule 4.90(A) ..........................................................................................5

**Session Laws**

Cal. Stats. 2002
ch. 415 (S.B. 1897), § 4 .......................................................................3

Cal. Stats. 2017
  ch. 422 (S.B. 36) ...................................................................................3

## Constitutional Provisions

California Constitution
  art. VI, § 9 ........................................................................................3

## I.     INTRODUCTION

Appellant Benjamin Kohn originally brought this suit to obtain additional disability-related testing accommodations for the October 2020 California bar exam. The District Court considered, and rejected on the merits, his requests for preliminary injunctive relief directing the State Bar to provide his requested accommodations. After he took that exam (which he passed), the District Court dismissed his remaining claims for damages, which were based on the State Bar's alleged failure to provide sufficient accommodations on the October 2020 and three prior exams and the alleged undue burden of State Bar procedures for seeking accommodations.

The only question on appeal is whether the State Bar, an arm of the California judiciary, is *liable for damages in federal court* for its alleged past failure to accommodate Kohn—even though it provided Kohn with accommodations including 200% testing time, a semi-private room, and use of a laptop and ergonomic equipment on all three prior exams, plus 250% testing time spread over six days on the fourth exam—and its allegedly burdensome procedures (which nevertheless provided individualized consideration of Kohn's requests and decisions on Kohn's appeals in advance of the exams). The question is not whether there is room for improvement in the State Bar's practices—the State Bar is voluntarily pursuing reforms in this area—but whether a federal court can impose a monetary judgment on the State Bar for not providing *all* requested accommodations and a *more streamlined* accommodations procedure.

The District Court correctly held that the State Bar enjoys sovereign immunity[1] from all of Kohn's damages claims because it is an arm of the State of California. Congress has not validly abrogated the State Bar's immunity as to Kohn's claims under Title II of the Americans with Disabilities Act, and the State Bar did not waive its immunity by accepting federal funding, which would subject it to the Rehabilitation Act. Finally, the California Supreme Court recently made clear that the State Bar is not liable under Kohn's state-law Unruh Act claim. The Court should affirm the dismissal of Kohn's complaint.

## II.    STATEMENT OF JURISDICTION

The State Bar agrees with Kohn's Statement of Jurisdiction.

## III.    ADDENDUM

The pertinent constitutional provisions, statutes, and rules not already contained in Kohn's Addendum are set forth in an addendum bound with this brief.

## IV.    STATEMENT OF THE CASE

### A.    <u>The State Bar is a Regulatory Agency Controlled by the California Supreme Court, the Legislature, and the Governor.</u>

The State Bar is a public corporation, established by California's Legislature, Cal. Bus. & Prof. Code § 6001[2], and is the "administrative arm of [the

---

[1] The State Bar refers to "sovereign immunity" rather than "Eleventh Amendment" immunity because the constitutional protection against suits against states in federal courts extends more broadly than the precise language of the Eleventh Amendment, and includes suits brought against a state by its own citizens, as well as by citizens of other states. *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991).

[2] All statutory references are to the California Business and Professions Code unless otherwise indicated.

Supreme Court of California] for the purpose of assisting in matters of admission and discipline of attorneys." *In re Rose*, 22 Cal. 4th 430, 438 (2000) (quotations omitted). Its statutory mission is public protection: "Protection of the public, which includes support for greater access to, and inclusion in, the legal system, shall be the highest priority for the State Bar of California and the board of trustees in exercising their licensing, regulatory, and disciplinary functions." § 6001.1.

The State Bar does not have "members;" it regulates attorney "licensees." *See* § 6002.[3] Until relatively recently, the State Bar had membership features, including a Conference of Delegates that voted on policy positions, sections that advised the board on matters that might include advocacy, and election of the governing board by member attorneys. *See Keller v. State Bar*, 47 Cal.3d 1152, 1159-61 (1989), *reversed by* 496 U.S. 1 (1990). (We refer to the State Bar structure examined in *Keller* as the "pre-separation State Bar.") In 2002, the Legislature provided for the separation of the Conference of Delegates into a private entity. Cal. Stats. 2002, ch. 415 (S.B. 1897), § 4 (amending § 6031.5). In 2017, the Legislature spun off the sections into a private association, the California Lawyers Association, and provided for the appointment of the entirety of the State Bar's governing board by top officials of the three branches of state government. *See*

_____

[3] Although the California Constitution refers to "members" of the State Bar (Cal. Const., art. VI, § 9), see AOB 22, this terminology adopted in 1966 does not alter the current statutory framework under which the State Bar does not have any attributes of a membership organization, such as an elected governing body. *See* § 6002(b) ("As used in this chapter or any other provision of law, 'member of the State Bar' shall be deemed to refer to a licensee of the State Bar").

Cal. Stats. 2017, ch. 422 (S.B. 36); §§ 6013.1, 6013.3, 6013.5, 6031.5.[4] The State Bar is currently subject to state open meeting and public information laws. § 6001.

Thus, the State Bar is governed by a Board of Trustees that is appointed by the Supreme Court, the Legislature, and the Governor. §§ 6010, 6013.1, 6013.3, 6013.5. The trustees are civil executive officers under state law. Cal. Govt. Code § 1001. The bar exam and admissions are overseen by a Committee of Bar Examiners ("CBE"), a body within the State Bar that is authorized by statute and whose members are themselves appointed by the three branches of government. §§ 6046, 6046.5; Cal. R. Ct. 9.4.[5] The State Bar's admissions and licensing activities are funded by fees authorized and capped by statute. §§ 6140, 6063. State Bar rules on admissions are adopted by the Supreme Court. Cal. R. Ct. 9.5. The State Bar must report to the Supreme Court on each administration of the bar exam. Cal. R. Ct. 9.6(c). Those aggrieved by an admissions decision may petition the Supreme Court for review. Cal. R. Ct. 9.3, 9.13(d).

---

[4] The 2017 legislation was merely the culmination of the multi-year process of transitioning from an integrated bar with membership aspects to a purely regulatory agency completely controlled by the State. For instance, immediately prior to the 2017 legislation, only 6 of 19 members of the State Bar's governing board were elected by the profession, Cal. Stats. 2017, ch. 422 (S.B. 36), at Legislative Counsel's Digest ¶ 1; it was already effectively controlled by the State.
[5] While Kohn named CBE as a defendant and the district court order formally dismissed claims against it, it is not a separate entity from the State Bar that can be sued. When this brief refers to "State Bar" or "Defendant," that includes the CBE.

**B.** **State Bar Testing Accommodation Rules Ensure Consideration of All Accommodation Requests and Provide Opportunities for Administrative and Judicial Review.**

Under State Bar rules, disabled applicants may request reasonable accommodations modifying standard testing conditions to allow them equal access to the bar exam. Rules of the State Bar of California ("State Bar Rules") 4.80, 4.82. The State Bar responds to a request within 60 days, or within 30 days if the State Bar seeks additional information. State Bar Rule 4.88(A). The State Bar's notice of denial or partial grant of an accommodation request states reasons for the decision and advises of appeal rights. State Bar Rule 4.88(D). The applicant has 10 days to appeal. State Bar Rule 4.90(A). The Director of Admissions reviews the appeal and decides whether to (1) withdraw the initial decision and grant the accommodation request, or (2) forward the appeal to the CBE. State Bar Rule 4.90(C)-(D). Pursuant to California Rule of Court 9.13(d), an applicant may also seek review by the California Supreme Court.

## TABLE 1 – Summary of Requests

| Requested Accommodations | July 2018 Exam | Feb. 2019 Exam | Feb. 2020 Exam | Oct. 2020 Exam |
|---|---|---|---|---|
| *Requests in italics were first made regarding the Feb. 2019 exam* | *See* 2-ER-298-99 [FAC ¶¶ 41-45]; 4-ER-866; 4-ER-888 | *See* 2-ER-299 [FAC ¶¶ 47-48]; 5-ER-1147-48; 2-ER-279-80 [FAC ¶¶ 3, 4c] | *See* 2-ER-300 [FAC ¶ 49]; 2-ER-279-80 [FAC ¶ 3, 4c] | *See* 2-ER-279-80 [FAC ¶¶ 3-4]; 2-ER-315-16 |
| 200% testing time on the exam (100% extra time) | **Granted** | Continued | Continued | Increased (see next row) |
| *250% testing time (150% extra time)* | | Denied | Denied | **Granted** |
| *Testing days no longer than standard* | | Denied | Denied | **Granted** (testing 6.5 hrs/day with break, spread over 6 days) |
| *30-minute break every 90 minutes* | | **Partially granted**: extra 30 minutes a day | Continued | Continued |
| Use of a computer to type answers | **Granted** | Continued | Continued | Continued |
| Ergonomic equipment | **Partially granted**: permission to bring equipment | Continued | Continued | Continued |
| *State Bar to provide equip., assume liability, or provide hotel room for storage* | | Denied | Denied | Denied but told he could leave equipment in locked private room overnight |
| Private room | **Partially granted**: semi-private room | Continued | Continued | **Private room** provided due to COVID |
| *Bring food and eat lunch in test room* | | **Granted** | Continued | Continued |
| *Special proctors* | | Denied | Denied | Denied but assured proctors would be trained |
| *Ability to take off-clock breaks at time of choosing* | | Denied | Denied | Denied but made clear free to take additional on-the-clock breaks |

### TABLE 2 – Timeline of Requests

| | July 2018 Exam | Feb. 2019 Exam | Feb. 2020 Exam | Oct. 2020 Exam* |
|---|---|---|---|---|
| Petition for Accommodations | July 18, 2017 2-ER-298 [FAC ¶ 41]; 4-ER-792, 796-864 | Nov. 1, 2018 2-ER-299 [FAC ¶ 47]; *see* 4-ER-792, 5-ER-891-929 | Oct. 24, 2019 2-ER-300 [FAC ¶ 49]; *see* 4-ER-793, 5-ER-943-65 | March 19, 2020 2-ER-293-94 [FAC ¶ 19]; 3-ER-391, 405-34<br><br>Lengthy June 4, 2020 addenda from Kohn: 2-ER-294 [FAC ¶¶ 20-21]; 3-ER-391, 435-611 |
| Initial Response from State Bar staff | Nov, 1, 2017 2-ER-298 [FAC ¶ 43]; 4-ER-792, 865-70 | Dec. 28, 2018 2-ER-299 [FAC ¶ 48]; *see* 4-ER-792, 5-ER-931-934 | Dec. 17, 2019 2-ER-300 [FAC ¶ 49]; *see* 4-ER-793, 5-ER-967-71 | June 17, 2020: Notice CBE will consider petition in August 2-ER-294 [FAC ¶¶ 22-23]; 3-ER-391, 4-ER-644-45<br><br>(Lengthy July 16 addendum from Kohn: 3-ER-391, 4-ER-653-776)<br><br>July 27, 2020 decision on application through 6/4/20 4-ER-778-86<br><br>Aug. 20, 2020 decision on application through 8/10/20 3-ER-319, 322-28 |
| Appeal to CBE | Nov. 10, 2017 2-ER-299 [FAC ¶ 44]; 4-ER-792, 871-86 | Jan. 6, 2019 2-ER-299 [FAC ¶ 48]; 5-ER-1145-68 | Dec. 27, 2019 2-ER-300 [FAC ¶ 49]; 6-ER-1170-1203 | Aug. 5, 2020 3-ER-345-88 |
| CBE Decision | Dec. 5, 2017 2-ER-299 [FAC ¶ 45]; 4-ER-792, 888 | Feb. 15, 2019 2-ER-299-300 [FAC ¶ 48], 5-ER-793, 936-41 | Feb. 12, 2020 2-ER-300 [FAC ¶ 49], 4-ER-793, 5-ER-973-77 | Aug. 27, 2020 2-ER-279 [FAC ¶ 1]; 2-ER-319, 330-31 |

*In April 2020, the California Supreme Court delayed the July 2020 exam until September, and in July the Court delayed it again until October. 3-ER-401-03.

**C.** **Before Kohn Passed the October 2020 Bar Exam, He Received Substantial Accommodations for Four Separate Exams, and Meaningful Opportunities to Be Heard on His Denied Requests.**

Kohn is a law school graduate who sought from 2018 to 2020 to become licensed to practice law in California. 2-ER-286-87. Kohn has been diagnosed with autism spectrum disorder, as well as other mental and physical ailments including neurological/attention disorders, digestive system conditions, and visual impairments that he alleges "effectively handicap him in undertaking any test requiring extended periods of sitting and concentration." *Id*. Kohn took and failed the July 2018, February 2019, and February 2020 administrations of the California bar exam. Id. As shown in Tables 1 and 2, the State Bar had granted substantial accommodations on these exams.

In March 2020, Kohn submitted a 28-page single-spaced "narrative statement" requesting accommodations for the July 2020 bar exam that purported to incorporate by reference his six previous accommodation petitions and appeals. 3-ER-405-32; *see* 3-ER-407.

In April 2020, the California Supreme Court announced that the bar exam would be postponed until September due to the global COVID-19 pandemic. *See* 3-ER-391, 4-ER-644-46.

On June 4, 2020, Kohn submitted a 14-page single-spaced addendum to his original petition with 75 pages of exhibits, 3-ER-391, 435-525, plus a "supplemental" request for accommodations applicable to possible remote in-home

testing due to the pandemic, which included a 39-page single-spaced narrative statement and 46 pages of exhibits. 3-ER-391, 527-611. On June 17, the State informed Kohn that the two petitions would be considered as one and, due to the need to review the additional documentation, would not be reviewed by the CBE until its August meeting. 3-ER-391, 4-ER-644-46.

On July 16, 2020, the California Supreme Court again postponed the exam to October due to the pandemic and confirmed that arrangements would be made for remote online testing. The Court also reduced the passing score on the bar exam starting with the October 2020 exam. 3-ER-401-03.

On July 16, 2020, Kohn filed a further 124-page addendum to his request for accommodations. 3-ER-391; 4-ER-652-776. On July 27, the State Bar provided a response to Kohn's submissions received through June 4: the State Bar granted all previously-granted accommodations and denied the new requests, providing explanations based on expert advice. 3-ER-392; 4-ER-778-86. On August 5, Kohn filed an appeal to the CBE. 3-ER-345-88.

On July 18, 2020, Kohn filed this action and immediately moved for a preliminary injunction ordering the State Bar to approve his accommodation requests, including "the most important five": (1) 150% extra time on the written portions of the exam; (2) testing days that lasted no more than standard testing days; (3) provision of ergonomic equipment or payment of transportation and installation costs; (4) specialized disability proctors; and (5) 30 minutes of break time for every 90 minutes of testing. 6-ER-1213; SER-83-84. The District Court denied this motion August 13 on the ground that Kohn's claims were not ripe.

SER-81. The court noted CBE was scheduled to consider Kohn's petition on August 21, after which Kohn could petition the Supreme Court to review any adverse decision. SER-80.

On August 20, 2020, the State Bar provided a response to Kohn's submissions received through August 10 and granted significant new accommodations, including 250% testing time, total testing hours per day not to exceed 6.5 hours, and administration of the test spread over six days. The letter provided explanations for continuing denials of other accommodations supported by expert opinion. 3-ER-319, 322-28. On August 27, the CBE denied Kohn's appeal but explained that he would nevertheless receive a private testing room due to pandemic precautions, he would be able to leave his ergonomic equipment in the locked private room overnight, and all proctors would be trained. 3-ER-319, 329-32. Kohn did not petition for review to the California Supreme Court.

On August 31, 2020, Kohn filed a renewed motion for preliminary injunction in this action. SER-39-73. He claimed the State Bar had "denied the vast majority of Mr. Kohn's requests" and sought an order requiring in-home testing or, if required to test in-person: COVID precautions; proctors trained in autism; "stop the clock breaks"; a larger-screen monitor; ergonomic equipment provided by the State Bar or storage and transportation for the equipment; and location of testing center within 50 miles from his residence with commute expenses or hotel lodging if more than 10 miles from his residence. SER-70-73. The District Court denied the motion, noting Kohn "seeks an end run around the normal State Bar petition and appeal process and further urges this court to essentially overrule the Committee's

medical experts." SER-36. Moreover, "it is not clear based on the present factual record whether the multiple accommodations already granted by the CBE are insufficient to meet the ADA's reasonable accommodation standard." SER-37.

Meanwhile, another federal court rejected a motion by three disabled bar applicants for an injunction requiring the State Bar to allow them to take the test remotely rather than in-person, despite their needs for accommodations. *Gordon v. State Bar of California*, 20-cv-06442-LB, 2020 WL 5816580 (N.D. Cal., Sept. 30, 2020). The court held "the State Bar's criteria for remote testing do not discriminate: they are neutral . . . , and they ensure equal access to the October 2020 exam." *Id.* at *6. "[W]ith its infectious-disease expert and epidemiologist, the State Bar has implemented safety measures – including private rooms . . . – for in-person test takers . . . [that] allow the State Bar to administer the bar exam safely." *Id.* at *7. Further, "the plaintiffs' proposed accommodations [to allow all test takers to test remotely] impose undue burden on the State Bar and are not feasible before the October exam." *Id.* at *6.

Kohn took and passed the October 2020 bar exam with the State Bar-approved accommodations and a private room due to COVID precautions. Appellant's Opening Brief ("AOB") 1. He became an active State Bar licensee on February 8, 2021.[6]

---

[6] *See* https://apps.calbar.ca.gov/attorney/Licensee/Detail/335723 (last visited Aug. 29, 2022).

### D. The District Court Dismissed Kohn's Remaining Damages Claims.

Following the October 2020 bar exam, only damages claims remained at issue in the case. The District Court granted the State Bar's motion to dismiss these claims on the grounds of sovereign immunity and lack of coverage under the Rehabilitation Act and Unruh Act and entered judgment for the State Bar.[7] 1-ER-2-19. Kohn appeals. 6-ER-1208-11.

### V. SUMMARY OF ARGUMENT

The District Court correctly concluded the State Bar is entitled to sovereign immunity as an arm of the state, as the Ninth Circuit has long recognized. *See Hirsh v. Justices of the Supreme Court*, 67 F.3d 708, 712 (9th Cir. 1985). This precedent is not open to reexamination because there has been no intervening change in law. The Ninth Circuit's recent decision that the Oregon State Bar is not an arm of the state entitled to sovereign immunity, *Crowe v. Oregon State Bar*, 989 F.3d 714 (9th Cir. 2021), is easily distinguishable because the Oregon State Bar is a combined trade association and regulator subject to control by the profession, whereas at all relevant times the State Bar of California was a regulatory agency controlled by the state government.

The District Court also correctly concluded Congress did not validly abrogate States' sovereign immunity as to Kohn's claims under Title II of the ADA. The District Court correctly applied the claim-by-claim analysis required by

---

[7] The District Court also dismissed Kohn's claims for injunctive and declaratory relief and his California Government Code claims. 1-ER-7-8, 14. Kohn does not challenge these dismissals on appeal. AOB 4, fn. 2.

*United States v. Georgia*, 546 U.S. 151, 159 (2006), which is intervening law since the last Ninth Circuit published opinion on the issue. Under *Georgia*, the State Bar's immunity as to Kohn's claims was not validly abrogated because none of the claims rise to the level of constitutional violations in themselves and there is no showing Congress effected a valid prophylactic abrogation of immunity as to the class of claims involving professional licensing. In any event, Kohn fails to state cognizable ADA claims for relief.

The District Court also properly dismissed Kohn's Rehabilitation Act claim. The State Bar presented uncontradicted evidence it receives no federal funding. Therefore, the State Bar did not waive its sovereign immunity by acceptance of such funds and it is not covered by the Rehabilitation Act. The District Court properly considered the State Bar's evidence of its lack of federal funding with respect to the State Bar's motion to dismiss for lack of subject matter jurisdiction. But even if the Court restricts its review to the pleadings, the claim fails because Kohn's allegation of State Bar receipt of federal financial assistance is purely conclusory, and therefore inadequate. In any event, the Rehabilitation Act claims fail on the merits for the same reasons the ADA claims fail.

Finally, the District Court properly dismissed Kohn's state-law Unruh Act claim. The California Supreme Court recently confirmed that a public entity is not a "business establishment" covered by the Act when it is performing its public functions. *Brennon B. v. Superior Court of Contra Costa County*, 13 Cal.5th 662 (2022). The State Bar was performing its public function of attorney licensing when it ruled on Kohn's accommodation requests.

## VI.   ARGUMENT

**A.   <u>The State Bar is Entitled to Sovereign Immunity as to All of Kohn's Claims.</u>**

The District Court applied settled Ninth Circuit law in concluding the State Bar has sovereign immunity as an arm of the state unless an exception to immunity applies, such as an intentional waiver of immunity by the State or a valid abrogation of immunity by Congress. 1-ER-9.[8]  Kohn now argues for the first time that the State Bar is not entitled to sovereign immunity as an arm of the state as a threshold matter. AOB 16-25; *see* SER-13-15. The Court should reject this argument based on controlling Ninth Circuit precedent. But even if this precedent is reexamined, the Court should reaffirm that the State Bar is an arm of the state entitled to sovereign immunity under controlling legal principles.

### 1.   Binding Ninth Circuit Precedent Establishes the State Bar is an Arm of the State Entitled to Sovereign Immunity.

It is settled Ninth Circuit law that the State Bar is an arm of the State entitled to sovereign immunity. *See Hirsh,* 67 F.3d at 715; *Lupert v. State Bar*, 761 F.2d 1325, 1327 (9th Cir. 1985). "The Eleventh Amendment's grant of sovereign immunity bars monetary relief from state agencies such as California's Bar Association and Bar Court." *Hirsh,* 67 F.3d at 715.

---

[8] Kohn inaccurately claims the court and parties below "appear to have assumed" the State Bar was an arm of the state without analyzing the issue. AOB 24. The State Bar and the District Court correctly cited *Hirsh* as binding authority. 1-ER-9, 2-ER-79. Only Kohn ignored the issue.

This panel must follow this precedent because there has been no intervening en banc or Supreme Court ruling that would permit reconsideration. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001). Kohn notes *Hirsh* did not expressly discuss the factors laid out in *Mitchell v. Los Angeles Community College District,* 861 F.2d 198 (9th Cir. 1989), the oft-cited Ninth Circuit test for determining whether an agency has sovereign immunity as an arm of the state. AOB 22. However, *Mitchell* was decided six years before *Hirsh*, so it is not an intervening decision that would permit this panel to reconsider *Hirsh*.

Kohn suggests the intervening decision of *Crowe* somehow allows this panel to ignore *Hirsh*. AOB 24. But *Crowe* addresses the sovereign immunity of the *Oregon* State Bar, whereas *Hirsh* addresses the sovereign immunity of the *California* State Bar. *Crowe*, 989 F.3d at 731; *Hirsh,* 67 F.3d at 712. *Crowe* itself held Ninth Circuit precedent regarding the Nevada State Bar's sovereign immunity[9] did not control its decision regarding the Oregon State Bar. *Crowe,* 989 F.3d at 732, fn. 10. (*Crowe* does not cite or discuss *Hirsh* or *Lupert*.) Similarly, *Crowe*'s decision regarding Oregon cannot permit this panel to ignore binding precedent regarding California.

Kohn further suggests *Hirsh* and *Lupert* are binding precedent only in the particular contexts in which they were decided: attorney disciplinary proceedings, *Hirsh,* 67 F.3d at 711, and the First Year Law Student Examination requirement

---

[9] It is settled Ninth Circuit law that the Nevada State Bar is an arm of the state with sovereign immunity. *See O'Connor v State of Nevada*, 686 F.2d 749, 750 (9th Cir. 1982); *Ginter v. State Bar of Nevada*, 625 F.2d 829, 830 (9th Cir. 1980).

for students at unaccredited law schools, *Lupert,* 761 F.2d at 1326-27. AOB 16, 22. However, neither *Hirsh* nor *Lupert* limits its holding to the specific contexts in which the cases arose. *See Hirsh*, 67 F.3d at 715; *Lupert*, 761 F.2d at 1327. Moreover, the Ninth Circuit has disapproved a contextual approach because "to do so would impermissibly qualify sovereign immunity, which by its nature is absolute." *See Durning v. Citibank, N.A.*, 950 F.2d 1419, 1427 (9th Cir. 1991) (refusing to hold a state agency "is immune from suit with respect to some of its activities . . . but not others).[10] In any event, even assuming the context of a case matters, Kohn fails to explain why the context here (bar exam administration) is materially distinguishable from *Hirsh* and *Lupert*—especially the latter case, which also involves a bar exam requirement.

This Court must apply binding Ninth Circuit precedent and hold the State Bar is an arm of the state with sovereign immunity.

### 2. If the Court Decides it May Reconsider *Hirsh*, It Should Reaffirm that the State Bar Has Sovereign Immunity as an Arm of the State.

Even a renewed analysis under controlling Supreme Court and Ninth Circuit principles would compel the conclusion that the State Bar, a state agency performing core government functions under centralized government control, is an

---

[10] In *Ray v. County of Los Angeles*, 935 F.3d 703 (9th Cir. 2019), cited by Kohn, AOB 16, the Court noted that *Northern Insurance Company of New York v. Chatham County*, 547 U.S. 189, 190 (2006) "appears to have left open the possibility that a county could be entitled to Eleventh Amendment immunity in some cases" depending on context, but questioned whether that language was consistent with Supreme Court precedent and noted the language was dicta (the Supreme Court decided the case based on a party's concession). *Id.* at 708-09.

arm of the state with sovereign immunity.

When a state agency rather than the State itself is named as a defendant, the court must determine whether the agency should be treated as an arm of the state for sovereign immunity purposes. *Mitchell,* 861 F.2d at 201. The answer "depends, at least in part, upon the nature of the entity created by state law." *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). The Ninth Circuit has applied a five-factor test:

> [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity.

*Mitchell*, 861 F.2d at 201. The third and fourth factors carry little weight. *Sato v. Orange County Dept. of Educ.*, 861 F.3d 923, 934 (9th Cir. 2017).

a)   **The *Mitchell* Test Should Be Updated to Reflect Current Legal Authority on Sovereign Immunity.**

If the Court is going to reexamine Ninth Circuit precedent on the State Bar's sovereign immunity, it should take the occasion to harmonize the 33-year-old *Mitchell* test with current Supreme Court and Ninth Circuit precedent in two respects. First, it should clarify that the first factor is not the single most important factor. Second, it should replace the last three *specific* factors with a more *general* consideration of the entity's independence from centralized state control.

When *Mitchell* was decided, *Edelman v. Jordan* was the leading Supreme Court case on sovereign immunity for state defendants other than the state itself. *Edelman* held state officials sued in their official capacities were entitled to

immunity in suits where damages would be paid from the state treasury. *Edelman v. Jordan*, 415 U.S. 651, 653, 668-69 (1974); *see also Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945) (state treasury department immune if state treasury would pay). More recently, the Supreme Court has clarified that the "Eleventh Amendment does not exist solely in order to prevent federal-court judgments that must be paid out of a State's treasury… it also serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996) (citations and quotations omitted); *see Federal Maritime Comm'n v. South Carolina State Ports Authority*, 535 U.S. 743, 760 (2002). However, under the *Mitchell* test, the first factor (whether a judgment imposes legal liability on the state treasury) has been held to carry the most weight. *See Crowe*, 989 F.3d at 731 (citing cases).

    In light of evolving Supreme Court law, other circuits have abandoned rules giving undue weight to the state treasury factor. *See Bowers v. National Collegiate Athletic Ass'n*, 475 F.3d 524, 546 & fn. 24 (3rd Cir. 2007); *Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico and Caribbean Cardiovascular Center Corp.*, 322 F.3d 56, 59-68 (1st Cir. 2003); *see also Crosetto v. State Bar of Wisconsin*, 12 F.3d 1396, 1402 (7th Cir. 1993) (entity may be immune even if judgment would have no effect on state treasury). The Ninth Circuit itself has recognized lack of impact of a state treasury is not dispositive. *Alaska Cargo Transport Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 380 (9th Cir. 1993). This Court should further clarify that the factor is no more important than the

others.[11]

Further, the Court should clarify that the last three *Mitchell* factors—capacity to sue and be sued, authority to hold property in the entity's own name, and corporate status—are simply three specific examples of a more comprehensive consideration: the entity's degree of independence from centralized state control. Ninth Circuit opinions already acknowledge this overarching independence consideration. *See Beentjes v. Placer County Air Pollution Control Dist.*, 397 F.3d 775, 783, fn. 9, 785 (9th Cir. 2005) (considering entity's autonomy from centralized government control); *Franceschi v. Schwartz,* 57 F.3d 828, 831 (9th Cir. 1995) (court must "assess the extent to which the entity derives its power from the State and is ultimately regulated by the State"); *Austin v. State Indus. Ins. System*, 939 F.2d 676, 678 (9th Cir. 1991) ("We also consider such factors as the nature of the entity's functions, powers, and responsibilities; [and] its relation to and control by other units of government"). Further, in practice, Ninth Circuit panels cite *multiple specific* features of state agencies (not only the last three *Mitchell* factors) relevant to an entity's degree of independence: (1) how the governing body of the entity is appointed, *Beentjes,* 397 F.3d at 785; *In re Lazar,*

---

[11] Even *Mitchell* itself did not apply its factors strictly and formalistically. Indeed, after reciting the five factors, *Mitchell* focused on the college district's subjection to full legislative control (akin to the State Bar's subjection to full control by the Legislature, Supreme Court, and Governor, through his appointees) and then briefly discussed how the district's funds come from the state and that some of the fees charged by the district's colleges go to the state, before holding that the college district was entitled to sovereign immunity. *Mitchell*, 861 F.2d at 201. The factors were not otherwise discussed.

237 F.3d 967, 975 (9th Cir. 2001); *Austin,* 939 F.2d at 678; (2) how the entity raises funds, *Beentjes*, 397 F.3d at 779-780; (3) whether the entity may issue bonds, *Durning*, 950 F.2d at 1427-28; and (4) the extent of state oversight, *Lazar*, 237 F.3d at 984; *Austin,* at 678.

Other circuits have incorporated an overarching degree-of-independence factor into their arm-of-the-state tests. *See, e.g., Fresenius,* 322 F.3d at 61 ("how the state structured its relationship to the entity"); *Bowers,* 475 F.3d at 546 ("what status the entity has under state law"); *Waskul v. Washtenaw County Community Mental Health*, 979 F.3d 426, 443 (6th Cir. 2020) ("the language by which state statutes and state courts refer to the entity"). The Ninth Circuit should do the same.

The Circuit's arm-of-the-state test would then boil down to three factors: (1) whether a judgment against the entity would impose legal liability on the state treasury; (2) whether the entity performs core government functions; and (3) the degree to which the entity is subject to centralized state control. This rephrasing of the *Mitchell* test would keep the analysis focused on broad governing principles rather than specific factors that might or might not be relevant or particularly significant in individual cases. It would also align the Ninth Circuit with all other circuits whose tests generally set forth two or three overarching considerations rather than listing particular characteristics of state agencies.[12]

---

[12] *See Fresenius,* 322 F.3d at 65, 68 (1st Cir.; courts should first consider how the state structured the entity; if ambiguous, courts should then consider the vulnerability of the state's purse); *Leitner v. Westchester Community College*, 779 F.3d 130, 134-36 (2d Cir. 2015) (describing two tests: (1) a multi-factor test examining the entity's status under state law plus consideration of the policies

### b) The Court Should Reaffirm the State Bar's Sovereign Immunity.

Should the Court be inclined to apply the traditional or an updated *Mitchell*

---

underlying sovereign immunity; and (2) extent of state liability for the judgment and degree of state supervision over the entity); *Bowers,* 475 F.3d at 546 (3d Cir.; "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has."); *Maryland Stadium Authority v. Ellerbe Becket Inc.*, 407 F.3d 255, 260-61 (4th Cir. 2005) (in addition to whether state treasury would be responsible for paying the judgment, considering "whether the entity exercises a significant degree of autonomy from the state, whether it is involved in local versus statewide concerns, and how it is treated as a matter of state law"); *Southwestern Bell Telephone Co. v. City of El Paso*, 243 F.3d 936, 938 (5th Cir. 2001) ("courts must review the relationship between the state and the entity in question, examining the essential nature of the proceeding, the nature of the entity created by state law, and whether a money judgment against the instrumentality would be enforceable against the state"); *Waskul,* 979 F.3d at 443 (6th Cir.; "(1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government."); *Takle v. University of Wisconsin Hosp. and Clinics Authority*, 402 F.3d 768, 769-71 (7th Cir. 2005) (without setting out a specific test, considering various features of the entity's status under state law); *Thomas v. St. Louis Board of Police Comm'rs*, 447 F.3d 1082, 1084 (8th Cir. 2006) ("courts must 'consider[ ] the provisions of state law that define the agency's character.' [Citations.] Specifically, courts assess the agency's degree of autonomy and control over its own affairs and, more importantly, whether a money judgment against the agency will be paid with state funds."); *Duke v. Grady Mun. Schools*, 127 F.3d 972, 974 (10th Cir. 1997) ("[T]he court first examines the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state. Second, the court examines the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing."); *Puerto Rico Ports Authority v. Federal Maritime Comm'n*, 531 F.3d 868, 874 (D.C. Cir. 2008) (courts must "look to state intent, state control, and the overall effects on the state treasury").

test, the State Bar is an arm of the state with sovereign immunity. This conclusion is in line with the apparently unanimous view of four other circuits[13] and multiple district courts[14] that have ruled state bars enjoy sovereign immunity. The State Bar's research has not disclosed a single unreversed decision (other than *Crowe*, which is easily distinguishable) holding a state bar or state bar subentity lacks sovereign immunity.[15]

---

[13] *See Nichols v. Alabama State Bar*, 815 F.3d 726, 732-33 (11th Cir. 2016); *Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d 610, 612, 615 (6th Cir. 2003) (State Bar of Michigan and Michigan Board of Law Examiners); *Crenshaw v. Supreme Court of Indiana*, 170 F.3d 725, 727 (7th Cir. 1999) (Disciplinary Commission of the Supreme Court of Indiana); *Johnson v. Supreme Court of Illinois*, 165 F.3d 1140, 1141 (7th Cir. 1999) (unspecified state agencies allegedly liable for plaintiff's disbarment); *Davis v. Mississippi*, 1997 WL 368353, *1 (5th Cir. 1997) (Mississippi State Bar); *Thiel v. State Bar of Wisconsin*, 94 F.3d 399, 401-03 (7th Cir. 1996), *overruled on other grounds by Kingstad v. State Bar of Wisconsin*, 622 F.3d 708, 718 (7th Cir. 2010); *Green v. State Bar of Texas*, 27 F.3d 1083, 1087-88 (5th Cir. 1994) (State Bar of Texas's Unauthorized Practice of Law Committee); *Kaimowitz v. The Florida Bar*, 996 F.2d 1151, 1155 (11th Cir. 1993); *Lewis v. Louisiana State Bar Ass'n*, 792 F.2d 493 (5th Cir. 1986); *Bishop v. State Bar of Texas*, 791 F.2d 435 (5th Cir. 1986).

[14] *See T.W. v. New York State Board of Law Examiners*, 16-cv-3029, 2022 WL 2819092, *5 (E.D.N.Y. July 19, 2022); *Bergeson v. South Dakota*, 1:21-CV-01026-CBK, 2021 WL 5771183, *3 (N.D.S.D. Dec. 6, 2021); *Deters v. Kentucky Bar Association*, 130 F.Supp.3d 1038, 1046 (E.D. Ky. 2015), *aff'd on other grounds by* 646 Fed. Appx. 468 (6th Cir. 2016); *Kramer v. Grossman*, ELH–13–174, 2014 WL 937146, *6 (D. Md. Mar. 10, 2014) (Maryland Attorney Grievance Commission); *Feliciano v. Tribunal Supremo de Puerto Rico*, 78 F.Supp.2d 4, 9 (D.P.R. 1999); *Ware v. Wyoming Board of Law Examiners*, 973 F.Supp. 1339, 1351 (D.Wyo. 1997); *Cohran v. State Bar of Georgia*, 790 F.Supp. 1568, 1575 (N.D. Ga. 1992); *Mattas v. Supreme Court of Pennsylvania*, 576 F.Supp. 1178, 1182 (W.D. Penn. 1983).

[15] One district court case that ruled a state bar lacked sovereign immunity was overruled. *See Levine v. Supreme Court of Wisconsin*, 679 F.Supp. 1478, 1487-88

The State Bar acknowledges the first traditional *Mitchell* factor weighs against a finding of sovereign immunity: a judgment in this case would not impose a legal obligation on the state treasury, i.e., California's General Fund. § 6008.1. (As discussed *post*, however, certain aspects of the State Bar's financial structure support immunity, and in any event, this one factor is not dispositive.)

The second traditional *Mitchell* factor weighs heavily in favor of sovereign immunity. The Supreme Court has repeatedly recognized that state bar regulatory activities such as admissions and discipline as "core" government functions, "essential to the primary governmental function of administering justice." *Bates v. State Bar of Arizona*, 433 U.S. 350, 361-362 (1977) (citations and quotations omitted); *see Keller*, 496 U.S. at 11; *Hoover v. Ronwin*, 466 U.S. 558, 570 (1984); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978); *see also Hirsh,* 67 F.3d at 712.[16]

---

(W.D. Wis. 1988), *reversed by* 864 F.2d 457, 458-59 & fn. 6 (7th Cir. 1988) (reversing on First Amendment grounds and not reaching sovereign immunity issue), *abrogated on other grounds as stated in Fine v. Martin*, 33 F.4th 385, 392 (7th Cir. 2022), *pet. for cert. pending*.

[16] Kohn argues without authority or logic that providing testing accommodations for bar examinations is not a core government function because "there is no mechanism by which the public can scrutinize the State Bar's accommodation decisions." AOB 22. Kohn demonstrates neither that accommodation decisions are shielded from public scrutiny (they are admittedly subject to review by the California Supreme Court under California Rule of Court 9.13(d)), nor that the potential for public scrutiny is relevant to sovereign immunity analysis. Kohn's proposed rule would render confidential criminal investigations outside the scope of core government functions protected by sovereign immunity, which is nonsensical.

The key inquiry of the third through fifth Mitchell factors—the extent to which the entity is independent from centralized state control—also strongly supports the State Bar's claim of sovereign immunity. Notwithstanding that the State Bar is structured as a public corporation, state law ensures centralized control. All members of the governing Board of Trustees are appointed by top officials of the three branches of state government. *See* §§ 6013.1, 6013.3, 6013.5; *cf. Crowe,* 989 F.3d at 733 (Oregon State Bar "appoints its own leaders"). The Committee of Bar Examiners itself, the entity within the State Bar which oversaw and made the decisions challenged in this case, is also appointed by those officials. *See* §§ 6046, 6046.5, Cal. R. Ct. 9.4(a). The State Bar cannot adopt rules on admissions and professional conduct without Supreme Court approval. § 6076, Cal. R. Ct. 9.5; *cf. Crowe,* at 733 (Oregon State Bar "amends most of its bylaws, and manages its internal affairs"). State Bar admissions and serious disciplinary decisions culminate in binding decisions by the California Supreme Court. *See* §§ 6081-6084, 6087, 6100; Cal. R. Ct. 9.3(a), 9.10(g), 9.13, 9.15. State law requires State Bar funds to be "held for essential public and governmental purposes in the judicial branch of the government." §§ 6008, 6008.2. The State Bar's revenues come largely from attorney licensing and admissions fees, which are set or capped by the state Legislature. §§ 6140, 6063; *see Lewis,* 792 F.2d at p. 498 (in holding Louisiana bar has sovereign immunity, noting that "dues (which presumably would provide the source for payment of an award of damages to Lewis) are state license taxes, levied by express authority of the Louisiana state legislature"). In fact, with respect to annual license fees, the Legislature authorizes

them for only a year at a time, necessitating passage of a new "fee bill" each year, which often includes, in addition to the fee authorization, various new statutory directives to the State Bar. *See, e.g.,* § 6140(a) (authorizing license fee for 2022 only); Cal. Stats. 2021, ch. 723 (S.B. 211) (2021 legislation authorizing 2022 license fee and imposing new auditing and reporting requirements on the State Bar, among other changes). In sum, even though the State Bar has the capacity to sue and be sued, may own property in its own name, and is formally structured as a "public corporation" by statute, state law ensures centralized state government control over the State Bar.

Because the State Bar performs core government functions under centralized state government control, the State Bar is an arm of the state for sovereign immunity purposes. This conclusion is consistent with decades of Ninth Circuit law and current law in other federal Circuits.

### c) *Crowe* is Not Persuasive Authority on the State Bar's Sovereign Immunity.

*Crowe*, which holds that the *Oregon* State Bar is not an arm of the state for sovereign immunity purposes, is not persuasive authority on the State Bar of *California*'s sovereign immunity. *See Crowe,* 989 F.3d at 733.

*Crowe* was heavily influenced by the fact that the Oregon State Bar has trade association features, unlike the current State Bar of California. Oregon attorneys are "members" who "join" their state bar and pay annual "membership" fees, *see Crowe,* 989 F.3d at 720 (citing Or. Rev. Stat., §§ 9.160(1), 9.200), whereas California attorneys are "licensees" who pay "licensing" fees. §§ 6002(a), 6140.

The difference in nomenclature reflects differences in structure: the Oregon State Bar is governed by its members, who elect its governing body, Or. Rev. Stat., § 9.025; *Crowe*, 989 F.3d at 733 ("corporate status" *Mitchell* factor weighs against immunity because board is not government-appointed), whereas the State Bar of California is governed by trustees appointed by the three branches of the state government. §§ 6010, 6013.1, 6013.3, 6013.5.

*Crowe*'s characterization of the public services performed by the Oregon State Bar as "'essentially advisory in nature,'" *Crowe*, 989 F.3d at 720, 733, flows from the Oregon State Bar's trade association status. The Court borrowed the "essentially advisory" phrase from *Keller,* 496 U.S. at 12, a 1990 First Amendment government speech case that involved the pre-separation State Bar. This "essentially advisory" label only makes sense in the context of a bar, like Oregon's, that is run by leaders elected by the profession, and thus is separate from state government (and therefore advising it rather than acting as the state). The current State Bar of California, by contrast, is run by a board composed of civil executive officers appointed by the three branches of government, and it is an *integral* part of the state judiciary. *See Keller*, at 13 (pre-separation State Bar of California *"*was created, *not to participate in the general government* of the State, but to provide specialized professional advice"; italics added). Although the current State Bar of California's disciplinary and admissions decisions are subject to final approval by the California Supreme Court, AOB 21, this is simply a feature of internal agency structure: this feature *supports* a finding of immunity because it demonstrates that the State Bar is subject to centralized state government control,

in contrast to the Oregon State Bar and pre-separation State Bar of California, which operate or operated as essentially *nongovernmental* professional organizations that provided advice to the state judiciary on attorney matters. It makes no sense to describe the activities of the current State Bar of California, which is itself wholly controlled by the state and is not external to it, as "essentially advisory."

<blockquote>

**d) The State Bar is an Arm of the State with Sovereign Immunity.**

</blockquote>

The State Bar's performance of core government functions under centralized state government control establishes it is an arm of the state such that it is "an impermissible affront to [California]'s dignity [for the State Bar] to be required to answer the complaints of private parties in federal courts," *Federal Maritime,* 535 U.S. at 760, even though a judgment against the State Bar will not necessarily be paid from the state's General Fund. *See Alaska Cargo,* 5 F.3d at 380 (holding state entity is arm of state even though the state was not liable for the entity's debts). The State Bar is therefore entitled to sovereign immunity as to all of Kohn's claims unless a valid exception to immunity applies.

**B.**    <u>Kohn's ADA Claims Were Properly Dismissed on Sovereign Immunity and 12(b)(6) Grounds.</u>

     **1.**    **Congress Has Not Validly Abrogated States' Sovereign Immunity Under Title II of the ADA as to Kohn's Claims.**

Kohn relies on outdated law to argue Congress validly abrogated States' sovereign immunity under Title II of the ADA. AOB 25-26. He relies on Ninth

Circuit law that has been superseded by an intervening Supreme Court decision[17] and he fails to meaningfully engage with that Supreme Court decision, which requires a "claim-by-claim" analysis of abrogation in the Title II context. *Georgia*, 546 U.S. at 159. Specifically, *Georgia* holds that courts must determine on "a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."[18] *Ibid.* The District Court properly applied *Georgia*'s claim-by-claim analysis and properly determined thereunder that, (1) assuming Kohn stated valid ADA claims, (2) those claims do not describe constitutional violations and (3) Kohn has not otherwise demonstrated that Congress effected a valid prophylactic abrogation of sovereign immunity under Title II. 1-ER-9-16.

> **a)** ***Georgia*** **is Intervening Supreme Court Case Law**
> **that Must be Applied in Determining Abrogation**
> **of Sovereign Immunity under Title II.**

---

[17] *See Clark v. State of California*, 123 F.3d 1267 (9th Cir. 1997); *Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002).

[18] It is undisputed that Congress unequivocally expressed its intent to abrogate sovereign immunity under the ADA. *Tennessee v. Lane*, 541 U.S. 509, 518 (2004); *see* 42 U.S.C. § 12202. The issue here is whether Congress validly exercised its authority under Section 5 of the Fourteenth Amendment to do so. *See Bd. of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) (Congress validly abrogates States' sovereign immunity "when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.' ").

28

Kohn acknowledges that *Georgia* post-dates the Ninth Circuit's last published decision on the abrogation of sovereign immunity under Title II, *Phiffer v. Columbia River Correctional Inst.*, 384 F.3d 791, 792 (9th Cir. 2004). AOB 27. That is, *Georgia* is intervening case law necessitating reconsideration of the holding of *Phiffer* that Congress validly abrogated sovereign immunity as to Title II *on a blanket basis*, which is clearly inconsistent with *Georgia*'s requirement of a claim-by-claim approach. *See Hart*, 266 F.3d at 1171.[19] Post-

---

[19] Kohn argues *Georgia* did not attempt to define the "outer limits" of prophylactic abrogation. AOB 27-28. But it clearly requires courts to consider prophylactic abrogation in the context of particular claims: the Court directed courts to determine, "*insofar as such misconduct violated Title II* but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity *as to that class of conduct* is nevertheless valid." *Georgia*, 546 U.S. at 159 (italics added). Whereas *Lane* includes some expansive language about Congress's intent to redress "pervasive unequal treatment in the administration of state services and programs," *Lane*, 541 U.S. at 524, *Georgia* clarifies that *Lane*'s holding and the controlling Supreme Court legal test are limited to the specific "class of conduct" at issue in a particular case. *See Lane*, at 533-34 ("Title II, as it applies to *the class of cases* implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment"; italics added); *see also Guttman v. Khalsa*, 669 F.3d 1101, 1117 (10th Cir. 2012) *(Guttman II)* (explaining some circuits read *Lane* broadly but *Georgia* clarifies that abrogation analysis must be applied in each case "with regard to the particular right and class of state action at issue").

*Phiffer* panels have recognized the need to engage in this new analysis,[20] as have all other federal circuits.[21]

### b) Under *Georgia*, Congress Did Not Validly Abrogate Sovereign Immunity as to Kohn's Title II Claims.

Congress did not validly abrogate the State Bar's immunity because Kohn's claims do not amount to constitutional violations and Congress did not effect a valid prophylactic abrogation of immunity as to the relevant class of conduct here: professional licensing by the States.

### (1) Kohn Does Not Allege Constitutional Violations.

Kohn's allegations do not describe Equal Protection violations because he does not allege irrational discrimination against the disabled. "States are not required *by the Fourteenth Amendment* to make special accommodations for the disabled, so long as their actions toward such individuals are rational." *Garrett*,

---

[20] *See Viriyapanthu v. State Bar*, 813 Fed.Appx. 312, 313 (9th Cir. 2020); *Vartanian v. State Bar*, 794 Fed.Appx. 597, 600 (9th Cir. 2019); *Sanders v. Ennis-Bullock*, 316 Fed.Appx. 610, 612 (9th Cir. 2009); *see also J.C. ex rel. W.P. v. Cambrian School District*, 648 Fed.Appx. 652, 655 (9th Cir. 2016) (Wardlaw, J., con. and diss.).

[21] *See Sinapi v. Rhode Island Board of Bar Examiners*, 910 F.3d 544, 553-54 & fn. 7 (1st Cir. 2018); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 108-10 (2d Cir. 2001); *Bowers,* 475 F.3d at 552-56 (3d Cir.); *Fauconier v. Clarke*, 966 F.3d 265, 280 (4th Cir. 2020); *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022); *Robinson v. University of Akron School of Law*, 307 F.3d 409, 411-31 (6th Cir. 2002); *King v. Marion Circuit Court*, 868 F.3d 589, 591-93 (7th Cir. 2017); *Klingler v. Director, Dept. of Revenue, State of Mo.*, 455 F.3d 888, 893–94 (8th Cir. 2006); *Guttman v. Khalsa*, 446 F.3d 1027, 1034 (10th Cir. 2006); *National Association of the Deaf v. Florida*, 980 F.3d 763, 770-74 (11th Cir. 2020). The State Bar's research did not disclose a D.C. Circuit decision considering sovereign immunity under Title II of the ADA.

531 U.S. at 367 (italics added); *see Garcia*, 280 F.3d at 109-110 (distinguishing Equal Protection and ADA requirements); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553-554 (3d Cir. 2007) (same). Here, the State Bar's alleged conduct easily satisfies the rational basis test. The extensive accommodations granted to Kohn by the State Bar were effective in affording Kohn meaningful access to the exam (he completed it several times, and passed in October 2020). Certain of his requests were denied or limited due to lack of proven need, the availability of an equally effective and lest costly alternative (e.g., allowing Kohn to provide his own ergonomic equipment), or the need to maintain a valid exam (e.g., minimizing deviations from standard conditions, ensuring secure transmission of the exam to remote test takers).[22] *See Martin v. California Dept. of Veterans Affairs,* 560 F.3d 1042, 1050 (9th Circ. 2009) (cost and administrative burden are rational bases for disability discrimination); *Cal. Assoc. of the Phys. Handicapped, Inc. v. Fed. Comm. Comm'n*, 721 F.2d 667, 670 (9th Cir. 1983) (same); *Schware v. Board of Bar Examiners of State of New Mexico*, 353 U.S. 232, 238-239 (1957) ("A State can require high standards of qualification[] . . . [with] a rational connection with the applicant's fitness or capacity to practice law."); *Renner*, 2022 WL 1658361 at *6-*7 (not irrational to place conditions on admission of bar applicant with history of serious mental health issues). Kohn does not allege denial of a fundamental constitutional right, which could give rise to additional constitutional violations as in *Lane*, 541 U.S. 523-29. As relevant here,

---

[22] *See Gordon*, 2020 WL 5816580 at *6-*7, regarding Kohn's allegations regarding the October 2020 exam.

"there is no fundamental right to practice law or to take the bar examination." *Giannini v. Real*, 911 F.2d 354, 358 (9th Cir. 1990).

Kohn argues the State Bar's testing accommodation procedures deny disabled people equal access to the bar exam and an equal opportunity to prepare for the exam without the distraction and uncertainty of unresolved accommodation requests. These allegations describe neither Equal Protection nor procedural Due Process violations. The timeline to consider and respond to accommodation requests, AOB 40-43, is rationally designed to relieve the administrative burden of processing accommodation requests in a bar exam program as massive as California's. Requests for supporting documentation and the absence of rigid guidelines, AOB 43-44, are rationally designed to allow the State Bar to make individualized determinations and thereby ensure the validity of bar exam results. Kohn's allegations that the use of outside experts and other aspects of the procedures are error-prone is a criticism that the procedures could be improved[23], not that they invidiously and irrationally discriminate against the disabled or deny him notice or a meaningful opportunity to be heard.

---

[23] The State Bar is actively working to improve its testing accommodation procedures. As one step in this process, the State Bar held a public Testing Accommodations Stakeholder Input Forum on June 29, 2022. As the State Bar stated in the agenda materials, "As part of a review of rules and processes governing admission to the practice of law, the State Bar of California is reviewing its program for testing accommodations on State Bar administered exams. We are seeking stakeholder input to help improve the testing accommodations process." *See* Testing Accommodations Stakeholder Input Forum Notice and Agenda (State Bar 2022), available at https://board.calbar.ca.gov/Agenda.aspx?id=16714&tid=0&show=100033179 (last visited Sept. 7, 2022).

While a prospective bar examinee has a liberty interest in having an opportunity to qualify for the practice of law, *Schware*, 353 U.S. at 238-39, Kohn received all the process to which he is entitled. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Kohn indisputably received multiple opportunities to be heard on his accommodation requests. Whether additional process was constitutionally required depends on a balancing of Kohn's private interests, the state's interests, and the risk of error. *Id.* at 335. As explained *ante*, the state has a substantial interest in efficiently deploying its resources and maintaining the integrity of the exam by minimizing deviations in testing conditions. In *Sinapi v. Rhode Island Board of Bar Examiners*, 910 F.3d 544, 553-54 (1st Cir. 2018), the First Circuit held procedural complaints similar to Kohn's (including "delay in reviewing Sinapi's application for accommodation [on the bar exam]; failure to disclose the reasons for denial of the application; failure to provide for timely reconsideration of the denial") did not rise to the level of constitutional violations. In sum, Kohn has not and cannot allege facts showing that his suggested procedural reforms are *constitutionally* required.

Finally, Kohn suggests his allegations rise to the level of substantive due process violationsapparently on the theory that requiring him to take the October 2020 exam in person exposed him to a risk of contracting COVID-19 and thus violated his liberty interest in bodily integrity and his right to be free of state-created danger. AOB 28-33; *see P.B. v. Koch*, 96 F.3d 1298, 1303 (9th Cir. 1996). However, the State Bar acted reasonably in modifying bar exam procedures in

response to the global COVID-19 pandemic, allowing most test takers to take the exam remotely while preserving the integrity and administrative feasibility of the exam by requiring those needing certain accommodations (*not* limited to the disabled) to test in person, while following expert public health advice in ensuring the health and safety of the in-person test takers, including private testing rooms. There is no evidence of any resulting physical harm to Kohn or any other test taker, and no evidence of bad faith. *See Gordon,* 2020 WL 5816580, *7-*8.

Again, the relevant legal issue is whether Kohn has alleged *unconstitutional* conduct by the State Bar such that the Bar is stripped of its sovereign immunity from damages suits in federal court. He has fallen far short of such a showing.

### (2) Congress Did Not Effect a Valid Prophylactic Abrogation as to Kohn's Claims.

Because Kohn's Title II claims are not themselves Constitutional violations, Congress's purported abrogation of the State Bar's sovereign immunity as to these claims is valid only if Title II is a congruent and proportional response to a historical pattern of constitutional violations by States that Congress was attempting to deter or remedy. It is not.

To determine whether Congress has effected a valid *prophylactic* abrogation of immunity, a court must: (1) "identify with some precision the scope of the constitutional right at issue"; (2) "examine whether Congress identified a history and pattern of unconstitutional [conduct] by the States"; and (3) determine whether "the rights and remedies created by the ADA against the States" are "congruent and proportional to the targeted violation[s]." *Garrett,* 531 U.S. at 365, 368, 372,

374. The party claiming abrogation has the burden of establishing it. *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (burden on party asserting subject matter jurisdiction).

*Lane* provides the template for abrogation analysis. The Court described the constitutional rights at issue (disabled access to court proceedings) as follows: "Title II[] . . . seeks to enforce [the Equal Protection Clause's] prohibition on irrational disability discrimination. But it also seeks to enforce a variety of other basic constitutional guarantees, infringements of which are subject to *more searching judicial review*," including "the right of access to the courts." *Lane*, 522-23 (italics added). The latter rights were critical to the case because "the appropriateness of the [Congressional] remedy depends on the gravity of the harm it seeks to prevent." *Id.* at 523; *see id.* at 528-28 (explaining Court found valid abrogation under the Family and Medical Leave Act in *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721 (2003), based in part on heightened standard of judicial scrutiny for sex-based classifications). The Court then determined that Congress had identified a pattern of constitutional violations with respect to disabled people's access to the courts. Congress identified "pervasive unequal treatment in the administration of state services and programs, including systematic deprivations of fundamental rights" that "persisted despite several federal and state legislative efforts to address it." *Id.* at 524, 526. Specifically, "Congress learned that many individuals, in many States across the country, were being excluded from courthouses and court proceedings by reason of their

disabilities." *Id.* at 527. Consequently, Congress was "justified in concluding that this 'difficult and intractable proble[m]' warranted 'added prophylactic measures in response,' " and it adopted a "limited" remedy in doing so. *Id.* at 531-32.

Here, no fundamental right such as access to the courts is at issue, as was the case in *Lane*.[24] Therefore, the "gravity of the harm" is less than what was at stake in *Lane* and any appropriate remedy must be more limited as well. *See Lane*, 541 U.S. at 523; *Guttman*, 669 F.3d at 1122-23. Other circuits have determined that Congress, when it enacted the ADA, did not identify a pattern of unconstitutional disability discrimination by states in professional licensing. *See Guttman*, at 1118-19, 1124 (reviewing legislative history of ADA); *Renner v. Supreme Court of Florida*, 2022 WL 1658361, *6 (11th Cir. 2022) (citing 42 U.S.C. § 12101). Kohn does not even attempt to show otherwise. AOB 25-28. Absent such a record of constitutional violations, Congress has *no* power under Section 5 to prohibit State conduct beyond what is prohibited by the Fourteenth Amendment itself. *See Lane*, at 518. Moreover, as is readily apparent from the discussion of constitutional

---

[24] In a footnote, Kohn attempts to bring this case within *Lane*'s reasoning by arguing it "sits at the intersection of public education and access to the courts, two areas of law that courts have repeatedly held support the abrogation of sovereign immunity in the Title II context. AOB 27, fn. 11. However, the right to access the courts does not encompass a right to be an attorney. *See Giannini*, 911 F.2d at 358 ("There is no fundamental right to practice law or take the bar examination."). And Kohn does not explain how public education factors into this case. He cites *Toledo v. Sanchez*, 454 F.3d 24 (1st Cir. 2006), but there the defendant was a public university and the court determined that Congress had identified a pervasive pattern of discrimination against the disabled in public schools across the country. *Id.* at 32, 38-39. Here, the defendant is not a public school. There is no indication Congress identified a widespread pattern of unconstitutional conduct by States in professional licensing.

standards *ante*, and as other circuits have held, Title II's accommodation requirements go far beyond constitutional prohibitions against irrational disability discrimination, the only constitutional right at issue here. *Guttman*, at 1124; *Garcia*, 280 F.3d at 109-10. Therefore, even if Congress had identified a history of constitutional violations by states in professional licensing, the requirements of Title II would not be congruent and proportional to that history.

### 2. Kohn Fails to State Cognizable ADA Claims for Relief.

"A public entity may be liable for damages under Title II of the ADA or § 504 of the Rehabilitation Act 'if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons.' " *Updike v. Multnomah County*, 870 F.3d 939, 951 (9th Cir. 2017). Deliberate indifference "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001). "When the plaintiff has alerted the public entity to his need for accommodation," the entity must "undertake a fact-specific investigation to determine what constitutes a reasonable accommodation," gathering information from the disabled individual and qualified experts as needed. *Duvall*, at 1139. However, "a public entity is not required "to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." *Updike*, at 950; *see K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1097 (9th Cir. 2013).

In determining whether a particular accommodation is "reasonable" without unduly burdening or fundamentally altering a public program – even when damages are *not* at issue – each case must be considered in the totality of its circumstances. " 'Reasonableness is not a constant.' " *Zukle v. Regents of the University of California*, 166 F.3d 1041 (9th Cir. 1999) (quoting *Wynne v. Tufts University School of Medicine*, 976 F.2d 791, 795 (1st Cir. 1992)). "[T]he point is not whether [the public entity] is 'right' or 'wrong' in making program-related decisions. Such absolutes rarely apply." *Wynne*, at 795. Rather, the question is whether "after undertaking a diligent assessment of the available options, [the entity] felt itself obliged to make 'a professional[] . . . judgment' " that (as applicable here) further reasonable accommodations were not available. *Ibid.*

Here, Kohn has not alleged deliberate indifference toward his requests for accommodations. As Tables 1 and 2 amply illustrate, the State Bar undertook a fact-specific investigation of information provided by Kohn and advice received from qualified experts to understand Kohn's impairments and need for accommodations. The State Bar made professional judgments about whether, in the totality of the circumstances (which in 2020 included the massive disruptions and challenges of the global COVID-19 pandemic) Kohn's specific requested accommodations were reasonable in light of his impairments without unduly burdening or fundamentally altering the exam. The State Bar granted significant accommodations to Kohn on his first three exams, including 200% testing time, a semi-private room, and use of a laptop computer and ergonomic equipment at the testing site. By the time of the final exam, which Kohn successfully passed, the

State Bar had significantly expanded these accommodations to 250% testing time and six days of testing so the length of each testing day would not exceed what other test takers experienced. The State Bar also effectively granted two other requests by providing a private room due to the pandemic and permitting Kohn to leave his equipment in the locked room between testing days. A reasonable factfinder could not find the State Bar was deliberately indifferent toward Kohn by failing to grant his additional requests for in-person testing or for burdensome accommodations that would allow Kohn to test at home.

By way of contrast, the defendants in *Duvall* were deliberately indifferent because they simply assumed that the plaintiff's requested accommodation was unavailable without conducting any investigation. *Duvall*, 260 F.3d at 1140. Here, the State Bar conducted a fact-intensive investigation, granted substantial accommodations, and made reasonable judgment calls in denying others. *See also Gordon*, 2020 WL 5816580, at *3-*8 (State Bar acted reasonably in requiring certain bar applicants to test in person in October 2020).

Kohn and *amici* reserve most of their criticism for the State Bar's allegedly burdensome testing accommodation procedures. AOB 40-44; DREDF 15-20, 24. They urge the State Bar to follow nonbinding procedural guidance from the Department of Justice. While interesting policy proposals, these arguments do not demonstrate that the State Bar is liable in damages for deliberate indifference toward Kohn in the procedures it followed. As explained above, the State Bar's published rules provided advance notice to Kohn about how to apply for accommodations. *See* State Bar Rules 4.80–4.92. As illustrated in Tables 1 and 2,

Kohn was able to request numerous accommodations (and repeatedly augment those requests over time), obtain initial decisions in time to appeal, file appeals, and obtain decisions thereon before the exams took place (including more than a month before the October 2020 exam). Kohn complains these procedures required excessive documentation and were unduly time consuming, AOB 40-44, yet he also insists the process must be fact-specific and individualized, which takes time and requires production of personal records. He implies test takers should not have to apply so early, yet he also wants sufficient time for appeal and judicial review, which requires an early start to the process. AOB 48. As for alleged bureaucratic inefficiencies, such occurrences would not amount to deliberate indifference or intentional discrimination that would support a claim for damages. *See Updike*, 870 F.3d at 952.

## C.     The District Court Properly Dismissed Kohn's Rehabilitation Act Claim.

As set forth above in Part VI.A, the State Bar has sovereign immunity from claims for damages in federal court. The Rehabilitation Act prohibits disability discrimination by "any program or activity receiving Federal financial assistance," 29 U.S.C. § 794(a), which includes all operations of a state entity, "any part of which is extended Federal financial assistance." *Id.*, § 794(b). Kohn correctly notes that if arms of the state with sovereign immunity receive such Federal financial assistance, they have waived their immunity for Rehabilitation Act claims. AOB 33-37. However, Kohn has not established or adequately pled that the State Bar receives federal financial assistance, so this claim must be dismissed both on

sovereign immunity grounds and for lack of federal question jurisdiction. Kohn
also fails to plead a cognizable Rehabilitation Act claim, even assuming receipt of
federal financial assistance.

In short, Kohn pleads a bare legal conclusion that "Defendants are
'programs or activities' [covered by the Rehabilitation Act] since they are
government agencies which benefit from federal funding." 2-ER-287. The State
Bar submitted evidence that it does not receive federal financial assistance and
Kohn submitted no contrary evidence. The District Court, therefore, properly
dismissed Kohn's Rehabilitation Act claim.

### 1. The District Court Properly Dismissed the Rehabilitation Act Claims For Lack of Subject Matter Jurisdiction.

The State Bar moved to dismiss the Rehabilitation Act claims under both
Federal Rule of Procedure 12(b)(1)[25] for lack of subject matter jurisdiction and
rule 12(b)(6) for failure to state a claim upon which relief can be granted. 2-ER-
61, 2-ER-88-90. In support of its 12(b)(1) motion, the State Bar submitted a
declaration by its Chief Financial Officer establishing he would know about any
federal funding and, to his knowledge, the State Bar receives no such funding. 2-
ER-96. The declaration included the 2020 State Bar budget, which showed no
federal funds among the State Bar's funding sources. 2-ER-99-250. Kohn did not
submit contrary evidence or request jurisdictional discovery. Nor did he amend his

---

[25] All rule references are to the Federal Rules of Civil Procedure unless otherwise
indicated.

allegations or propose doing so.[26] The District Court dismissed Kohn's Rehabilitation Act claims after expressly considering the State Bar's evidence. 1-ER-19. Because that evidence could only properly be considered with respect to the 12(b)(1) motion, it can be inferred that the District Court dismissed the claims for lack for subject matter jurisdiction.

When deciding a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a district court "may review evidence beyond the complaint…. Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence … the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air for Everyone v. Meyer*, 273 F.3d 1035, 1039 (9th Cir. 2004) (citations and quotations omitted).

Kohn unpersuasively argues it was improper under *Bell v. Hood*, 327 U.S. 678 (1946), for the District Court to dismiss this claim under rule 12(b)(1). *Bell* cautions courts not to rule on the *merits* of a federal claim under the guise of determining *jurisdiction* under rule 12(b)(1). *Id.* at 681-82. *Bell* states that actions should not be dismissed for lack of federal question subject matter jurisdiction unless "the alleged claim under the Constitution or federal statutes clearly appears

---

[26] In opposition to the State Bar's motion, Kohn argued "because the State Bar is an instrumentality of the State of California and the State receives federal funds, the State Bar must also receive federal funds." SER-25. The District Court correctly rejected this argument as contrary to Rehabilitation Act's text, which requires the specific defendant entity to benefit from federal financial assistance. 1-ER-18-19; 29 U.S.C. § 794(b)(1)(B). Kohn does not challenge that conclusion on appeal.

to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id. at* 682-83. Kohn off-handedly asserts his claim does not meet the *Bell* standard because "the record provides no reasonable bases on which it may be inferred that Mr. Kohn pled his claims for improper purposes," AOB 35, but this ignores Kohn's failure to establish any factual basis *at all* for his conclusory allegation of federal funding. It appears this allegation was not based on *any facts*, but rather "solely for the purpose of obtaining jurisdiction," thus satisfying *Bell*.

Bell and cases following *Bell* involve "jurisdictional" issues that are closely intertwined with the *merits* of the federal claims at issue. In *Bell*, the basis for jurisdiction was the *very same* allegation constituting the claim: imprisonment, search, and seizure in violation of the Fourth and Fifth Amendments. *Bell*, 327 U.S. at 679-80. In *Sun Valley Gasoline v. Ernst Enterprises, Inc*., 711 F.2d 138, 139-41 (9th Cir.1983), the district court improperly dismissed a Petroleum Marketing Practices Act claim on the purported jurisdictional ground the parties were not in a "franchise relationship" under the Act, and in *Safe Air for Everyone*, 373 F.3d at 1038-40, the district court improperly dismissed a Resource Conservation and Recovery Act claim on the purported jurisdictional ground that certain agricultural residue was not "solid waste" under the statute.

Here, in contrast, the threshold jurisdictional question—whether the State Bar receives federal assistance—is distinct from the merits of Kohn's substantive statutory claim, i.e., whether the State Bar discriminated against Kohn on the basis of his disability. Where the jurisdictional question is distinct, it is not error to

decide it on a 12(b)(1) motion. *See Berardinelli v. Castle & Cooke Inc.*, 587 F.2d 37, 38 (9th Cir. 1978) (affirming Rule 12(b)(1) dismissal of a Sherman Act claim based on finding of insufficient nexus to interstate commerce).

Kohn also argues on appeal the District Court should have considered whether the State Bar *indirectly* receives federal financial assistance. AOB 36. Kohn supports this argument with a string cite unaccompanied by analysis. Four of the cited cases do not mention "indirect" receipt of funds[27], and the fifth simply summarizes the plain language of 29 U.S.C. section 794(b)(1)(B), explaining the Act applies when an "entity … indirectly receive[s] federal financial assistance through another entity that requests and receives the Federal financial assistance in the first instance and then extends that money to the non-requesting entity." *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 93 (2d Cir. 2021). Kohn did not submit evidence (or even allege any facts) suggesting the State Bar receives such indirect federal assistance. Kohn argues on appeal that he should have been granted jurisdictional discovery on the issue. AOB 36-37. This argument fails because he never requested such discovery. A court's decision whether to grant discovery is reviewed for abuse of discretion, and it is no abuse of discretion not to provide something a party doesn't ask for. *Cf. Campbell v. United States*, 550 F.App'x 496, 497 (9th Cir. 2013).

Moreover, the issue of whether the State Bar receives federal funding is not

---

[27] *See McMullen v. Wakulla Cnty. Bd. of Cnty Comm'r,* 650 F.App'x 703, 706 (11th Cir. 2016); *Arbogast v. Kansas,* 789 F.3d 1174, 1183 (10th Cir. 2015); *Maloney v. SSA*, 517 F.3d 70, 75 (2d Cir. 2008); *Thomlison v. City of Omaha*, 63 F.3d 786, 789 (8th Cir. 1995).

merely a matter of statutory coverage: it also determines whether the State Bar has waived its sovereign immunity from suit in federal court. *See T.W.*, 996 F.3d at 94. Such sovereign immunity issues are properly raised in rule (b)(1) motions. *See id.* at 90, 102. Therefore, the District Court did not err in dismissing the Rehabilitation Act claims under rule 12(b)(1).

### 2. Alternatively, Dismissal Was Proper Under Rule 12(b)(6) for Failure to Adequately Plead Receipt of Federal Financial Assistance.

Even if dismissal under Rule 12(b)(1) were improper, the Court should nonetheless affirm the dismissal because Kohn failed to adequately plead receipt of federal financial assistance. "This court may affirm the district court on any ground finding support in the record… even if the district court relied on the wrong grounds or wrong reasoning…." *Marino v. Vasquez*, 812 F.2d 499, 508 (9th Cir. 1987) (citations omitted).

To avoid dismissal for failure to state a claim under Rule 12(b)(6), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 (2007) (quotation and internal alterations omitted); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Kohn's sole allegation is that the State Bar "is a governmental agency which benefit[s] from federal funding"— a threadbare recital of an element of the cause of action, thus

mandating dismissal under *Ashcroft* and *Iqbal*.[28]  *See Castle v. Eurofresh, Inc.*, 731 F.3d 901, 909 (9th Cir. 2013) ("To state a claim, [plaintiff] must do more than simply show that [defendant] benefits from federal monies…."); *see also, e.g., Est. of Mejia v. Archambeault*, No. 20-CV-2454, 2021 WL 4428990, at *9 (S.D. Cal. Sept. 27, 2021) (allegation that defendant "is a program that received federal financial assistance as defined in 29 U.S.C. § 794(b)" insufficient).

### 3. The Rehabilitation Act Claim Also Fails Because Kohn Does Not Adequately Plead a Substantive Violation.

Even if federal financial assistance was established or adequately pleaded, the Rehabilitation Act would still fail because the elements Kohn must plead for a Rehabilitation Act claim are the same as under the ADA, 29 U.S.C. § 794, and Kohn has not adequately pleaded an ADA violation. *See* Part VI.B.2.

## D. Kohn's Unruh Act Claim Was Properly Dismissed Because Unruh Does Not Apply to the State Bar.

Dismissal of the Unruh Act claim was proper because, as discussed in Part VI.A, the State Bar has sovereign immunity from being sued for damages in federal court, and also because the Unruh Act applies only to "business establishments," which does not include the State Bar.

### 1. Unruh Applies Only to "Business Establishments," Even When Claim is Based on ADA Violation.

Kohn first argues the Unruh Act applies to the State Bar because

---

[28] Kohn inaccurately claims the District Court ruled this allegation sufficient under rule 12(b)(6). AOB 50. The District Court merely noted "plaintiff alleges defendants receive federal funding." 1-ER-18.

subsection (b) of the Act, which limits its application to "business establishments," does not apply to subsection (f), which provides that ADA violations constitute Unruh Act violations. AOB 51-53. This precise argument was recently rejected by the California Supreme Court, which unambiguously held "subdivision (f) means that 'any violation of the ADA *by a business establishment* is also a violation of the [Unruh Act].' " *Brennon B. v. Superior Court*, 13 Cal.5th 662, 296 Cal.Rptr.3d 360, 382 (2022). The California Supreme Court's interpretation of California law is binding on this Court. *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028–29 (9th Cir. 2000).

### 2. The State Bar is Not a "Business Establishment."

Kohn also argues the State Bar is a "business establishment" under Unruh, but this argument is fatally undermined by *Brennon,* which disapproved numerous federal cases holding public school districts qualify as "business establishments" under the Act. *Brennon,* 296 Cal.Rptr.3d at 374-76.[29] Brennon's analysis clearly signals that the State Bar is not a "business establishment" within the meaning of the Act when it administers the bar exam.

According to *Brennon,* "the focus of [Unruh] is the conduct of *private business establishments*." *Id.* at 367. Specifically, the Court held, "public schools, as governmental entities engaged in the provision of a free and public education,

---

[29] The conduct challenged by the plaintiff in *Brennon* involved the public school district's supervision of its employees and other operational conduct and decisions, not any legislative action by the school district. *Brennon*, 296 Cal.Rptr.3d at 364-65. Thus, *Brennon* disproves Kohn's position that government entities are not subject to Unruh only with respect to their legislative actions. AOB 56.

are not 'business establishments' within the meaning of the Act." *Id.* at 363.
"Educating students is a task that is fundamentally different from what could fairly
be described as regular business transactions; public school districts are
responsible for the provision of free and public education pursuant to a state
constitutional mandate . . . . This is a far cry from the typical operation of a
business establishment, the protection of economic value, the nature of a traditional
public accommodation, or the equivalent of a commercial enterprise." *Id.* at 373
(citations omitted). In sum, Unruh "was not enacted to reach this type of state
action." *Id.*, at 363.

This reasoning applies equally to the State Bar when it administers the bar
exam. By statute, public protection is the "highest priority" of the State Bar in
conducting its licensing activities. § 6001.1. Applicants take the exam not because
they choose the State Bar's offering in the marketplace, but because they are
required to take the State Bar-administered exam as a condition of admission to
practice law. § 6060(g). The State Bar cannot charge fees to maximize profit, but is
authorized to charge admissions fees only as necessary to defray admissions costs.
§ 6063. As with public schools in their operation of public education, Unruh "was
not enacted to reach this type of state action." *Brennon*, 296 Cal.Rptr.3d at 363.

In fact, now that *Brennon* has disapproved the federal cases applying Unruh
to public school districts, there is not a single citable case holding a government

entity subject to Unruh Act claims.[30]  While *Brennon* leaves open the *possibility* that a public entity could have sufficient businesslike attributes to qualify as a "business establishment," the State Bar is not such an entity in its administration of the bar exam.  The two cases Kohn discusses to suggest otherwise held private associations to be "business establishments" based on their functions aimed at enhancing economic value. *See* AOB 55-56; *Warfield v. Peninsula Golf & Country Club*, 10 Cal.4th 594, 621-22 (1995) (with respect to food/beverage and other fees charged to non-members, observing "the club operates as the functional equivalent of a commercial caterer or a commercial recreational resort—classic forms of 'business establishments'—and, indeed, presumably competes with business entities that offer comparable services and that clearly are subject to the strictures of section 51"); *O'Connor v. Village Green Owners Association*, 33 Cal.3d 790, 796; (1983) ("A theme running throughout the description of the association's powers and duties is that its overall function is to protect and enhance the project's economic value.")  Like public school districts and unlike the private entities at issue in *Warfield* and *O'Connor*, the State Bar's aim in its operation of the bar

---

[30] Kohn mischaracterizes two cases as holding that government entities are subject to Unruh claims. AOB 57. In the *Stoumen* and *Orloff* cases, the court did not hold the state boards in those cases are subject to Unruh claims. Rather, they held that *in regulating private entities*—a bar in *Stoumen* and a race track in *Orloff*–these state boards could not require *those private entities* to violate Unruh. *Stoumen v. Reilly*, 37 Cal.2d 713, 716 (1951); *Orloff v. Los Angeles Turf Club*, 36 Cal.2d 734, 737 (1951). These cases would apply to invalidate State Bar action if, for instance, it issued and enforced a rule requiring attorneys in private practice to discriminate against their clients in violation of Unruh. They do not suggest the State Bar is itself subject to liability under Unruh.

exam is not increasing economic value. It is not a "business establishment" under Unruh.

**E.**    **The District Court Did Not Abuse Its Discretion in Denying Leave to Amend.**

Denial of leave to amend is reviewed for abuse of discretion. *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012). All claims were dismissed on legal grounds that cannot be cured by amendment; indeed, Kohn did not argue to the District Court (or here) that there are any amendments that could cure the FAC's fatal defects. Denial of leave to amend following dismissal for failure to state a claim as matter of law is appropriate where, as here, allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency; *Alzazar v. Corp. of Catholic Archbishop*, 598 F.3d 668, 671 n. 3 (9th Cir. 2010).

## VII.   CONCLUSION

For all of the above reasons, the district court's October 27, 2020 order should be affirmed.

DATED: September 12, 2022                Respectfully submitted,

                                    ELLIN DAVTYAN
                                    ROBERT G. RETANA
                                    BRADY R. DEWAR
                                    RITA K. HIMES

                              By:  */s/ BRADY R. DEWAR*
                                     BRADY R. DEWAR

                              Attorneys for Defendants-Appellees

State Bar of California,
Committee of Bar Examiners

## STATEMENT OF RELATED CASES

Defendants-Appellees are not aware of any related cases pending before this court.

DATED: September 12, 2022        Respectfully submitted,

ELLIN DAVTYAN
ROBERT G. RETANA
BRADY R. DEWAR
RITA K. HIMES


By: */s/ BRADY R. DEWAR*
      BRADY R. DEWAR

Attorneys for Defendants-Appellees
State Bar of California,
Committee of Bar Examiners

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief is proportionally spaced, has a typeface of 14 points, and contains 13,971 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

DATED:  September 12, 2022

Respectfully submitted,

ELLIN DAVTYAN
ROBERT G. RETANA
BRADY R. DEWAR
RITA K. HIMES

By:  */s/ BRADY R. DEWAR*
        BRADY R. DEWAR

Attorneys for Defendants-Appellees
State Bar of California,
Committee of Bar Examiners

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed DEFENDANTS-APPELLEES STATE BAR OF CALIFORNIA AND CALIFORNIA COMMITTEE OF BAR EXAMINERS' ANSWER BRIEF with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 12, 2022.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Francisco, California this 12th day of September, 2022.

*/s/Joan Randolph*
Joan Randolph

# ADDENDUM

Except for the following, all applicable statutes, etc., are contained in the addendum of Appellant Benjamin Kohn:

## Statutes

42 U.S.C.

    § 12101..................................................................Add. 001
    § 12189..................................................................Add. 004
    § 12202..................................................................Add. 005

California Business & Professions Code

    § 6002....................................................................Add. 006
    § 6013....................................................................Add. 007
    § 6046....................................................................Add. 010
    § 6046.5.................................................................Add. 011
    § 6060....................................................................Add. 012
    § 6076....................................................................Add. 015
    § 6081-6084 ........................................................Add. 016

California Government Code

    § 1001....................................................................Add. 021

Or. Rev. Stat.

    § 9.025..................................................................Add. 023
    § 9.055..................................................................Add. 025
    § 9.200..................................................................Add. 026

## Rules

California Rules of Court

    rule 9.3.................................................................Add. 027
    rule 9.4.................................................................Add. 028
    rule 9.5.................................................................Add. 029
    rule 9.10(g)..........................................................Add. 030
    rule 9.13 ..............................................................Add. 033

Rules of the State Bar of California
    rules 4.80–4.92 ............................................................................Add. 036



**Legislative History**
Cal. Stats. 2002
    ch. 415 (S.B. 1897), § 4 ..........................................................Add. 042
Cal. Stats. 2017
    ch. 422 (S.B. 36) ....................................................................Add. 047

**Constitutional Provisions**
California Constitution
    art. VI, § 9 ...............................................................................Add. 062

United States Code Annotated
Title 42. The Public Health and Welfare
Chapter 126. Equal Opportunity for Individuals with Disabilities (Refs & Annos)

42 U.S.C.A. § 12101

§ 12101. Findings and purpose

Effective: January 1, 2009

Currentness

**(a) Findings**

The Congress finds that--

**(1)** physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;

**(2)** historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

**(3)** discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

**(4)** unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;

**(5)** individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

Add_001

(6) census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;

(7) the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and

(8) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

**(b) Purpose**

It is the purpose of this chapter--

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

### CREDIT(S)

(Pub.L. 101-336, § 2, July 26, 1990, 104 Stat. 328; Pub.L. 110-325, § 3, Sept. 25, 2008, 122 Stat. 3554.)

Notes of Decisions (239)

42 U.S.C.A. § 12101, 42 USCA § 12101
Current through P.L. 117-166. Some statute sections may be more current, see credits for details.

**§ 12101. Findings and purpose, 42 USCA § 12101**

End of Document

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Add_003

United States Code Annotated
    Title 42. The Public Health and Welfare
        Chapter 126. Equal Opportunity for Individuals with Disabilities (Refs & Annos)
            Subchapter III. Public Accommodations and Services Operated by Private Entities (Refs & Annos)

42 U.S.C.A. § 12189

§ 12189. Examinations and courses

Currentness

Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

**CREDIT(S)**

(Pub.L. 101-336, Title III, § 309, July 26, 1990, 104 Stat. 365.)

Notes of Decisions (32)

42 U.S.C.A. § 12189, 42 USCA § 12189
Current through P.L. 117-166. Some statute sections may be more current, see credits for details.

End of Document                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Red Flag - Severe Negative Treatment

Unconstitutional or PreemptedHeld Unconstitutional by Jamison v. Delaware, D.Del., Oct. 06, 2004

United States Code Annotated
   Title 42. The Public Health and Welfare
      Chapter 126. Equal Opportunity for Individuals with Disabilities (Refs & Annos)
         Subchapter IV. Miscellaneous Provisions

42 U.S.C.A. § 12202

§ 12202. State immunity

Currentness

A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in[1] Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

**CREDIT(S)**

(Pub.L. 101-336, Title V, § 502, July 26, 1990, 104 Stat. 370.)

Notes of Decisions (134)

Footnotes

1        So in original. Probably should be "in a".

42 U.S.C.A. § 12202, 42 USCA § 12202
Current through P.L. 117-166. Some statute sections may be more current, see credits for details.

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
    Business and Professions Code (Refs & Annos)
        Division 3. Professions and Vocations Generally (Refs & Annos)
            Chapter 4. Attorneys (Refs & Annos)
                Article 1. General Provisions (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6002

§ 6002. Licensees

Effective: January 1, 2019

Currentness

(a) The licensees of the State Bar are all persons admitted and licensed to practice law in this state except justices and judges of courts of record during their continuance in office.

(b) As used in this chapter or any other provision of law, "member of the State Bar" shall be deemed to refer to a licensee of the State Bar.

**Credits**

(Added by Stats.1939, c. 34, p. 348, § 1. Amended by Stats.2018, c. 659 (A.B.3249), § 6, eff. Jan. 1, 2019.)

Notes of Decisions (7)

West's Ann. Cal. Bus. & Prof. Code § 6002, CA BUS & PROF § 6002
Current with urgency legislation through Ch. 239 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case: 20-17316, 09/12/2022, ID: 12538499, DktEntry: 66, Page 78 of 134

§ 6013.1. Appointment of attorney members; number; term;..., CA BUS & PROP §...

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 2. Administration (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6013.1

## § 6013.1. Appointment of attorney members; number; term; reappointment; vacancies; factors; administrative responsibilities

Effective: January 1, 2018

Currentness

(a) The Supreme Court shall appoint five attorney members of the board pursuant to a process that the Supreme Court may prescribe. These attorney members shall serve for a term of four years and may be reappointed by the Supreme Court for one additional term only.

(b) An attorney member elected pursuant to Section 6013.2 may be appointed by the Supreme Court pursuant to this section to a term as an appointed attorney member.

(c) The Supreme Court shall fill any vacancy in the term of, and make any reappointment of, any appointed attorney member.

(d) When making appointments to the board, the Supreme Court should consider appointing attorneys that represent the following categories: legal services; small firm or solo practitioners; historically underrepresented groups, including consideration of race, ethnicity, gender, and sexual orientation; and legal academics. In making appointments to the board, the Supreme Court should also consider geographic distribution, years of practice, particularly attorneys who are within the first five years of practice or 36 years of age and under, and participation in voluntary local or state bar activities.

(e) The State Bar shall be responsible for carrying out the administrative responsibilities related to the appointment process described in subdivision (a).

**Credits**

(Added by Stats.2011, c. 417 (S.B.163), § 14. Amended by Stats.2017, c. 422 (S.B.36), § 8, eff. Jan. 1, 2018.)

West's Ann. Cal. Bus. & Prof. Code § 6013.1, CA BUS & PROF § 6013.1
Current with urgency legislation through Ch. 239 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case: 20-17316, 09/12/2022, ID: 12538499, DktEntry: 66, Page 79 of 134

§ 6013.3. Attorney members appointed by Senate..., CA BUS & PROF §...

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 2. Administration (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6013.3

§ 6013.3. Attorney members appointed by Senate Committee on
Rules and Speaker of the Assembly; term; vacancies; reappointment

Effective: January 1, 2018
Currentness

(a) One attorney member of the board shall be appointed by the Senate Committee on Rules and one attorney member of the board shall be appointed by the Speaker of the Assembly.

(b) An attorney member appointed pursuant to this section shall serve for a term of four years. Vacancies shall be filled for the remainder of the term. An appointed attorney member may be reappointed pursuant to this section.

**Credits**

(Added by Stats.2011, c. 417 (S.B.163), § 15.5. Amended by Stats.2017, c. 422 (S.B.36), § 10, eff. Jan. 1, 2018.)

West's Ann. Cal. Bus. & Prof. Code § 6013.3, CA BUS & PROF § 6013.3
Current with urgency legislation through Ch. 239 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

---

**End of Document**                                           © 2022 Thomson Reuters. No claim to original U.S. Government Works.

  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case: 20-17316, 09/12/2022, ID: 12538499, DktEntry: 66, Page 80 of 134

§ 6013.5. Public members; term of office; vacancies;..., CA BUS & PROF §...

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 2. Administration (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6013.5

§ 6013.5. Public members; term of office; vacancies; appointment

Effective: January 1, 2019

Currentness

(a) Effective January 1, 2018, a maximum of six members of the board shall be members of the public who have never been licensees of the State Bar or admitted to practice before any court in the United States.

(b) Each of these members shall serve for a term of four years. Vacancies shall be filled for the remainder of the term.

(c) Effective January 1, 2018, one public member shall be appointed by the Senate Committee on Rules and one public member shall be appointed by the Speaker of the Assembly.

(d) Four public members shall be appointed by the Governor, subject to the confirmation of the Senate.

(e) Each respective appointing authority shall fill any vacancy in and make any reappointment to each respective office.

**Credits**

(Added by Stats.1975, c. 874, p. 1952, § 4. Amended by Stats.1979, c. 1041, p. 3620, § 1; Stats.1984, c. 16, § 1; Stats.2017, c. 422 (S.B.36), § 11, eff. Jan. 1, 2018; Stats.2018, c. 659 (A.B.3249), § 16, eff. Jan. 1, 2019.)

West's Ann. Cal. Bus. & Prof. Code § 6013.5, CA BUS & PROF § 6013.5
Current with urgency legislation through Ch. 239 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 3. Investigations, Examining Committee, Subpoenas, and Other Proceedings (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6046

§ 6046. Examining committee; powers

Effective: January 1, 2019
Currentness

The board may establish an examining committee having the power:

(a) To examine all applicants for admission to practice law.

(b) To administer the requirements for admission to practice law.

(c) To certify to the Supreme Court for admission those applicants who fulfill the requirements provided in this chapter.

The examining committee shall be comprised of 19 members, 10 of whom shall be licensees of the State Bar or judges of courts of record in this state and nine of whom shall be public members who have never been licensees of the State Bar or admitted to practice before any court in the United States. At least one of the attorney members shall have been admitted to practice law in this state within three years from the date of the member's appointment to the examining committee.

**Credits**

(Added by Stats.1939, c. 34, p. 352, § 1. Amended by Stats.1986, c. 1392, § 1; Stats.1988, c. 1159, § 2.3; Stats.2018, c. 659 (A.B.3249), § 35, eff. Jan. 1, 2019.)

Notes of Decisions (11)

West's Ann. Cal. Bus. & Prof. Code § 6046, CA BUS & PROF § 6046
Current with urgency legislation through Ch. 239 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

---

**End of Document**
© 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

Case: 20-17316, 09/12/2022, ID: 12538499, DktEntry: 66, Page 82 of 134

§ 6046.5. Examining committee; appointments; term; rights..., CA BUS & PROP §...

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 3. Investigations, Examining Committee, Subpoenas, and Other Proceedings (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6046.5

## § 6046.5. Examining committee; appointments; term; rights and duties

Effective: January 1, 2019

Currentness

Three of the public members of the examining committee shall be appointed by the Senate Rules Committee, three of the public members shall be appointed by the Speaker of the Assembly, and three of the public members shall be appointed by the Governor. They shall serve for a term of four years, except that of the initial public members so appointed, two shall serve for two years and four shall serve for four years, as shall be determined by lot. The public members appointed pursuant to the amendment of this section during the 1987-88 Regular Session of the Legislature shall serve for four years. The public members shall have the same rights, powers, and privileges as any attorney member except that such a member shall not participate in the drafting of questions submitted to applicants on the California bar examination.

**Credits**

(Added by Stats.1975, c. 874, p. 1954, § 8. Amended by Stats.1986, c. 1392, § 2; Stats.1988, c. 1159, § 2.5; Stats.1996, c. 866 (S.B.1321), § 1; Stats.2018, c. 659 (A.B.3249), § 36, eff. Jan. 1, 2019.)

West's Ann. Cal. Bus. & Prof. Code § 6046.5, CA BUS & PROF § 6046.5
Current with urgency legislation through Ch. 239 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**
© 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 4. Admission to the Practice of Law (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6060

§ 6060. Qualifications; examination

Effective: January 1, 2021
Currentness

To be certified to the Supreme Court for admission and a license to practice law, a person who has not been admitted to practice law in a sister state, United States jurisdiction, possession, territory, or dependency or in a foreign country shall:

(a) Be at least 18 years of age.

(b)(1) Be of good moral character.

(2)(A) In reviewing whether an applicant is of good moral character under this subdivision, the staff of the State Bar or the members of the examining committee shall not review or consider the person's medical records relating to mental health, except [1]

if the applicant seeks to use the record for either of the following purposes:

(i) To demonstrate that the applicant is of good moral character.

(ii) As a mitigating factor to explain a specific act of misconduct.

(B) The staff of the State Bar and members of the examining committee shall not request or seek to review any medical records relating to mental health, including by obtaining the consent of the applicant to disclose such records, except as requested by an applicant and for a purpose specified in subparagraph (A).

(c) Before beginning the study of law, have done either of the following:

(1) Completed at least two years of college work, which college work shall be at least one-half of the collegiate work acceptable for a bachelor's degree granted on the basis of a four-year period of study by a college or university approved by the examining committee.

(2) Have attained in apparent intellectual ability the equivalent of at least two years of college work by taking examinations in subject matters and achieving the scores as are prescribed by the examining committee.

(d) Have registered with the examining committee as a law student within 90 days after beginning the study of law. The examining committee, upon a showing of good cause, may permit a later registration.

(e) Have done either of the following:

(1) Had conferred upon them a juris doctor (J.D.) degree or a bachelor of laws (LL.B.) degree by a law school accredited by the examining committee or approved by the American Bar Association.

(2) Studied law diligently and in good faith for at least four years in any of the following manners:

(A)(i) In a law school that is authorized or approved to confer professional degrees and requires classroom attendance of its students for a minimum of 270 hours a year.

(ii) A person who has received their legal education in a foreign state or country where the common law of England does not constitute the basis of jurisprudence shall demonstrate to the satisfaction of the examining committee that the person's education, experience, and qualifications qualify them to take the examination.

(B) In a law office in this state and under the personal supervision of a licensee of the State Bar of California who is, and for at least the last five years continuously has been, engaged in the active practice of law. It is the duty of the supervising attorney to render any periodic reports to the examining committee as the committee may require.

(C) In the chambers and under the personal supervision of a judge of a court of record of this state. It is the duty of the supervising judge to render any periodic reports to the examining committee as the committee may require.

(D) By instruction in law from a correspondence law school authorized or approved to confer professional degrees by this state, which requires 864 hours of preparation and study per year for four years.

(E) By any combination of the methods referred to in this paragraph.

(f) Have passed any examination in professional responsibility or legal ethics as the examining committee may prescribe.

(g) Have passed the general bar examination given by the examining committee.

(h)(1) Have passed a law students' examination administered by the examining committee after completion of their first year of law study. Those who pass the examination within its first three administrations, or within the first four administrations as provided in paragraph (3), upon becoming eligible to take the examination, shall receive credit for all law studies completed

to the time the examination is passed. Those who do not pass the examination within the number of administrations allowed by this subdivision, upon becoming eligible to take the examination, but who subsequently pass the examination, shall receive credit for one year of legal study only.

(2)(A) This requirement does not apply to a student who has satisfactorily completed their first year of law study at a law school accredited by the examining committee and who has completed at least two years of college work prior to matriculating in the accredited law school, nor shall this requirement apply to an applicant who has passed the bar examination of a sister state or of a country in which the common law of England constitutes the basis of jurisprudence.

(B) The law students' examination shall be administered twice a year at reasonable intervals.

(3) If any of the first three administrations of the law students' examination described in paragraph (1) includes the June 2020 administration, the applicant shall be permitted to pass the examination within its first four administrations upon becoming eligible to take the examination and shall receive credit for all law studies completed to the time the examination is passed.

**Credits**

(Added by Stats.1939, c. 34, p. 353, § 1. Amended by Stats.1953, c. 1090, p. 2578, § 1; Stats.1959, c. 1084, p. 3148, § 1; Stats.1970, c. 251, p. 513, § 1; Stats.1971, c. 1748, p. 3740, § 14; Stats.1972, c. 1285, p. 2559, § 4.3; Stats.1973, c. 1052, § 1; Stats.1974, c. 316, p. 631, § 1, eff. May 31, 1974; Stats.1987, c. 239, § 1.); Stats.1990, c. 707 (A.B.3946), § 1; Stats.1996, c. 168 (S.B.1950), § 1; Stats.1996, c. 866 (S.B.1321), § 3; Stats.2001, c. 46 (S.B.817), § 1; Stats.2002, c. 664 (A.B.3034), § 12; Stats.2018, c. 659 (A.B.3249), § 46, eff. Jan. 1, 2019; Stats.2019, c. 152 (S.B.544), § 1, eff. Jan. 1, 2020; Stats.2020, c. 360 (A.B.3362), § 3, eff. Jan. 1, 2021.)

Notes of Decisions (89)

**Footnotes**

1      Paragraph break so in enrolled bill.

West's Ann. Cal. Bus. & Prof. Code § 6060, CA BUS & PROF § 6060

Current with urgency legislation through Ch. 239 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                                                     © 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 5. Disciplinary Authority of the Board of Governors (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6076

§ 6076. Rules of professional conduct; authority to formulate and enforce

Effective: January 1, 2019

Currentness

With the approval of the Supreme Court, the Board of Trustees may formulate and enforce rules of professional conduct for all licensees of the State Bar.

**Credits**

(Added by Stats.1939, c. 34, p. 355, § 1. Amended by Stats.2011, c. 417 (S.B.163), § 37; Stats.2018, c. 659 (A.B.3249), § 55, eff. Jan. 1, 2019.)

Notes of Decisions (7)

West's Ann. Cal. Bus. & Prof. Code § 6076, CA BUS & PROF § 6076
Current with urgency legislation through Ch. 239 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
Business and Professions Code (Refs & Annos)
Division 3. Professions and Vocations Generally (Refs & Annos)
Chapter 4. Attorneys (Refs & Annos)
Article 5. Disciplinary Authority of the Board of Governors (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6081

§ 6081. Report to Supreme Court

Effective: January 1, 2019
Currentness

Upon the making of any decision recommending the disbarment or suspension from practice of any licensee of the State Bar, the State Bar Court shall immediately file a certified copy of the decision, together with the transcript and the findings, with the Clerk/Executive Officer of the Supreme Court. Upon enrolling a licensee as an inactive licensee pursuant to Section 6007 of this code, or upon terminating or refusing to terminate such enrollment pursuant to such section the State Bar Court shall immediately give appropriate written notice to the licensee and to the Clerk/Executive Officer of the Supreme Court.

**Credits**

(Added by Stats.1939, c. 34, p. 356, § 1. Amended by Stats.1957, c. 737, p. 1944, § 5; Stats.2017, c. 36 (A.B.452), § 2, eff. Jan. 1, 2018; Stats.2018, c. 92 (S.B.1289), § 4, eff. Jan. 1, 2019; Stats.2018, c. 659 (A.B.3249), § 62, eff. Jan. 1, 2019.)

Notes of Decisions (1)

West's Ann. Cal. Bus. & Prof. Code § 6081, CA BUS & PROF § 6081
Current with urgency legislation through Ch. 239 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**
© 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 5. Disciplinary Authority of the Board of Governors (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6082

§ 6082. Review by Supreme Court

Effective: January 1, 2019
Currentness

Any person complained against and any person whose reinstatement the State Bar Court may refuse to recommend may have the action of the State Bar Court reviewed by the California Supreme Court in accordance with the procedure prescribed by the California Supreme Court.

**Credits**

(Added by Stats.1939, c. 34, p. 356, § 1. Amended by Stats.1988, c. 1217, § 1; Stats.2018, c. 659 (A.B.3249), § 63, eff. Jan. 1, 2019.)

Notes of Decisions (56)

West's Ann. Cal. Bus. & Prof. Code § 6082, CA BUS & PROF § 6082
Current with urgency legislation through Ch. 239 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 5. Disciplinary Authority of the Board of Governors (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6083

§ 6083. Time for review; burden of proof

Effective: January 1, 2019
Currentness

(a) A petition to review or to reverse or modify any decision recommending the disbarment or suspension from practice of a licensee of the State Bar may be filed with the Supreme Court by the licensee within 60 days after the filing of the decision recommending such discipline.

(b) A petition to review or to reverse or modify any decision reproving a licensee of the State Bar, or any action enrolling the licensee as an inactive licensee pursuant to Section 6007 of this code, or refusing to restore the inactive licensee to an active license, pursuant to such section may be filed with the Supreme Court by the licensee within 60 days after service upon him or her of notice of such decision or action.

(c) Upon such review the burden is upon the petitioner to show wherein the decision or action is erroneous or unlawful.

**Credits**
(Added by Stats.1939, c. 34, p. 356, § 1. Amended by Stats.1957, c. 737, p. 1944, § 6; Stats.2018, c. 659 (A.B.3249), § 64, eff. Jan. 1, 2019.)

Notes of Decisions (30)

West's Ann. Cal. Bus. & Prof. Code § 6083, CA BUS & PROF § 6083
Current with urgency legislation through Ch. 239 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

---

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
   Business and Professions Code (Refs & Annos)
      Division 3. Professions and Vocations Generally (Refs & Annos)
         Chapter 4. Attorneys (Refs & Annos)
            Article 5. Disciplinary Authority of the Board of Governors (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6084

§ 6084. Order by Supreme Court

Effective: January 1, 2019

Currentness

(a) When no petition to review or to reverse or modify has been filed by either party within the time allowed therefor, or the petition has been denied, the decision or order of the State Bar Court shall be final and enforceable. In any case in which a petition to review or to reverse or modify is filed by either party within the time allowed therefor, the Supreme Court shall make such order as it may deem proper in the circumstances. Nothing in this subdivision abrogates the Supreme Court's authority, on its own motion, to review de novo the decision or order of the State Bar Court.

(b) Notice of such order shall be given to the licensee and to the State Bar.

(c) A petition for rehearing may be filed within the time generally provided for petitions for rehearing in civil cases.

(d) For willful failure to comply with a disciplinary order or an order of the Supreme Court, or any part thereof, a licensee may be held in contempt of court. The contempt action may be brought by the State Bar in any of the following courts:

(1) In the Los Angeles or San Francisco Superior Court.

(2) In the superior court of the county of the licensee's address as shown on current State Bar licensing records.

(3) In the superior court of the county where the act or acts occurred.

(4) In the superior court of the county in which the licensee's regular business address is located.

Changes of venue may be requested pursuant to the applicable provisions of Title 4 (commencing with Section 392) of Part 2 of the Code of Civil Procedure.

**Credits**
(Added by Stats.1939, c. 34, p. 356, § 1. Amended by Stats.1957, c. 737, p. 1944, § 7; Stats.1988, c. 1159, § 9; Stats.2018, c. 659 (A.B.3249), § 65, eff. Jan. 1, 2019.)

Notes of Decisions (1)

West's Ann. Cal. Bus. & Prof. Code § 6084, CA BUS & PROF § 6084

Current with urgency legislation through Ch. 239 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

---

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Government Code (Refs & Annos)
    Title 1. General
      Division 4. Public Officers and Employees (Refs & Annos)
        Chapter 1. General
          Article 1. Classification of Officers (Refs & Annos)

West's Ann.Cal.Gov.Code § 1001

§ 1001. Civil executive officers

Effective: January 1, 2019
Currentness

The civil executive officers are: a Governor; a private secretary and an executive secretary for the Governor; a Lieutenant Governor; a Secretary of State; a Deputy Secretary of State; a Keeper of Archives of State for the Secretary of State; a bookkeeper for the Secretary of State; three recording clerks for the Secretary of State; a Controller; a Deputy Controller; a bookkeeper for the Controller; five clerks for the Controller; a Treasurer; a Deputy Treasurer; a bookkeeper for the Treasurer; a clerk for six months in each year for the Treasurer; an Attorney General and all assistant and deputy attorneys general; a Superintendent of Public Instruction; one clerk for the Superintendent of Public Instruction; an Insurance Commissioner; a deputy for the Insurance Commissioner; four port wardens for the Port of San Francisco; a port warden for each port of entry except San Francisco; five State Harbor Commissioners for San Francisco Harbor; six pilots for each harbor where there is no board of pilot commissioners; three members of the Board of Pilot Commissioners for Humboldt Bay and Bar; 13 members of the State Board of Food and Agriculture; four members of the State Board of Equalization; a clerk of the State Board of Equalization; three members of the State Board of Education; a librarian for the Supreme Court Library and the Chief Assistant Clerk/Executive Officer and the Assistant Clerks/Executive Officers of the Supreme Court; five directors for the state hospital at Napa; the manager, assistant manager, chief counsel, and division chiefs for the State Compensation Insurance Fund; the head of each department and all chiefs of divisions, deputies, and secretaries of a department; such other officers as fill offices created by or under the authority of charters or laws for the government of counties and cities or of the health, school, election, road, or revenue laws; or persons serving on boards or commissions created under the laws of the state or established under the State Constitution.

**Credits**

(Stats.1943, c. 134, p. 954, § 1001. Amended by Stats.1947, c. 315, p. 871, § 1; Stats.1953, c. 1458, p. 3059, § 6; Stats.1957, c. 306, p. 953, § 1; Stats.1963, c. 1387, p. 2927, § 2; Stats.2014, c. 144 (A.B.1847), § 16, eff. Jan. 1, 2015; Stats.2016, c. 703 (A.B.2881), § 11, eff. Jan. 1, 2017; Stats.2017, c. 36 (A.B.452), § 7, eff. Jan. 1, 2018; Stats.2018, c. 92 (S.B.1289), § 85, eff. Jan. 1, 2019.)

**Editors' Notes**

**CODE COMMISSION NOTES**

**2010 Main Volume**

A state officer not named in Political Code § 343 was held to be an executive officer under Penal Code § 68 (People v. Kerns (1935) 48 Pac.2d 750, 9 Cal.App.2d 72).

West's Ann. Cal. Gov. Code § 1001, CA GOVT § 1001

Current with urgency legislation through Ch. 239 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Oregon Revised Statutes Annotated
Title 1. Courts of Record; Court Officers; Juries
Chapter 9. Attorneys; Law Libraries (Refs & Annos)
Oregon State Bar

O.R.S. § 9.025

9.025. Board of governors

Currentness

(1)(a) The Oregon State Bar shall be governed by a board of governors consisting of 19 members:

(A) Fourteen of the members shall be active members of the Oregon State Bar elected from the regions established under subsection (2)(a) of this section. A member elected under this subparagraph must maintain the member's principal office in the region for which the member seeks election throughout the member's candidacy and term of office.

(B) One member shall be an active member of the Oregon State Bar elected from the region established under subsection (2)(b) of this section. The member elected under this subparagraph must maintain the member's principal office in the region established under subsection (2)(b) of this section throughout the member's candidacy and term of office.

(C) Four of the members shall be appointed by the board of governors from among the public. The public members must be residents of this state throughout their terms of office and may not be active or inactive members of the Oregon State Bar.

(b) A person charged with official duties under the executive and legislative departments of state government, including but not limited to elected officers of state government, may not serve on the board of governors. Any other person in the executive or legislative department of state government who is otherwise qualified may serve on the board of governors.

(2) The board of governors shall establish regions for the purpose of electing board members as follows:

(a) The board shall divide the State of Oregon into regions for the purpose of electing board members described in subsection (1)(a)(A) of this section. Regions established under this paragraph must be based on the number of attorneys who have their principal offices in the region. To the extent that it is reasonably possible, regions established under this paragraph must be configured by the board so that the representation of board members to attorney population in each region is equal to the representation provided in other regions. At least once every 10 years the board shall review the number of attorneys in the regions and shall alter or add regions as the board determines is appropriate in seeking to attain the goal of equal representation.

(b) The board shall establish one region composed of all areas not located in the State of Oregon for the purpose of electing the board member described in subsection (1)(a)(B) of this section.

(3) Members of the board of governors may be elected only by the active members of the Oregon State Bar who maintain their principal offices in the regions established by the board under subsection (2) of this section. The regular term of a member of the board is four years. The board may establish special terms for positions that are shorter than four years for the purpose of staggering the terms of members of the board. The board must identify a position with a special term before accepting statements of candidacy for the region in which the position is located. The board shall establish rules for determining which of the elected members for a region is assigned to the position with a special term.

(4) A judge of a municipal, state or federal court or any other full-time judicial officer is not eligible for appointment or election to the board of governors.

(5) The term of any member of the board of governors terminates on the date of the death or resignation of the member or, if the member of the board is required to be a member of the Oregon State Bar, the term terminates on the date:

(a) Of the termination of active membership in the Oregon State Bar for any reason;

(b) When the member discontinues to maintain the principal office of law practice in the region in which it was maintained at the time of the appointment or election of the member; or

(c) When the member assumes office as a judge of a municipal, state or federal court, or fills a full-time judicial office.

(6) A member of the board of governors is not eligible during the member's term of office for service pro tempore as a judge of any municipal, state or federal court.

**Credits**

Laws 1973, c. 114, § 1; Laws 1981, c. 193, § 3; Laws 1993, c. 307, § 1; Laws 1995, c. 302, § 1; Laws 2009, c. 218, § 1, eff. Jan. 1, 2010, operative Jan. 1, 2011; Laws 2011, c. 303, § 1, eff. June 9, 2011; Laws 2015, c. 122, § 1, eff. May 20, 2015.

O. R. S. § 9.025, OR ST § 9.025

Current through laws enacted in the 2022 Regular Session of the 81st Legislative Assembly, which convened February 1, 2022 and adjourned sine die March 4, 2022, in effect through December 31, 2022, pending classification of undesignated material and text revision by the Oregon Reviser. See ORS 173.160. Some statute sections may be more current, see credits for details.

**End of Document**                                   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Oregon Revised Statutes Annotated
    Title 1. Courts of Record; Court Officers; Juries
        Chapter 9. Attorneys; Law Libraries (Refs & Annos)
            Oregon State Bar

O.R.S. § 9.055

## 9.055. Chief executive officer

Effective: May 17, 2017

Currentness

The board of governors shall appoint a chief executive officer of the Oregon State Bar. The chief executive officer is the chief administrative employee of the bar. The chief executive officer may, but need not, be a member of the bar. The chief executive officer serves at the board's discretion and shall perform such duties as the board prescribes.

**Credits**

Added by Laws 2017, c. 94, § 2, eff. May 17, 2017.

O. R. S. § 9.055, OR ST § 9.055
Current through laws enacted in the 2022 Regular Session of the 81st Legislative Assembly, which convened February 1, 2022 and adjourned sine die March 4, 2022, in effect through December 31, 2022, pending classification of undesignated material and text revision by the Oregon Reviser. See ORS 173.160. Some statute sections may be more current, see credits for details.

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Oregon Revised Statutes Annotated
    Title 1. Courts of Record; Court Officers; Juries
        Chapter 9. Attorneys; Law Libraries (Refs & Annos)
            Practice of Law; Membership in the Bar

O.R.S. § 9.200
Formerly cited as OR ST § 9.190

## 9.200. Failure to pay membership fees; reinstatement

Currentness

(1) Any member in default in payment of membership fees established under ORS 9.191 (1) or any member in default in payment of assessed contributions to a professional liability fund established under ORS 9.080 (2) shall be given written notice of delinquency and a reasonable time to cure the default. The chief executive officer of the Oregon State Bar shall send the notice of delinquency to the member at the member's electronic mail address on file with the bar on the date of the notice. The chief executive officer shall send the notice by mail to any member who is not required to have an electronic mail address on file with the bar under the rules of procedure. If a member fails to pay the fees or contributions within the time allowed to cure the default as stated in the notice, the member is automatically suspended. The chief executive officer shall provide the names of all members suspended under this section to the State Court Administrator and to each of the judges of the Court of Appeals, circuit and tax courts of the state.

(2) An active member delinquent in the payment of fees or contributions is not entitled to vote.

(3) A member delinquent in the payment of fees or contributions may be assessed a late payment penalty determined by the board of governors.

(4) A member suspended for delinquency under this section may be reinstated only on compliance with the rules of the Supreme Court and the rules of procedure and payment of all required fees or contributions.

**Credits**
Amended by Laws 1957, c. 271, § 1; Laws 1961, c. 499, § 2; subsection (2) formerly part of § 9.190; Laws 1979, c. 508, § 4a; Laws 2013, c. 3, § 2, eff. March 11, 2013; Laws 2015, c. 122, § 5, eff. May 20, 2015; Laws 2017, c. 94, § 11, eff. May 17, 2017.

O. R. S. § 9.200, OR ST § 9.200
Current through laws enacted in the 2022 Regular Session of the 81st Legislative Assembly, which convened February 1, 2022 and adjourned sine die March 4, 2022, in effect through December 31, 2022, pending classification of undesignated material and text revision by the Oregon Reviser. See ORS 173.160. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  California Rules of Court (Refs & Annos)
    Title 9. Rules on Law Practice, Attorneys, and Judges (Refs & Annos)
      Division 2. Attorney Admission and Disciplinary Proceedings and Review of State Bar Proceedings (Refs & Annos)
        Chapter 2. Attorney Admissions (Refs & Annos)

Cal.Rules of Court, Rule 9.3

# Rule 9.3. Inherent power of Supreme Court

Currentness

**(a) Inherent power over admissions**

The Supreme Court has the inherent power to admit persons to practice law in California. The State Bar serves as the administrative arm of the Supreme Court for admissions matters and in that capacity acts under the authority and at the direction of the Supreme Court. The Committee of Bar Examiners, acting under authority delegated to it by the State Bar Board of Trustees, is authorized to administer the requirements for admission to practice law, to examine all applicants for admission, and to certify to the Supreme Court for admission those applicants who fulfill the admission requirements.

**(b) Inherent jurisdiction over practice of law**

Nothing in this chapter may be construed as affecting the power of the Supreme Court to exercise its inherent jurisdiction over the practice of law in this state.

**Credits**
(Adopted, eff. Jan. 1, 2018. As amended, eff. Jan. 1, 2019.)

Cal. Rules of Court, Rule 9.3, CA ST PRACTICE Rule 9.3
Current with amendments received through September 1, 2022. Some rules may be more current, see credits for details.

**End of Document**                                  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case: 20-17316, 09/12/2022, ID: 12538499, DktEntry: 66, Page 99 of 134

Rule 9.4. Nomination and appointment of members to the..., CA ST PRACTICE...

West's Annotated California Codes
   California Rules of Court (Refs & Annos)
      Title 9. Rules on Law Practice, Attorneys, and Judges (Refs & Annos)
         Division 2. Attorney Admission and Disciplinary Proceedings and Review of State Bar Proceedings (Refs & Annos)
            Chapter 2. Attorney Admissions (Refs & Annos)

Cal.Rules of Court, Rule 9.4

Rule 9.4. Nomination and appointment of members to the Committee of Bar Examiners

Currentness

**(a) Appointments**

The Supreme Court is responsible for appointing ten examiners to the Committee of Bar Examiners, each for a four-year term. At least one of the ten examiners must be a judicial officer in this state, and the balance must be licensees of the State Bar. At least one of the attorney examiners shall have been admitted to practice law in California within three years from the date of his or her appointment. The court may reappoint an attorney or judicial officer examiner to serve no more than three additional full terms, and may fill any vacancy in the term of any appointed attorney or judicial officer examiner.

**(b) Nominations**

The Supreme Court must make its appointments from a list of candidates nominated by the Board of Trustees of the State Bar pursuant to a procedure approved by the court.

**Credits**

(Adopted, eff. Jan. 1, 2018. As amended, eff. Jan. 1, 2019.)

Cal. Rules of Court, Rule 9.4, CA ST PRACTICE Rule 9.4
Current with amendments received through September 1, 2022. Some rules may be more current, see credits for details.

**End of Document**
   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
California Rules of Court (Refs & Annos)
Title 9. Rules on Law Practice, Attorneys, and Judges (Refs & Annos)
Division 2. Attorney Admission and Disciplinary Proceedings and Review of State Bar Proceedings (Refs & Annos)
Chapter 2. Attorney Admissions (Refs & Annos)

Cal.Rules of Court, Rule 9.5

Rule 9.5. Supreme Court approval of admissions rules

Currentness

All State Bar rules adopted by the State Bar Committee of Bar Examiners pertaining to the admission to practice law must be approved by the Board of Trustees and then submitted to the Supreme Court for its review and approval.

**Credits**

(Adopted, eff. Jan. 1, 2018. As amended, eff. Jan. 1, 2019.)

Cal. Rules of Court, Rule 9.5, CA ST PRACTICE Rule 9.5

Current with amendments received through September 1, 2022. Some rules may be more current, see credits for details.

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  California Rules of Court (Refs & Annos)
    Title 9. Rules on Law Practice, Attorneys, and Judges (Refs & Annos)
      Division 2. Attorney Admission and Disciplinary Proceedings and Review of State Bar Proceedings (Refs & Annos)
        Chapter 3. Attorney Disciplinary Proceedings (Refs & Annos)

Cal.Rules of Court, Rule 9.10

Formerly cited as CA ST MISC Rule 951

## Rule 9.10. Authority of the State Bar Court

Currentness

**(a) Conviction proceedings**

The State Bar Court exercises statutory powers under Business and Professions Code sections 6101 and 6102 with respect to the discipline of attorneys convicted of crimes. (See Bus. & Prof. Code § 6087.) For purposes of this rule, a judgment of conviction is deemed final when the availability of appeal has been exhausted and the time for filing a petition for certiorari in the United States Supreme Court on direct review of the judgment of conviction has elapsed and no petition has been filed, or if filed the petition has been denied or the judgment of conviction has been affirmed. The State Bar Court must impose or recommend discipline in conviction matters as in other disciplinary proceedings. The power conferred upon the State Bar Court by this rule includes the power to place attorneys on interim suspension under subdivisions (a) and (b) of section 6102, and the power to vacate, delay the effective date of, and temporarily stay the effect of such orders.

**(b) Professional responsibility examination**

The State Bar Court may:

(1) Extend the time within which a licensee of the State Bar must take and pass a professional responsibility examination;

(2) Suspend a licensee for failing to take and pass such examination; and

(3) Vacate licensee's suspension for failing to take and pass such examination.

**(c) Probation**

The State Bar Court for good cause, may:

(1) Approve stipulations between the licensee and the Chief Trial Counsel for modification of the terms of a licensee's probation; and

(2) Make corrections and minor modifications to the terms of a licensee's disciplinary probation.

The order of the State Bar Court must be filed promptly with the Clerk of the Supreme Court.

**(d) Rule 9.20 compliance**

The State Bar Court for good cause, may extend the time within which a licensee must comply with the provisions of rule 9.20 of the California Rules of Court.

**(e) Commencement of suspension**

The State Bar Court for good cause, may delay temporarily the effective date of, or temporarily stay the effect of, an order for a licensee's disciplinary suspension from practice.

**(f) Readmission and reinstatement**

Applications for readmission or reinstatement must, in the first instance, be filed and heard by the State Bar Court, except that no applicant who has been disbarred by the Supreme Court on two previous occasions may apply for readmission or reinstatement. Applicants for readmission or reinstatement must:

(1) Pass a professional responsibility examination;

(2) Establish their rehabilitation and present moral qualifications for readmission; and

(3) Establish present ability and learning in the general law. Applicants who resigned without charges pending more than five years before filing an application for reinstatement or readmission must establish present ability and learning in the general law by providing proof, at the time of filing the application, that they have taken and passed the Attorneys' Examination administered by the Committee of Bar Examiners pursuant to the authority delegated to it by the Board of Trustees within five years prior to the filing of the application for readmission or reinstatement. Applicants who resigned with charges pending or who were disbarred must establish present ability and learning in the general law by providing proof, at the time of filing the application for readmission or reinstatement, that they have taken and passed the Attorneys' Examination by State Bar within three years prior to the filing of the application for readmission or reinstatement.

**(g) Inherent power of Supreme Court**

Nothing in these rules may be construed as affecting the power of the Supreme Court to exercise its inherent jurisdiction over the lawyer discipline and admissions system.

**Credits**
(Formerly Rule 951, adopted eff. Dec. 1, 1990. As amended, eff. April 1, 1996. Renumbered Rule 9.10 and amended, eff. Jan. 1, 2007. As amended, eff. Jan. 1, 2010; Jan. 1, 2019.)

Notes of Decisions (23)

Cal. Rules of Court, Rule 9.10, CA ST PRACTICE Rule 9.10
Current with amendments received through September 1, 2022. Some rules may be more current, see credits for details.

**End of Document**                          © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  California Rules of Court (Refs & Annos)
    Title 9. Rules on Law Practice, Attorneys, and Judges (Refs & Annos)
      Division 2. Attorney Admission and Disciplinary Proceedings and Review of State Bar Proceedings (Refs & Annos)
        Chapter 3. Attorney Disciplinary Proceedings (Refs & Annos)

Cal.Rules of Court, Rule 9.13

Formerly cited as CA ST MISC Rule 952

## Rule 9.13. Review of State Bar Court decisions

Currentness

**(a) Review of recommendation of disbarment or suspension**

A petition to the Supreme Court by a licensee to review a decision of the State Bar Court recommending his or her disbarment or suspension from practice must be served and filed within 60 days after a certified copy of the decision complained of is filed with the Clerk of the Supreme Court. The State Bar may serve and file an answer to the petition within 15 days after filing of the petition. Within 5 days after filing of the answer, the petitioner may serve and file a reply. If review is ordered by the Supreme Court, the State Bar must serve and file a supplemental brief within 45 days after the order is filed. Within 15 days after filing of the supplemental brief, the petitioner may serve and file a reply brief.

**(b) Review of recommendation to set aside stay of suspension or modify probation**

A petition to the Supreme Court by a licensee to review a recommendation of the State Bar Court that a stay of an order of suspension be set aside or that the duration or conditions of probation be modified on account of a violation of probation must be served and filed within 15 days after a certified copy of the recommendation complained of is filed with the Clerk of the Supreme Court. Within 15 days after filing of the petition, the State Bar may serve and file an answer. Within 5 days after filing of the answer, the petitioner may serve and file a reply.

**(c) Review of interim decisions**

A petition to the Supreme Court by a licensee to review a decision of the State Bar Court regarding interim suspension, the exercise of powers delegated by rule 9.10(b)-(e), or another interlocutory matter must be served and filed within 15 days after written notice of the adverse decision of the State Bar Court is mailed by the State Bar to the petitioner and to his or her counsel of record, if any, at their respective addresses under section 6002.1. Within 15 days after filing of the petition, the State Bar may serve and file an answer. Within 5 days after filing of the answer, the petitioner may serve and file a reply.

**(d) Review of other decisions**

A petition to the Supreme Court to review any other decision of the State Bar Court or action of the Board of Trustees of the State Bar, or of any board or committee appointed by it and authorized to make a determination under the provisions of the State Bar Act, or of the chief executive officer of the State Bar or the designee of the chief executive officer authorized to make a determination under article 10 of the State Bar Act or these rules of court, must be served and filed within 60 days

after written notice of the action complained of is mailed to the petitioner and to his or her counsel of record, if any, at their respective addresses under Business and Professions Code section 6002.1. Within 15 days after filing of the petition, the State Bar may serve and file an answer and brief. Within 5 days after filing of the answer and brief, the petitioner may serve and file a reply. If review is ordered by the Supreme Court, the State Bar, within 45 days after filing of the order, may serve and file a supplemental brief. Within 15 days after filing of the supplemental brief, the petitioner may serve and file a reply brief.

**(e) Contents of petition**

(1) A petition to the Supreme Court filed under (a) or (b) of this rule must be verified, must specify the grounds relied upon, must show that review within the State Bar Court has been exhausted, must address why review is appropriate under one or more of the grounds specified in rule 9.16, and must have attached a copy of the State Bar Court decision from which relief is sought.

(2) When review is sought under (c) or (d) of this rule, the petition must also be accompanied by a record adequate to permit review of the ruling, including:

(A) Legible copies of all documents and exhibits submitted to the State Bar Court or the State Bar supporting and opposing petitioner's position;

(B) Legible copies of all other documents submitted to the State Bar Court or the State Bar that are necessary for a complete understanding of the case and the ruling; and

(C) A transcript of the proceedings in the State Bar Court leading to the decision or, if a transcript is unavailable, a declaration by counsel explaining why a transcript is unavailable and fairly summarizing the proceedings, including arguments by counsel and the basis of the State Bar Court's decision, if stated; or a declaration by counsel stating that the transcript has been ordered, the date it was ordered, and the date it is expected to be filed, which must be a date before any action is requested from the Supreme Court other than issuance of a stay supported by other parts of the record.

(3) A petitioner who requests an immediate stay must explain in the petition the reasons for the urgency and set forth all relevant time constraints.

(4) If a petitioner does not submit the required record, the court may summarily deny the stay request, the petition, or both.

**(f) Service**

All petitions, briefs, reply briefs, and other pleadings filed by a petitioner under this rule must be accompanied by proof of service of three copies on the General Counsel of the State Bar at the San Francisco office of the State Bar, and of one copy on the Clerk of the State Bar Court at the Los Angeles office of the State Bar Court. The State Bar must serve the licensee at his or her address under Business and Professions Code section 6002.1, and his or her counsel of record, if any.

**Credits**

(Formerly Rule 59, adopted by Supreme Court, eff. April 20, 1943; adopted by Judicial Council, eff. July 1, 1943. As amended eff. July 1, 1968. Renumbered Rule 952 and amended eff. Oct. 1, 1973. As amended, eff. Jan. 1, 1976; May 1, 1986; April

2, 1987; Dec. 1, 1990; Feb. 1, 1991; March 15, 1991. Renumbered Rule 9.13 and amended, eff. Jan. 1, 2007. As amended, eff. Jan. 1, 2019.)

Cal. Rules of Court, Rule 9.13, CA ST PRACTICE Rule 9.13
Current with amendments received through September 1, 2022. Some rules may be more current, see credits for details.

---

**End of Document**
© 2022 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW** © 2022 Thomson Reuters. No claim to original U.S. Government Works. Add_035    3

**Chapter 7.  Testing Accommodations**

**Rule 4.80  Eligibility for testing accommodations**

Applicants with disabilities are granted reasonable testing accommodations provided that they are capable of demonstrating that they are otherwise eligible to take an examination and, in accordance with these rules, they

(A)     have submitted an approved Application for Registration;

(B)     submit a petition for testing accommodations on the State Bar's forms with the required documentation;

(C)     establish to the satisfaction of the State Bar the existence of a disability that prevents them from taking an examination under standard testing conditions; that testing accommodations are necessary to address the functional limitations related to their disabilities; and the testing accommodations sought are reasonable and appropriate for their disabilities; and,

(D)     separately apply for the examination for which testing accommodations are requested.

*Rule 4.80 adopted effective September 1, 2008; previously amended effective November 14, 2009; amended effective September 1, 2019.*

**Rule 4.81  Testing accommodations in general**

(A)     Petitions for testing accommodations are processed on a case-by-case basis.

(B)     The State Bar makes its best effort to process petitions for testing accommodations expeditiously but does not process petitions that are incomplete.

(C)     Time limits in testing accommodations rules are solely to expedite the processing of petitions and are not jurisdictional. The State Bar may extend them for good cause.

(D)     An examination application fee is not refunded if a request for testing accommodations is denied.

*Rule 4.81 adopted effective September 1, 2008; amended effective September 1, 2019.*

**Rule 4.82  Definitions**

These definitions apply to the rules on and petitions for testing accommodations.

(A)     A "disability" is a physical or mental impairment that limits one or more of an applicant's major life activities, and limits an applicant's ability to demonstrate under standard testing conditions that the applicant possesses the knowledge, skills, and abilities tested on an examination.

(B)     A "physical impairment" is a physiological disorder or condition or an anatomical loss affecting one or more of the body's systems.

(C)     A "mental impairment" is a mental or psychological disorder such as organic brain syndrome, emotional or mental illness, attention deficit/hyperactivity disorder, or a specific learning disability.

(D)     A "reasonable testing accommodation" is an adjustment to or modification of standard testing conditions that addresses the functional limitations related to an applicant's disability by modifications to rules, policies, or practices; removal of architectural, communication, or transportation barriers; or provision of auxiliary aids and services, provided that they do not

   (1)     compromise the security or validity of an examination or the integrity or of the examination process;

   (2)     impose an undue burden on the State Bar; or

   (3)     fundamentally alter the nature of an examination or the Committee's ability to assess through the examination whether the applicant

      (a)     possesses the knowledge, skills, and abilities tested on an examination; and

      (b)     meets the essential eligibility requirements for admission.

*Rule 4.82 adopted effective September 1, 2008; amended effective September 1, 2019.*

## Rule 4.83  Guidelines for testing accommodations

(A)     The State Bar publishes guidelines for documenting the need for testing accommodations based on learning disabilities and attention deficit/hyperactivity disorder, including testing required to establish the existence of the disability and the reasonableness of the accommodations requested.

(B)     The State Bar may publish guidelines for other disabilities accommodated on past examinations.

*Rule 4.83 adopted effective September 1, 2008; amended effective September 1, 2019.*

**Rule 4.84  When to file a petition for testing accommodations**

(A)    A Petition For Testing Accommodations is not an application for a bar examination. Filing one does not constitute filing the other or initiate its processing. An applicant must separately apply for an examination.

(B)    An applicant is encouraged to file a Petition For Testing Accommodations as far in advance as practicable. To allow sufficient processing time, general applicants are encouraged to submit their petitions at least by the beginning of their last year of law study and attorney applicants no later than six months prior to the examination they wish to take. If an applicant waits until the final examination application deadline for a particular examination to petition for testing accommodations, it is possible that processing will not be completed or the applicant will not be able to complete all required or available procedures prior to administration of the examination.

(C)    A Petition For Testing Accommodations must be complete and receipt must be no later than

(1)    January 1 for the February California Bar Examination;

(2)    June 1 for the July California Bar Examination;

(3)    May 15 for the June First-Year Law Students' Examination; or

(4)    September 15 for the October First-Year Law Students' Examination.

If a deadline falls on a non-business day, the deadline will be the next business day. Deadlines are not extended or waived for any reason except as permitted in Rule 4.87.

(D)    Depending on the nature of a disability and the date on which a petition is filed, the State Bar may determine that the changing nature of a disability requires that the applicant file a new petition nearer the examination date or that a decision regarding the petition be deferred.

*Rule 4.84 adopted effective September 1, 2008; amended effective November 14, 2009; previously amended effective July 22, 2011; amended effective September 1, 2019.*

**Rule 4.85  Initial Petition For Testing Accommodations**

(A)    An applicant with a qualified disability seeking testing accommodations must file a Petition for Testing Accommodations on the State Bar's form.

(B)     In addition to the Petition for Testing Accommodations, a qualified applicant seeking testing accommodations must also provide with the petition the specific specialist verification forms the State Bar determines are appropriate to verify applicants' disabilities.

(C)     If a law school has provided testing accommodations, a qualified applicant must submit the petition with the designated State Bar form, completed by a law school official or legal education supervisor.

(D)     If another state has provided accommodations for its bar examination, a qualified applicant must submit the petition with the designated State Bar form, completed by an official responsible for testing accommodations.

(E)     If another testing agency has provided accommodations for its examination, a qualified applicant may be required to submit the petition with a copy of the accommodations notice.

(F)     A Petition for Testing Accommodations is considered complete only upon receipt of all required forms that have been completed according to instructions. A petition that is incomplete by a final examination application deadline is not processed for that examination.

*Rule 4.85 adopted effective September 1, 2008; previously amended effective July 22, 2011; amended effective September 1, 2019.*

**Rule 4.86  Subsequent petitions for testing accommodations**

(A)     Testing accommodations are not automatically extended upon failure of an examination but must be requested for a subsequent examination any time before the examination application deadline.

(B)     An applicant who is permanently disabled may petition for the same accommodations rather than submit an entirely new petition. A subsequent petition must be made in accordance with State Bar's requirements.

(C)     An applicant who has a temporary disability or who seeks different accommodations than those previously granted must file a new Petition for Testing Accommodations by the application final filing deadline if filed in connection with a particular administration of an examination.

*Rule 4.86 adopted effective September 1, 2008; previously amended effective November 14, 2009; amended effective September 1, 2019.*

**Rule 4.87  Emergency petitions for testing accommodations**

An applicant who becomes disabled after a final examination application filing deadline may file a Petition for Testing Accommodations, which must include the forms required by Rule 4.85, with a request that it be considered as an emergency petition. Documentation explaining the nature, date, and circumstances of the emergency must be filed with the petition. Receipt of the petition and supporting documentation must be at least ten days before the first day of the examination. This rule does not apply to disabilities that existed before the final deadline for an examination application, whether or not they were diagnosed or a visit to a treating professional could be arranged.

*Rule 4.87 adopted effective September 1, 2008.*

**Rule 4.88  State Bar response to Petition For Testing Accommodations**

(A)     An applicant who has filed a Petition For Testing Accommodations in accordance with these rules is notified in writing within thirty days of receipt when additional information is required, and within sixty days when the petition is granted, granted with modifications, denied, or action is pending.

(B)     If a complete petition is filed at least six months before the examination for which testing accommodations are sought, the applicant may expect a final determination at least a month before the examination.

(C)     With the consent of the petitioner, the State Bar or a consultant may confer with a specialist who has treated the petitioner.

(D)     A notice of denial of a Petition For Testing Accommodations or a modified grant states the reasons for the denial or modifications, and advises the petitioner of any right to appeal. The notice may include an excerpt of a consultant's evaluation.

*Rule 4.88 adopted effective September 1, 2008; previously amended effective July 22, 2011; amended effective September 1, 2019.*

**Rule 4.89  Applicant response to proposed modification or request for information**

An applicant has thirty days to respond to a request for additional information unless an examination schedule requires a shorter time. If the applicant fails to make a timely response, the request is processed on the basis of information submitted.

*Rule 4.89 adopted effective September 1, 2008.*

**Rule 4.90  Committee review of denied or modified petition**

(A)     An applicant notified that a Petition For Testing Accommodations has been denied or granted with modifications may request a review by  the Committee. The request must

be submitted within ten days of the date of the denial or modified grant or some other reasonable period established by the Committee.

(B)      Requests for review filed in connection with a particular administration of an examination must be filed no later than the first business day of the month in which the examination is to be administered. Requests received after that date will be considered in connection with future administration of the examination.

(C)      After reviewing the request for review and supporting documentation, the Director of Admissions may withdraw the prior decision and grant the accommodations requested.

(D)      If the Director of Admissions does not grant the request, the Committee must consider it as soon as practicable. The review must be based on the original petition and supporting documentation provided by the applicant and the Director of Admissions. Oral argument is not permitted. The review must be conducted in closed session either at a regular meeting or one specially convened. The Committee delegates decision making authority to the Examinations Subcommittee for all time-sensitive testing accommodation reviews.

*Rule 4.90 adopted effective September 1, 2008; amended effective September 1, 2019.*

## Rule 4.91  Confidentiality of Petitions for Testing Accommodations

Petitions for Testing Accommodations, documentation submitted in support and evaluations of requests are confidential.

*Rule 4.91 adopted effective September 1, 2008.*

## Rule 4.92  False or misleading information in Petition For Testing Accommodations

False or misleading information in a Petition For Testing Accommodations is considered in determining an applicant's moral character and may result in a negative determination of moral character.

*Rule 4.92 adopted effective September 1, 2008.*



California
LEGISLATIVE INFORMATION

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

**SB-1897 State Bar of California.** (2001-2002)

SHARE THIS:  

### Senate Bill No. 1897

### CHAPTER 415

An act to amend Sections 6016, 6019, 6021, 6031.5, 6079.5, and 6145 of, to amend, repeal, and add Section 6065 to, and to add Section 6032 to, the Business and Professions Code, relating to attorneys, and declaring the urgency thereof, to take effect immediately.

[ Filed with Secretary of State  September 09, 2002. Approved by Governor September 06, 2002. ]

### LEGISLATIVE COUNSEL'S DIGEST

SB 1897, Kuehl. State Bar of California.

The State Bar Act provides for licensing of attorneys by the State Bar of California, sets forth the disciplinary authority of the Board of Governors of the State Bar, and provides for a State Bar Court to hear and decide disciplinary proceedings. Existing law requires the Board of Governors to appoint a chief trial counsel who reports to and serves under the direction of the Discipline Committee of the Board of Governors.

This bill would instead refer to the Regulation, Admission, and Discipline Oversight Committee or its successor committee on attorney discipline.

Existing law requires that the president, vice presidents, and treasurer be elected by the board for the ensuing year within the period of 180 days next preceding the annual meeting of the State Bar.

This bill would change the required period to the period of 270 days next preceding the annual meeting.

Existing law requires that an election of the members of the board of governors of the State Bar be by ballot, except where only one member seeks an election to an office, in which event the member is deemed elected. Existing law requires the ballots to be mailed to those entitled to vote within a specified time period and to be returned by mail to the principal office of the State Bar.

This bill would instead require that the ballots be distributed within the specified time period, and that they be returned to a site or sites designated by the State Bar.

Existing law provides that the Conference of Delegates of the State Bar and State Bar sections shall not be funded with mandatory fees and authorizes the State Bar to provide the Conference of Delegates and State Bar sections with administrative and support services, subject to full reimbursement, as specified. Existing law requires the Board of Governors of the State Bar to contract with a nationally recognized independent public accounting firm to conduct an audit of the State Bar's financial statement for each fiscal year. The financial audit is required to examine the receipts and expenditures of the State Bar to ensure that the State Bar has been paid

or reimbursed for the full cost of any services provided and that no mandatory dues are being used to fund the activities of the Conference of Delegates or the State Bar sections.

This bill would provide that if a nonprofit successor entity to the Conference of Delegates is incorporated for certain purposes, the State Bar is authorized to collect, in conjunction with the collection of annual membership dues, voluntary fees or donations on behalf of the entity, and to convey previously unexpended voluntary fees or donations to the Conference of Delegates to the successor entity. The bill would require the entity to pay for the cost of collection, and would authorize the entity and the State Bar to contract for other services. The bill would require that, with respect to a successor entity, the State Bar audit include examination of the receipts and expenditures of the State Bar to ensure that the funds collected on behalf of the successor entity are conveyed to that entity, that the State Bar has been paid or reimbursed in full for the cost of any services, and that no mandatory dues are being used to fund the entity.

Existing law gives an unsuccessful applicant for admission to the State Bar of California the right to inspect the applicant's examination documents within 4 months after the results of the examination have been declared.

This bill, until January 1, 2004, would provide that an unsuccessful applicant may inspect within 4 months after the results of the examination have been declared, those examination papers that are in the actual, physical possession of the examining committee.

This bill would declare that it is to take effect immediately as an urgency statute.

## THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** Section 6016 of the Business and Professions Code is amended to read:

**6016.** The term of office of each attorney member of the board shall commence at the conclusion of the annual meeting next succeeding his or her election, and he or she shall hold office until his or her successor is elected and qualified.

Vacancies in the board of governors shall be filled by the board by special election or by appointment for the unexpired term.

The board of governors may provide by rule for an interim board to act in the place and stead of the board when because of vacancies during terms of office there is less than a quorum of the board.

**SEC. 2.** Section 6019 of the Business and Professions Code is amended to read:

**6019.** Each place upon the board for which a member is to be elected shall for the purposes of the election be deemed a separate office.

If only one member seeks election to an office, the member is deemed elected. If two or more members seek election to the same office, the election shall be by ballot. The ballots shall be distributed to those entitled to vote at least twenty days prior to the date of canvassing the ballots and shall be returned to a site or sites designated by the State Bar, where they shall be canvassed at least five days prior to the ensuing annual meeting. At the annual meeting, the count shall be certified and the result officially declared.

In all other respects the elections shall be as the board may by rule direct.

**SEC. 3.** Section 6021 of the Business and Professions Code is amended to read:

**6021.** Within the period of 270 days next preceding the annual meeting, the board, at a meeting called for that purpose, shall elect the president, vice presidents and treasurer for the ensuing year. The president shall be elected from among those members of the board whose terms on the board expire that year, or if no such member is able and willing to serve, then from among the board members who have completed at least one or more years of their terms.

The other officers shall be elected from among the board members who have at least one or more years to complete their respective terms.

The newly elected president, vice presidents, and treasurer shall assume the duties of their respective offices at the conclusion of the annual meeting following their election.

**SEC. 4.** Section 6031.5 of the Business and Professions Code is amended to read:

**6031.5.** (a) The Conference of Delegates, as established under and pursuant to Article 6 of the Rules and Regulations of the State Bar, shall not be funded after January 1, 2000, with mandatory fees collected pursuant to subdivision (a) of Section 6140.

The State Bar may provide the Conference of Delegates with administrative and support services, provided the State Bar shall be reimbursed for the full cost of those services out of funds collected pursuant to subdivision (c), funds raised by or through the activities of the Conference of Delegates, or other funds collected from voluntary sources. The financial audit specified in Section 6145 shall confirm that the amount assessed by the State Bar for providing the services reimburses the costs of providing them, and shall verify that mandatory dues are not used to fund the Conference of Delegates.

(b) State Bar sections, as established under and pursuant to Article 13 of the Rules and Regulations of the State Bar, and their activities shall not be funded after January 1, 2000, with mandatory fees collected pursuant to subdivision (a) of Section 6140.

The State Bar may provide an individual section, or two or more sections collectively, with administrative and support services, provided the State Bar shall be reimbursed for the full cost of those services out of funds collected pursuant to subdivision (c), funds raised by or through the activities of the sections, or other funds collected from voluntary sources. The financial audit specified in Section 6145 shall confirm that the amount assessed by the State Bar for providing the services reimburses the costs of providing them, and shall verify that mandatory dues are not used to fund the sections.

(c) Notwithstanding the other provisions of this section, the State Bar is expressly authorized to collect voluntary fees to fund the Conference of Delegates or the State Bar sections on behalf of those organizations in conjunction with the State Bar's collection of its annual membership dues. Funds collected pursuant to this subdivision, and other funds raised by or through the activities of the Conference of Delegates or sections, or collected from voluntary sources, for their support or operation, shall not be subject to the expenditure limitations of subdivision (b) of Section 6140.05.

(d) Notwithstanding any other provision of law, if an independent nonprofit successor entity to the Conference of Delegates, as referenced in subdivision (a), is incorporated for the purposes of aiding in matters pertaining to the advancement of the science of jurisprudence or to the improvement of the administration of justice, the State Bar is expressly authorized to collect, in conjunction with the State Bar's collection of its annual membership dues, voluntary fees or donations on behalf of the successor entity, and to convey any unexpended voluntary fees or donations previously made to the Conference of Delegates pursuant to this section to the successor entity. The successor entity shall pay for the cost of the collection. The State Bar and the successor entity may also contract for other services. The financial audit specified in Section 6145 shall confirm that the amount of any contract shall fully cover the costs of providing the services, and shall verify that mandatory dues are not used to fund any successor entity.

(e) Any independent nonprofit successor entity to the Conference of Delegates, as referenced in subdivision (d), shall be a voluntary association and shall not be a part of the State Bar of California, nor funded in any way through mandatory dues collected by the State Bar of California. Any contribution or membership option included with a State Bar of California mandatory dues billing statement shall include a statement that the Conference of Delegates or its successor entity is not a part of the State Bar of California and that membership in that organization is voluntary.

**SEC. 5.** Section 6032 is added to the Business and Professions Code, to read:

**6032.** Notwithstanding any other provision of law, the State Bar is expressly authorized to collect, in conjunction with the State Bar's collection of its annual membership dues, voluntary fees on behalf of and for the purpose of funding the California Supreme Court Historical Society, which advances the science of jurisprudence by preserving and disseminating to the general public the history of the Supreme Court and the Judicial Branch.

**SEC. 6.** Section 6065 of the Business and Professions Code is amended to read:

**6065.** (a) (1) Any unsuccessful applicant for admission to practice, after he or she has taken any examination and within four months after the results thereof have been declared, has the right to inspect those of his or her examination papers that are in the actual, physical possession of the examining committee at the time the

request for inspection is made. The inspection shall occur at the office of the examining committee located nearest to the place at which the applicant took the examination.

(2) The applicant also has the right to inspect the grading of the papers whether the record thereof is marked upon the examination or otherwise. (b) This section shall remain in effect only until January 1, 2004, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2004, deletes or extends that date.

**SEC. 7.** Section 6065 is added to the Business and Professions Code, to read:

**6065.** (a) (1) Any unsuccessful applicant for admission to practice, after he or she has taken any examination and within four months after the results thereof have been declared, has the right to inspect his or her examination papers at the office of the examining committee located nearest to the place at which the applicant took the examination.

(2) The applicant also has the right to inspect the grading of the papers whether the record thereof is marked upon the examination or otherwise.

(b) This section shall become operative on January 1, 2004.

**SEC. 8.** Section 6079.5 of the Business and Professions Code is amended to read:

**6079.5.** (a) The board shall appoint a lawyer admitted to practice in California to serve as chief trial counsel. He or she shall be appointed for a term of four years and may be reappointed for additional four-year periods. He or she shall serve at the pleasure of the board. He or she shall not engage in private practice. The State Bar shall notify the Senate Rules Committee and the Senate and Assembly Judiciary Committees within seven days of the dismissal or hiring of a chief trial counsel.

The appointment of the chief trial counsel is subject to confirmation by the Senate, and the time limits prescribed in Section 1774 of the Government Code for Senate confirmation and for service in office are applicable to the appointment.

He or she shall report to and serve under the Regulation, Admissions, and Discipline Oversight Committee of the Board of Governors of the State Bar or its successor committee on attorney discipline, and shall not serve under the direction of the chief executive officer.

(b) The chief trial counsel shall have the following qualifications:

(1) Be an attorney licensed to practice in the State of California, be in good standing and shall not have committed any disciplinary offenses in California or any other jurisdiction.

(2) Have a minimum of five years of experience in the practice of law, including trial experience, with law practice in broad areas of the law.

(3) Have a minimum of two years of prosecutorial experience or similar experience in administrative agency proceedings or disciplinary agencies.

(4) Have a minimum of two years of experience in an administrative role, overseeing staff functions.

The board may except an appointee from any of the above qualifications for good cause upon a determination of necessity to obtain the most qualified person.

On or after July 1, 1987, the chief trial counsel may, as prescribed by the Supreme Court, petition the court for a different disposition of a matter than the recommendations of the review department or the board to the court.

**SEC. 9.** Section 6145 of the Business and Professions Code is amended to read:

**6145.** (a) The board shall contract with a nationally recognized independent public accounting firm for an audit of its financial statement for each fiscal year beginning after December 31, 1998. The financial statement shall be promptly certified under oath by the treasurer of the State Bar, and a copy of the audit and financial statement shall be submitted within 120 days of the close of the fiscal year to the board, the Chief Justice of the Supreme Court, and to the Assembly and Senate Committees on Judiciary.

The audit shall examine the receipts and expenditures of the State Bar, the Conference of Delegates, and the State Bar sections, to assure that the receipts of the Conference of Delegates and the sections are being applied, and their expenditures are being made, in compliance with subdivisions (a) and (b) of Section 6031.5, and that the receipts of the Conference of Delegates and the receipts of the sections are applied only to the work of the Conference of Delegates and the sections, respectively.

Pursuant to subdivision (d) of Section 6031.5, if an independent nonprofit successor entity to the Conference of Delegates is incorporated, the audit shall examine the receipts and expenditures of the State Bar to ensure that the funds collected on behalf of the successor entity are conveyed to that entity, that the State Bar has been paid or reimbursed for the full cost of any administrative and support services provided to the successor entity, including the collection of fees or donations on its behalf, and that no mandatory dues are being used to fund the activities of the successor entity.

(b) The board shall contract with the Bureau of State Audits to conduct a performance audit of the State Bar's operations from July 1, 2000, to December 31, 2000, inclusive. A copy of the performance audit shall be submitted by May 1, 2001, to the board, to the Chief Justice of the Supreme Court, and to the Assembly and Senate Committees on Judiciary.

Every two years thereafter, the board shall contract with the Bureau of State Audits to conduct a performance audit of the State Bar's operations for the respective fiscal year, commencing with January 1, 2002, through December 31, 2002, inclusive. A copy of the performance audit shall be submitted within 120 days of the close of the fiscal year for which the audit was performed to the board, to the Chief Justice of the Supreme Court, and to the Assembly and Senate Committees on Judiciary.

For the purposes of this subdivision, the Bureau of State Audits may contract with a third party to conduct the performance audit. This subdivision is not intended to reduce the number of audits the Bureau of State Audits may otherwise be able to conduct.

**SEC. 10.** This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are:

In order to implement necessary reforms relative to the State Bar of California as quickly as possible, it is necessary that this act take effect immediately.





California
LEGISLATIVE INFORMATION

Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites

**SB-36 Attorneys: State Bar: Sections of the State Bar.** (2017-2018)

SHARE THIS:  

Date Published: 10/02/2017 09:00 PM

**Senate Bill No. 36**

CHAPTER 422

An act to amend Sections 6001, 6008.6, 6011, 6013.1, 6013.3, 6013.5, 6015, 6016, 6019, 6021, 6022, 6026.7, 6029, 6031.5, 6054, 6060.2, 6070, 6086.5, 6140.9, 6144, 6144.1, 6145, and 6232 of, to add Sections 6008.7, 6046.8, 6069.5, 6140.02, 6140.56, and 6141.3 to, to add Article 3 (commencing with Section 6055) to Chapter 4 of Division 3 of, to add and repeal Section 6140 of, and to repeal Sections 6008.5, 6009.7, 6012, 6013.2, 6018, and 6026.5 of, the Business and Professions Code, relating to attorneys.

[ Approved by Governor  October 02, 2017. Filed with Secretary of State October 02, 2017. ]

LEGISLATIVE COUNSEL'S DIGEST

SB 36, Jackson. Attorneys: State Bar: Sections of the State Bar.

(1) The State Bar Act provides for the licensure and regulation of attorneys by the State Bar of California, a public corporation governed by a board of trustees comprised of appointed and elected members. The act requires 6 members of the 19-member board to be attorneys elected from State Bar Districts. The act requires the board of trustees to elect or select the president, vice president, and treasurer of the State Bar, as specified.

This bill would state that it is the intent of the Legislature that the board transition to a 13-member board, as specified. The bill would require that a maximum of 6 members of the board be public members, appointed as specified, and would require members of the board to serve a term of 4 years. The bill would require the California Supreme Court to appoint a chair and vice chair, as specified, instead of the board electing a president and vice president. The bill would require members of the executive committee of the board to include at least one member of the board appointed by each appointing authority.

The bill would, until January 1, 2019, require the board to charge an annual membership fee for active members in a specified amount for 2018, and would require the State Bar to adhere to a Supreme Court-approved policy to identify and address any proposed decision of the board of trustees that raises antitrust concerns.

(2) Existing law prohibits the Legislature, when the board places a charge upon or otherwise makes available all or any portion of the income or revenue from membership fees for the payment of security of an obligation of the State Bar and so long as any obligation remains unpaid, from reducing the maximum membership fee below the maximum in effect at the time the obligation is created or incurred and provides that this provision constitutes a covenant to the holder of such an obligation.

This bill would repeal the provision prohibiting the Legislature from reducing the maximum membership fee.

Add_047

(3) Existing law prohibits the State Bar from awarding contracts for goods or services in excess of specified amounts unless certain standards are followed.

This bill would additionally require the approval of the board of trustees for those contracts and would, by January 1, 2019, require the State Bar to align its purchasing policies with those of other state agencies. The bill would also require the State Bar to conduct a review and study regarding errors and omissions insurance and to report its findings to the California Supreme Court and the Legislature, as specified. The bill would also require the State Bar to provide offers of discounts and other benefits to active and inactive members, including, but not limited to, insurance and affinity programs and would specify how the revenues received from those programs are to be allocated.

(4) Existing law requires applicants for admission to, among other things, take and pass a bar examination and be fingerprinted, as specified.

This bill would require the board of trustees to, at least once every 7 years, oversee an evaluation of the bar examination to determine if it properly tests for minimally needed competence for entry-level attorneys and to report on the results of the evaluation to the California Supreme Court and the Legislature, as specified. The bill would require the State Bar to notify the Department of Justice about individuals who are no longer members of the State Bar and applicants who are denied admission and to request from the Department of Justice subsequent arrest notifications services for applicants to, and members of, the State Bar.

(5) The act provides that the State Bar is subject to the Bagley-Keene Open Meeting Act and the California Public Records Act, as specified.

This bill would provide that access to records of the State Bar Court is subject to the rules and laws applicable to the judiciary instead of the California Public Records Act and would exempt the State Bar Court from the Bagley-Keene Open Meeting Act. The bill would authorize closed sessions for meetings, or portions thereof, relating to, among other things, the preparation, approval, grading, or administration of the California Bar Examination or the First-Year Law Students' Examination.

(6) Existing law establishes the Client Security Fund to relieve or mitigate pecuniary losses caused by the dishonest conduct of, among others, active members of the State Bar.

This bill would require the State Bar to conduct a thorough analysis of the Client Security Fund to ensure that the structure provides for the most effective and efficient operation of the fund by, among other things, making a determination of the ongoing needs of the fund to satisfy claims in a timely manner, as defined. The bill would require the State Bar to submit a report on its analysis to the Legislature, as specified.

(7) Existing law requires the State Bar to establish and administer an Attorney Diversion and Assistance Program and requires the program to be funded by mandatory fees. Existing law provides that funds from those fees may be applied to costs of the State Bar general fund programs if alternative sources of funding are obtained and a specified amount of funds remain available for support of the program each year.

This bill would instead authorize any excess funds not needed to support the program to be transferred to fund the Client Security Fund, provided there are sufficient funds available to support the program. The bill would also authorize applicants who are in law school or who have applied for admission to the State Bar to enter the program subject to the approval of the board of trustees.

(8) Existing law requires the net proceeds from the sale or lease of real property, after payment of obligations and encumbrances and reasonable costs of acquiring and relocating its facilities, if any, to be held by the State Bar without expenditure or commitment until approved by the Legislature.

This bill would instead require the net proceeds from the lease of real property, after payment of obligations and encumbrances and reasonable costs of acquiring and relocating its facilities, if any, to be used by the State Bar for the protection of the public.

(9) Existing law authorizes the State Bar to establish sections and prohibits the activities of the sections from being funded from the annual membership fee. Existing law authorizes the State Bar to provide the sections with administrative support services, provided that the State Bar is reimbursed for the full cost of those services, and authorizes the State Bar to collect voluntary fees to fund the State Bar sections in conjunction with the collection of the annual membership fee. Existing law requires members of the State Bar to complete continuing education requirements, as specified.

This bill would require the State Bar to assist the Sections of the State Bar to incorporate as a private, nonprofit corporation and to transfer the functions and activities of the existing State Bar Sections to the new private, nonprofit corporation, defined as the Association. The bill would provide that the Association is a voluntary association, is not part of the State Bar, is prohibited from being funded by membership fees, and is not considered a state, local, or other public body for any purpose. The bill would require the bylaws of the Association to ensure that the governing board of the Association includes one representative of each of the existing Sections of the State Bar and that each of these governing board members have equal voting power. The bill would require the bylaws of the Association to ensure that the governing board may terminate individual sections or add individual sections by a $^2/_3$ vote of the governing board. The bill would require the Sections of the State Bar or the Association to enter into a memorandum of understanding with the State Bar regarding the terms of separation of the Sections of the State Bar from the State Bar. The bill would require the State Bar to, among other things, collect voluntary dues set by the Association with the annual membership fee and to pay any such voluntary dues collected to the Association. The bill would prohibit the State Bar from having sections and would transfer the existing Sections of the State Bar to the Association, as specified. The bill would require the Association to provide and develop low-cost continuing education programs and materials as a condition of the State Bar collecting membership fees on behalf of the Association.

(10) Existing constitutional provisions require that a statute that limits the right of access to the meetings of public bodies or the writings of public officials and agencies be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest.

This bill would make legislative findings to that effect.

Vote: majority   Appropriation: no   Fiscal Committee: yes   Local Program: no

## THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** Section 6001 of the Business and Professions Code is amended to read:

**6001.** The State Bar of California is a public corporation. It is hereinafter designated as the State Bar.

The State Bar has perpetual succession and a seal and it may sue and be sued. It may, for the purpose of carrying into effect and promoting its objectives:

(a) Make contracts.

(b) Borrow money, contract debts, issue bonds, notes and debentures and secure the payment or performance of its obligations.

(c) Own, hold, use, manage and deal in and with real and personal property.

(d) Construct, alter, maintain and repair buildings and other improvements to real property.

(e) Purchase, lease, obtain options upon, acquire by gift, bequest, devise or otherwise, any real or personal property or any interest therein.

(f) Sell, lease, exchange, convey, transfer, assign, encumber, pledge, dispose of any of its real or personal property or any interest therein, including without limitation all or any portion of its income or revenues from membership fees paid or payable by members.

(g) Do all other acts incidental to the foregoing or necessary or expedient for the administration of its affairs and the attainment of its purposes.

Pursuant to those powers enumerated in subdivisions (a) to (g), inclusive, it is recognized that the State Bar has authority to raise revenue in addition to that provided for in Section 6140 and other statutory provisions. The State Bar is empowered to raise that additional revenue by any lawful means. However, as of March 31, 2018, the State Bar shall not create any foundations or nonprofit corporations.

The State Bar shall conspicuously publicize to its members in the annual dues statement and other appropriate communications, including its Internet Web site and electronic communications, that its members have the right to limit the sale or disclosure of member information not reasonably related to regulatory purposes. In those communications the State Bar shall note the location of the State Bar's privacy policy, and shall also note the simple procedure by which a member may exercise his or her right to prohibit or restrict, at the member's

Add_049

option, the sale or disclosure of member information not reasonably related to regulatory purposes. On or before May 1, 2005, the State Bar shall report to the Assembly and Senate Committees on Judiciary regarding the procedures that it has in place to ensure that members can appropriately limit the use of their member information not reasonably related to regulatory purposes, and the number of members choosing to utilize these procedures.

No law of this state restricting, or prescribing a mode of procedure for the exercise of powers of state public bodies or state agencies, or classes thereof, including, but not by way of limitation, the provisions contained in Division 3 (commencing with Section 11000), Division 4 (commencing with Section 16100), and Part 1 (commencing with Section 18000) and Part 2 (commencing with Section 18500) of Division 5, of Title 2 of the Government Code, shall be applicable to the State Bar, unless the Legislature expressly so declares. Notwithstanding the foregoing or any other law, pursuant to Sections 6026.7 and 6026.11, the State Bar is subject to the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code) and, commencing April 1, 2016, the Bagley-Keene Open Meeting Act (Article 9 (commencing with Section 11120) of Chapter 1 of Part 1 of Division 3 of Title 2 of the Government Code).

**SEC. 2.** Section 6008.5 of the Business and Professions Code is repealed.

**SEC. 3.** Section 6008.6 of the Business and Professions Code is amended to read:

**6008.6.** The State Bar shall award no contract for goods, services, or both, for an aggregate amount in excess of fifty thousand dollars ($50,000), or for information technology goods, services, or both, for an aggregate amount in excess of one hundred thousand dollars ($100,000), except pursuant to the standards established in Article 4 (commencing with Section 10335) of Chapter 2 of Part 2 of Division 2 of the Public Contract Code and approval of the board of trustees. In the event that approval for a particular contract by the board is not feasible because approval of the contract is necessary prior to the next regularly scheduled meeting of the board of trustees, the chief executive officer of the State Bar may approve the contract after consultation with and approval by a designated committee of the board and subject to notification of the full board at the board's next regularly scheduled meeting. The State Bar shall establish a request for proposal procedure by rule, pursuant to the general standards established in Article 4 (commencing with Section 10335) of Chapter 2 of Part 2 of Division 2 of the Public Contract Code. For the purposes of this section, "information technology" includes, but is not limited to, all electronic technology systems and services, automated information handling, system design and analysis, conversion voice, video, and data communications, network systems, requisite facilities, equipment, system controls, stimulation, electronic commerce, and all related interactions between people and machines.

**SEC. 4.** Section 6008.7 is added to the Business and Professions Code, to read:

**6008.7.** The State Bar shall, by January 1, 2019, develop purchasing policies that align with the purchasing policies of other state agencies.

**SEC. 5.** Section 6009.7 of the Business and Professions Code is repealed.

**SEC. 6.** Section 6011 of the Business and Professions Code is amended to read:

**6011.** (a) The board shall consist of no more than 19 members and no fewer than 13 members.

(b) It is the intent of the Legislature that the board consist of no more than 19 members and no fewer than 13 members during the period of transition from a 19-member board to a 13-member board. It is the intent of the Legislature that the board decrease its size without shortening, lengthening, or abolishing terms commencing prior to December 31, 2017, with the ultimate goal of instituting a 13-member board no later than October 31, 2020. It is the intent of the Legislature that this transition occur by the expiration of the terms of the elected members who are serving on the board as of December 31, 2017.

**SEC. 7.** Section 6012 of the Business and Professions Code is repealed.

**SEC. 8.** Section 6013.1 of the Business and Professions Code is amended to read:

**6013.1.** (a) The Supreme Court shall appoint five attorney members of the board pursuant to a process that the Supreme Court may prescribe. These attorney members shall serve for a term of four years and may be reappointed by the Supreme Court for one additional term only.

(b) An attorney member elected pursuant to Section 6013.2 may be appointed by the Supreme Court pursuant to this section to a term as an appointed attorney member.

(c) The Supreme Court shall fill any vacancy in the term of, and make any reappointment of, any appointed attorney member.

(d) When making appointments to the board, the Supreme Court should consider appointing attorneys that represent the following categories: legal services; small firm or solo practitioners; historically underrepresented groups, including consideration of race, ethnicity, gender, and sexual orientation; and legal academics. In making appointments to the board, the Supreme Court should also consider geographic distribution, years of practice, particularly attorneys who are within the first five years of practice or 36 years of age and under, and participation in voluntary local or state bar activities.

(e) The State Bar shall be responsible for carrying out the administrative responsibilities related to the appointment process described in subdivision (a).

**SEC. 9.** Section 6013.2 of the Business and Professions Code is repealed.

**SEC. 10.** Section 6013.3 of the Business and Professions Code is amended to read:

**6013.3.** (a) One attorney member of the board shall be appointed by the Senate Committee on Rules and one attorney member of the board shall be appointed by the Speaker of the Assembly.

(b) An attorney member appointed pursuant to this section shall serve for a term of four years. Vacancies shall be filled for the remainder of the term. An appointed attorney member may be reappointed pursuant to this section.

**SEC. 11.** Section 6013.5 of the Business and Professions Code is amended to read:

**6013.5.** (a) Effective January 1, 2018, a maximum of six members of the board shall be members of the public who have never been members of the State Bar or admitted to practice before any court in the United States.

(b) Each of these members shall serve for a term of four years. Vacancies shall be filled for the remainder of the term.

(c) Effective January 1, 2018, one public member shall be appointed by the Senate Committee on Rules and one public member shall be appointed by the Speaker of the Assembly.

(d) Four public members shall be appointed by the Governor, subject to the confirmation of the Senate.

(e) Each respective appointing authority shall fill any vacancy in and make any reappointment to each respective office.

**SEC. 12.** Section 6015 of the Business and Professions Code is amended to read:

**6015.** No person is eligible for attorney membership on the board unless both of the following conditions are satisfied:

(a) He or she is an active member of the State Bar.

(b) Either:

   (1) Prior to October 31, 2020, if elected, he or she maintains his or her principal office for the practice of law within the State Bar district from which he or she is elected.

   (2) If appointed by the Supreme Court or the Legislature, he or she maintains his or her principal office for the practice of law within the State of California.

**SEC. 13.** Section 6016 of the Business and Professions Code is amended to read:

**6016.** The term of office of each attorney member of the board shall be four years and he or she shall hold office until his or her successor is appointed and qualified. Vacancies shall be filled for the remainder of the term.

The board of trustees may provide by rule for an interim board to act in the place and stead of the board when because of vacancies during terms of office there is less than a quorum of the board.

**SEC. 14.** Section 6018 of the Business and Professions Code is repealed.

**SEC. 15.** Section 6019 of the Business and Professions Code is amended to read:

**6019.** Each place upon the board for which a member is to be appointed shall for the purposes of the appointment be deemed a separate office.

**SEC. 16.** Section 6021 of the Business and Professions Code is amended to read:

**6021.** (a) On the effective date of the measure adding this subdivision, the selection of the chair and vice chair of the board shall be made by appointment of the Supreme Court.

(b) For 2018, the Supreme Court shall appoint a chair and a vice chair to serve a term that commences upon appointment and ends at the conclusion of the annual meeting in 2018. Thereafter, the term of the chair and the vice chair shall be one year, and the chair and vice chair shall assume the duties of their respective offices at the conclusion of the annual meeting following their appointment. The chair and vice chair shall not serve more than two terms, except that a chair or vice chair who is appointed to fill a vacancy for the balance of a term is eligible to serve two full terms in addition to the remainder of the term for which he or she was appointed.

(c) The president and vice president in place on the effective date of the measure adding this subdivision shall retain their positions until the chair and vice chair are appointed.

**SEC. 17.** Section 6022 of the Business and Professions Code is amended to read:

**6022.** The secretary of the State Bar shall be selected annually by the board and need not be a member of the State Bar.

**SEC. 18.** Section 6026.5 of the Business and Professions Code is repealed.

**SEC. 19.** Section 6026.7 of the Business and Professions Code is amended to read:

**6026.7.** (a) The State Bar is subject to the Bagley-Keene Open Meeting Act (Article 9 (commencing with Section 11120) of Chapter 1 of Part 1 of Division 3 of Title 2 of the Government Code) and all meetings of the State Bar are subject to the Bagley-Keene Open Meeting Act.

(b) Notwithstanding any other law, the Bagley-Keene Open Meeting Act shall not apply to the Judicial Nominees Evaluation Commission or the State Bar Court.

(c) In addition to the grounds authorized in the Bagley-Keene Open Meeting Act, a closed session may be held for those meetings, or portions thereof, relating to both of the following:

(1) Appeals from decisions of the Board of Legal Specialization refusing to certify or recertify an applicant or suspending or revoking a specialist's certificate.

(2) The preparation, approval, grading, or administration of examinations for certification of a specialist.

(3) The preparation, approval, grading, or administration of the California Bar Examination or the First-Year Law Students' Examination.

(4) Matters related to the Committee of Bar Examiners' consideration of moral character, including allegations of criminal or professional misconduct, competence, or physical or mental health of an individual, requests by applicants for testing accommodations in connection with an application for admission to practice law, or appeals of the Committee of Bar Examiners' determinations.

(5) Information about a law school's operations that constitutes a trade secret as defined in subdivision (d) of Section 3426.1 of the Civil Code.

**SEC. 20.** Section 6029 of the Business and Professions Code is amended to read:

**6029.** (a) The board may appoint such committees, officers and employees as it deems necessary or proper, and fix and pay salaries and necessary expenses.

(b) The members of the executive committee of the board shall include at least one board member appointed by each of the following appointing authorities:

    (1) The Supreme Court.

    (2) The Governor.

    (3) The Speaker of the Assembly.

    (4) The Senate Committee on Rules.

**SEC. 21.** Section 6031.5 of the Business and Professions Code is amended to read:

**6031.5.** (a) The Association and its activities shall not be funded with mandatory fees collected pursuant to subdivision (a) of Section 6140.

The State Bar may provide the Association with administrative and support services, provided the Association agrees, before such services are provided, to the nature, scope, and cost of those services. The State Bar shall be reimbursed for the full cost of those services out of funds collected pursuant to subdivision (b) or funds provided by the Association. The financial audit specified in Section 6145 shall confirm that the amount assessed by the State Bar for providing the services reimburses the costs of providing them, and shall verify that mandatory dues are not used to fund the Association. The State Bar and the Association may also contract for other services provided by the State Bar or by the Association.

(b) Notwithstanding any other law, the State Bar shall collect fees for the Association provided the Board of Trustees of the State Bar determines that both of the following conditions are met: (1) the Association continues to comply with the requirements in subdivision (b) of Section 6056, and (2) the Association continues to serve a public purpose by providing the services described in subdivision (f) of Section 6056. The Association shall pay for the actual costs of the collection.

(c) Notwithstanding any other law, the State Bar is expressly authorized to collect, in conjunction with the State Bar's collection of its annual membership dues, voluntary fees or donations on behalf of the Conference of Delegates of California Bar Associations, the independent nonprofit successor entity to the former Conference of Delegates of the State Bar which has been incorporated for the purposes of aiding in matters pertaining to the advancement of the science of jurisprudence or to the improvement of the administration of justice, and to convey any unexpended voluntary fees or donations previously made to the Conference of Delegates of the State Bar pursuant to this section to the Conference of Delegates of California Bar Associations. The Conference of Delegates of California Bar Associations shall pay for the cost of the collection. The State Bar and the Conference of Delegates of California Bar Associations may also contract for other services. The financial audit specified in Section 6145 shall confirm that the amount of any contract shall fully cover the costs of providing the services, and shall verify that mandatory dues are not used to fund any successor entity.

(d) The Conference of Delegates of California Bar Associations, which is the independent nonprofit successor entity to the former Conference of Delegates of the State Bar as referenced in subdivision (c), is a voluntary association, is not a part of the State Bar of California, and shall not be funded in any way through mandatory dues collected by the State Bar of California. Any contribution or membership option included with a State Bar of California mandatory dues billing statement shall include a statement that the Conference of Delegates of California Bar Associations is not a part of the State Bar of California and that membership in that organization is voluntary.

**SEC. 22.** Section 6046.8 is added to the Business and Professions Code, to read:

**6046.8.** At least once every seven years, or more frequently if directed by the Supreme Court, the board of trustees shall oversee an evaluation of the bar examination to determine if it properly tests for minimally needed competence for entry-level attorneys and shall make a determination, supported by findings, whether to adjust the examination or the passing score based on the evaluation. The board of trustees shall report the results of the evaluation and any determination regarding adjustment in the passing score to the Supreme Court and the Legislature no later than March 15, 2018, and at least every seven years from the date of the previous report.

**SEC. 23.** Section 6054 of the Business and Professions Code is amended to read:

**6054.** (a) State and local law enforcement and licensing bodies and departments, officers and employees thereof, and officials and attachés of the courts of this state shall cooperate with and give reasonable assistance and information, including the providing of state summary criminal history information and local summary criminal history information, to the State Bar of California or any authorized representative thereof, in connection with any investigation or proceeding within the jurisdiction of the State Bar of California, regarding the admission to the practice of law or discipline of attorneys or their reinstatement to the practice of law.

(b) The State Bar of California shall require that an applicant for admission or reinstatement to the practice of law in California, or may require a member to submit or resubmit fingerprints to the Department of Justice in order to establish the identity of the applicant and in order to determine whether the applicant or member has a record of criminal conviction in this state or in other states. The information obtained as a result of the fingerprinting of an applicant or member shall be limited to the official use of the State Bar in establishing the identity of the applicant and in determining the character and fitness of the applicant for admission or reinstatement, and in discovering prior and subsequent criminal arrests of an applicant, member, or applicant for reinstatement. The State Bar shall notify the Department of Justice about individuals who are no longer members and applicants who are denied admission to the State Bar within 30 days of any change in status of a member or denial of admission. All fingerprint records of applicants admitted or members reinstated, or provided by a member, shall be retained thereafter by the Department of Justice for the limited purpose of criminal arrest notification to the State Bar.

(c) The State Bar shall request from the Department of Justice subsequent arrest notification service, as provided pursuant to Section 11105.2 of the Penal Code, for applicants to, and members of, the State Bar.

(d) If required to be fingerprinted pursuant to this section, a member of the State Bar who fails to be fingerprinted may be enrolled as an inactive member pursuant to rules adopted by the board of trustees.

(e) The State Bar shall report to the Supreme Court and the Legislature by March 15, 2018, regarding its compliance with the requirements of this section.

**SEC. 24.** Article 3 (commencing with Section 6055) is added to Chapter 4 of Division 3 of the Business and Professions Code, to read:

**Article 3. Nonprofit Association**

**6055.** This article shall be known, and may be cited, as the Nonprofit Association Act.

**6056.** (a) The State Bar, acting pursuant to Section 6001, shall assist the Sections of the State Bar to incorporate as a private, nonprofit corporation organized under Section 501(c)(6) of the Internal Revenue Code and shall transfer the functions and activities of the 16 State Bar Sections and the California Young Lawyers Association to the new private, nonprofit corporation, defined as the Association in this article. The new private, nonprofit corporation shall be called any name that sufficiently distinguishes itself from the State Bar, makes clear that it is not a government entity, and is approved by the Chief Justice of California. The Association shall be a voluntary association, shall not be a part of the State Bar, and shall not be funded in any way through mandatory dues collected by the State Bar. The Association shall have independent contracting authority and full control of its resources. The Association shall not be considered a state, local, or other public body for any purpose, including, but not limited to, the Bagley-Keene Open Meeting Act (Article 9 (commencing with Section 11120) of Chapter 1 of Part 1 of Division 3 of Title 2 of the Government Code) and the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code).

(b) The Association shall be governed in accordance with the bylaws of the Association, which shall ensure that all of the State Bar Sections and the California Young Lawyers Association are adequately represented and are able to make decisions in a fair and representative manner that complies with all provisions of state and federal law governing private nonprofit corporations organized under Section 501(c)(6) of the Internal Revenue Code. The bylaws of the Association shall ensure that the governing board of the Association includes one representative of each of the 16 sections of the State Bar Sections and one representative from the California Young Lawyers Association. The bylaws shall ensure that each of these 17 governing board members have equal voting power on the governing board. The bylaws shall ensure that the governing board may terminate individual sections or add individual sections by a two-thirds vote of the governing board.

(c) The State Bar may assist the Association in gaining appointment to the American Bar Association (ABA) House of Delegates, consistent with the Association's mission and subject to the consent of the ABA.

(d) The State Bar shall support the Association's efforts to partner with the Continuing Education of the Bar (CEB), subject to agreement by the University of California.

(e) The State Bar of California shall ensure that State Bar staff who support the sections, as of September 15, 2017, are reassigned to other comparable positions within the State Bar.

(f) The Sections of the State Bar or the Association and the State Bar shall enter into a memorandum of understanding regarding the terms of separation of the Sections of the State Bar from the State Bar and mandatory duties of the Association, including a requirement to provide all of the following:

   (1) Low- and no-cost mandatory continuing legal education (MCLE).

   (2) Expertise and information to the State Bar, as requested.

   (3) Educational programs and materials to the members of the State Bar and the public.

**6056.3.** (a) On or before January 31, 2018, the State Bar shall transfer to the Association all membership fees and other funds paid for membership in the sections or paid in sponsorships, donations, or funds for the benefit of the sections, including, but not limited to, State Bar section financial reserves, with an accounting that specifies which funds are attributable to each individual section of the Association. The State Bar shall work with the Association to transfer all contracts previously entered into by the State Bar on behalf of the sections, as soon as practicable, consistent with any contractual obligations and legal requirements, unless an alternative arrangement is mutually acceptable to the State Bar and the Association.

(b) On or before January 31, 2018, the State Bar shall provide an itemized list of any outstanding expenses, including contracts made on behalf of section activities.

(c) The State Bar and the Association shall confer and work cooperatively to establish an orderly transition plan.

(d) All current intellectual property of the Sections of the State Bar and the board of governors, currently in the possession of the State Bar, shall be transferred to and retained by the Association, including, but not limited to, publications, educational materials, online education, membership lists of section members, and products.

(e) Programs created by the sections within the State Bar's online education catalog shall be transferred to the Association.

(f) The amount of the State Bar sections' reserves that are to be transferred shall be determined by cooperative review and accounting between the State Bar and the Association no later than January 31, 2018. If the State Bar and Sections of the State Bar do not agree on the amount by January 31, 2018, the parties shall submit the matter to binding arbitration by a neutral arbitrator who will determine the amount. If the parties cannot agree on a neutral arbitrator, each shall select a neutral arbitrator and the two neutral arbitrators shall select a single neutral arbitrator to determine the amount. The neutral arbitrator chosen to oversee the matter may hire an auditor to assist in this task. The fees charged by the arbitrator, including any auditor fees, shall be borne equally by the State Bar and the Association.

(g) The State Bar shall no longer include individual sections or voluntary organizations that are similar to Sections of the State Bar as they existed before being transferred to the Association.

**SEC. 25.** Section 6060.2 of the Business and Professions Code is amended to read:

**6060.2.** (a) All investigations or proceedings conducted by the State Bar concerning the moral character of an applicant shall be confidential and shall not be disclosed pursuant to any state law, including, but not limited to, the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code) unless the applicant, in writing, waives the confidentiality.

(b) Notwithstanding subdivision (a), the records of the proceeding may be disclosed in response to either of the following:

   (1) A lawfully issued subpoena.

(2) A written request from a government agency responsible for either the enforcement of civil or criminal laws or the professional licensing of individuals that is conducting an investigation about the applicant.

**SEC. 26.** Section 6069.5 is added to the Business and Professions Code, to read:

**6069.5.** (a) In recognition of the importance of protecting the public from attorney errors through errors and omissions insurance, the State Bar shall conduct a review and study regarding errors and omissions insurance for attorneys licensed in this state. The State Bar shall conduct this review and study, which shall specifically include determinations of all of the following:

(1) The adequacy, availability, and affordability of errors and omissions insurance for attorneys licensed in this state.

(2) Proposed measures for encouraging attorneys licensed in this state to obtain and maintain errors and omissions insurance.

(3) The ranges of errors and omissions insurance limits for attorneys licensed in this state recommended to protect the public.

(4) The adequacy and efficacy of the disclosure rule regarding errors and omissions insurance, currently embodied in Rule 3-410 of the Rules of Professional Conduct.

(5) The advisability of mandating errors and omissions insurance for attorneys licensed in this state and attendant considerations.

(6) Other proposed measures relating to errors and omissions insurance for attorneys in this state that will further the goal of public protection.

(b) The State Bar shall report its findings under this section to the Supreme Court and the Legislature no later than March 31, 2019.

(c) The State Bar may consider any past studies, including, but not limited to, any relevant actuarial studies, and any current information that is available to the State Bar from other entities, such as the American Bar Association, regarding errors and omissions insurance.

**SEC. 27.** Section 6070 of the Business and Professions Code is amended to read:

**6070.** (a) The State Bar shall request the California Supreme Court to adopt a rule of court authorizing the State Bar to establish and administer a mandatory continuing legal education program. The rule that the State Bar requests the Supreme Court to adopt shall require that, within designated 36-month periods, all active members of the State Bar shall complete at least 25 hours of legal education activities approved by the State Bar or offered by a State Bar-approved provider, with four of those hours in legal ethics. The legal education activities shall focus on California law and practice and federal law as relevant to its practice in California or tribal law. A member of the State Bar who fails to satisfy the mandatory continuing legal education requirements of the program authorized by the Supreme Court rule shall be enrolled as an inactive member pursuant to rules adopted by the Board of Trustees of the State Bar.

(b) For purposes of this section, statewide associations of public agencies and incorporated, nonprofit professional associations of attorneys, including the Association, shall be certified as State Bar approved providers upon completion of an appropriate application process to be established by the State Bar. The certification may be revoked only by majority vote of the board, after notice and hearing, and for good cause shown. Programs provided by the California District Attorneys Association or the California Public Defenders Association, or both, including, but not limited to, programs provided pursuant to Title 1.5 (commencing with Section 11500) of Part 4 of the Penal Code, are deemed to be legal education activities approved by the State Bar or offered by a State Bar-approved provider.

(c) Notwithstanding the provisions of subdivision (a), officers and elected officials of the State of California, and full-time professors at law schools accredited by the State Bar of California, the American Bar Association, or both, shall be exempt from the provisions of this section. Full-time employees of the State of California, acting within the scope of their employment, shall be exempt from the provisions of this section. Nothing in this section shall prohibit the State of California, or any political subdivision thereof, from establishing or maintaining its own continuing education requirements for its employees.

(d) The Association shall provide and encourage the development of low-cost programs and materials by which members of the State Bar may satisfy their continuing education requirements. Special emphasis shall be placed upon the use of internet capabilities and computer technology in the development and provision of no-cost and low-cost programs and materials. Towards this purpose, as a condition of the State Bar's collection of membership fees on behalf of the Association pursuant to subdivision (b) of Section 6031.5, the Association shall ensure that any member possessing or having access to the Internet or specified generally available computer technology shall be capable of satisfying the full self-study portion of his or her MCLE requirement at a cost of twenty dollars ($20) per hour or less.

**SEC. 28.** Section 6086.5 of the Business and Professions Code is amended to read:

**6086.5.** The board of trustees shall establish a State Bar Court, to act in its place and stead in the determination of disciplinary and reinstatement proceedings and proceedings pursuant to subdivisions (b) and (c) of Section 6007 to the extent provided by rules adopted by the board of trustees pursuant to this chapter. In these proceedings the State Bar Court may exercise the powers and authority vested in the board of trustees by this chapter, including those powers and that authority vested in committees of, or established by, the board, except as limited by rules of the board of trustees within the scope of this chapter.

Access to records of the State Bar Court shall be governed by court rules and laws applicable to records of the judiciary and not the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code).

For the purposes of Sections 6007, 6043, 6049, 6049.2, 6050, 6051, 6052, 6077 (excluding the first sentence), 6078, 6080, 6081, and 6082, "board" includes the State Bar Court.

Nothing in this section shall authorize the State Bar Court to adopt rules of professional conduct or rules of procedure.

The Executive Committee of the State Bar Court may adopt rules of practice for the conduct of all proceedings within its jurisdiction. These rules may not conflict with the rules of procedure adopted by the board, unless approved by the Supreme Court.

**SEC. 29.** Section 6140 is added to the Business and Professions Code, to read:

**6140.** (a) The board shall fix the annual membership fee for active members for 2018 at a sum not exceeding three hundred fifteen dollars ($315).

(b) The annual membership fee for active members is payable on or before the first day of February of each year. If the board finds it appropriate and feasible, it may provide by rule for payment of fees on an installment basis with interest, by credit card, or other means, and may charge members choosing any alternative method of payment an additional fee to defray costs incurred by that election.

(c) This section shall remain in effect only until January 1, 2019, and as of that date is repealed.

**SEC. 30.** Section 6140.02 is added to the Business and Professions Code, to read:

**6140.02.** (a) The Association shall adopt a dues schedule for membership and shall provide that schedule to the State Bar by October 1 of each year.

(b) Payment of dues for membership in the Association and individual sections of the Association is voluntary. Each member of the State Bar shall have the option of joining the Association and one or more individual sections by including the dues set by the schedule established pursuant to subdivision (a) with that State Bar member's annual membership fees. Any contribution or membership option included with a State Bar of California mandatory dues billing statement shall include a statement that the Association is not a part of the State Bar and that membership in that organization is voluntary.

(c) The State Bar shall collect, in conjunction with the collection of its annual membership fees under Section 6140, membership fees for the Association as provided by subdivision (b) of Section 6031.5.

(d) This section is not intended to limit the Association membership to members of the State Bar or restrict the Association from collecting membership dues or donations by other means.

**SEC. 31.** Section 6140.56 is added to the Business and Professions Code, to read:

**6140.56.** (a) To ensure that the Client Security Fund can adequately protect the public and relieve or mitigate financial losses caused by the dishonest conduct of members of the State Bar by paying claims in a timely manner, the State Bar shall conduct a thorough analysis of the Client Security Fund, including a review of the State Bar's oversight of the Client Security Fund, to ensure that the structure provides for the most effective and efficient operation of the fund, a determination of the ongoing needs of the fund to satisfy claims in a timely manner, a review of additional efforts that can be taken to increase the collection of payments from the responsible attorneys, and a review of other State Bar expenditures to determine whether other expenditures that do not directly impact the State Bar's public protection functions, including, but not limited to, executive salaries and benefits, can be reduced or redirected in order to better fund the Client Security Fund through existing revenue, and, whether, after all other options have been fully and thoroughly exhausted, an increase in membership dues is necessary to ensure that the Client Security Fund can timely pay claims.

(b) The State Bar shall submit a report on its analysis of the Client Security Fund to the Legislature by March 15, 2018, so that the plans can be reviewed in conjunction with the bill that would authorize the imposition of the State Bar's membership fee. The report shall be submitted in compliance with Section 9795 of the Government Code.

(c) For purposes of this section, "timely manner" means within 12 months from either the time the claim is received by the State Bar or the resolution of the underlying discipline case involving an attorney member that is a prerequisite to paying the claim, whichever is later.

**SEC. 32.** Section 6140.9 of the Business and Professions Code is amended to read:

**6140.9.** Moneys for the support of the program established pursuant to Article 15 (commencing with Section 6230) and related programs approved by the committee established pursuant to Section 6231 shall be paid in whole or part by a fee of ten dollars ($10) per active member per year, and by a fee of five dollars ($5) per inactive member per year.

The board may seek alternative sources for funding the program. Any excess funds not needed to support the program, including reserve funds, may be transferred to fund the Client Security Fund established pursuant to Section 6140.5, provided there are sufficient funds available to fully support the program.

**SEC. 33.** Section 6141.3 is added to the Business and Professions Code, to read:

**6141.3.** (a) Except as provided in subdivision (b), the State Bar shall provide offers of discounts and other benefits to active and inactive members of the State Bar, including, but not limited to, insurance and affinity programs. Any revenue generated by these programs shall be used as follows:

(1) The revenue received from the affinity programs shall support the programs of the California Bar Foundation.

(2) (A) For all other revenue received from January 1, 2018, until December 31, 2018, 50 percent of the revenue shall be used to assist the Association in transitioning to an independent entity, 25 percent of the revenue shall be distributed to qualified legal services projects and support centers as provided in Section 6216, and 25 percent shall be used to support the discipline functions of the State Bar or to support the Client Security Fund.

(B) For all other revenue received after December 31, 2018, 50 percent of the revenue shall be distributed to qualified legal services projects and support centers as provided in Section 6216, and 50 percent of the revenue shall be used to support the discipline functions of the State Bar or to support the Client Security Fund.

(b) Notwithstanding subdivision (a), if approved by the board of trustees and the California Bar Foundation, the State Bar may transfer administration of the programs offering discounts and other benefits to active and inactive members of the State Bar under subdivision (a) to the California Bar Foundation provided that any revenue received, less the administrative costs of the California Bar Foundation in operating the program, shall be distributed as follows on and after January 1, 2019:

(1) All of the revenue received from the affinity programs shall be kept by the California Bar Foundation, which shall distribute 50 percent of that revenue to support the programs of the California Bar Foundation and 50

Add_058

percent of that revenue to qualified legal services projects and support centers as provided in Section 6216.

(2) For all other revenue received, 50 percent of the revenue shall be kept by the California Bar Foundation, which shall distribute 50 percent of that revenue to support the programs of the California Bar Foundation and 50 percent of that revenue to qualified legal services projects and support centers in accordance with the formula provided in Section 6216, and 50 percent of the revenue shall be used to support the discipline functions of the State Bar or to support the Client Security Fund.

(c) Given the public protection mission of the State Bar, the Legislature finds that it would be inappropriate for the State Bar to administer the program on a long-term basis. Therefore, should the program continue to operate after December 31, 2018, it is the intent of the Legislature that the program be administered by an entity other than the State Bar.

**SEC. 34.** Section 6144 of the Business and Professions Code is amended to read:

**6144.** (a) All fees shall be paid into the treasury of the State Bar, and, when so paid, shall become part of its funds.

(b) Notwithstanding subdivision (a) and consistent with the reimbursement requirement under Section 6031.5, all fees paid pursuant to Section 6140.02 shall be paid by the State Bar to the Association, and, when paid, shall become part of the funds of the Association.

**SEC. 35.** Section 6144.1 of the Business and Professions Code is amended to read:

**6144.1.** The net proceeds from the sale of real property, after payment of obligations and encumbrances and reasonable costs of acquiring and relocating its facilities, if any, shall be held by the State Bar without expenditure or commitment for any purpose until approved by the Legislature by statute. The net proceeds from the lease of real property, after payment of obligations and encumbrances and reasonable costs of acquiring and relocating its facilities, if any, shall be used by the State Bar for the protection of the public.

**SEC. 36.** Section 6145 of the Business and Professions Code is amended to read:

**6145.** (a) The board shall engage the services of an independent national or regional public accounting firm with at least five years of experience in governmental auditing for an audit of its financial statement for each fiscal year. The financial statement shall be promptly certified under oath by the treasurer of the State Bar, and a copy of the audit and financial statement shall be submitted within 120 days of the close of the fiscal year to the board, to the Chief Justice of the Supreme Court, and to the Assembly and Senate Committees on Judiciary.

The audit also shall examine the receipts and expenditures of the State Bar to ensure that the funds collected on behalf of the Conference of Delegates of California Bar Associations as the independent successor entity to the former Conference of Delegates of the State Bar are conveyed to that entity, that the State Bar has been paid or reimbursed for the full cost of any administrative and support services provided to the successor entity, including the collection of fees or donations on its behalf, and that no mandatory dues are being used to fund the activities of the successor entity.

In selecting the accounting firm, the board shall consider the value of continuity, along with the risk that continued long-term engagements of an accounting firm may affect the independence of that firm.

(b) The board shall contract with the California State Auditor's Office to conduct a performance audit of the State Bar's operations from July 1, 2000, to December 31, 2000, inclusive. A copy of the performance audit shall be submitted by May 1, 2001, to the board, to the Chief Justice of the Supreme Court, and to the Assembly and Senate Committees on Judiciary.

Every two years thereafter, the board shall contract with the California State Auditor's Office to conduct a performance audit of the State Bar's operations for the respective fiscal year, commencing with January 1, 2002, to December 31, 2002, inclusive. A copy of the performance audit shall be submitted within 120 days of the close of the fiscal year for which the audit was performed to the board, to the Chief Justice of the Supreme Court, and to the Assembly and Senate Committees on Judiciary.

For the purposes of this subdivision, the California State Auditor's Office may contract with a third party to conduct the performance audit. This subdivision is not intended to reduce the number of audits the California State Auditor's Office may otherwise be able to conduct.

(c) Effective January 1, 2016, the board shall contract with the California State Auditor's Office to conduct an in-depth financial audit of the State Bar, including an audit of its financial statement, internal controls, and relevant management practices. The contract shall include reimbursement for the California State Auditor's Office for the costs of conducting the audit. The audit shall, at a minimum, examine the revenues, expenditures, and reserves of the State Bar, including all fund transfers. The California State Auditor's Office shall commence the audit no later than January 1, 2016, and a copy of the audit shall be submitted by May 15, 2016, to the board, the Chief Justice of the Supreme Court, and to the Assembly and Senate Committees on Judiciary. The audit shall be submitted in compliance with Section 9795 of the Government Code. This subdivision shall cease to be operative January 1, 2017.

**SEC. 37.** Section 6232 of the Business and Professions Code is amended to read:

**6232.** (a) The committee shall establish practices and procedures for the acceptance, denial, completion, or termination of attorneys in the Attorney Diversion and Assistance Program, and may recommend rehabilitative criteria for adoption by the board for acceptance, denial, completion of, or termination from, the program.

(b) An attorney currently under investigation by the State Bar may enter the program in the following ways:

(1) By referral of the Office of the Chief Trial Counsel.

(2) By referral of the State Bar Court following the initiation of a disciplinary proceeding.

(3) Voluntarily, and in accordance with terms and conditions agreed upon by the attorney participant with the Office of the Chief Trial Counsel or upon approval by the State Bar Court, as long as the investigation is based primarily on the self-administration of drugs or alcohol or the illegal possession, prescription, or nonviolent procurement of drugs for self-administration, or on mental illness, and does not involve actual harm to the public or his or her clients. An attorney seeking entry under this paragraph may be required to execute an agreement that violations of this chapter, or other statutes that would otherwise be the basis for discipline, may nevertheless be prosecuted if the attorney is terminated from the program for failure to comply with program requirements.

(c) Neither acceptance into nor participation in the Attorney Diversion and Assistance Program shall relieve the attorney of any lawful duties and obligations otherwise required by any agreements or stipulations with the Office of the Chief Trial Counsel, court orders, or applicable statutes relating to attorney discipline.

(d) An attorney who is not the subject of a current investigation may voluntarily enter, whether by self-referral or referral by a third party, the diversion and assistance program on a confidential basis and such information shall not be disclosed pursuant to any state law, including, but not limited to, the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code). Confidentiality pursuant to this subdivision shall be absolute unless waived by the attorney.

(e) By rules subject to the approval of the board and consistent with the requirements of this article, applicants who are in law school or have applied for admission to the State Bar may enter the program.

**SEC. 38.** The State Bar shall adhere to a Supreme Court-approved policy to identify and address any proposed decision of the board of trustees of the State Bar that raises antitrust concerns, including a procedure for submitting any such proposed decisions to the California Supreme Court for the Supreme Court to review prior to implementation and for processing complaints from the public about antitrust issues.

**SEC. 39.** The Legislature finds and declares that Sections 19 and 28 of this act, which amend Sections 6026.7 and 6086.5 of the Business and Professions Code, impose a limitation on the public's right of access to the meetings of public bodies or the writings of public officials and agencies within the meaning of Section 3 of Article I of the California Constitution. Pursuant to that constitutional provision, the Legislature makes the following findings to demonstrate the interest protected by this limitation and the need for protecting that interest:

In order to protect the decisionmaking process of the State Bar Court in a manner that is similar to the deliberative functions of other courts and in order to ensure that personal or sensitive information regarding discipline by the State Bar Court is kept confidential, including for persons participating in discussions and offers of settlement pursuant to arbitration or mediation, it is necessary to exempt the State Bar Court from the provision of the Bagley-Keene Open Meeting Act and the California Public Records Act.

**SEC. 40.** The Legislature finds and declares that in order to assist the State Bar in fulfilling its licensing and regulatory duties and its duty to protect the public, the Sections of the State Bar and the California Young Lawyers Association are properly separated into an independent nonprofit organization and that these amendments serve a public purpose.

West's Annotated California Codes
  Constitution of the State of California 1879 (Refs & Annos)
    Article VI. Judicial (Refs & Annos)

West's Ann.Cal.Const. Art. 6, § 9

## § 9. State Bar; public corporation; membership

Currentness

Sec. 9. The State Bar of California is a public corporation. Every person admitted and licensed to practice law in this State is and shall be a member of the State Bar except while holding office as a judge of a court of record.

**Credits**

(Adopted Nov. 8, 1966.)

Notes of Decisions (11)

West's Ann. Cal. Const. Art. 6, § 9, CA CONST Art. 6, § 9
Current with urgency legislation through Ch. 239 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                                         © 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2022 Thomson Reuters. No claim to original U.S. Government Works.      Add_062   1

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 20-17316

I am the attorney or self-represented party.

**This brief contains** | 13,971 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [            ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Brady R. Dewar | **Date** | Sep 12, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/2018*