**No. 20-17316**

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

BENJAMIN KOHN,
*Plaintiff and Appellant*,

v.

STATE BAR OF CALIFORNIA, CALIFORNIA COMMITTEE OF BAR
EXAMINERS, and THEIR AGENTS IN THEIR OFFICIAL CAPACITY,
*Defendants and Appellees*.

_____

On Appeal from the Judgment of the United States
District Court for the Northern District of California
The Honorable Phyllis J. Hamilton
District Court Case Number: 4:20-cv-04827-PJH

_____

**PRO BONO**

**APPELLANT'S REPLACEMENT REPLY BRIEF**

MICHAEL YAMAMOTO LLP
Gregory R. Michael (SBN: 306814)
greg@my.law
Dorothy C. Yamamoto (SBN: 306817)
dorothy@my.law
1400 Shattuck Ave., #412
Berkeley, CA 94709
Phone: 510.296.5600
Fax: 510.296.5600

*Attorneys for Plaintiff-Appellant Benjamin Kohn*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................v

INTRODUCTION ...................................................................................1

THE STATE BAR'S ADDITIONS, OMISSIONS, AND
MISCHARACTERIZATIONS OF FACT ................................................1

ARGUMENT .........................................................................................4

I.     THE STATE BAR CANNOT INVOKE SOVEREIGN IMMUNITY
       BECAUSE IT IS NOT AN ARM OF THE STATE. ....................................4

       A.     The State Bar Is Not Entitled to Sovereign Immunity under
              this Court's *Mitchell* Test. ........................................................4

       B.     This Court's *Hirsh* and *Lupert* Decisions Do Not Render the
              State Bar an Arm of the State for Any, Let Alone All,
              Purposes. ....................................................................................8

       C.     The State Bar's Proposed Sovereign Immunity Test Conflicts
              with Supreme Court Precedent and, in any Event, Cannot Be
              Adopted Without En Banc Review. .............................................9

       D.     Even under the State Bar's Newly Fashioned Test, the State
              Bar Fails to Carry Its Burden of Establishing Sovereign
              Immunity. ..................................................................................11

II.    THE DISTRICT COURT ERRED BY DISMISSING KOHN'S
       CLAIMS UNDER TITLE II OF THE ADA. ............................................11

       A.     Even if the State Bar Is an Arm of the State, Congress
              Abrogated State Sovereign Immunity for Liability Arising
              Under Title II. ...........................................................................11

              1.     *Georgia* does not disturb this Court's earlier holdings
                     regarding Title II abrogation. ..........................................12

              2.     The class of conduct at issue here falls within Congress's
                     zone of permissible prophylactic abrogation. ..................13

iii

3. The State Bar violated Kohn's Fourteenth Amendment rights..........................................................................................14

B. Kohn's First Amended Complaint Adequately Pled Violations of Title II..............................................................17

C. Kohn Sufficiently Pled Deliberate Indifference..................................19

III. THE STATE BAR IS SUBJECT TO THE REHABILITATION ACT. ......21

A. The State Bar's Receipt of Federal Financial Assistance Is Properly Reviewed Under Rule 12(b)(6), Not Rule 12(b)(1). ............21

B. Kohn Sufficiently Pled the State Bar Received Federal Funding for Purposes of Rule 12(b)(6). ................................22

C. Dismissal of Kohn's Rehabilitation Act Claims Was Nevertheless Improper Under Rule 12(b)(1). ....................................23

IV. THE UNRUH ACT APPLIES TO THE STATE BAR'S ACTIONS. .........26

V. AT A MINIMUM, THE DISTRICT COURT SHOULD HAVE GRANTED KOHN LEAVE TO AMEND HIS COMPLAINT. .................28

CONCLUSION ........................................................................................30

CERTIFICATE OF COMPLIANCE......................................................31

CERTIFICATE OF SERVICE ...............................................................32

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*,
5 F.3d 378 (9th Cir. 1993). ....................................................5

*Arbogast v. Kansas*,
789 F.3d 1174 (10th Cir. 2015). ...........................................24

*Ass'n for Disabled Americans v. Fla. Intern. Univ.*,
405 F.3d 954 (11th Cir. 2005). .............................................13

*Bd. of Trustees of Univ. of Alabama v. Garrett*,
531 U.S. 356 (2001)...............................................................12

*Beentjes v. Placer Cnty. Air Pollution Control Dist.*,
397 F.3d 775 (9th Cir. 2005). ............................... 5, 6, 9, 10

*Belanger v. Madera Unified Sch. Dist.*,
963 F.2d 248 (9th Cir. 1992). ..........................................5, 26

*Bell v. Hood*,
327 U.S. 678 (1946)...............................................................22

*Bishop v. Smith*,
760 F.3d 1070 (10th Cir. 2014). ...........................................16

*Bowers v. National Collegiate Athletic Ass'n*,
475 F.3d 524 (3rd Cir. 2007). ....................................... 10, 13

*Bragdon v. Abbott*,
524 U.S. 624 (1998)...............................................................21

*Brennon B. v. Superior Court*,
13 Cal. 5th 662 (2022). ................................................. 26, 27

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
473 U.S. 432 (1985)...............................................................16

v

*Clark v. State of Cal.*,
123 F.3d 1267 (9th Cir. 1997). ............................................................25

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
527 U.S. 666 (1999). ............................................................................26

*Conn v. Gabbert*,
526 U.S. 286 (1999). ................................................................... 14, 16

*Constantine v. Rectors & Visitors of George Mason Univ.*,
411 F.3d 474 (4th Cir. 2005). .............................................................13

*Cooter Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990). ............................................................................28

*Craigmilles v. Giles*,
312 F.3d 220 (6th Cir. 2002). .............................................................16

*Crowe v. Oregon State Bar*,
989 F.3d 714 (9th Cir. 2021). ...................................................... 4, 5, 7

*Dist. of Columbia Ct. of App. v. Feldman*,
460 U.S. 462 (1983). ..............................................................................6

*Doe One v. CVS Pharmacy, Inc.*,
No. 18-CV-01031-EMC, 2022 WL 3139516 (N.D. Cal. Aug. 5, 2022)............23

*Douglas v. California Dep't of Youth Auth.*,
271 F.3d 812 (9th Cir. 2001). .............................................................25

*Duvall v. Cnty. of Kitsap*,
260 F.3d 1124 (9th Cir. 2001). ................................................. 20, 21, 22

*Eason v. Clark Cnty. School Dist.*,
303 F.3d 1137 (2002)................................................................... 4, 9, 10

*Enyart v. Nat'l Conf. of Bar Examiners, Inc.*,
630 F.3d 1153 (9th Cir. 2011). ..............................................................7

*Federal Maritime Comm'n v. South Carolina State Ports Authority*,
535 U.S. 743 (2002)..............................................................................10

*Gabbert v. Conn*,
   131 F.3d 793 (9th Cir. 1997). ...............................................................14

*Giannini v. Comm. of Bar Examiners of State Bar of California*,
   847 F.2d 1434 (9th Cir. 1988). ..............................................................6

*Gibson v. Cnty. of Riverside*,
   181 F. Supp. 2d 1057 (C.D. Cal. 2002). ...............................................27

*Gordon v. State Bar of California*,
   20-cv-06442-LB, 2020 WL 5816580 (N.D. Cal., Sept. 30). ...............19

*Hart v. Massanari*,
   266 F.3d 1155 (9th Cir. 2001). ..............................................................10

*Haybarger v. Lawrence Cnty. Adult Prob. & Parole*,
   551 F.3d 193 (3rd Cir. 2008). ...............................................................24

*Hess v. Port Auth. Trans-Hudson Corp.*,
   513 U.S. 30 (1994). .................................................................................9

*Hirsh v. Justices of Supreme Court of the State of California*,
   67 F.3d 708 (9th Cir. 1995). ...................................................................8

*Holz v. Nenana City Pub. Sch. Dist.*,
   347 F.3d 1176 (9th Cir. 2003). ..............................................................10

*In re Plant Insulation Co.*,
   734 F.3d 900 (9th Cir. 2013). ................................................................17

*In re Rose*,
   993 P. 2d 956 (Cal. 2000). .......................................................................7

*Isbister v. Boys' Club of Santa Cruz*,
   40 Cal. 3d 72 (1985). .............................................................................27

*ITSI T.V. Prods., Inc. v. Agric. Ass'ns*,
   3 F.3d 1289 (9th Cir. 1993). ....................................................................4

*K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*,
   725 F.3d 1088 (9th Cir. 2013). ..............................................................18

*Kastigar v. U.S.*,
   406 U.S. 441 (1972)...................................................................................8

*Keller v. State Bar of California*,
   496 U.S. 1 (1990)......................................................................................8

*Konig v. State Bar of California*,
   No. C 04-2210 MJJ, 2004 WL 2091990 (N.D. Cal. Sept. 16, 2004). ................9

*L.A. Cnty. Metropolitan Transportation Auth. v. Superior Court*,
   123 Cal. App. 4th 261 (2004). ...................................................................27

*Langston By and Through Langston v. ACT*,
   890 F.2d 380 (11th Cir. 1989). ....................................................................7

Lentini v. Cal. Ctr. for the Arts,
   370 F.3d 837 (9th Cir. 2004). ....................................................................28

*Lovell v. Chandler*,
   303 F.3d 1039 (9th Cir. 2002). ............................................................. 22, 25

*Lupert v. California State Bar*,
   761 F.2d 1325 (9th Cir. 1985). ....................................................................8

*Maloney v. SSA*,
   517 F.3d 70 (2d Cir. 2008). .......................................................................25

*Marshall v. McMahon*,
   17 Cal. App. 4th 1841 (1993). ...................................................................22

*Mathews v. Eldridge*,
   424 U.S. 319 (1976).................................................................................15

*Merrifield v. Lockyer*,
   547 F.3d 978 (9th Cir. 2008). ....................................................................16

*Mitchell v. L.A. Cmty. Coll. Dist.*,
   861 F.2d 198 (9th Cir. 1988). ..................................................................4, 8

*Morrowatti v. State Bar of California*,
   No. B196392 (Cal. Ct. App. Dec. 27, 2007). ................................................6

viii

*Munson v. Del Taco, Inc.*,
   46 Cal. 4th 661 (2009). ......................................................................28

*Nat'l Ass'n of the Deaf v. Florida*,
   980 F.3d 763 (11th Cir. 2020). ................................................. 13, 14

*Obrien v. Jones*, 999 P. 2d 95 (Cal. 2000). .................................................7

*Patel v. Texas Dep't of Licensing*,
   58 Tex. Sup. Ct. J. 1298 (Tex. 2015).................................................16

*Pell v. Nunez*,
   No. 2:22-CV-3732-MWF-RAO (C.D. Cal. Aug. 23, 2022).............................27

*Phiffer v. Columbia River Corr. Inst.*,
   384 F.3d 791 (9th Cir. 2004). ........................................... 12, 13, 25

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004). ...........................................................21

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*,
   343 F.3d 1036 (9th Cir. 2003). .......................................................5, 10

*Schware v. Bd. of Bar Exam. of State of N.M.*,
   353 U.S. 232 (1957).............................................................. 14, 16

*Seminole Tribe of Fla. v. Fla.*,
   517 U.S. 44 (1996)............................................................................10

*Sharer v. Oregon*,
   581 F.3d 1176 (9th Cir. 2009). .........................................................23

*Sheller v. Superior Court*,
   71 Cal. Rptr. 3d 207 (Cal. 2008). .......................................................7

*St. Joseph Abbey v. Castille*,
   712 F.3d 215 (5th Cir. 2013). ............................................................16

*Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*,
   711 F.2d 138 (9th Cir. 1983). ............................................................21

*T.W. v. New York State Bd. of L. Examiners*,
   996 F.3d 87 (2d Cir. 2021). ...............................................................25

*Tennessee v. Lane*,
   541 U.S. 509 (2004)................................................................ 12, 13

*Thomlison v. City of Omaha*,
   63 F.3d 786 (8th Cir. 1995). ................................................24

*Toledo v. Sanchez*,
   454 F.3d 24 (1st Cir. 2006)................................................13

*Tritchler v. Cnty. of Lake*,
   358 F.3d 1150 (9th Cir. 2004). ..........................................25

*U.S. v. Georgia*,
   546 U.S. 151 (2006)............................................................12

*Updike v. Multnomah Cty.*,
   870 F.3d 939 (9th Cir. 2017). ............................................21

*Warfield v. Peninsula Golf & Country Club*,
   10 Cal. 4th 594 (1995). .....................................................27

*Windsor v. United States*,
   699 F.3d 169 (2d Cir. 2012). .............................................16

## STATUTES

29 U.S.C. § 794(b)(1)(B). .......................................................23

42 U.S.C. § 2000d–7(a). .........................................................25

Cal. Bus. & Prof. Code § 6060. ..............................................13

Cal. Bus. & Prof. Code § 6213(j)............................................29

Cal. Civ. Code § 51.................................................................26

## RULES

Cal. Rules of Ct., rule 9.13(d)................................................11

Fed. R. App. P., 35(c). ....................................................... 10, 13

Fed. R. Civ. P. 12(b)(1)..........................................................25

State Bar Rule 1.2. ................................................................................7

State Bar Rule 4.160(D)(4)(d). ............................................................13

## REGULATIONS

45 C.F.R. § 84.3(f). ............................................................................23

45 C.F.R. § 84.3(h). ....................................................................... 24, 29

**INTRODUCTION**

Appellees the State Bar of California and Committee of Bar Examiners'
(collectively, the "State Bar") arbitrary, cumbersome, and discriminatory process
for requesting disability accommodations on the California Bar Exam involves
ignoring treating physician reports; allowing the State Bar to deny requests without
meaningful explanation; failing to meet to meet its self-imposed "deadlines;" and,
as illustrated by the record of this case, are designed to evade injunctive remedies
as unripe until just before they become moot, relegating the State Bar's victims to
the damages remedy it simultaneously alleges sovereign immunity bars—which
caused Kohn substantial compensable harm. The State Bar's unreliable execution
of these facially flawed practices and procedures violate Title II of the Americans
with Disabilities Act, Section 504 of the Rehabilitation Act, and California's
Unruh Act, for which the State Bar is not immune.

**THE STATE BAR'S ADDITIONS, OMISSIONS, AND
MISCHARACTERIZATIONS OF FACT**

Kohn urges this Court to scrutinize carefully any factual representation made
in the State Bar's Replacement Answering Brief ("RAB") on which the Court
intends to rely.

**First**, the State Bar relies on "facts" not pled in Kohn's First Amended
Complaint ("FAC"), including: (i) the State Bar's "voluntary reform" efforts, RAB

1

p.1, 32 fn.23;[1] (ii) facts adduced from *Gordon et al. v. State Bar et. al.*, No. 20-CV-06442-LB, 2020 WL 5816580 (N.D. Cal. Sept. 30, 2020), RAB pp.11, 31 fn.22, 34, 39; (iii) a purported "lack of proven need" for certain accommodations, the existence of equally effective and less costly alternatives, and concerns over the integrity of the exam, RAB p.31; (iv) that certain accommodations were "effectively granted" after Kohn filed his FAC, RAB p.39; (v) that the monetary, physical, and emotional harm Kohn suffered was somehow negated by his later admission to the bar, RAB p.11; (vi) that the State Bar's 60-150 days of non-collaborative review is appropriate under normal circumstances, RAB p.40.

**Second**, the State Bar's factual recitations omit, for example: (i) that Kohn was extraordinarily diligent in seeking accommodations, submitting his requests weeks or months before the deadline to do so and without waiting for the results from the previous exam, RAB pp.6-11, 2-ER-33-37; 3-ER-346-349, 436-475, 540-565; 4-ER-644-651; 5-ER-973-977; (ii) that Kohn's March 19, 2020 submission had already been pending for 77 days when Kohn made his June 4, 2020 supplemental submission, 2-ER-40-59; 3-ER-345-349; 4-ER-644-651; (iii) key

---

[1] Such efforts merely obscure the detrimental impact the State Bar's separately pursued rule changes will have on those seeking disability accommodations. The nearly six hours of negative public feedback the State Bar received at the June 29, 2022, forum, RAB p.32 fn.23, underscores the extent of the State Bar's abuses: https://youtu.be/vSakD1D4Q6c.

records Kohn submitted for the February 2020 exam, 6-ER-1204-1207, and October 2020 exam, 5-ER-979-980, 3-ER-341-342;[2] (iv) that the State Bar assumed, without reevaluating, that earlier accommodation decisions pertaining to unrelated multiple-choice exams were adequate (they were not) (e.g., SAT, LSAT, etc.), 2-ER-51-52, 3-ER-367–78;[3] and (v) that the Iowa Bar ensured Kohn had a specially trained proctor *without* Kohn needing to request it and affirmatively provided Kohn with ergonomic equipment, 2-ER-282-83.[4]

**Third**, the State Bar misstates or mischaracterizes key facts, including, *inter alia*, by: (i) citing its procedural rules as if it actually complies with them, RAB p.5; (ii) adopting the district court's incorrect perceptions that: (a) Kohn failed to seek pandemic-related accommodations from the State Bar in the first instance (he did), SER-35-36, 2-ER-279, 3-ER-346–59, 527–65; (b) that the State Bar's denial letters accurately reflect Kohn's requested accommodations (they do not), *id.*, and (c) that Kohn's requests for the October 2020 exam were not updated as the pandemic unfolded (they were), *id.*, 1-ER-5:3-5; (iii) exaggerating the amount of

---

[2] The State Bar also obscured the existence of key records at the district court. 4-ER-788–5-ER-977 (Lisa Cummins' declaration omitted these materials).

[3] The Bar Exam has a substantial written component for which Kohn required additional time.

[4] The Iowa Bar improperly denied Kohn certain other accommodations.

material the State Bar was asked to review;[5] and (iv) falsely labeling Kohn's

August 5, 2020 addendum as an "[a]ppeal to CBE," despite Kohn having no such

opportunity to appeal, 3-ER-345-88.

## ARGUMENT

## I.   THE STATE BAR CANNOT INVOKE SOVEREIGN IMMUNITY BECAUSE IT IS NOT AN ARM OF THE STATE.

### A.   The State Bar Is Not Entitled to Sovereign Immunity under this Court's *Mitchell* Test.

The State Bar failed to carry its burden of proof under the five-factor

framework established by *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201

(9th Cir. 1988). *See also Crowe v. Oregon State Bar*, 989 F.3d 714, 731 (9th Cir.

2021); *ITSI T.V. Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 1292 (9th Cir. 1993).

The State Bar concedes that the "most important" first *Mitchell* factor—whether a

money judgment would be satisfied with funds from the State treasury—and the

last three factors, as traditionally applied, militate against a finding of sovereign

immunity. RAB at pp.23, 25. These concessions alone demonstrate that the State

Bar is not entitled to sovereign immunity. *See Eason v. Clark Cnty. School Dist.*,

303 F.3d 1137, 1141 (2002); ROB at pp.16–23.

---

[5] Due to the uncertain nature of the October 2020 exam, Kohn was forced to initiate two separate accommodation processes and submitted the relevant—but nonetheless identical—material applicable to both sets of requests. 3-ER-345-611.

The only disputed factor, the second *Mitchell* factor, requires a far more exacting analysis than the State Bar's conclusory assertion that its "regulatory activities such as admissions and discipline [constitute] 'core' government functions." RAB p.23. Specifically, whether the State Bar's "particular function[s]"[6] at issue in this case address "a matter of statewide rather than local or municipal concern," *see Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 253 (9th Cir. 1992), and "the extent to which the state exercises centralized governmental control over the entity." *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1044 (9th Cir. 2003); *see also Beentjes v. Placer Cnty. Air Pollution Control Dist.*, 397 F.3d 775, 782 (9th Cir. 2005); *Crowe*, 989 F.3d at 732.[7]

Here, the State Bar's failure to adequately accommodate Kohn on the Bar Exam is not a "core government function" within the meaning of *Mitchell*. Such decisions are not matters of statewide or municipal concern, nor are they binding

---

[6] *Ray v. Cnty. of Los Angeles*, 935 F.3d 703, 710 (9th Cir. 2019) (citing *Streit v. Cnty. of Los Angeles*, 236 F.3d 552 (9th Cir. 2001)).

[7] This Court's decision in *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378 (9th Cir. 1993) does not support the State Bar's position that the second *Mitchell* factor can neutralize the first. *Id.* at 381 (relying on Alaska statute declaring the railroad an "essential function of the state" in light of unique geographical considerations). The State Bar's activities lack such essential or unique characteristics.

on the California Supreme Court. *See id.* at 732; *Beentjes*, 397 F.3d at 782. Moreover, the State Bar's consistently-delayed processing of Kohn's accommodation requests denied him any meaningful opportunity to seek review from the California Supreme Court, which, in any event, that Court is not mandated to provide.[8] *See* ROB at pp.6–7, 11; 2-ER-294:19–23. The State Bar's actions were therefore insulated from State oversight, weighing strongly against sovereign immunity.

This result is unchanged even if the State Bar's "particular function" is viewed broadly as its administration of the Bar Exam. The Bar Exam is merely one aspect of the State Bar's process of recommending to the California Supreme Court the admission of certain applicants to the bar. *See Giannini v. Comm. of Bar Examiners of State Bar of California*, 847 F.2d 1434, 1435 (9th Cir. 1988). The exam is not itself required by the California Constitution or state law,[9] and it is

---

[8] Under the Feldman-Rooker Doctrine, the California Supreme Court's denial of a petition for discretionary review deprives this Court, the federal district court, and all other California courts of subject matter jurisdiction. *See Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462 (1983); *Morrowatti v. State Bar of California*, No. B196392 (Cal. Ct. App. Dec. 27, 2007) .

[9] *See* SarkarLaw Amicus Brief, Dkt.52-2, p.11 (discussing Blue Ribbon Commission).

also essentially self-funded through exam fees. As such, the State Bar's administering of the Bar Exam is not a "core government function."[10]

This Court's determination in *Crowe* that the Oregon State Bar's functions are "essentially advisory in nature," *Crowe*, 989 F.3d at 731, was not based on the Oregon bar's "nomenclature" or "trade association features"—as the State Bar incorrectly argues, RAB pp.25-27—but on the fact that the Oregon Supreme Court "makes final decisions on admitting attorneys, disciplining attorneys, and adopting rules of professional conduct." *Id.* at 732. The same is true for the State Bar and its relationship to the California Supreme Court. *See* State Bar Rule 1.2; *Obrien v. Jones*, 999 P. 2d 95, 100 (Cal. 2000); *In re Rose*, 993 P. 2d 956, 960 (Cal. 2000); *Sheller v. Superior Court*, 71 Cal. Rptr. 3d 207, 215 (Cal. 2008). Accordingly, this Court should reach the same conclusion.[11]

---

[10] Common sense supports this conclusion. *See, e.g.*, *Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, 630 F.3d 1153, 1156 (9th Cir. 2011) (applying Title III to the National Conference of Bar Examiners, a non-government entity that administers standardized bar tests); *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251 (3d Cir. 2020); *Langston By and Through Langston v. ACT*, 890 F.2d 380, 385 (11th Cir. 1989); *Johnson v. Educ. Testing Serv.*, No. C-13-3660 SBA, 2013 WL 4711611, at *14 (N.D. Cal. Aug. 30, 2013).

[11] The State Bar filed an amicus brief in *Crowe* in which it failed to convince this Court to adopt a bright-line rule based on the same distinction it presses here, between non-integrated and integrated bars. App. No. 19-35463, Dkt. 27-1, p.12. Such analysis is instructive (not determinative), and the State Bar continues to

**B.      This Court's *Hirsh* and *Lupert* Decisions Do Not Render the State Bar an Arm of the State for Any, Let Alone All, Purposes.**

The State Bar's reliance on *Hirsh v. Justices of Supreme Court of the State of California*, 67 F.3d 708 (9th Cir. 1995) and *Lupert v. California State Bar*, 761 F.2d 1325, 1327 (9th Cir. 1985) is misplaced. RAB p.16. *Hirsh*—which, in any event, did not address the State Bar's attorney admission functions—neither cites *Mitchell*, nor engages with its analysis, because the State Bar's entitlement to sovereign immunity was not contested by the parties. The Court's single sentence referring to the State Bar's sovereign immunity is therefore dicta. *Hirsh*, 67 F.3d at 715; *see also Kastigar v. U.S.*, 406 U.S. 441, 455 (1972) ("broad language… unnecessary to the Court's decision…cannot be considered binding authority."); RAB p.16, fn.10. Accordingly, *Hirsh* is neither binding, nor instructive on the issues presently before this Court.

*Lupert* was decided prior to *Mitchell*, which therefore constitutes intervening precedent. *Mitchell*, 861 F.2d at 201. *Lupert* did not establish a Circuit rule for determining whether an entity is deemed an arm of the state. *Mitchell* did, and the

---

engage in all the same activities the U.S. Supreme Court observed in *Keller v. State Bar of California*, 496 U.S. 1, 13 (1990), when it held that the State Bar was an "integrated bar," including by: filing amicus briefs; lobbying the California Legislature; sending delegates to conferences; offering some of its own educational programs; seeking changes to the rules of professional conduct; recommending disciplinary actions; and collecting mandatory annual dues.

Court should apply *Mitchell* to evaluate (for the first time) whether the State Bar is an arm of the state under current Circuit law.[12] That district courts have relied on *Hirsh* or *Lupert* to avoid applying *Mitchell* to the State Bar, serves only to highlight the need for clarification from this Court. *See, e.g.*, *Konig v. State Bar of California*, No. C 04-2210 MJJ, 2004 WL 2091990, at *3 (N.D. Cal. Sept. 16, 2004).

**C.    The State Bar's Proposed Sovereign Immunity Test Conflicts with Supreme Court Precedent and, in any Event, Cannot Be Adopted Without En Banc Review.**

There is no question that "the vulnerability of the [s]tate's purse [i]s the most salient factor in Eleventh Amendment determinations." *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994) ("[T]he vast majority of Circuits . . . have generally accorded this factor dispositive weight."); *see also Eason*, 303 F.3d at 1141 (recognizing the first *Mitchell* factor as the "most important"); *Beentjes*, 397 F.3d at 778 ("predominate factor"). To diminish the importance of the first

---

[12] The State Bar's purported "transition" away from being an integrated bar in 2017 is another, independent justification for this Court to assess the State Bar's status. RAB pp.3-4.

*Mitchell* factor would obliterate this long-settled and broadly-shared understanding.[13]

Furthermore, *Mitchell*'s second factor—whether the state agency performs "central government functions"—already requires an assessment of "the extent to which the state exercises centralized governmental control over the entity." *Savage*, 343 F.3d at 1044. As such, the State Bar's proposed third factor—an ad hoc analysis regarding centralized state control—is entirely duplicative of the second factor. By extension, the final three *Mitchell* factors are not, as the State Bar argues, "simply three specific examples" of an "entity's degree of independence from centralized state control." RAB p.19. In any event, the State Bar's proposed changes may only properly be addressed upon en banc review, which the State Bar has not requested. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001); Fed. R. App. P., 35(c).

---

[13] The U.S. Supreme Court's decisions in *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58 (1996) and *Federal Maritime Comm'n v. South Carolina State Ports Authority*, 535 U.S. 743, 760 (2002) are entirely consistent with *Mitchell*. The out-of-Circuit decisions cited by the State Bar, RAB p.18, do not persuade otherwise. *Compare Bowers v. National Collegiate Athletic Ass'n*, 475 F.3d 524, 546 & fn. 24 (3rd Cir. 2007) (recognizing that an entity's legal liability is not the focus of inquiry, but rather "its ability or inability to require a third party to reimburse it") *with Eason*, 303 F.3d at 1142 (same); *see also Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176, 1182 (9th Cir. 2003).

**D.    Even under the State Bar's Newly Fashioned Test, the State Bar Fails to Carry Its Burden of Establishing Sovereign Immunity.**

The State Bar is afforded ample discretion when deciding whether or how to accommodate bar applicants. An aggrieved applicant does not have the right to seek mandatory review by the California Supreme Court. *See supra*, fn.9. The State Bar's unreasonable processes frustrates each applicant's ability to seek even discretionary review from that Court. Cal. Rules of Ct., rule 9.13(d) (requiring a minimum of 65 days); SER-42:8-14; *see also* 5-ER-936 (accommodation decision issued one week before the February 2019 exam); 5-ER-973 (communicating with Kohn about his requests less than two weeks before the February 2020 exam); 2-ER-315 (decision issued 39 days before the October 2020 exam); *infra*, Section II(A)(3). As such, the State Bar cannot fairly claim that it is subject to centralized state government control.[14]

## II.    THE DISTRICT COURT ERRED BY DISMISSING KOHN'S CLAIMS UNDER TITLE II OF THE ADA.

**A.    Even if the State Bar Is an Arm of the State, Congress Abrogated State Sovereign Immunity for Liability Arising Under Title II.**

This Court should not revisit its repeated holdings that state sovereign immunity was validly abrogated as to all claims arising under Title II. RAB pp.28–

---

[14] While there are procedural rules for the State Bar to move for the admission of applicants or to amend rules, there are also procedural rules for every other party wishing to seek an order from the California Supreme Court. *See* RAB pp.24-25.

29, 34–37; *Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791, 792 (9th Cir. 2004).

       **1.**     ***Georgia* does not disturb this Court's earlier holdings regarding Title II abrogation.**

The Supreme Court's decision in *U.S. v. Georgia*, 546 U.S. 151 (2006) does not "define the outer limits of Title II's valid abrogation of state sovereign immunity." *Id.* at 160 (Ginsburg, J., concurring). As such, *Georgia* does not disturb this Court's earlier holdings doing just that. *E.g.*, *Phiffer*, 384 F.3d at 792. *Georgia*'s reference to a "claim-by-claim" analysis pertains principally to its assessment of (1) the State's conduct that allegedly violates Title II, and (2) the extent to which that conduct also violates the Fourteenth Amendment. *Georgia*, 546 U.S. at 159. Where prophylactic abrogation is at issue, ROB p.26-28, the analysis remains focused on "whether Congress's purported abrogation of sovereign immunity as to that *class of conduct* is nevertheless valid." *Georgia*, 546 U.S. at 159 (emphasis added).

When this Court last held that Title II validly abrogated state sovereign immunity, it did so with this same analytical understanding. *Phiffer*, 384 F.3d at 792 (citing *Tennessee v. Lane*, 541 U.S. 509 (2004) and *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 366 (2001)). In *Phiffer*, this Court properly rejected the same argument the State Bar makes here, and reaffirmed this Court's

12

long-settled precedent. *See Phiffer*, 384 F.3d at 792. This Court should reach the same conclusion here.

> **2.** **The class of conduct at issue here falls within Congress's zone of permissible prophylactic abrogation.**

State licensing exams sit at the intersection of public education and access to the courts, two areas of law that courts have repeatedly held support the abrogation of sovereign immunity in the Title II context. *See Tennessee*, 541 U.S. at 522-33 (access to the courts); *Toledo v. Sanchez*, 454 F.3d 24, 40 (1st Cir. 2006) (public higher education); *Ass'n for Disabled Americans v. Fla. Intern. Univ.*, 405 F.3d 954, 957 (11th Cir. 2005); *Nat'l Ass'n of the Deaf v. Florida*, 980 F.3d 763 (11th Cir. 2020) (same); *Bowers*, 475 F.3d at 555-56 (education); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 490 (4th Cir. 2005) (educational testing accommodations).

The Bar Exam is a milestone in the education and training of law students. The State Bar believes that the exam ensures attorneys have the "minimally needed competence" to practice law. RAB add-48. Law schools regularly evaluate and adjust curriculum based on the content of the Bar Exam, including to maintain their accredited status with the State Bar. *See, e.g.*, State Bar Rule 4.160(D)(4)(d); Cal. Bus. & Prof. Code § 6060. Since legal education has little meaning if students are not then able to use that education to become contributing members of society, including as officers of the court, Title II should be held to validly abrogate

sovereign immunity in this context. *See Nat'l Ass'n of the Deaf*, 980 F.3d 763 at 772 (holding Title II should be applied broadly, for deterrent and remediation reasons, when barriers to education hinder individuals with disabilities from being productive members of society).

### 3. The State Bar violated Kohn's Fourteenth Amendment rights.

The State Bar now concedes that Kohn has a protected "liberty interest in having an opportunity to qualify for the practice of law," notwithstanding the district court's ruling otherwise. RAB p.33; 1-ER-13:21-25.[15] It also appears to accept, as it must, that Kohn has a protected interest in being free from state-created danger. RAB pp.33–34.

With respect to procedural due process, the State Bar contends, without citation to the record, that Kohn "received multiple opportunities to be heard" and concludes that additional process is not "constitutionally required."[16] RAB p.33. But due process requires more than just an opportunity to be heard; it requires a "meaningful" opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333

---

[15] *See also Gabbert v. Conn*, 131 F.3d 793, 800 (9th Cir. 1997) (reversed on other grounds by *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999)); *Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232, 238 (1957).

[16] The mere existence of the federal court system exists, or that the California Supreme Court *could* review an applicant's submission, does not in and of itself afford procedural due process.

(1976). The State Bar denied Kohn any such meaningful opportunity by taking months to complete what takes most other testing entities 10 days or less, 2-ER-296:6-297:2, by failing to meet even its own lackadaisical standards and issuing its decisions shortly before each exam, preventing Kohn from seeking timely relief. *See* Cal. Rules of Ct., rule 9.13; SER-42:8-14; 5-ER-936; 5-ER-973; 2-ER-315.

As for substantive due process, the State Bar did not, as it claims, "act[] reasonably" by conditioning Kohn's receipt of accommodations on him testing in person during the pandemic, even though Kohn is immunocompromised and most other applicants were allowed to take the exam remotely. Rather, it knowingly and recklessly defied the recommendations of Kohn's treating physicians and the minimally burdensome adjustments Kohn requested in light of the State Bar's insistence he test in person. 2-ER-28-29; 3-ER-393—4-ER-776. Such allegations warrant the development of the factual record, not outright dismissal.

As for equal protection, the State Bar argues that it was permitted to discriminate on account of Kohn's disabilities to the extent it had a rational basis for doing so. RAB pp.31-32. However, Kohn's right not to be placed unnecessarily in harm's way by the State Bar should not so easily be cast aside; Kohn's bodily integrity is fundamental to the precepts of liberty and is central to the Fourteenth Amendment's protections. *See* ROB pp.31-32; U.S. Const. amend. XIV. His

allegations concerning equal protection should therefore be reviewed with strict scrutiny, a standard which the State Bar has not argued it can overcome.

Even if a rational basis could theoretically justify the State Bar's discrimination, its general averment to "administrative burdens" and "maintaining the integrity of the exam" (which Kohn disputes) does not accomplish this under the Rule 12(b)(6) standard's applicable here.[17] *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985); *Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008) (professional licensing requirements "designed to favor economically certain constituents at the expense of those similarly situated" fail rational basis review); *Craigmilles v. Giles*, 312 F.3d 220 (6th Cir. 2002); *St. Joseph Abbey v. Castille*, 712 F.3d 215, 226-27 (5th Cir. 2013); *Patel v. Texas Dep't of Licensing*, 58 Tex. Sup. Ct. J. 1298 (Tex. 2015).[18] Kohn's protected interests in his statutory rights to access the Bar Exam that he was indisputably eligible to sit for, mandatory to enter his chosen profession for, and took years of study and hundreds

---

[17] This Court should apply a more searching variant of rational basis review, what some have called rational basis "with bite" because the State Bar's actions evince animus. *Bishop v. Smith*, 760 F.3d 1070, 1099 (10th Cir. 2014); *Windsor v. United States*, 699 F.3d 169, 180 (2d Cir. 2012); *Schware*, 353 U.S. at 232 (); *Conn*, 526 U.S. at 286 (same).

[18] The cases cited by the State Bar, RAB p.31, dealt with generalized challenges to licensing qualifications, not procedural due process or as-applied challenges, as is the case here.

of thousands of dollars to prepare for cannot, as a matter of law, be deemed

overridden by the State Bar's disputed factual representations.

> **B.     Kohn's First Amended Complaint Adequately Pled Violations of Title II.**

The State Bar does not substantively dispute two of the three ways that the

FAC sufficiently pleads a Title II violation. *Compare* RAB pp.37-40 (analyzing the

availability of monetary damages, but not the facial and disparate impact

violations) *with* ROB pp.37-45. Accordingly, the State Bar concedes those points,

rendering dismissal of the FAC a prejudicial error that this Court should reverse.

*See In re Plant Insulation Co.*, 734 F.3d 900, 908, fn. 5 (9th Cir. 2013).

To the extent the State Bar challenges its alleged "failure to reasonably

accommodate," the State Bar commits at least three grave errors.[19] First, the State

Bar's test for "reasonableness" confuses burden of proof with pleading standards.

*See* RAB p.38. The defendant bears the burden to prove undue burden or

---

[19] The State Bar's plainly flawed position at the district court was that "[n]either Title II nor its regulations dictates any particular process for receiving accommodation requests, any precise timeline for deciding on accommodation requests, any particular process for how such decisions should be reached, nor a requirement for how much explanation must be given about an accommodations decision to a qualified individual with a disability." 2-ER-84:4-8; *see also McGary v. City of Portland*, 386 F.3d 1259, 1261-65 (9th Cir. 2004); *Townsend v. Quasim*, 328 F.3d 511, 518 n.2 (9th Cir. 2003); *Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729 (9th Cir. 2021); *Guckenberger v. Boston Univ.*, 974 F. Supp. 106 (D. Mass. 1997) at 121, 135-144; *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807 (9th Cir. 1999).

fundamental alteration; only then does a plaintiff need to rebut such allegations on the merits at summary judgment or trial. *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1096-97 (9th Cir. 2013). The summary judgment cases cited by the State Bar do not support an alternative proposition. *See* RAB p.37-38. This Court should reject the State Bar's suggestion that Kohn must preemptively rebut the State Bar's defenses.

Second, the State Bar effectively waived any defense of undue burden or fundamental alteration. Denials of accommodation requests for such reasons "*must be accompanied by a written statement of the reasons for reaching that conclusion.*" *K.M.*, 725 F.3d at 1097 (emphasis added); *see also* 28 CFR 35.164. The State Bar did not do so for each accommodation it denied Kohn. *See* 5-ER-936; 5-ER-973; 2-ER-315. The State Bar cannot now, as an afterthought, assert undue burden or fundamental alteration, especially where it granted certain accommodations for the October 2020 exam that it had previously denied.[20]

Lastly, the State Bar inappropriately invites this Court to engage in a summary judgment-like analysis and in doing so, erroneously relies on conclusory and disputed statements that exist outside the FAC and are drawn from factual

---

[20] It also bears noting that "Congress intended the 'undue burden' standard in Title II to be significantly higher than the 'readily achievable' standard in title III." 28 C.F.R. Pt. 35, App. B at p.707. Thus, the State Bar is unlikely to meet its burden of proof in this case.

findings from an inapposite case. *See supra* pp.1-3; RAB p.39 ("A reasonable fact finder could not find…"). In *Gordon*, the district court's findings were limited to three specific remote testing conditions from the October 2020 exam (no bathroom breaks during a test session, no paper tests, and no physical scratch paper) and did not analyze the other October 2020 emergency policies or Kohn's specific situation, both of which are challenged here. *Compare Gordon*, 20-cv-06442-LB, 2020 WL 5816580 at *1 (N.D. Cal., Sept. 30) *with* ROB pp.31-33, 37-47. Thus, that case's findings are immaterial here, ROB pp.31-33, and, in any event, *Gordon* was wrongly decided.[21] ROB pp.39-45.

### C. Kohn Sufficiently Pled Deliberate Indifference.

The State Bar erroneously describes the second prong for deliberate indifference—"failure to act" upon learning of a harm to federally protected right is substantially likely, ROB p.47—as the same test for analyzing a "failure to reasonably accommodate" Title II violation.[22] While similar, the fact intensive inquiry for failure to reasonably accommodate is centered on whether the accommodation provided to the individual actually, in fact, would "best ensure" a

---

[21] *See Gordon v. State Bar*, 9th Cir. Case No. 20-16899 (Dkt.2).

[22] The State Bar does not argue that Kohn adequately pled the first element of deliberate indifference, *i.e.* knowledge that harm to a federally protected right is "substantially likely." RAB pp.38-39.

level playing field. *See* ROB p.45. In contrast, the second prong of deliberate

indifference analyzes the *method* that the public entity utilizes when conducting the

fact intensive inquiry. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir.

2001) ("a public entity does not 'act' by proffering just *any* accommodation")

(emphasis added).

To pass the second deliberate indifference prong, the public entity must (a)

not merely speculate that a suggested accommodation is not feasible; (b) gather

sufficient evidence from *qualified* experts; (c) be aware of and abide by relevant

agency interpretations and guidance; and (d) if there is a failure, that such failure

only be the result of bureaucratic slippage or an oversight. *Duvall*, 260 F.3d at

1139-40.

Here, the FAC sufficiently alleges facts establishing that the State Bar

breached each of these duties in conducting a fact-intensive inquiry. *See* ROB

pp.48-49. The State Bar's actions—none of which it claims were the result of staff

oversight—are not mere bureaucratic slippage because the State Bar knowingly

disregards Department of Justice guidelines[23] as "interesting policy proposals,"

RAB p.39, even though those guidelines reveal that the State Bar's current system

------

[23] 2-ER-296 ("Failure by a testing entity to act in a timely manner, coupled with
seeking unnecessary documentation, could . . . constitute[] a denial of equal
opportunity or equal treatment . . . .").

impermissibly risks harm to federal rights and facially deprives immediate repeaters of equal opportunity to prepare for the exam. *See Duvall*, 260 F.3d at 1141; *Updike v. Multnomah Cty.*, 870 F.3d 939, 951 (9th Cir. 2017); ROB p.41 (*Auer* deference for DOJ guidelines); *Bragdon v. Abbott*, 524 U.S. 624, 626 (1998) ("The views of agencies charged with implementing a statute are entitled to [*Chevron*] deference.").

## III.    THE STATE BAR IS SUBJECT TO THE REHABILITATION ACT.

### A.    The State Bar's Receipt of Federal Financial Assistance Is Properly Reviewed Under Rule 12(b)(6), Not Rule 12(b)(1).

The State Bar acknowledges that a district court should not dismiss claims under Rule 12(b)(1) where "the jurisdictional issues and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (quotations omitted); *see also* RAB p.43; *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). It nevertheless ignores the myriad cases cited by Kohn which recite "recei[pt] [of] federal financial assistance" as a substantive element of every Rehabilitation Act

claim, ROB pp.34-35,[24] and argues (without citation) that the requirement should be treated as a "threshold jurisdictional question" capable of being addressed under Rule 12(b)(1). RAB p.43. This Court should dismiss the State Bar's unsupported, self-serving request as contrary to binding precedent, and instead hold that a defendant's receipt of federal financial assistance is properly reviewed under Rule 12(b)(6), not Rule 12(b)(1).

### B. Kohn Sufficiently Pled the State Bar Received Federal Funding for Purposes of Rule 12(b)(6).

The district court acknowledged that Kohn adequately alleged that the State Bar received federal funding. *See* 2-ER-287. Even if he had not, such an error would not justify the district court's dismissal with prejudice of Kohn's Rehabilitation Act claims. *See infra*, Section V.

The State Bar's new argument, that it "appears" Kohn pled that the State Bar receives federal financial assistance "solely for the purpose of obtaining jurisdiction," is wholly without merit. RAB p.43 (citing *Bell v. Hood*, 327 U.S. 678 (1946)). First, as discussed above, Kohn had no obligation to support his allegations with evidence because the issue is properly review under Rule 12(b)(6),

---

[24] *See also Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *Duvall*, 260 F.3d at 1135; *Marshall v. McMahon*, 17 Cal. App. 4th 1841, 1850 (1993) (requiring receipt of federal financial assistance even in state court).

not Rule 12(b)(1). Second, the State Bar's motion did *not* argue that Kohn pled

such allegations for improper purposes, so he was not on notice to defend against

such accusations. Third, Kohn asserted several federal claims, each arising from

the same set of facts, meaning that Kohn had established federal question

jurisdiction regardless of whether the State Bar received federal financial

assistance.

### C. Dismissal of Kohn's Rehabilitation Act Claims Was Nevertheless Improper Under Rule 12(b)(1).

The State Bar does not defend the district court's insistence on evidence of

"affirmative[] and direct[]" federal funding to the State Bar, nor can it reasonably

do so. ROB p.36; 29 U.S.C. § 794(b)(1)(B); 45 C.F.R. § 84.3(f).[25] The holdings of

each case cited by Kohn on this issue, ROB p.36, are self-evident. RAB p.44

---

[25] Kohn acknowledges that this panel is bound by *Sharer v. Oregon*, 581 F.3d 1176, 1178 (9th Cir. 2009) ("The 'program or activity' language has constitutional significance because it limits section 504's reach…[to ensure] Congress acted within its Spending Clause power 'when it conditioned the receipt of [section 504] funds on a waiver of sovereign immunity.'"). Kohn maintains, however, that *Sharer* was incorrectly decided and that Congress permissibly required the entire State of California to waive sovereign immunity under Section 504. The legislative history indicates a broad Congressional intent to deny entities the ability to escape responsibility by cabining their functions. *Doe One v. CVS Pharmacy, Inc.*, No. 18-CV-01031-EMC, 2022 WL 3139516, at *1 (N.D. Cal. Aug. 5, 2022). Congress amended Section 504 to *broaden* its nondiscrimination requirements and invoke Spending Clause authority following passage of the ADA, contradicting the State Bar's perception that Section 504's federal financial assistance requirement was intended to narrow the set of entities subject to nondiscrimination requirements.

(complaining otherwise). For example, *Arbogast v. Kansas*, 789 F.3d 1174, 1183 (10th Cir. 2015) held that an entity's entire operations were subject to Section 504 if any one operation receives federal funding. *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 202 (3rd Cir. 2008) held that federal funding for one "subunit" of a state judicial district subjected other subunits to Section 504. *Thomlison v. City of Omaha*, 63 F.3d 786, 789 (8th Cir. 1995) held that Section 504 applied to "all of the operations" of a Public Safety Department, including the Fire Department that did not itself receive federal funding.

The State Bar nevertheless argues that Kohn failed to allege facts or submit evidence suggesting that the State Bar receives indirect federal assistance. RAB p.44. However, the district court denied Kohn leave to amend his FAC, and, for purposes of Rule 12(b)(1), the State Bar failed to present evidence conclusively denying the existence of such indirect funding in the first place. *Compare* 2-ER-97 (claiming the State Bar does not receive federal funds "to the best of [it's Chief Financial Officer's] knowledge") *with* 45 C.F.R. § 84.3(h) (defining "Federal financial assistance" as including "Services of Federal personnel" and "Real and personal property or any interest in or use of such property…."). [26]

---

[26] The definition of "recipient" for federal funding also impacts Titles VI and IX and the Age Discrimination Act of 1975, which are interpreted together for this

For the first time, the State Bar also argues that it is entitled to sovereign immunity as to Kohn's Rehabilitation Act claims, and that such immunity may serve as an alternative basis for affirming the district court's decision under Rule 12(b)(1). RAB pp.40–41. It does so without explanation for why it failed to raise this defense below as to these claims. *See Tritchler v. Cnty. of Lake*, 358 F.3d 1150, 1153 (9th Cir. 2004) (treating sovereign immunity as an affirmative defense). Moreover, as discussed above in relation to Title II, Congress validly abrogated any such immunity, *Clark v. State of Cal.*, 123 F.3d 1267, 1270 (9th Cir. 1997) (holding that 42 U.S.C. § 2000d–7(a)[27] constitutes an unequivocal expression of Congress' intent to abrogate), and the State of California waived any such immunity by receiving federal funding. *Phiffer*, 384 F.3d at 793; *Lovell*, 303 F.3d at 1051 n.5.

---

purpose. *Maloney v. SSA*, 517 F.3d 70, 75 (2d Cir. 2008) (holding these statutes are interpreted together); s*ee also* Congressional Research Service Report & Memorandum R47109 (published May 18, 2022), available at: https://crsreports.congress.gov/product/pdf/R/R47109.

[27] This Circuit relies on 42 U.S.C. 2000-7(a) as the means by which Congress elicited a waiver of sovereign immunity, and also treats sovereign immunity as an affirmative defense, not a jurisdictional issues, rendering *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 93 (2d Cir. 2021) inapposite. *See Douglas v. California Dep't of Youth Auth.*, 271 F.3d 812, 819 (9th Cir. 2001).

25

## IV. THE UNRUH ACT APPLIES TO THE STATE BAR'S ACTIONS.

The State Bar's Unruh analysis commits three critical flaws. First, the State Bar forfeited raising sovereign immunity as a defense to Unruh liability by failing to raise it at the lower court. *See* 2-ER-92; Dist. Ct. Dkt. 38, p.12 ("Defendants have made no such argument [of Eleventh Amendment immunity]."). Furthermore, the California legislature expressly waived sovereign immunity for Unruh violations by incorporating the ADA in the act, thus making such defenses inapplicable. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999). Finally, as explained above in Section I, the State Bar lacks sovereign immunity as a general matter.

Second, the holding in *Brennon B. v. Superior Court*, 13 Cal. 5th 662, 681 (2022)—that public schools do not have businesslike attributes when fulfilling their state constitutional mandate of freely educating students—does not apply to the State Bar.[28] The State Bar does not provide free education when administering the Bar Exam, nor is the exam constitutionally mandated. *See* Section I(A); *Belanger*, 963 F.2d at 253 (discussing the extent of public education minutiae

---

[28] Kohn recognizes the Court clarified that Civil Code Section 51, subdivision (f), is limited by subdivision (b). *Brennon*, 13 Cal. 5th at 691-92. However, footnotes 19 and 21 (ROB pp.50-53) remain applicable. *See* Dkt.42, fn.19, p.24-25. Part III(C)(1) also remains applicable should the California legislature amend the statute to apply retroactively.

micromanaged by the California Constitution and state law). Thus, Unruh still applies to the State Bar's actions. *See Pell v. Nunez*, No. 2:22-CV-3732-MWF-RAO (C.D. Cal. Aug. 23, 2022, Dkt. 17) (Dkt. 17, permitting leave to amend Unruh claims against the State Bar notwithstanding *Brennon*).

Third**,** an entity can engage in activities with "businesslike attributes" without having competitors in the marketplace or pursuing goals of enhancing economic value. *See* RAB pp.49-50. "Businesslike attributes" include functions that reflect "the nature of a traditional public accommodation." *Brennon,* 3 Cal. 5th at 681 ("This is a far cry from . . . the nature of a traditional public accommodation [that is subject to Unruh] . . . ."). Thus, non-profits—i.e., entities that cannot compete in the marketplace or enhance its economic value—and even private clubs that are expressly excluded from Unruh can still be "business establishments" under Unruh when acting with "businesslike attributes." *See Isbister v. Boys' Club of Santa Cruz*, 40 Cal. 3d 72, 79 (1985) (applying Unruh to a non-profit); *Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594, 599 (1995) (private clubs); *L.A. Cnty. Metropolitan Transportation Auth. v. Superior Court*, 123 Cal. App. 4th 261 (2004) (accepting that Unruh applies to other public entities); *Gibson v. Cnty. of Riverside*, 181 F. Supp. 2d 1057 (C.D. Cal. 2002) (same); RAB, p.47 (arguing only that *Brennon* disapproved federal cases applying Unruh to public schools, not all public entities), pp.48-49 (inaccurately claiming that, after *Brennon*, "there is

27

not a single citable holding a government entity subject to Unruh Act claims."). Here, the State Bar administers the bar exam by providing, *inter alia*, the public accommodation of a testing facility. *See also* ROB pp.57-58. Thus, it cannot escape Unruh's mandates.

## V.    AT A MINIMUM, THE DISTRICT COURT SHOULD HAVE GRANTED KOHN LEAVE TO AMEND HIS COMPLAINT.

The District Court made no finding below that amendment to the FAC would be futile if the State Bar lacked sovereign immunity or was in fact subject to the Rehabilitation Act or the Unruh Act. *Cooter Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("[a] district court…abuse[s] its discretion if it based its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence"). As the district court's legal conclusions were erroneous, and as the State Bar's "alternative" arguments for dismissal are without merit and would not render amendment futile, this Court should remand with instructions that the district court grant Kohn leave to amend his FAC.[29]

If provided the opportunity, Kohn will also plead additional facts regarding the State Bar's receipt of federal financial assistance, including: (1) the State Bar

---

[29] Kohn's Unruh Act claims may be premised on any Title II violation, regardless of whether the State Bar acted with deliberate indifference. *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 662-663 (2009); *Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837 (9th Cir. 2004).

partially administers, appoints the board of directors for, and provides office space to California Changelawyers which received a forgivable loan (FAIN 1846858606) from the federal Small Business Administration program; (2) the California Supreme Court receives federal financial assistance which it effectively extends to the State Bar; and (3) the State Bar likely invests in U.S. government securities and collects federal interest payments therefrom, *see* Cal. Bus. & Prof. Code § 6213(j). Discovery may yield additional ties to federal funds, or to personnel services or property provided by the federal government to the State Bar in lieu of funds. 45 C.F.R. § 84.3(h) (defining "Federal financial assistance" broadly).

This Court should also consider the practical realities Kohn faced when pleading his FAC, and the initial complaint on which it was based. Kohn was under intense pressure to prepare for the bar exam, had extremely limited time, limited assistance from counsel unfamiliar with disability rights, and was forced to simultaneously seek injunctive relief—all of which was complicated by the constantly evolving exam format and COVID-19.[30] In light of these circumstances, this Court should grant Kohn a fair opportunity to state his case.

---

[30] Upon receiving the State Bar's accommodations decision for the October 2020 exam, Kohn had just four days to amend his complaint as of right under Rule 15(b)(1).

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant respectfully requests that this Court (1) vacate the Judgment of the district court, (2) reverse the district court's orders dismissing Kohn's claims with prejudice, and (3) remand to the district court with instructions to permit Kohn leave to file an amended complaint.

Date: November 23, 2022,                    Respectfully submitted,


                                            */s/ Gregory R. Michael*
                                            Gregory R. Michael (SBN: 306814)
                                            Dorothy C. Yamamoto (SBN: 306817)
                                            MICHAEL YAMAMOTO LLP
                                            1400 Shattuck Ave., #412
                                            Berkeley, CA 94709
                                            Phone: 510.296.5600
                                            Fax: 510.296.5600

                                            Attorneys for Plaintiff and Appellant
                                            Benjamin Kohn

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Appellant's Reply Brief complies with the requirements of FRAP 27(d). The brief was prepared in Times New Roman 14-point font, and contains 6,993 words, as counted by Microsoft Word.

Date: November 23, 2022,

*/s/ Gregory R. Michael*
Gregory R. Michael

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2022, I filed the foregoing Appellant's Replacement Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: November 23, 2022,

*/s/ Gregory R. Michael*
Gregory R. Michael