**No. 20-17316**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

BENJAMIN KOHN,
*Plaintiff and Appellant*,

v.

STATE BAR OF CALIFORNIA, CALIFORNIA COMMITTEE OF BAR
EXAMINERS, and THEIR AGENTS IN THEIR OFFICIAL CAPACITY,
*Defendants and Appellees*.

_____

On Appeal from the Judgment of the United States
District Court for the Northern District of California
The Honorable Phyllis J. Hamilton
District Court Case Number: 4:20-cv-04827-PJH

_____

**PRO BONO**

**APPELLANT'S SUPPLEMENTAL BRIEF
IN RESPONSE TO COURT'S MAY 19, 2023 ORDER**

MICHAEL YAMAMOTO LLP
Gregory R. Michael (SBN: 306814)
greg@my.law
Dorothy C. Yamamoto (SBN: 306817)
dorothy@my.law
1400 Shattuck Ave., #412
Berkeley, CA 94709
Phone: 510.296.5600
Fax: 510.296.5600

*Attorneys for Plaintiff-Appellant Benjamin Kohn*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iv

INTRODUCTION .............................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .............................1

SUMMARY OF ARGUMENT ...........................................................3

ARGUMENT ..................................................................................5

I.  THIS COURT SHOULD DETERMINE EN BANC WHETHER THE CALIFORNIA STATE BAR IS ENTITLED TO SOVEREIGN IMMUNITY UNDER THIS COURT'S *MITCHELL* TEST. ........................5

    A.  The State Bar's Status as an Arm of the State of California Is a Question of Exceptional Importance. ..................................5

    B.  En Banc Review is Needed to Secure and Maintain Uniformity of the Court's Decisions. ....................................7

II.  THIS COURT SHOULD REAFFIRM EN BANC THAT CONGRESS ABROGATED STATE SOVEREIGN IMMUNITY FOR CLAIMS ARISING UNDER TITLE II OF THE ADA. ..................................8

    A.  The Supreme Court's *U.S. v. Georgia* Decision Did Not Disturb This Court's Holding in *Phiffer*. ...............................8

    B.  This Court Should Reject the State Bar's Efforts to Raise the Pleading Requirements for Title II Claims. ........................11

III.  THE COURT SHOULD CLARIFY EN BANC WHAT CONSTITUES INDIRECT RECEIPT OF FEDERAL FINANCIAL ASSISTANCE UNDER THE REHABILITATION ACT. ..................................13

APPENDIX ....................................................................................16

CERTIFICATE OF COMPLIANCE ....................................................22

CERTIFICATE OF SERVICE ............................................................23

iii

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ass'n for Disabled Ams., Inc. v. Florida Int'l Univ.*,
  405 F.3d 954 (11th Cir. 2005) ...............................................................9

*City of Boerne v. Flores*,
  521 U.S. 507 (1997).............................................................................8

*Clark v. State of Cal.*,
  123 F.3d 1267 (9th Cir. 1997) ...........................................................15

*Consolidated Rail Corp. v. Darrone*,
  465 U.S. 624 (1984)............................................................................14

*Constantine v. Rectors & Visitors of George Mason Univ.*,
  411 F.3d 474 (4th Cir. 2005) ...............................................................9

*Crowe v. Oregon State Bar*,
  989 F.3d 714 (9th Cir. 2021) ............................................................4, 7

*Douglas v. California Dep't of Youth Auth.*,
  271 F.3d 812 (9th Cir. 2001) .............................................................15

*Fernandez v. Rice*,
  No. 15-cv-00487-LEK, 2017 WL 988103 (D. Haw. Mar. 14, 2017)..................4

*Guttman v. Khalsa*,
  669 F.3d 1101 (10th Cir. 2012) .........................................................10

*Hiller v. Arizona Bd. of Regents*,
  No. CV-22-00554-PHX-SMB, 2022 WL 9406631 (D. Ariz. Oct. 14, 2022) ......4

*Hirsh v. Justices of Supreme Court of the State of California*,
  67 F.3d 708 (9th Cir. 1995) .............................................................3, 6

*ITSI T.V. Prods., Inc. v. Agric. Ass'ns*,
  3 F.3d 1289 (9th Cir. 1993) .................................................................8

*Jim C. v. United States*,
  235 F.3d 1079 (8th Cir. 2000) ...........................................................15

# TABLE OF AUTHORITIES

**Page(s)**

*Klingler v. Director, Dep't of Revenue, State of Mo.*,
  455 F.3d 888 (8th Cir. 2006) ...................................................9

*Kohn v. State Bar of California*,
  497 F. Supp. 3d 526 (N.D. Cal. 2020) ...............................3, 4

*Lupert v. California State Bar*,
  761 F.2d 1325 (9th Cir. 1985) .........................................3, 6

*McCarthy ex rel. Travis. v. Hawkins*,
  381 F.3d 407 (5th Cir. 2004) ...................................................9

*Mitchell v. L.A. Cmty. Coll. Dist.*,
  861 F.2d 198 (9th Cir. 1988). ...............................................3

*Olson v. Allen*,
  No. 3:18-CV-001208-SB, 2019 WL 1232834 (D. Or. Mar. 15, 2019) .........4, 10

*Phiffer v. Columbia River Corr. Inst.*,
  384 F.3d 791 (9th Cir. 2004) .........................................4, 10

*Sharer v. Oregon*,
  584 F.3d 1176 (9th Cir. 2009) .................................... 5, 14, 15

*T.S. by & through T.M.S. v. Heart of CarDon, LLC*,
  43 F.4th 737 (7th Cir. 2022) .................................................14

*T.W. v. N.Y. Bd. of Law Exam'rs*,
  996 F.3d 87 (2d Cir. 2021) .................................................15

*Tennessee v. Lane*,
  541 U.S. 509 (2004) .................................................................9

*Toledo v. Sanchez*,
  454 F.3d 24 (1st Cir. 2006) ...................................................10

*Tritchler v. Cnty. of Lake*,
  358 F.3d 1150 (9th Cir. 2004) ...............................................8

v

## TABLE OF AUTHORITIES

**Page(s)**

*U.S. v. Georgia*,
   546 U.S. 151 (2006)............................................................................4, 9

### STATUTES

29 U.S.C. §794(a) ...............................................................................15

42 U.S.C. § 2000d–7...........................................................................15

### SECONDARY SOURCES

154 CONG. REC. H8286, 8296 (Sept.17, 2008)....................................10

Pub. L. No. 100-259, § 2(1), 102 Stat. 28, 28 (1988).............................14

## INTRODUCTION

Plaintiff-Appellant Benjamin Kohn ("Kohn") respectfully submits that this appeal is an excellent candidate for en banc review because it raises questions of exceptional importance for which en banc consideration is necessary to secure and maintain uniformity in the application of law in this Circuit. Indeed, this Court has seemingly recognized this throughout the pendency of this appeal, including by: (1) sua sponte appointing Kohn pro bono counsel, Dkt.28; (2) certifying to the U.S. Attorney General the constitutional challenge to 42 U.S.C. §12202 asserted by Defendants-Appellees the State Bar of California, Committee of Bar Examiners, and their agents in their official capacities (collectively, the "State Bar"), Dkts.83, 96; and (3) sua sponte calling the present conference and vote on whether this case should be heard en banc in the first instance, Dkts.97, 98. The precedential nature of the issues presented by this case are further underscored by the submission of multiple amici briefs supporting Kohn's position. Dkts.42, 52, 59, 60, 65.

## FACTUAL AND PROCEDURAL BACKGROUND

Kohn asserts in this action that the State Bar violated Title II of the ADA, Section 504 of the Rehabilitation Act, and the California Unruh Act by creating a fundamentally flawed, unfair, and overly burdensome process for addressing requests for disability accommodations on the California Bar Exam. OB pp.4-13; RB pp.1-4.

1

As merely one illustration of the State Bar's unlawful tactics, the State Bar refused to consider affidavits from Kohn's primary care physician, Dr. Dresden, because Dresden had interpreted, applied, and supplemented—but had not personally performed—the over twenty hours of neuropsychological testing performed by Kohn's prior psychologist evaluator, Dr. Preston. 2-ER–33-37; 3-ER-414 (explaining that Dr. Preston had died at the end of 2017 and was unavailable to elaborate). In effect, the State Bar insisted that Kohn subject himself to extraordinarily burdensome retesting—during peak pandemic conditions that placed Kohn at unique risk, no less—before it would consider any autism-related elaborations on why Kohn's disabilities warranted his requested accommodations not already attested by the deceased Dr. Preston.

Although Kohn indulged the State Bar by retesting, the State Bar delayed issuing any decision for the then-September 2020 exam until August 27, 2020, after the deadline for Kohn to appeal that decision. According to the State Bar, Kohn's submission of the overly cumulative retesting results on June 4, 2020—a full six weeks before the State Bar's deadline to submit a new petition—left the State Bar insufficient time to resolve his earlier submitted requests in a manner that preserved his ability to appeal. Paradoxically, during this same period, the State Bar was unable to timely disclose how the exam would be administered in time for test-takers to request *any* format-specific accommodations. The magnitude of delay

2

and prejudice inflicted by the State Bar in response to Kohn's supplying additional

documentation was particularly invidious in light of how the date of June 4, 2020

fell within the overall deadlines and framework of the October 2020 exam.[1]

On February 15, 2023, a panel of this Court heard oral argument on Kohn's

appeal from the district court's dismissal with prejudice of his claims under Rule

12(b). Dkt.97; *Kohn v. State Bar of California*, 497 F. Supp. 3d 526, 534 (N.D.

Cal. 2020). Without rendering a decision, the panel sua sponte ordered the Parties

to file simultaneous briefs "on whether this case should be heard en banc." Dkt.98.

## SUMMARY OF ARGUMENT

This appeal presents three critical issues that are ripe for en banc

consideration. First, no court has applied this Circuit's five-factor *Mitchell* test for

state sovereign immunity to the State Bar.[2] Nevertheless, in a myriad of published

and unpublished decisions, this Court and district courts have relied on single-

sentence commentaries in *Hirsh v. Justices of Supreme Court of the State of*

*California*, 67 F.3d 708, 715 (9th Cir. 1995) and *Lupert v. California State Bar*,

761 F.2d 1325, 1327 (9th Cir. 1985) as having conclusively established that the

State Bar is an arm of the State of California and therefore entitled to sovereign

---

[1] The State Bar's summations of the facts of this case are inaccurate. *See* RB pp.1-
3. The tables attached as an appendix to this brief are intended to clarify for the
Court the history of Kohn's accommodation requests and the State Bar's decisions.
[2] *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198 (9th Cir. 1988).

immunity. OB pp.22-23, fn.9. This has led to an intra-Circuit conflict on a critical

question of constitutional law. *See Crowe v. Oregon State Bar*, 989 F.3d 714, 724

(9th Cir. 2021) (holding that the Oregon Bar is not entitled to sovereign immunity).

Accordingly, this Court should review en banc the issue of the State Bar's

entitlement to sovereign immunity.

Second, the district courts are divided over whether this Court's decision in

*Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791, 793 (9th Cir. 2004), which

held that Congress abrogated sovereign immunity as to *all* claims properly arising

under Title II, remains binding authority following the Supreme Court's decision

in *U.S. v. Georgia*, 546 U.S. 151 (2006). This division has led to inconsistent Title

II enforcement across the Circuit.[3] En banc consideration may resolve the

disagreement, and either reaffirm *Phiffer*'s central holding or set parameters on

how the district courts should address this issue moving forward.

Lastly, there exists uncertainty in this Circuit as to what circumstances

constitute a state agency's "indirect" receipt of Federal financial assistance for the

purposes of establishing liability under the Rehabilitation Act. *See Sharer v.*

---

[3] *Compare, e.g.*, *Kohn*, 497 F. Supp. 3d at 534 (disregarding *Phiffer*); *Hiller v. Arizona Bd. of Regents*, No. CV-22-00554-PHX-SMB, 2022 WL 9406631, at *4 (D. Ariz. Oct. 14, 2022) (same) <u>with</u> *Olson v. Allen*, No. 3:18-CV-001208-SB, 2019 WL 1232834, at *4 (D. Or. Mar. 15, 2019) (following *Phiffer*); *Fernandez v. Rice*, No. 15-cv-00487-LEK, 2017 WL 988103, at *4 (D. Haw. Mar. 14, 2017) (same).

4

*Oregon*, 584 F.3d 1176, 1178 (9th Cir. 2009) (wrongly interpreting the Rehabilitation Act's reach more narrowly than is required by the Spending Clause). This uncertainty led the district court in this case to incorrectly conclude that indirect funding is altogether insufficient. 1-ER-19; OB p.36. Given the importance of this issue, and that the State Bar denies Kohn's allegation of direct federal funding, this Court should clarify en banc what circumstances constitute an agency's "indirect" receipt of funding.

## ARGUMENT

**I.    THIS COURT SHOULD DETERMINE EN BANC WHETHER THE CALIFORNIA STATE BAR IS ENTITLED TO SOVEREIGN IMMUNITY UNDER THIS COURT'S *MITCHELL* TEST.**

### A.    The State Bar's Status as an Arm of the State of California Is a Question of Exceptional Importance.

This Circuit's test for determining whether a state agency is entitled to sovereign immunity, the five-factor *Mitchell* test, has never been applied to the State Bar in any judicial opinion known or cited by the Parties. Hosts of both published and unpublished decisions by this Court and district courts, however, have predicated the dismissal of dozens of claims against the State Bar based solely on the incorrect assumption that the State Bar is entitled to sovereign immunity. OB p.22-23, fn.9.

Most significant, here, are this Court's decisions in *Hirsh* and *Lupert*. In both cases, this Court stated summarily, without applying the *Mitchell* test, that the

5

California Bar is entitled to Eleventh Amendment immunity because it is a "state agency," *Hirsh*, 67 F.3d at 715, and did not "consent to being sued," *Lupert*, 761 F.2d at 1327. These two, single-sentence conclusory comments—on an issue that was not contested by the parties to those cases—have been consistently cited by this Court and district courts as conclusively holding that the State Bar is entitled to sovereign immunity. OB p.22-23, fn.9.

Application of the *Mitchell* test to the State Bar, however, quickly reveals that the State Bar does not constitute an arm of the state. OB pp.16-23. Indeed, the State Bar's principal response to this issue on appeal has been to ask this Court to replace the *Mitchell* test with a modified version of it, implicitly conceding that the State Bar does not prevail under its existing formulation. AB pp.16-27; RB pp.9-11 (explaining, *inter alia*, that the State Bar's proposed test runs afoul of binding Supreme Court precedent).

The question of whether the State Bar is entitled to sovereign immunity is of exceptional importance. The State Bar interacts with tens of thousands of bar applicants and attorneys each year. When faced with accusations of unlawful discrimination or failure to adequately accommodate disabilities, the State Bar routinely convinces courts to dismiss the plaintiff's claims based solely on the State Bar's purported sovereign immunity—all without ever having established its entitlement to that immunity.

6

Justice may be blind, but that does not mean courts should blindly assume away a defendant's liability. In each of these cases, and the many more cases never filed because of this issue, a grave miscarriage of justice has occurred. As a result, countless individuals, including Kohn, have been forced to suffer through an already grueling multi-day bar exam without the accommodations their treating physicians deem necessary. Those individuals have had to endure significant hardship merely for the *opportunity* to practice law in California. This Court should resolve this issue en banc so that the advancement of the legal profession is not further stymied by the State Bar's actions.

### B.    En Banc Review is Needed to Secure and Maintain Uniformity of the Court's Decisions.

Although this Court's decisions in *Hirsh* and *Lupert* do not technically bind the panel of judges currently assigned to this appeal, OB pp.22-23, fn.9; RB pp.8-9, the tension in this Court's case law is already palpable.

First, this Court recently applied the *Mitchell* test to the Oregon Bar and concluded that it is not an arm of the state entitled to sovereign immunity. *Crowe*, 989 F.3d at 724. There is no meaningful distinction in the form or function between the Oregon Bar and the State Bar. OB p.24; RB p.7. Yet, courts are now consistently treating these entities differently under the same constitutional law.

Second, it is well established that a state agency bears the burden of proving its entitlement to sovereign immunity, as with any other affirmative defense. *ITSI*

*T.V. Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 1292 (9th Cir. 1993); *Tritchler v. Cnty. of Lake*, 358 F.3d 1150, 1153–54 (9th Cir. 2004). Yet, the State Bar has consistently secured its "immunity" without ever having acted to satisfy this burden. That outcome fundamentally challenges the machinations used by this Court to preserve the balance of power between the state and federal governments as secured by the U.S. Constitution. Accordingly, this Court should review this issue en banc to bring uniformity and consistency to the law of sovereign immunity.

## II. THIS COURT SHOULD REAFFIRM EN BANC THAT CONGRESS ABROGATED STATE SOVEREIGN IMMUNITY FOR CLAIMS ARISING UNDER TITLE II OF THE ADA.

Kohn's alternative grounds for reversing the district court's dismissal of his Title II claims—namely, Congress abrogated the State Bar's (nonexistent) sovereign immunity, 42 U.S.C. § 12202—also presents questions of exceptional importance for which en banc consideration is needed to secure the uniform application of law.

### A. The Supreme Court's *U.S. v. Georgia* Decision Did Not Disturb This Court's Holding in *Phiffer*.

The Supreme Court in *City of Boerne v. Flores*, 521 U.S. 507 (1997) assessed three factors when addressing abrogation: (1) the nature of the constitutional right at issue; (2) the extent to which Congress's remedial statute was passed in response to a documented history of relevant constitutional

8

violations; and (3) whether the congressional statute is "congruent and proportional" to the specific class of violations at issue. *Boerne*, 521 U.S. at 518; *see also Georgia*, 546 U.S. at 158 (citing *Boerne* favorably).

As to Title II, several Circuits have held that the Supreme Court's decision in *Tennessee v. Lane*, 541 U.S. 509, 522-33 (2004) ("*Lane*") conclusively addresses the first two *Boerne* factors.[4] Congress's finding of widespread discrimination in public services, "together with the extensive record of disability discrimination that underlies it, makes clear beyond peradventure that inadequate provision of public services and access to public facilities"—e.g., the full panopticon of Title II—is "an appropriate subject for prophylactic legislation." *Id* at 529. The Supreme Court explained that because Title II is sweeping nondiscrimination legislation that applies to all public services, programs, and activities, it would be impracticable for Congress to anticipate, let alone justify with evidence, every context in which the law may apply. *Id*. Therefore, the Supreme Court rejected any proposition that Congress's legislative findings need

---

[4] *Klingler v. Director, Dep't of Revenue, State of Mo.*, 455 F.3d 888, 896 (8th Cir. 2006); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 487 (4th Cir. 2005); *Ass'n for Disabled Ams., Inc. v. Florida Int'l Univ.*, 405 F.3d 954, 958 (11th Cir. 2005); *McCarthy ex rel. Travis. v. Hawkins*, 381 F.3d 407, 423 (5th Cir. 2004).

be made for every such context, as opposed to broader classes of conduct, for prophylactic abrogation to be valid. *Id* at 525-35.[5]

Following *Lane*, this Court reaffirmed its earlier holdings that all three *Boerne* factors are satisfied as to the entire scope of Title II. *Phiffer*, 384 F.3d at 792. As explained in Kohn's briefing, the Supreme Court's more recent decision in *Georgia* does not require any narrower holding. OB pp.27-28, RB pp.12-13. The district court in this case nevertheless repudiated *Phiffer* and held that "[w]ithout such binding authority, the court cannot find that Congress validly abrogated sovereign immunity." 1-ER-15. Several other district courts have reached the opposite conclusion. *Olson*, 2019 WL 1232834, at *4 (collecting cases).

Sitting en banc, this Court may unequivocally reaffirm its central holding in *Phiffer*: Title II is a congruent and proportional response by Congress for the deterrence and remediation of Fourteenth Amendment violations by the States. *See, e.g.*, 154 CONG. REC. H8286, 8296 (Sept.17, 2008); OB p.27, fn.11 and RRB, pp.13-14; Dkt.42, pp.3-11. Even if this Court were to limit its analysis to the "class of conduct" at issue in this case, an en banc decision may still resolve the

---

[5] Two circuits have nevertheless held that each of the three factors must be assessed "with regard to the particular right and class of state action at issue," and therefore refrain from adopting a blanket decision encompassing all Title II claims as to any of the *Boerne* factors. *Guttman v. Khalsa*, 669 F.3d 1101, 1117 (10th Cir. 2012); *Toledo v. Sanchez*, 454 F.3d 24, 35 (1st Cir. 2006).

important question of whether Title II protections extends to the critical context of occupational licensing requirements, including bar examinations, which sit at the intersection of education and access to the courts.

If this Court intends to resolve this issue en banc, Kohn respectfully submits that the Court should solicit briefing from the United States, which indicated that it has not intervened in this case merely because it deemed unlikely that the three-judge panel would reach this issue. Dkt.96.[6]

### B. This Court Should Reject the State Bar's Efforts to Raise the Pleading Requirements for Title II Claims.

The State Bar has asserted several dubious arguments in this case regarding the sufficiency of Kohn's allegations under Title II. Sitting en banc, this Court could soundly reject the State Bar's proposed analyses.

First, the State Bar incorrectly urges that Kohn must plead nuanced legal conclusions on how a partial, as opposed to a full, grant of requested accommodations is "unreasonable." *See* AB pp.38-39; 2-ER-87. This Court should reject that argument out of hand. OB p.46, fn.17.

Second, the State Bar insists that deliberate indifference is alleged only if a plaintiff sufficiently negates the possibility that a defendant used its "professional

---

[6] *See* DOJ brief in *Guttman v. New Mexico*, No.2:03-CV-00463-MCA-KBM (D.N.M.) (Dec.4, 2009), pp.8-27, and in 10th Cir. Nos.10-2167 & 10-2172 (Feb.27, 2012), pp.8-15.

judgment" and produced a wrongful accommodation denial merely because of an "error-prone" procedure. AB pp.32, 37-40. However, a showing of deliberate indifference under Title II concerns only the adequacy of the defendant's methods of exercising diligence to comply with Title II's requirements, not the particular reasons defendants had for not wanting to comply. RB p.20. Indeed, modifications to standard conditions are precisely what Title II requires public entities to the extent that best ensures a level playing field. OB p.45. A defendant's costs or burdens may excuse modification only when the defendant has adequately and timely established such costs or burdens are "undue." 28 C.F.R. Pt.35, App.B at p.707. In any event, this Court should reaffirm that deliberate indifference is sufficiently alleged where, as here, a defendant takes no further action upon receiving notice from the plaintiff that the proposed accommodation was insufficient. OB pp.47-49; RB pp.19-21.

Third, the State Bar urges that failure to reasonably accommodate is sufficiently alleged only when the plaintiff preemptively negates the possibility of fundamental alteration or undue burden. AB pp.37-38. Such matters constitute defenses that must be proven by a defendant, not negated by a plaintiff in his pleading. RB pp.17-18.

Lastly, the State Bar's conclusion that Title II claims can never be based on a defendant's "process and timing" issues has no basis in law, nor should it. RB

p.17, fn.19; AB p.40. Holding otherwise would allow testing agencies to manipulate their procedures to deter accommodation requests, provide pretextual grounds under which to wrongly deny accommodations, and forestall challenges to would-be denials of accommodation that applicants are prevented from making. The State Bar's perception of inconsistency in Kohn's allegations, AB p.40, reflects its presupposition that 60-150 days of non-collaborative review is appropriate (it is not). OB pp.42-45. Kohn also does not object to the requirement of supplying medical documentation, but to the State Bar's refusal to credit his unrebutted treating expert's findings, its inability to communicate what documentation it perceived to be missing from Kohn's submissions, and its maintained position even after Kohn supplied the information to which the State Bar previously attributed its denials.

### III.   THE COURT SHOULD CLARIFY EN BANC WHAT CONSTITUTES INDIRECT RECEIPT OF FEDERAL FINANCIAL ASSISTANCE UNDER THE REHABILITATION ACT.

The district court's holding in this case—that Kohn "must demonstrate that the State Bar affirmatively and directly receives federal funds" to state a claim under Section 504 of the Rehabilitation Act—is plainly wrong under existing precedent. 1-ER-19; OB pp.35-37; RB pp.23-24. Nevertheless, the precise contours of what constitutes "indirect" receipt of financial assistance should be

clarified by this Court so that the district court adequately considers the broad swath of allegations Kohn may plead upon remand.

En banc review of this issue is appropriate because of this Court's overly restrictive interpretation of "indirect" funding in *Sharer*, 584 F.3d at 1178. RB p.23, fn.25. In order "to avoid deciding difficult constitutional questions when the text fairly admits of a less problematic construction," *Sharer* construed the concept of indirect receipt of funds more narrowly than is otherwise required to ensure the Rehabilitation Act's legitimacy under the Spending Clause. *Sharer*, 581 F.3d at 1178.

*Sharer*'s restrictive interpretation on this issue contradicts Congress's manifest intent to exercise the full gambit of its powers. Indeed, Congress amended the Rehabilitation Act in 1987 precisely because the Supreme Court had adopted a similar, overly-restrictive interpretation of the scope of its application. *See T.S. by & through T.M.S. v. Heart of CarDon, LLC*, 43 F.4th 737, 745 (7th Cir. 2022) (discussing *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 635-36 (1984)); Pub. L. No. 100-259, § 2(1), 102 Stat. 28, 28 (1988). Congress then amended the act again, after enacting the ADA, to ensure that every ADA violation by qualifying entities also gives rise to liability under the Rehabilitation Act. OB p.50. These actions indicate a firmly held intent by Congress to exercise the full extent

14

of its powers, not to refrain from doing so merely to avoid "difficult constitutional questions." *Sharer*, 581 F.3d at 1178.

More importantly, this Court has already dealt with these difficult constitutional questions differently. *Clark v. State of Cal.*, 123 F.3d 1267, 1271 (9th Cir. 1997); *Douglas v. California Dep't of Youth Auth.*, 271 F.3d 812, 819 (9th Cir. 2001). Unlike the Eighth Circuit in *Jim C. v. United States*, 235 F.3d 1079, 1081 (8th Cir. 2000), cited by *Sharer*, this Circuit derives a state's consent to waive its sovereign immunity based on 42 U.S.C. § 2000d–7, not 29 U.S.C. § 794(a). *See also T.W. v. N.Y. Bd. of Law Exam'rs*, 996 F.3d 87, 92 (2d Cir. 2021) (relying on 29 U.S.C. § 794(a)). Accordingly, the analysis set forth in those out-of-circuit cases is of limited significance, which this Court should make clear en banc.

For the foregoing reasons, Kohn respectfully submits that this Court should hear this appeal en banc.

Date: June 9, 2023,                    Respectfully submitted,

                                       */s/ Gregory R. Michael*
                                       Gregory R. Michael (SBN: 306814)
                                       Dorothy C. Yamamoto (SBN: 306817)
                                       MICHAEL YAMAMOTO LLP
                                       1400 Shattuck Ave., #412
                                       Berkeley, CA 94709
                                       Phone: 510.296.5600
                                       Fax: 510.296.5600

                                       Attorneys for Plaintiff and Appellant
                                       Benjamin Kohn

# APPENDIX

## Table 1 (July 2018, February 2019, and February 2020 Exams):

| Requested Accommodation: | Predicate Disability: | July 2018 Outcome: | February 2019 Outcome: | February 2020 Outcome: |
|---|---|---|---|---|
| 100% extra time, over correspondingly more days | autism and keratoconus additively | Granted on appeal. | Amended; see below. | < |
| Increase to 150% extra time on essay sections; extra time scheduled over correspondingly more test days | autism, keratoconus, and dry eye syndrome additively | N/A | Denied; given substitute of double time (+30 minutes/day purported to be substitute for separate meal breaks request); test days longer than standard. | < |
| Computer to type written responses | Autism | Granted | Renewed | Renewed |
| Ergonomic Workstation defined by Dr. Dresden (e.g., provision of chair with specific features). | Myofascial Pain Syndrome and related conditions | Provision denied; granted permission to bring. | < | < |
| Alternatives offered to primary provision request for ergonomic workstation (3 for 2/2019, 4 for 2/2020) | ^ | N/A | Rejected | < |

16

| | | | | |
|---|---|---|---|---|
| Private Room | autism | Denied; granted semiprivate room. | < | < |
| Permission to bring food, drinks, and medicine | gastroparesis and postoperative dysphagia | N/A | Granted | Renewed |
| Up to 30-minute meal break for each 90 minutes test-time instead of single hour lunch break | ^ | N/A | Denied; reduced to 30 minutes/test day extra time substitute. | < |
| Permission to remain in exam room subject to proctor supervision during breaks | ^+autism | N/A | Granted on appeal. | Renewed |
| Proctor with training on autism and accommodations | autism | N/A | Denied | < |
| Weekend-only scheduling for medical appointments | 25+ medical conditions collectively. | N/A | Denied | < |
| Equal access to State Bar's hotel group rate services | Longer uncertainty about schedule and location due to State Bar's accommodations process. | N/A | Denied | < |

**Table 2: October 2020 Exam New/Amended[7] Requests [8]:**

| Requested Accomm.: | If At-Home Exam: | If At-Home Exam (Proctored): | If In-Person Exam: | Predicate Disability: | Outcome: |
|---|---|---|---|---|---|
| Permission to use restroom freely and still return to test session in progress. | Yes | Yes | Yes | pelvic floor dyssynergia, irritable bowel syndrome, and medication side effects | Granted, but only conditioned on nonstandard in-person test center modality and in-room proctor supervision despite immunocompromised status. |
| That all proctors mask, distance, and test negative for Covid. | No | Yes | Yes | Immunocompromised status with other medical risk factors for Covid, and involuntary assignment to riskier nonstandard modality | Denied negative test for proctors; masking and distancing were standard. |

---

[7] Table 2 omits requests overlapping with earlier exams, which had the same outcome for October 2020 as February 2020 exams, except as to requests for increased extra time scheduled over more days and a private room granted for October 2020.

[8] Kohn conditionally withdrew as moot his requests for provision of ergonomic equipment, private room, specially trained proctor, and equal access to hotel services in Table 1, *supra*, while offering alternatives to others, for if the State Bar had not applied its Forced In-Person Policy to him.

18

| Permission to remain in exam room subject to supervision during lunch/breaks, via onsite video surveillance when actively eating or drinking and unable to mask. | No | Yes | Yes | ^ | Denied |
|---|---|---|---|---|---|
| That Kohn's PPE not be inspected by any means that could contaminate it for intended Covid prevention purpose. | No | Yes | Yes | ^ | Denied |
| Instructions to onsite staff not to terminate exam based solely upon cough symptoms. | No | Yes | Yes | gas-bloat chronic cough due to gastroparesis, surgical history, and irritable bowel syndrome. | Denied |
| Videorecording Kohn from bodycam and webcam | Yes | No | No | Compatibility between AI flags and rules intended to improve | Moot to Assigned Modality. |

| | | | | | |
|---|---|---|---|---|---|
| during exam sessions, including in the restroom at the State Bar's option, instead of AI security flags that would be falsely triggered by the effects of Kohn's disabilities or approved accommodations. | | | | their performance and Kohn's accommodations. | |
| Remote proctors and security flag reviewers instructed on all accommodations approved. | Yes | No | No | autism | ^ |
| Increased login time limit and logon period flexibility. | Yes | No | No | Effects of expanded schedule on equipment reliability during wildfire season. | ^ |
| Mitigations of unequal accessibility barriers compared to standard at-home testing. | No | No | Yes | Nonstandard exam modality was assigned due to disability. | Denied |

**Table 3 (October 2020 Exam Administrative Deadlines):**

| Deadlines: | Petition Filing Deadline to Expect Decision Prior to Appeal Deadline (to get up to 10 days to appeal): | Petition Filing Deadline: | Appeal Filing Deadline (if sooner than 10 days from decision): |
|---|---|---|---|
| When exam scheduled July 28-29, 2020 (before 4/27/2020): | 4/2/2020 | 6/1/2020 | 7/1/2020 |
| When exam scheduled September 9-10, 2020 (4/27/2020 to 7/15/2020): | 5/17/2020 | 7/16/2020 (4 days before first disclosure of standard conditions. 3-ER-341-342, 348-352). | 8/13/2020 |
| When exam scheduled October 5-6, 2020 (7/16/2020 on): | 5/25/2020 | 7/24/2020 (4 days after first disclosure of standard conditions. *Id*). | 8/21/2020 |

21

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Appellant's Supplemental Brief In Response To Court's May 19, 2023 Order complies with the requirements set forth in the May 19, 2023 Order, Doc. 98 ("[t]he briefs shall not exceed 15 pages unless they comply with the alternative length limitation of 4,200 words"), F.R.A.P. 32(a), and Ninth Circuit Rule 32-1. The brief was prepared in Times New Roman 14-point font and the substantive portions, including the Appendix, and excluding the signature block, are comprised of 4,183 words, as counted by Microsoft Word. Date: June 9, 2023,

*/s/ Gregory R. Michael*
Gregory R. Michael

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2023, I filed the foregoing Appellant's Supplemental Brief In Response To Court's May 19, 2023 Order with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: June 9, 2023,

*/s/ Gregory R. Michael*
Gregory R. Michael