**Case No. 20-17316**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

BENJAMIN KOHN,

*Plaintiff-Appellant,*

v.

STATE BAR OF CALIFORNIA, CALIFORNIA COMMITTEE OF BAR EXAMINERS, AND THEIR AGENTS IN THEIR OFFICIAL CAPACITY,

*Defendants-Appellees.*

Appeal from a Decision of the United States District Court
for the Northern District of California, Case No. 4:20-cv-4827-PJH,
Honorable Phyllis J. Hamilton, District Judge Presiding

## DEFENDANTS-APPELLEES STATE BAR OF CALIFORNIA AND CALIFORNIA COMMITTEE OF BAR EXAMINERS' SUPPLEMENTAL BRIEF REGARDING ARM OF THE STATE ANALYSIS

ELLIN DAVTYAN, ESQ., State Bar No. 238608
ROBERT G. RETANA, ESQ., State Bar No. 148677
BRADY R. DEWAR, ESQ., State Bar No. 252776
RITA K. HIMES, ESQ., State Bar No. 194926
OFFICE OF GENERAL COUNSEL
THE STATE BAR OF CALIFORNIA
180 Howard Street
San Francisco, California 94105-1639
Telephone: (415) 538-2012; Facsimile: (415) 538-2321
Attorneys for Defendants-Appellees The State Bar of California,
Committee of Bar Examiners

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................1

II.    ARGUMENT.......................................................................................3

    A.    The State Bar Is an Arm of the State of California Under the
    Supreme Court's Decisions ....................................................3

        1.    The Supreme Court's Arm-of-the-State Doctrine Requires
        Consideration of the State's Intent and Control over an
        Entity, As Well as the Entity's Financial Independence..............4

            a)    The Supreme Court's Focus on Intent, Control,
            and Overall Effects on Treasury ......................................5

            b)    Supreme Court Decisions Requiring Consideration
            of a State's Sovereign Dignity, as Well as a
            Common-Sense Inquiry Into the Effect on State
            Funds...............................................................................7

        2.    These Factors Establish That the State Bar Is an Arm of
        the State of California...............................................................10

            a)    Intent ...............................................................................10

            b)    State Control ...................................................................12

            c)    Effect on State Treasury .................................................15

        3.    Decisions Across the Country Confirm the Conclusion that
        the State Bar is an Arm of the State ............................................18

        4.    The State Bar Is an Arm of the State of California Under
        Both an Entity-Based and Activity-Based Approach..................19

    B.    Properly Applying Supreme Court Precedent Leads to the Same
    Conclusion as This Court's Existing Case Law ..................................22

        1.    First *Mitchell* Factor—"Whether a Money Judgment
        Would Be Satisfied out of State Funds"......................................23

        2.    Second *Mitchell* Factor—"Whether the Entity Performs
        Central Governmental Functions".............................................25

3.   Third *Mitchell* Factor—"Whether the Entity May Sue or Be  Sued"......................................................................................25

4.   Fourth *Mitchell* Factor—"Whether the Entity Has the Power to Take Property in its Own Name or Only the Name  of the State"...................................................................26

5.   Fifth *Mitchell* Factor—"Corporate Status" ................................26

III.   CONCLUSION............................................................................27

# TABLE OF AUTHORITIES

## Cases

*Alaska Cargo Transport Inc. v. Alaska Railroad Corporation*
5 F.3d 378 (9th Cir. 1993) ............................................................ 25, 28

*Alaska Cargo Transport, Inc. v. Alaska R. Corp.*
5 F.3d 378 (9th Cir. 1993) ....................................................................7

*Bates v. State Bar of Arizona*
433 U.S. 350 (1977)............................................................... 12, 22, 26

*Beentjes v. Placer County Air Pollution Control Dist.*
397 F.3d 775 (9th Cir. 2005) ..............................................................27

*Belanger v. Madera Unified School District*
963 F.2d 248 (9th Cir. 1992) ..............................................................26

*Biden v. Nebraska*
143 S. Ct. 2355 (2023) ....................................................................9, 27

*Bowers v. National Collegiate Athletic Ass'n*
475 F.3d 524 (3d Cir. 2007)................................................................10

*College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*
527 U.S. 666 (1999)............................................................................27

*Crosetto v. State Bar of Wisconsin*
12 F.3d 1396 (7th Cir. 1993) ..............................................................22

*Crowe v. Oregon State Bar*
989 F.3d 714 (9th Cir. 2021) ....................................................... 19, 23

*Dubuc v. Michigan Board of Law Examiners*
342 F.3d 610 (6th Cir. 2003) ..............................................................19

*Duke v. Grady Mun. Schools*
127 F.3d 972 (10th Cir. 1997) ............................................................10

*Durning v. CitiBank, N.A.*
950 F.2d 1419 (9th Cir. 1991) ..................................................... 21, 24

*Edelman v. Jordan*
415 U.S. 651 (1974) ........................................................................4

*Ex parte Ayers*
123 U.S. 443 (1887) ........................................................................4

*Fed. Maritime Comm'n v. South Carolina State Ports Auth.*
535 U.S. 743 (2002) ........................................................................8

*Ford Motor Co. v. Dep't of Treasury*
323 U.S. 459 (1945) ........................................................................4

*Franceschi v. Schwartz*
57 F.3d 828 (9th Cir. 1995) ...........................................................27

*Fresenius Med. Care Cardiovascular Res., Inc. v. Puerto Rico & Caribbean Cardiovascular Ctr. Corp.*
322 F.3d 56 (1st Cir. 2003) ................................................. 8, 10, 13

*Green v. State Bar of Texas*
27 F.3d 1083 (5th Cir. 1994) .........................................................19

*Hans v. Louisiana*
134 U.S. 1 (1890) .............................................................................4

*Hess v. Port Authority Trans-Hudson Corp.*
513 U.S. 30 (1994) .................................................................. passim

*Hirsh v. Justices of the Supreme Court*
67 F.3d 708 (9th Cir. 1995) ...........................................................19

*Hoover v. Ronwin*
466 U.S. 558 (1984) .......................................................................22

*In Re Attorney Discipline System*
19 Cal.4th 582 (1998) ....................................................................18

*In re Rose*
22 Cal.4th 430 (2000) ............................................................. 12, 26

*Jackson v. Hayakawa*
682 F.2d 1344 (9th Cir. 1982) .......................................................24

*Keller v. State Bar of California*
    496 U.S. 1 (1990) ............................................................................. 20

*Kingstad v. State Bar of Wisconsin*
    622 F.3d 708 (7th Cir. 2010) ........................................................... 19

*Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*
    440 U.S. 391 (1979) ........................................................................... 6

*Leis v. Flynt*
    439 U.S. 438 (1979) .................................................................... 12, 22

*Leitner v. Westchester Community College*
    779 F.3d 130 (2d Cir. 2015) ............................................................ 10

*Lewis v. Louisiana State Bar Ass'n*
    792 F.2d 493 (5th Cir. 1986) ..................................................... 19, 22

*Lincoln County v. Luning*
    133 U.S. 529 (1890) ............................................................................ 5

*Lupert v. State Bar*
    761 F.2d 1325 (9th Cir. 1985) ......................................................... 19

*Manders v. Lee*
    338 F.3d 1304 (11th Cir. 2003) ....................................................... 21

*Mitchell v. Los Angeles Community College District*
    861 F.2d 198 (9th Cir. 1988) .................................................... passim

*Mt. Healthy City School District Board of Education v. Doyle*
    429 U.S. 274 (1977) ............................................................................ 5

*Nebraska v. Biden*
    52 F.4th 1044 (8th Cir. 2022) ............................................................ 9

*Nichols v. Alabama State Bar*
    815 F.3d 726 (11th Cir. 2016) ................................................... 10, 19

*Northern Insurance Company of New York v. Chatham County*
    547 U.S. 189, 190 (2006) ................................................................. 21

*O'Connor v. Nevada*
   686 F.2d 749 (9th Cir. 1982) ...................................................................19

*Puerto Rico Ports Auth. v. Fed. Mar. Comm'n*
   531 F.3d 868 (D.C. Cir. 2008) .............................................. 5, 9, 11, 13

*Ray v. County of Los Angeles*
   935 F.3d 703 (9th Cir. 2019) ...............................................................21

*Regents of Univ. of Cal. v. Doe*
   519 U.S. 425 (1997) ................................................................. 7, 16, 25

*Sato v. Orange County Dept. of Educ.*
   861 F.3d 923 (9th Cir. 2017) ...............................................................27

*Seminole Tribe of Florida v. Florida*
   517 U.S. 44 (1996) ...........................................................................8, 11

*Takle v. University of Wisconsin Hosp. and Clinics Auth.*
   402 F.3d 768 (7th Cir. 2005) ...............................................................10

*Thiel v. State Bar of Wisconsin*
   94 F.3d 399 (7th Cir. 1996) ......................................................... 19, 23

*Thomas v. St. Louis Board of Police Comm'rs*
   447 F.3d 1082 (8th Cir. 2006) .............................................................10

*Waskul v. Washtenaw County Community Mental Health*
   979 F.3d 426 (6th Cir. 2020) ...............................................................10

**Statutes**

California Business & Professions Code
   § 6001 ....................................................................................... 11, 27
   § 6008 ........................................................................... 12, 16, 24, 27
   § 6008.1 ...........................................................................................16
   § 6008.2 ...........................................................................................16
   § 6008.7 ...........................................................................................12
   § 6010 ...............................................................................................13

§ 6013.1 ...................................................................................13
§ 6013.3 ...................................................................................13
§ 6013.5 ...................................................................................13
§ 6046 ......................................................................................13
§ 6060 ......................................................................................14
§ 6063 ................................................................................. 17, 24
§ 6076 ......................................................................................14
§ 6078 ......................................................................................14
§ 6079.5 ...................................................................................13
§ 6140 ........................................................................... 16, 17, 24
§ 6140.1 ...................................................................................16
§ 6140.09 .................................................................................17
§ 6140.55 .................................................................................17
§ 6144.1 ...................................................................................17


California Government Code
§ 1001 ......................................................................................13
§ 11121 ....................................................................................12
§ 82011 ....................................................................................12
§ 7920.510 ...............................................................................12
§ 7920.540 ...............................................................................12


Cal. Stats. 2021, ch. 723 (S.B. 211) .......................................17

**Rules**

Federal Rules of Civil Procedure
rule 17 .....................................................................................27

California Rules of Court
rule 9.2 .....................................................................................17
rule 9.3 ................................................................... 12, 13, 14, 15
rule 9.4 .....................................................................................13
rule 9.5 .....................................................................................14
rule 9.6 .....................................................................................14
rule 9.13 ...................................................................................14

Rules of the State Bar of California
   rules 4.80-4.92 ................................................................................14


**Constitutional Provisions**
United States Constitution
   amend. XI .......................................................................................4

California Constitution
   art. VI, § 1 ....................................................................................11
   art. VI, § 9 ....................................................................................11


**Other Authorities**
13 C. Wright & A. Miller, Federal Practice & Procedure: Jurisdiction
   § 3524.2 (3d ed.) ...........................................................................8

Appellees respectfully submit this brief in response to the Court's August 4, 2023, order directing briefing "on the nature of the analysis required by the Supreme Court in assessing whether an entity is an arm of the state (and therefore entitled to sovereign immunity under the Eleventh Amendment), and how such an analysis applies to this appeal."

## I.    INTRODUCTION

The Supreme Court has held that an entity's status as an arm of a State depends on whether the State, in establishing and structuring the entity, intended to enable it to enjoy the State's sovereign immunity.  The analysis should be guided by the twin purposes for safeguarding state sovereign immunity: preserving States' sovereign dignity and preventing federal court judgments that must be paid out of a State's treasury. The first purpose—the primary function of sovereign immunity—recognizes that States should be accorded with dignity and respect in line with their sovereign status.  In analyzing the second purpose, courts should look not just at the direct legal liability of a State for judgments against an entity, but also at the entity's financial dependence on the State. The Supreme Court's guidance is most simply applied through a test that takes account of the State's intent for the agency to act as part of the State as revealed by the structure and function of the agency, the State's control over the agency, and the entity's overall effects on the state treasury.

Under this analysis, this Court should adhere to its longstanding conclusion that the State Bar of California ("State Bar") is an arm of the State of California.  State law recognizes that the State Bar, a California Constitutional entity, is "an administrative arm" of the California Supreme Court for the purposes of conducting attorney admissions

1

and discipline. The State closely controls the State Bar, including through appointment of its governing board (by the three branches of state government) and through the California Supreme Court's approval of the State Bar's admissions rules, review of its decisions, and direct policymaking instructions. Importantly, the State Bar holds its funds for state purposes and is dependent on the State for its funding.

Concluding that the State Bar is an arm of the State would align this Court with other circuits, as no other circuit has failed to treat state bars and attorney licensing bodies as arms of the State. Moreover, although the question is now presented for en banc review, such conclusion remains consistent with the analysis this Court has previously applied to sovereign immunity issues under *Mitchell v. Los Angeles Community College District*, 861 F.2d 198, 201 (9th Cir. 1988).

Appellant's action seeks to challenge the State Bar's decisions related to his taking the bar examination as a required step to the California Supreme Court admitting him to practice law. His challenges go to the heart of the State Bar's role in California's government as an administrative arm of the California Supreme Court. And Appellant seeks to recover funds from the State Bar which it holds for public purposes and for which replenishment could only be authorized by the State of California. For all of these reasons, like every other federal court to address the same question, this Court should respect the State of California's decision to structure the State Bar as an arm of the State for purposes of sovereign immunity.

## II.    ARGUMENT

Sovereign immunity serves twin purposes: protecting the State's dignity and preserving the State's fiscal security.  The arm-of-the-state doctrine ensures that States need not relinquish their dignity nor expose their treasuries if they act through separate, subsidiary legal entities. As set forth below, to determine whether an entity is an arm of the State, the Supreme Court has directed courts to focus on the State's intent for the entity to operate as a part of the state government, the State's control over the entity, and the effect of the action on the State's funds.  This analysis, which requires a functional rather than formulaic approach, demonstrates that the State Bar is an arm of the State of California. This result is both required by Supreme Court precedent and, although the test is worded differently, consistent with this Court's *Mitchell* test as this Court has applied it.

### A.    The State Bar Is an Arm of the State of California Under the Supreme Court's Decisions

To analyze whether a suit against a state entity threatens the State's dignity and funds, the Supreme Court has identified factors that fall into three overarching categories: (1) the State's intent for the entity to function as component of the State as opposed to a local subdivision or non-governmental entity, (2) the State's control over the entity, and (3) the effect of an adverse judgment on the state treasury.[1]  The State Bar is an arm of the State of California under that test—a conclusion consistent this Court's decisions

---

[1] These three factors are similar to the three factors set forth by the State Bar in earlier briefing as a rephrasing of the *Mitchell* test.  Appellant's Replacement Opening Brief at 20 (Dkt. 36).  In that prior briefing, those proposed factors were tied more closely to this Court's *Mitchell* nomenclature, rather than drawn directly from Supreme Court precedent.

addressing the State Bar, as well as with decisions of the Fifth, Sixth, Seventh, and Eleventh Circuits, all of which have held that state bars or other attorney licensing entities are arms of the State. Whatever the outer limits of immunity from suit for non-governmental activities, the State Bar's arm-of-the-state status is clear in the core governmental context of attorney admissions and discipline.

> **1.** **The Supreme Court's Arm-of-the-State Doctrine Requires Consideration of the State's Intent and Control over an Entity, As Well as the Entity's Financial Independence**

The arm-of-the-state doctrine traces its roots to the Eleventh Amendment, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. While these terms preclude only suits by citizens of other States, the Supreme Court for more than a century has understood the Eleventh Amendment to reflect a broader principle: "that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). The Court has also long recognized that plaintiffs cannot evade sovereign immunity by naming a state officer or agency as a defendant when the State itself is the real party in interest. *E.g.*, *Ex parte Ayers*, 123 U.S. 443, 492 (1887); *see*, *e.g.*, *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is

entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.").

        a)      *The Supreme Court's Focus on Intent, Control, and Overall Effects on Treasury*

The Supreme Court has focused on three critical factors for discerning whether an entity qualifies as an arm of the State for sovereign-immunity purposes: "state intent, state control, and overall effects on the state treasury." *Puerto Rico Ports Auth. v. Fed. Mar. Comm'n*, 531 F.3d 868, 874 (D.C. Cir. 2008) (Kavanaugh, J.). The Supreme Court's decisions illustrate the importance of those three considerations in the arm-of-the-state analysis.

*Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), is instructive. There, the Court observed that, while States and state officials in appropriate circumstances are afforded sovereign immunity, counties and similar municipal corporations generally are not. *E.g.*, *Lincoln County v. Luning*, 133 U.S. 529, 530 (1890). Sovereign immunity therefore turned on whether the public entity at issue (a local school board) was "more like a county or city than it is like an arm of the state." *Mt. Healthy*, 429 U.S. at 280. To answer that question, the Court examined how Ohio law classified the school board, considered the extent of the state board of education's control over the school board, and assessed the school board's financial independence from the State. *Id.* Because Ohio law treated the local school board as a political subdivision, rather than the State itself, and because the school board was subject only to "some guidance" from the State, the Court held that the school board was not an arm of

5

the State despite its reliance on a "significant amount of money from the State." *Id.* at 280–81.

The Court applied a similar analysis to reach the same ultimate conclusion regarding a bistate entity in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391 (1979). The Court considered whether an agency created by Nevada and California in an interstate compact authorized by Congress enjoyed sovereign immunity as an arm of those States. *Id.* at 400. The Court framed the inquiry as whether the States intended to create a political subdivision or instead a state agency that should "enjoy the special constitutional protection of the States themselves[.]" *Id.* at 401. In determining that California and Nevada had not structured or operated the Tahoe Regional Planning Agency as an arm of the States that would be entitled to sovereign immunity, the Court considered various factors, including the States' intent, the appointment of the body's members (by local governments, not the States), the source of its funding (again, local governments), liability for its debts (not the States'), and control over its decisions. *Id.* at 401–02. All of those factors cut against sovereign immunity.

In *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994), addressing another Compact Clause entity, the Supreme Court reaffirmed that the principal question is whether a State "structured the new agency to enable it to enjoy the special constitutional protection of the states themselves." *Id.* at 44. Some factors favored immunity—*e.g.*, the creating States (New York and New Jersey) appointed the entity's officers and could veto its decisions—while some cut against immunity or were neutral. *Id.* at 44–46. The Supreme Court resolved the uncertainty by returning to the dignity and fiscal interests that underpin state sovereign immunity. *Id.* at 39–40. Subjecting the

entity to suit offended no dignity interest because "federal courts are not alien to a bistate agency Congress participated in creating." *Id.* at 47. Nor would New York or New Jersey be liable for a judgment against the Port Authority, which had a "long history of paying its own way." *Id.* at 47–49. Nevertheless, while observing that Courts of Appeal had treated "the vulnerability of the State's purse as the most salient factor" under the Eleventh Amendment, the Court endorsed consideration of an agency's practical "financial independence" that goes beyond the strict legal formalism whether a State would pay for a judgment from its treasury. *See id.* at 49–50 (citing *Alaska Cargo Transport, Inc. v. Alaska R. Corp.*, 5 F.3d 378 (9th Cir. 1993)).

> b) *Supreme Court Decisions Requiring Consideration of a State's Sovereign Dignity, as Well as a Common-Sense Inquiry Into the Effect on State Funds*

In subsequent decisions, the Supreme Court has clarified that the inquiry into effects on a State's fisc is relevant but neither talismanic nor overly formalistic. The Court has confirmed that the State's "legal liability for a judgment against a state agency" serves as one "indicator of the relationship between the State and its creation" (*i.e.*, the agency). *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 430–31 (1997). But it has cautioned that this factor should not become "a formalistic question of ultimate financial liability." *Id.* at 431. For example, the Supreme Court reversed this Court's decision that the University of California lost its status as an arm of the State on the theory that the Department of Defense had indemnified California for any judgment in the case. *Id.* at 427–28, 431. The key was that the State would have been responsible for the University of California's debts absent federal indemnification. *Id.* at 431.

7

Later decisions have emphasized the State's dignity interest in avoiding suit in federal court even where the State would not be liable for money damages. "The Eleventh Amendment does not exist solely in order to prevent federal-court judgments that must be paid out of a State's treasury," but "also serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996); *accord Fed. Maritime Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 760 (2002) ("The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities."); *see also* 13 C. Wright & A. Miller, Federal Practice & Procedure: Jurisdiction § 3524.2 (3d ed.) ("Taken together, then, the [Supreme] Court has concluded that Eleventh Amendment immunity serves two goals. First, it preserves the state fisc. Second, it protects the dignity of the state."). Bistate entities do not possess an equivalent dignity interest because, again, "federal courts are not alien to a bistate entity Congress participated in creating." *Hess*, 513 U.S. at 47. In contrast, suits against state agencies implicate the State's "dignity interests." *Fresenius Med. Care Cardiovascular Res., Inc. v. Puerto Rico & Caribbean Cardiovascular Ctr. Corp.*, 322 F.3d 56, 65 (1st Cir. 2003); *see id.* at 66 (holding that bistate agencies, but not state agencies, are subject to "a presumption against an entity being an arm of the state").

In *Biden v. Nebraska*, 143 S. Ct. 2355 (2023), the Court again took an expansive view of whether harm to a state entity constitutes harm to the State itself, focusing—as *Hess* indicated is proper—on whether financial harm to a state agency harms the State in practical terms even if not directly. The Court held that the State of Missouri had Article III standing to challenge the Secretary of Education's loan forgiveness action

8

based on harm to MOHELA, a public corporation created by Missouri, even in the absence of direct financial harm to the State treasury: "The Secretary's plan will cut MOHELA's revenues, impairing its efforts to aid Missouri college students. This acknowledged harm to MOHELA in the performance of its public function is necessarily a direct injury to Missouri itself." *Id.* at 2366. In other words, when a State is harmed in carrying out state functions, that harm is real and legally cognizable even if the State acts through an agency, rather than directly: "Where a State has been harmed in carrying out its responsibilities, the fact that it chose to exercise its authority through a public corporation it created and controls does not bar the State from suing to remedy that harm itself." *Id.* at 2368. *Biden v. Nebraska* resolved only Article III standing, but several of the same considerations are relevant to the arm-of-the-state doctrine. *See Nebraska v. Biden*, 52 F.4th 1044, 1047 (8th Cir. 2022).

The Court's decisions thus make clear that "state intent, state control, and overall effects on the state treasury" are the touchstones for determining whether the State has structured the agency as an arm of the State that possesses the State's sovereign immunity, not as a political subdivision or private entity. *Puerto Rico Ports Auth.*, 531 F.3d at 874. Other circuits have largely focused on these or similar factors.[2] A renewed

---

[2] *See, e.g., Leitner v. Westchester Community College*, 779 F.3d 130, 134-36 (2d Cir. 2015) (describing two tests: (1) a multi-factor test examining the entity's status under state law plus consideration of the policies underlying sovereign immunity; and (2) extent of state liability for the judgment and degree of state supervision over the entity); *Bowers v. National Collegiate Athletic Ass'n*, 475 F.3d 524, 546 (3d Cir. 2007) ("(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has."); *Waskul v. Washtenaw County Community Mental Health*, 979 F.3d 426, 443 (6th Cir. 2020) ("(1) the State's

focus by this Court on a State's intent and control, alongside the effect on the state treasury, would be faithful to the Supreme Court's repeated admonition "that the Eleventh Amendment exists to protect the fiscal *and* dignity interests of the state." *Fresenius*, 322 F.3d at 67 (emphasis added) (citing *Seminole Tribe*, 517 U.S. at 58). This Court should therefore make clear that these three considerations together drive the sovereign-immunity determination.

### 2. These Factors Establish That the State Bar Is an Arm of the State of California

#### a) *Intent*

California's structuring and operation of the State Bar clearly indicate its intent that the State Bar be an arm of the State. To address this factor, courts have considered

---

potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government."); *Takle v. University of Wisconsin Hosp. and Clinics Auth.,* 402 F.3d 768, 769-71 (7th Cir. 2005) (without setting out a specific test, considering various features of the entity's status under state law); *Thomas v. St. Louis Board of Police Comm'rs*, 447 F.3d 1082, 1084 (8th Cir. 2006) ("courts must 'consider[ ] the provisions of state law that define the agency's character.' [Citations.] Specifically, courts assess the agency's degree of autonomy and control over its own affairs and, more importantly, whether a money judgment against the agency will be paid with state funds."); *Duke v. Grady Mun. Schools*, 127 F.3d 972, 974 (10th Cir. 1997) ("[T]he court first examines the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state. Second, the court examines the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing."); *Nichols v. Alabama State Bar*, 815 F.3d 726, 732 (11th Cir. 2016) (considering four factors: "(1) how the state law defines the entity; (2) the degree of state control over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity.").

whether state law characterizes the entity as "a governmental instrumentality rather than as a local governmental or non-governmental agency; whether the entity performs state governmental functions; whether the entity is treated as a government instrumentality for purposes of other State laws; and any representations by the State about the entity's status." *Puerto Rico Ports Auth.*, 531 F.3d at 874–75.

California law decrees that the State Bar is a state agency. The California Constitution specifically declares that the "State Bar of California is a public corporation" and that "[e]very person admitted and licensed to practice law in this State is and shall be a member of the State Bar except while holding office as a judge of a court of record." Cal. Const. art. VI, § 9; *see also* § 6001.[3] The California Supreme Court—the apex of the branch of State government in which the State's judicial power is vested, Cal. Const. art. VI, § 1—has held that the State Bar is the "administrative arm of [the Supreme Court of California] for the purpose of assisting in matters of admission and discipline of attorneys". *In re Rose*, 22 Cal.4th 430, 438 (2000). And that role is also made clear in the Rules of Court adopted by the California Supreme Court, which provide that "[t]he State Bar serves as the administrative arm of the Supreme Court for admissions matters and in that capacity acts under the authority and at the direction of the Supreme Court." Cal. R. Ct. 9.3(a) (emphasis added).

The attorney admissions and discipline functions the State Bar performs on behalf of the California Supreme Court are core state governmental functions. *See Leis v. Flynt,* 439 U.S. 438, 442 (1979) ("Since the founding of the Republic, the licensing and

---

[3] All statutory references are to the California Business and Professions Code unless otherwise indicated.

regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions.”*); Bates v. State Bar of Arizona*, 433 U.S. 350, 361 (1977) (“[T]he regulation of the activities of the bar is at the core of the State's power to protect the public.”).

Finally, California law treats the State Bar as a state agency for other purposes, too. For example, the State Bar must comply with various laws that are generally applicable to State agencies, including the Bagley-Keene Open Meeting Act, *see* Cal. Gov. Code § 11121, the California Public Records Act (under which the State Bar is classified as a “state agency” rather than a “local agency” or “political subdivision,” *see* Cal. Gov. Code §§ 7920.510, 7920.540(b)), the Political Reform Act’s provisions regarding conflict of interest codes, *see* Cal. Gov. Code § 82011, and state purchasing policies, *see, e.g.,* § 6008.7 (“The State Bar shall… develop purchasing policies that align with the purchasing policies of other state agencies.”). And, property held by the State Bar is also exempt from all State and local taxes. § 6008

Put simply, the State Bar is a state agency that possesses the dignity interests of the State, rather than a political subdivision or private trade association established under state law.

### b) *State Control*

Consistent with the State Bar’s role in the state government, the State exercises extensive control over the State Bar. In applying this factor, courts have “look[ed] primarily at how the directors and officers” of the entity “are appointed.” *Puerto Rico Ports Auth.*, 531 F.3d at 877; *see, e.g.*, *Fresenius*, 322 F.3d at 71. The State Bar is

governed by a Board of Trustees appointed solely by the three branches of state government. §§ 6010, 6013.1, 6013.3, 6013.5. The Trustees are civil executive officers under state law. Cal. Gov. Code § 1001. The three branches of California's government also name all members of the Committee of Bar Examiners ("CBE"). § 6046.5; Cal. R. Ct. 9.4(a). The CBE is a body, authorized by statute and Rule of Court, within the State Bar that oversees the bar exam and other admissions matters. § 6046; Cal. R. Ct. 9.3(a). The State Bar's Chief Trial Counsel, who oversees the State Bar's prosecution of attorney discipline matters, is appointed by the Board of Trustees (which, again, comprises members appointed solely by the three branches of state government), subject to confirmation by the California Senate. § 6079.5(a).

In addition to naming all members of the State Bar's governing body, the State exerts close control over the State Bar's disciplinary and admissions functions as the administrative arm of the California Supreme Court. *See Rose*, 22 Cal. 4th at 438. The State Bar Court makes recommendations as to attorney discipline and may issue reprovals to licensees, but it is the California Supreme Court that approves rules of professional conduct and that orders suspension or disbarment. *E.g.,* §§ 6076, 6078. With respect to attorney admissions in particular, the Supreme Court must approve rules proposed by the State Bar. Cal. R. Ct. 9.5. Among the admissions rules that the Supreme Court approved are the rules for granting testing accommodations on the bar exam. *See* Rules of the State Bar of California, rules 4.80–4.92.

By statute, only attorneys that pass the bar exam can be certified to the Supreme Court for a license to practice law. § 6060(g). The State Bar's CBE "is responsible for determining the bar examination's format, scope, topics, content, questions, and grading

process, subject to review and approval by the Supreme Court." Cal. R. Ct. 9.6(a) (emphasis added). The State Bar must report to the Supreme Court on each administration of the bar exam. Cal. R. Ct. 9.6(c). Those aggrieved by an admissions decision, including the testing accommodations decisions at issue in this case, may petition the Supreme Court for review. Cal. R. Ct. 9.3, 9.13(d). The State Bar certifies candidates for licensing to the California Supreme Court, which holds "the inherent power to admit persons to practice law" in California. Cal. R. Ct. 9.3(a).

In addition to reviewing and approving rules and individual admissions and disciplinary decisions, the state Supreme Court has the power to and does issue affirmative policy instructions to the State Bar, relating to both admissions and other functions. *See, e.g.,* August 10, 2020 Administrative Order 2020-08-10, *available at* https://newsroom.courts.ca.gov/sites/default/files/newsroom /document/20200810121225776.pdf (issuing instructions for remote administration of bar exam and ordering reduction in passing score for exam); April 19, 2023 Supreme Court letter to State Bar re: Conflicts of Interest Policy for the Board of Trustees, *available at* https://newsroom.courts.ca.gov/sites/default/files/newsroom/2023-04/Conflicts%20of%20Interest%20Policy%20for%20the%20Board %20of%20Trustees.pdf (directing State Bar to update Conflict of Interest Code); March 22, 2023 Supreme Court letter to State Bar re: Selection of State Bar Court Judges and Board of Trustees, *available at* https://newsroom.courts.ca.gov/sites/ default/files/newsroom/2023-03/LTR%20L%20WILSON%20SB%20COURT% 20JUDGES%20BOT%20%28002%29.pdf (directing State Bar to develop proposed Rule of Court amendments related to evaluating applicants to be State Bar Judges and Trustees

14

for potential conflicts of interest); July 16, 2020 Supreme Court Letter to State Bar re: California Bar Exam, *available at* https://newsroom. courts.ca.gov/sites/default/files/newsroom/document/SB_BOT_7162020_FINAL.pdf (issuing instructions regarding bar exam and directing State Bar to implement a temporary supervised provisional licensure program).

The State's three branches thus control the State Bar both through forward-looking appointments and directives *and* through back-end review of decisions.

### c) *Effect on State Treasury*

Any judgment in this case would be paid from state funds because the State Bar's funds *are* state funds. "All property of the State Bar is hereby declared to be held for essential public and governmental purposes in the judicial branch of the government . . . ." § 6008; *see also* § 6008.2 ("Bonds, notes, debentures and other evidences of indebtedness of the State Bar are hereby declared to be issued for essential public and governmental purposes in the judicial branch of the government and, together with interest thereon and income therefrom, shall be exempt from taxes.") Thus, while a judgment against the State Bar would not "[c]reate a debt or other liability of the state," § 6008.1, any judgment would be paid from state judicial branch funds.

Sovereign immunity should not depend on whether the State pools the property of all its state agencies into one treasury or establishes separate treasuries for different parts of the state government. Such an accounting-focused approach would "convert the inquiry into a formalistic question of ultimate financial liability" from its proper role as

"an indicator of the relationship between the State and its creation"—here, the State Bar. *Regents*, 519 U.S. at 430–31.

Moreover, the State, while having formally established a separate treasury for State Bar property, exercises total control over the funds and has made the State Bar entirely dependent on the State for funding. The State's Bar's annual budget is subject to the Legislature's review and approval in conjunction with each annual funding authorization. § 6140.1. Each year, the Legislature decides whether to authorize the State Bar to collect licensing fees for attorneys. *See, e.g.,* § 6140(a) (authorizing license fee for 2023 only); Cal. Stats. 2021, ch. 723 (S.B. 211) (2021 legislation authorizing 2022 license fee and imposing new auditing and reporting requirements on the State Bar, among other changes). Notably, the fee authorization for the current year specified that the attorney licensing fee for 2023 would be reduced if the State Bar entered a contract to sell its building, demonstrating the State's close control over all State Bar property. § 6140(a). The Legislature also controls the State Bar's authority to charge fees for admissions activities limited to their costs, § 6063, and regularly exercises authority over how the State Bar can use the funds the Legislature has approved, *e.g.,* §§ 6140.03 (imposing $45 opt-out fee for support of legal aid only); 6140.55 (authorizing $40 fee increase to be used for the Client Security Fund only); 6140.6 ($25 fee to be used only for "the costs of the disciplinary system"); 6140.09 ($10 fee for diversion and rehabilitation of attorneys impaired by substance use or mental health disorders). And while the State Bar owns real property, the State Bar cannot use proceeds from the sale of such property without approval by the Legislature through statute, with the exception that up to 10 percent of

the net proceeds from a sale of the San Francisco office building can be used each year solely for improvement of the State Bar's discipline system. § 6144.1.

If State Bar funds are insufficient to meet its needs, only the State (either the Legislature or the Supreme Court) is able to step in to continue the State Bar's governmental functions. The California Supreme Court in fact has done that twice when the Legislature and/or Governor failed to authorize annual fees. *See* Cal R. Ct. 9.2 (ordering special regulatory assessment for 2017 "solely as an emergency interim measure to protect the public, the courts, and the legal profession from the harm that may be caused by the absence of an adequately functioning attorney disciplinary system"); *Attorney Discipline System*, 19 Cal.4th at 625 (after Governor vetoed annual licensing fee for attorneys to fund attorney discipline in 1998, putting "administration of justice … at risk," California Supreme Court ordered licensing fee). As the Supreme Court has observed, "[w]here an agency is so structured that, as a practical matter, if the agency is to survive, a judgment must expend itself against state treasuries, common sense and the rationale of the eleventh amendment require that sovereign immunity attach to the agency." *Hess*, 513 U.S. at 50 (internal quotation omitted)). That recognition supports sovereign immunity here.

In short, Appellant seeks to recover state funds from the State Bar's special state-supervised fund. Even if the State Bar's funds are not housed in the State's general treasury, they are property of the state judicial branch and the State Bar can turn only to the State for covering any shortfalls if the State Bar cannot fund its governmental functions. Both of these structural indications, on their own or together, confirm that judgments against the State Bar ultimately affect the State's fisc.

**3. Decisions Across the Country Confirm the Conclusion that the State Bar is an Arm of the State**

In every case save one that, as discussed below, is distinguishable, courts have held that state bars or similar attorney licensing bodies are arms of the state. This Court has so held with respect to California and Nevada. *Hirsh v. Justices of the Supreme Court*, 67 F.3d 708, 712 (9th Cir. 1995) (California); *Lupert v. State Bar*, 761 F.2d 1325, 1327 (9th Cir. 1985) (same); *O'Connor v. Nevada*, 686 F.2d 749, 750 (9th Cir. 1982) (per curiam). The Fifth, Sixth, Seventh, and Eleventh Circuits have reached the same conclusion for yet other States. *Nichols v. Alabama State Bar*, 815 F.3d 726, 732 (11th Cir. 2016); *Dubuc v. Michigan Board of Law Examiners*, 342 F.3d 610, 615 (6th Cir. 2003); *Thiel v. State Bar of Wisconsin*, 94 F.3d 399, 402–03 (7th Cir. 1996), *overruled on other grounds by Kingstad v. State Bar of Wisconsin*, 622 F.3d 708, 718 (7th Cir. 2010); *Green v. State Bar of Texas*, 27 F.3d 1083, 1087–88 (5th Cir. 1994); *Lewis v. Louisiana State Bar Ass'n*, 792 F.2d 493, 497–98 (5th Cir. 1986). In *Thiel*, the Seventh Circuit explained that the two most important considerations were whether the State exercises control over the state bar and whether the bar acted "as the agent of the Wisconsin Supreme Court when it promulgated the rule in question." 94 F.3d at 401. In the Seventh Circuit's view, "the effect on the state treasury was the least important of the three factors, and would be irrelevant" if the State exercised control over the bar as its agent—conditions the State Bar easily satisfies here.

The lone exception is a decision of this Court—*Crowe v. Oregon State Bar*, 989 F.3d 714 (9th Cir. 2021). To the extent this Court concludes that *Crowe* does not accord with the principles drawn from the Supreme Court's decisions and set forth above, it is

18

incorrect and should be overruled. But that decision, which applied this Court's *Mitchell* test, might also be understood as resting on conclusions about state intent and state control that the Supreme Court has underscored. Although Oregon law labels its State Bar as a state instrumentality, the Oregon Bar operates as "integrated bar" that provides both membership services and assistance to the Oregon Supreme Court, much as the State Bar did at the time of *Keller v. State Bar of California*, 496 U.S. 1 (1990). *Crowe*, 989 F.3d at 732. The Oregon bar even "appoints its own leaders, amends most of its bylaws, and manages its internal affairs," which make that bar "'sufficiently independent from the state.'" *Id.* at 733. In contrast, the State Bar operates solely as an arm of the California Supreme Court and no longer performs membership functions (such as votes on policy positions and advocacy). *See* Dkt. 66 at 3–4.

In sum, California law makes clear that the State of California structured the State Bar as an arm of the state, not as a political subdivision or non-governmental entity. California controls the State Bar through all three branches of government, in particular its Supreme Court. While the State Bar has its own treasury, California law defines the property held by the State Bar as state property. And even if the State Bar were deemed financially separate, it should still be considered an arm of the State given the State's sovereign dignitary interests and practical responsibility for funding the State Bar in the event of financial distress.

### 4. The State Bar Is an Arm of the State of California Under Both an Entity-Based and Activity-Based Approach

Some courts have questioned whether the arm-of-the-state analysis should treat an entity as immune for all purposes, or whether instead sovereign immunity might apply on

an activity-by-activity basis. This Court previously indicated that, if an entity is an arm of the State, then sovereign immunity applies across the board to all of its activities. *Durning v. CitiBank, N.A.*, 950 F.2d 1419, 1426 (9th Cir. 1991) ("Nor can we hold that the Authority is immune from suit with respect to some of its activities … but not others …. To do so would impermissibly qualify sovereign immunity, which by its nature is absolute."); *accord Puerto Rico Ports Authority*, 531 F.3d at 873. But, since *Durning*, the Supreme Court has suggested that the appropriate question may be whether the entity acts as an arm of the state in conducting the particular activity at issue in the case. *Northern Ins. Co. of N.Y. v. Chatham County*, 547 U.S. 189, 194 (2006) ("[T]he County is subject to suit unless it was acting as an arm of the State, as delineated by this Court's precedents, in operating the drawbridge.")[4]; *see also, e.g.*, *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc) ("Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise.").

However this Court approaches the question here, the State Bar is an arm of the State of California because this case involves the bar exam, which is part of the admissions function. The Supreme Court has repeatedly recognized that regulating admission to the bar is historically and traditionally a state function—and a particularly important one. "Since the founding of the Republic," it has observed, "the licensing and

---

[4] In *Ray v. County of Los Angeles*, 935 F.3d 703 (9th Cir. 2019), this Court noted that *Northern Insurance Company of New York* "appears to have left open the possibility that a county could be entitled to Eleventh Amendment immunity in some cases" depending on context, but questioned whether that language was consistent with Supreme Court precedent and noted the language was dicta (the Supreme Court decided the case based on a party's concession). *Id.* at 708-09.

regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions. The States prescribe the qualifications for admission to practice and the standards of professional conduct. They also are responsible for the discipline of lawyers." *Leis*, 439 U.S at 442.

Those responsibilities are no less governmental when performed by state bars exercising delegated authority. In holding that the State Bar of Arizona was acting as the State for purposes of antitrust immunity, the Supreme Court explained that "the regulation of the activities of the bar"—there, enforcement of attorney discipline rules— "is at the core of *the State's power to protect the public*." *Bates*, 433 U.S. at 361 (emphasis added). The Court further held that the "Arizona Supreme Court [was] the real party in interest" because the bar's "part in the enforcement of the rules" was "completely defined by the court; the [bar] acts as the agent of the court under its continuous supervision." *Id.* And since *Bates*, the Court has continued to highlight the centrality of state power in attorney regulation: "Few other professions are as close to the core of the State's power to protect the public. Nor is any trade or other profession as essential to the primary governmental function of administering justice." *Hoover v. Ronwin*, 466 U.S. 558, 569 n.18 (1984).

While *Bates* and *Hoover* did not concern sovereign immunity specifically, other circuits have applied their analysis in recognizing that state bars were arms of the State entitled to sovereign immunity for these core governmental functions. In *Lewis*, the Fifth Circuit held that "the supreme court is the real party in interest if it has the ultimate authority to adopt and enforce the rule in question." 792 F.2d at 497. And in *Crosetto v. State Bar of Wisconsin*, 12 F.3d 1396 (7th Cir. 1993), the Seventh Circuit observed that

the "analysis presented in both *Bates* and *Hoover* is applicable to questions of sovereign immunity," which meant that the bar would have immunity "[i]f the Wisconsin Supreme Court had the ultimate authority to adopt and enforce the Bar's rules in question." *Id.* at 1402. The Seventh Circuit later held the State Bar of Wisconsin to be an arm of the State entitled to sovereign immunity without even reaching the question whether a judgment against the bar would be satisfied by state funds, because "the Bar's role is completely defined by the Court" and "the Bar acts as an agent of the Court" in promulgating and enforcing a rule related to Bar dues. *Thiel*, 94 F.3d at 403.

The activities at issue here also provide another reason why, whatever the correct treatment of the Oregon bar at issue in *Crowe*, the State Bar is properly viewed as an arm of the State of California here. The claims in *Crowe* concerned the use of bar dues to fund the Oregon bar's political speech, 989 F.3d at 721–23, not the administration of attorney discipline or, as relevant here, admissions on behalf of the State's Supreme Court. The State Bar is an arm of the State of California at least when administering admissions and discipline for the California Supreme Court.

**B.** **Properly Applying Supreme Court Precedent Leads to the Same Conclusion as This Court's Existing Case Law**

This Court should reach the same conclusion even under the five-factor test from *Mitchell*, when applied, as this Court has previously done, consistently with applicable Supreme Court precedent. Those factors are:

> [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity. *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th

> Cir. 1982).  To determine these factors, the court looks to the way state law treats the entity.

*Mitchell*, 861 F.2d at 201.

Here, three (the first, second, and fifth) of the five *Mitchell* factors unequivocally support sovereign immunity, and only the less important third and fourth factors—the State Bar's admitted ability to sue and be sued and hold property in its own name—do not directly support sovereign immunity.

### 1. First *Mitchell* Factor—"Whether a Money Judgment  Would Be Satisfied out of State Funds"

The State Bar itself, and not the State of California's general treasury, would be directly liable for a judgment against the State Bar.  But as noted above, all of the State Bar's assets are state funds.  Cal. Bus. & Prof. § 6008.  The Legislature and Supreme Court also exert close control over the State Bar, especially concerning revenue.  Its ability to charge fees to existing licensees is set by statute each year and its ability to charge fees for admissions is limited to "reasonable fees" necessary to cover admissions costs.  §§ 6140, 6063.  And the State Bar is financially dependent on the State, which has previously stepped in to fill the fiscal void when the State Bar's normal resources fail to cover its essential government functions.  *Supra*, at 15.

Appellant has argued that this Court's decisions have narrowly focused on whether the State is legally required to pay a money judgment against an entity.  *See* Appellant's Replacement Opening Brief at 18 (Dkt. 36).  Appellant contends that the first factor is not met unless "the state treasury would … be legally pledged" to satisfy a judgment. *Durning*, 950 F.2d at 1424 (holding Wyoming Community Development Authority not an arm of the State).  But this formalistic preoccupation with the general state treasury is

23

inconsistent with *Mitchell*, which looked to the risk that the judgment posed to "state funds." 861 F.2d at 201. And in practice, this Court has examined agencies' financial independence more holistically, as *Hess* and *Regents* require.

In *Alaska Cargo Transport Inc. v. Alaska Railroad Corporation*, 5 F.3d 378 (9th Cir. 1993), for example, Alaska was not liable for the debts of a state-created railroad. *Id.* at 380. But this Court still held that "although the state is not directly liable for a judgment against [the railroad], the state is nonetheless the real substantial party in interest," remarking that "we cannot divorce the second *Mitchell* factor, the governmental function [the railroad] performs, from our assessment of the first factor, which is the impact on the State of Alaska of a judgment against [the railroad]." *Id.* at 380. Because the railroad performed an "'essential government function'" and the State controlled its ability to raise funds, this Court concluded "[t]his allocation of power persuades us not only that [the railroad] is an arm of the state, but that its fisc in substantial respects is dependent upon and controlled by the will of the governor and the legislature." *Id.* at 381. It further observed that "we are persuaded that a money judgment against [the railroad] would impact Alaska's treasury because of the state's strong interest in keeping [the railroad] operationally and fiscally sound." *Id.* at 382.

*Alaska Cargo* is no outlier, but rather illustrates how this Court looks holistically at the state's involvement in an agency's finances, especially where truly essential government functions are at issue. *See also Belanger v. Madera Unified School District*, 963 F.2d 248, 251 (9th Cir. 1992) (looking to the state's control of public school district funding, rather than the direct liability of the state treasury, to hold that public school districts in California are an arm of the state.); *Aguon v. Commonwealth Ports Authority*,

316 F.3d 899, 903 (9th Cir. 2003) (finding first *Mitchell* factor met and determining that a Northern Mariana Islands port authority was an arm of that commonwealth for Section 1983 purposes, focusing largely on the conclusion that if the port authority were faced with a large money judgment, "the Commonwealth would be compelled to protect its island economy with an appropriation … .").

Thus, under a proper analysis of the first *Mitchell* factor, a judgment against the State Bar should be considered a judgment against state funds.

### 2. Second *Mitchell* Factor—"Whether the Entity Performs Central Governmental Functions"

The second *Mitchell* factor also weighs heavily in favor of sovereign immunity. The State Bar acts as the "administrative arm" of the California Supreme Court for carrying out attorney admission and discipline. *Rose*, 22 Cal.4th at 438. The Supreme Court has recognized state bar regulatory activities such as admissions and discipline as "core" government functions, "essential to the primary governmental function of administering justice." *tes*, 433 U.S. at 361–62 (citations and quotations omitted). Again, the State closely controls the State Bar in administering these central governmental functions. *Supra*, at 13–15.

### 3. Third *Mitchell* Factor—"Whether the Entity May Sue or Be Sued"

The State Bar has the power to sue and be sued. § 6001. But that is true in *every* case involving an arm of the State—otherwise, the state entity could not be a defendant in the first place. Fed. R. Civ. P. 17(c); *cf. Biden*, 143 S. Ct. at 2367. For that reason, the State's decision to authorize an entity to sue and be sued does not constitute "consent to

suit in federal court." *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 676 (1999). This Court therefore has appropriately given this third factor little weight under *Mitchell*. *E.g.*, *Belanger*, 963 F.2d at 254.

### 4. Fourth *Mitchell* Factor—"Whether the Entity Has the Power to Take Property in its Own Name or Only the Name of the State"

The State Bar can hold property in its own name. § 6001(c). But the fourth factor carries "little weight" where, as here, state law provides that the entity holds property for the benefit of the state. *Sato v. Orange County Dept. of Educ.*, 861 F.3d 923, 934 (9th Cir. 2017); *see* § 6008. Moreover, as discussed above, the State controls the State Bar's use and disposition of its property. *Supra,* at 16–19.

### 5. Fifth *Mitchell* Factor—"Corporate Status"

While the State Bar is structured as a public corporation, this is merely a device allowing its control by the three branches of government. Where a public corporation such as the State Bar is controlled by the government, this Court has found the fifth *Mitchell* factor either neutral or weighing in favor of the state agency's status as an arm of the state. *See Aguon*, 316 F.3d at 903 (finding the factor neutral given the commonwealth's control over the board counterbalanced by the agency's ability to act without state approval); *Alaska Cargo*, 5 F.3d at 381–82 (finding the factor to weigh in favor of immunity given state's control over railroad board and control of operations). Here, where the State appoints the Board of Trustees and the Supreme Court exercises control over the State Bar's admissions and discipline functions, *supra*, at 13–15, the factor weighs in favor of the State Bar's status as an arm of the state.

26

\*     \*     \*

Thus, three out of five *Mitchell* factors, including the most important first and second factors, compel the conclusion that the State Bar is an arm of the State.

## III.   CONCLUSION

Regardless the particular test it applies, for the reasons discussed above, this Court should hold the State Bar to be an arm of the State of California entitled to the State's sovereign immunity.

DATED:  August 28, 2023                   Respectfully submitted,

Ellin Davtyan
Robert G. Retana
Brady  R. Dewar
Rita K. Himes

By:  */s/ Brady R. Dewar*
        Brady R. Dewar

Attorneys for Defendants-Appellees
State Bar of California,
Committee of Bar Examiners

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed DEFENDANTS-APPELLEES STATE BAR OF CALIFORNIA AND CALIFORNIA COMMITTEE OF BAR EXAMINERS' SUPPLEMENTAL BRIEF REGARDING ARM OF THE STATE ANALYSIS with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 28, 2023.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Francisco, California this 28th day of August, 2023.

_____ */s/Joan Randolph* _____
Joan Randolph

# ADDENDUM

Except for the following, all applicable statutes, etc., are contained in the addenda filed with Appellant Benjamin Kohn's Replacement Opening Brief (Dkt. 36) and Appellee's Replacement Answer Brief (Dkt. 66).

California Business & Professions Code
　§ 6008.7 ................................................................ Add-001
　§ 6010 ................................................................... Add-002
　§ 6013.1 ................................................................ Add-003
　§ 6013.3 ................................................................ Add-004
　§ 6013.5 ................................................................ Add-005
　§ 6063 ................................................................... Add-006
　§ 6078 ................................................................... Add-007
　§ 6079.5 ................................................................ Add-009
　§ 6140 ................................................................... Add-011
　§ 6140.1 ................................................................ Add-012
　§ 6140.09 .............................................................. Add-013
　§ 6140.55 .............................................................. Add-015
　§ 6144.1 ................................................................ Add-016

California Government Code
　§ 11121 ................................................................. Add-017
　§ 82011 ................................................................. Add-019
　§ 7920.510 ............................................................ Add-021
　§ 7920.540 ............................................................ Add-023

**Rules**
Federal Rules of Civil Procedure
　rule 17 ................................................................. Add-024

California Rules of Court
rule 9.2 ................................................................. Add-027
rule 9.6 ................................................................. Add-029

**Constitutional Provisions**

California Constitution
art. VI, § 1………………………………………………….........Add-030

Case: 20-17316, 08/28/2023, ID: 12782193, DktEntry: 115, Page 40 of 70

§ 6008.7. Purchasing policies; alignment with other state..., CA BUS & PROF §...

West's Annotated California Codes
   Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
     Chapter 4. Attorneys (Refs & Annos)
      Article 1. General Provisions (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6008.7

## § 6008.7. Purchasing policies; alignment with other state agencies

Effective: January 1, 2018

Currentness

The State Bar shall, by January 1, 2019, develop purchasing policies that align with the purchasing policies of other state agencies.

**Credits**

(Added by Stats.2017, c. 422 (S.B.36), § 4, eff. Jan. 1, 2018.)

West's Ann. Cal. Bus. & Prof. Code § 6008.7, CA BUS & PROF § 6008.7
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 2. Administration (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6010

§ 6010. Board of trustees; powers and duties; references to board of governors

Effective: January 1, 2012

Currentness

(a) The State Bar is governed by a board known as the board of trustees of the State Bar. The board has the powers and duties conferred by this chapter.

(b) As used in this chapter or any other provision of law, "board of governors" shall be deemed to refer to the board of trustees.

**Credits**

(Added by Stats.1939, c. 34, p. 348, § 1. Amended by Stats.2011, c. 417 (S.B.163), § 9.)

West's Ann. Cal. Bus. & Prof. Code § 6010, CA BUS & PROF § 6010

Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                                        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 20-17316, 08/28/2023, ID: 12782193, DktEntry: 115, Page 42 of 70

§ 6013.1. Appointment of attorney members; number; term;..., CA BUS & PROP §...

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 2. Administration (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6013.1

§ 6013.1. Appointment of attorney members; number; term;
reappointment; vacancies; factors; administrative responsibilities

Effective: January 1, 2018
Currentness

(a) The Supreme Court shall appoint five attorney members of the board pursuant to a process that the Supreme Court may prescribe. These attorney members shall serve for a term of four years and may be reappointed by the Supreme Court for one additional term only.

(b) An attorney member elected pursuant to Section 6013.2 may be appointed by the Supreme Court pursuant to this section to a term as an appointed attorney member.

(c) The Supreme Court shall fill any vacancy in the term of, and make any reappointment of, any appointed attorney member.

(d) When making appointments to the board, the Supreme Court should consider appointing attorneys that represent the following categories: legal services; small firm or solo practitioners; historically underrepresented groups, including consideration of race, ethnicity, gender, and sexual orientation; and legal academics. In making appointments to the board, the Supreme Court should also consider geographic distribution, years of practice, particularly attorneys who are within the first five years of practice or 36 years of age and under, and participation in voluntary local or state bar activities.

(e) The State Bar shall be responsible for carrying out the administrative responsibilities related to the appointment process described in subdivision (a).

**Credits**
(Added by Stats.2011, c. 417 (S.B.163), § 14. Amended by Stats.2017, c. 422 (S.B.36), § 8, eff. Jan. 1, 2018.)

West's Ann. Cal. Bus. & Prof. Code § 6013.1, CA BUS & PROF § 6013.1
Current with Ch. 1 of 2023-24 1st Ex.Sess., and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 20-17316, 08/28/2023, ID: 12782193, DktEntry: 115, Page 43 of 70

§ 6013.3. Attorney members appointed by Senate..., CA BUS & PROF §...

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 2. Administration (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6013.3

## § 6013.3. Attorney members appointed by Senate Committee on Rules and Speaker of the Assembly; term; vacancies; reappointment

Effective: January 1, 2018

Currentness

(a) One attorney member of the board shall be appointed by the Senate Committee on Rules and one attorney member of the board shall be appointed by the Speaker of the Assembly.

(b) An attorney member appointed pursuant to this section shall serve for a term of four years. Vacancies shall be filled for the remainder of the term. An appointed attorney member may be reappointed pursuant to this section.

**Credits**

(Added by Stats.2011, c. 417 (S.B.163), § 15.5. Amended by Stats.2017, c. 422 (S.B.36), § 10, eff. Jan. 1, 2018.)

West's Ann. Cal. Bus. & Prof. Code § 6013.3, CA BUS & PROF § 6013.3
Current with Ch. 1 of 2023-24 1st Ex.Sess., and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                                  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 20-17316, 08/28/2023, ID: 12782193, DktEntry: 115, Page 44 of 70

§ 6013.5. Public members; term of office; vacancies;..., CA BUS & PROF §...

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 2. Administration (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6013.5

§ 6013.5. Public members; term of office; vacancies; appointment

Effective: January 1, 2019

Currentness

(a) Effective January 1, 2018, a maximum of six members of the board shall be members of the public who have never been licensees of the State Bar or admitted to practice before any court in the United States.

(b) Each of these members shall serve for a term of four years. Vacancies shall be filled for the remainder of the term.

(c) Effective January 1, 2018, one public member shall be appointed by the Senate Committee on Rules and one public member shall be appointed by the Speaker of the Assembly.

(d) Four public members shall be appointed by the Governor, subject to the confirmation of the Senate.

(e) Each respective appointing authority shall fill any vacancy in and make any reappointment to each respective office.

**Credits**
(Added by Stats.1975, c. 874, p. 1952, § 4. Amended by Stats.1979, c. 1041, p. 3620, § 1; Stats.1984, c. 16, § 1; Stats.2017, c. 422 (S.B.36), § 11, eff. Jan. 1, 2018; Stats.2018, c. 659 (A.B.3249), § 16, eff. Jan. 1, 2019.)

West's Ann. Cal. Bus. & Prof. Code § 6013.5, CA BUS & PROF § 6013.5
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

 KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 4. Admission to the Practice of Law (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6063

§ 6063. Fees

Currentness

Applicants for admission to practice shall pay such reasonable fees, fixed by the board, as may be necessary to defray the expense of administering the provisions of this chapter, relating to admission to practice. These fees shall be collected by the examining committee and paid into the treasury of the State Bar.

**Credits**
(Added by Stats.1939, c. 34, p. 354, § 1.)

West's Ann. Cal. Bus. & Prof. Code § 6063, CA BUS & PROF § 6063
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 5. Disciplinary Authority of the Board of Governors (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6076

§ 6076. Rules of professional conduct; authority to formulate and enforce

Effective: January 1, 2019

Currentness

With the approval of the Supreme Court, the Board of Trustees may formulate and enforce rules of professional conduct for all licensees of the State Bar.

**Credits**

(Added by Stats.1939, c. 34, p. 355, § 1. Amended by Stats.2011, c. 417 (S.B.163), § 37; Stats.2018, c. 659 (A.B.3249), § 55, eff. Jan. 1, 2019.)

West's Ann. Cal. Bus. & Prof. Code § 6076, CA BUS & PROF § 6076
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 5. Disciplinary Authority of the Board of Governors (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6078

## § 6078. Power to discipline and reinstate

Effective: January 1, 2019

Currentness

After a hearing for any of the causes set forth in the laws of the State of California warranting disbarment, suspension, or other discipline, the State Bar Court has the power to recommend to the Supreme Court the disbarment or suspension from practice of licensees or to discipline them by reproval, public or private, without such recommendation.

The State Bar Court may pass upon all petitions for reinstatement.

**Credits**

(Added by Stats.1939, c. 34, p. 355, § 1. Amended by Stats.2018, c. 659 (A.B.3249), § 59, eff. Jan. 1, 2019.)

West's Ann. Cal. Bus. & Prof. Code § 6078, CA BUS & PROF § 6078
Current with Ch. 1 of 2023-24 1st Ex.Sess., and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 5. Disciplinary Authority of the Board of Governors (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6079.5

§ 6079.5. Chief trial counsel

Effective: January 1, 2012

Currentness

(a) The board shall appoint a lawyer admitted to practice in California to serve as chief trial counsel. He or she shall be appointed for a term of four years and may be reappointed for additional four-year periods. He or she shall serve at the pleasure of the board. He or she shall not engage in private practice. The State Bar shall notify the Senate Committee on Rules and the Senate and Assembly Committees on Judiciary within seven days of the dismissal or hiring of a chief trial counsel.

The appointment of the chief trial counsel is subject to confirmation by the Senate, and the time limits prescribed in Section 1774 of the Government Code for Senate confirmation and for service in office are applicable to the appointment.

He or she shall report to and serve under the Regulation, Admissions, and Discipline Oversight Committee of the Board of Trustees of the State Bar or its successor committee on attorney discipline, and shall not serve under the direction of the chief executive officer.

(b) The chief trial counsel shall have the following qualifications:

(1) Be an attorney licensed to practice in the State of California, be in good standing and shall not have committed any disciplinary offenses in California or any other jurisdiction.

(2) Have a minimum of five years of experience in the practice of law, including trial experience, with law practice in broad areas of the law.

(3) Have a minimum of two years of prosecutorial experience or similar experience in administrative agency proceedings or disciplinary agencies.

(4) Have a minimum of two years of experience in an administrative role, overseeing staff functions.

The board may except an appointee from any of the above qualifications for good cause upon a determination of necessity to obtain the most qualified person.

On or after July 1, 1987, the chief trial counsel may, as prescribed by the Supreme Court, petition the court for a different disposition of a matter than the recommendations of the review department or the board to the court.

**Credits**

(Added by Stats.1986, c. 1114, § 3. Amended by Stats.2002, c. 415 (S.B.1897), § 8, eff. Sept. 9, 2002; Stats.2011, c. 417 (S.B.163), § 39.)

West's Ann. Cal. Bus. & Prof. Code § 6079.5, CA BUS & PROF § 6079.5

Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                                            © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.                      Add-010      2

 KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

West's Annotated California Codes
   Business and Professions Code (Refs & Annos)
      Division 3. Professions and Vocations Generally (Refs & Annos)
         Chapter 4. Attorneys (Refs & Annos)
            Article 8. Revenue (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6140

§ 6140. Annual license fee; amount; payment

Effective: January 1, 2023
Currentness

(a) The board shall fix the annual license fee for active licensees for 2023 at a sum not exceeding three hundred ninety dollars ($390), except that if the State Bar has entered into a contract to sell its San Francisco office building by October 31, 2022, the sum shall not exceed three hundred eighty-six dollars ($386).

(b) The annual license fee for active licensees is payable on or before the first day of February of each year. If the board finds it appropriate and feasible, it may provide by rule for payment of fees on an installment basis with interest, by credit card, or by other means, and may charge licensees choosing any alternative method of payment an additional fee to defray costs incurred by that election.

(c) This section shall become operative on January 1, 2023. This section shall remain in effect only until January 1, 2024, and as of that date is repealed.

**Credits**
(Added by Stats.2022, c. 419 (A.B.2958), § 5, eff. Sept. 18, 2022, operative Jan. 1, 2023.)

West's Ann. Cal. Bus. & Prof. Code § 6140, CA BUS & PROF § 6140
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

---

**End of Document**
© 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 20-17316, 08/28/2023, ID: 12782193, DktEntry: 115, Page 51 of 70

§ 6140.1. Submission of adopted final budget; contents;..., CA BUS & PROF §...

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 8. Revenue (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6140.1

## § 6140.1. Submission of adopted final budget; contents; fiscal bill; submission of documents; budget change proposals

Effective: January 1, 2019

Currentness

(a) The State Bar annually shall submit its adopted final budget by February 28, so that the budget can be reviewed and approved in conjunction with any bill that would authorize the imposition of license fees. Each budget shall include the estimated revenues, expenditures, and staffing levels for all of the programs and funds administered by the State Bar. In addition to the final budget, the submission shall also include the proposed budget for the following year. Any bill that authorizes the imposition of license fees shall be a fiscal bill and shall be referred to the appropriate fiscal committees; provided, however, that the bill may be approved by a majority vote.

(b) The State Bar shall submit the budget documents in a form comparable to the documents prepared by state departments for inclusion in the Governor's Budget and the salaries and wages supplement. In addition, the bar shall provide supplementary schedules detailing operating expenses and equipment, all revenue sources, any reimbursements or interfund transfers, fund balances, and other related supporting documentation. The bar shall submit budget change proposals with its final budget, explaining the need for any differences between the current and proposed budgets.

**Credits**

(Added by Stats.1986, c. 2, § 2, eff. Feb. 4, 1986. Amended by Stats.1986, c. 1510, § 2; Stats.1987, c. 688, § 3; Stats.1988, c. 1149, § 2.5; Stats.1992, c. 1296 (S.B.986), § 1, eff. Sept. 30, 1992; Stats.2018, c. 659 (A.B.3249), § 97, eff. Jan. 1, 2019.)

West's Ann. Cal. Bus. & Prof. Code § 6140.1, CA BUS & PROF § 6140.1
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 20-17316, 08/28/2023, ID: 12782193, DktEntry: 115, Page 52 of 70

§ 6140.9. Moneys for support of program established..., CA BUS & PROF §...

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 8. Revenue (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6140.9

## § 6140.9. Moneys for support of program established pursuant to Attorney Diversion and Assistance Act and related programs; alternative sources for funding; transfer of excess funds

Effective: January 1, 2020

Currentness

(a) Moneys for the support of the program established pursuant to Article 15 (commencing with Section 6230), treatment services for those who cannot afford to pay, and related programs approved by the committee established pursuant to Section 6231 shall be paid in whole or part by a fee of ten dollars ($10) per active licensee per year, and by a fee of five dollars ($5) per inactive licensee per year, except that for 2020 only, the fee shall be one dollar ($1) per active licensee and zero dollars ($0) per inactive licensee. The State Bar is not required to expend any additional funds to either support those programs or to provide treatment services for those who cannot afford to pay.

(b) On and after January 1, 2019, one dollar ($1) of the ten-dollar ($10) fee paid by each active licensee pursuant to subdivision (a) shall be transferred by the State Bar to a statewide nonprofit corporation, established by attorneys that has, for the last 25 years or more, provided peer support to attorneys recovering from alcohol and substance abuse in a confidential and anonymous manner, to fund the support of recovery efforts of the nonprofit corporation. In 2020 only, the statewide nonprofit corporation shall receive the one dollar ($1) fee paid by each active licensee.

(c) Any nonprofit corporation that receives funds pursuant to subdivision (b) shall submit an annual report to the State Bar accounting for the use of the funds. The report shall be submitted to the State Bar no later than March 1, 2020, and no later than March 1 of each year thereafter. The report shall include, but not be limited to, the following:

(1) An accounting of all receipts and expenditures of the funds.

(2) The balance of the funds as of the end of the previous calendar year.

(3) A brief narrative describing the goals of the work supported by the expenditures.

(4) A summary of the number of clients served, the modality of treatment, and any outcome data on the impact of the treatment.

Case: 20-17316, 08/28/2023, ID: 12782193, DktEntry: 115, Page 53 of 70

§ 6140.9. Moneys for support of program established..., CA BUS & PROF §...

(d) The board may seek alternative sources for funding the program. Any excess funds not needed to support the program, including reserve funds, may be transferred to fund the Client Security Fund established pursuant to Section 6140.5, provided there are sufficient funds available to fully support the program.

**Credits**

(Added by Stats.1988, c. 1149, § 5.3. Amended by Stats.2001, c. 129 (S.B.479), § 1; Stats.2005, c. 341 (A.B.1529), § 6; Stats.2017, c. 422 (S.B.36), § 32, eff. Jan. 1, 2018; Stats.2018, c. 659 (A.B.3249), § 105, eff. Jan. 1, 2019; Stats.2019, c. 698 (S.B.176), § 13, eff. Jan. 1, 2020.)

West's Ann. Cal. Bus. & Prof. Code § 6140.9, CA BUS & PROF § 6140.9

Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works. Add-014    2

Case: 20-17316, 08/28/2023, ID: 12782193, DktEntry: 115, Page 54 of 70

§ 6140.55. Client Security Fund; costs of administration;..., CA BUS & PROF §...

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 8. Revenue (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6140.55

§ 6140.55. Client Security Fund; costs of administration; increase in license fee

Effective: January 1, 2019

Currentness

The board may increase the annual license fees fixed by it pursuant to Section 6140 by an additional amount per active licensee not to exceed forty dollars ($40), and the annual license fees fixed by it pursuant to Section 6141 by an additional amount per inactive licensee not to exceed ten dollars ($10), in any year, the additional amount to be applied only for the purposes of the Client Security Fund and the costs of its administration, including, but not limited to, the costs of processing, determining, defending, or insuring claims against the fund.

**Credits**

(Added by Stats.1988, c. 1149, § 4. Amended by Stats.1990, c. 1639 (A.B.3991), § 12; Stats.2001, c. 24 (S.B.352), § 7; Stats.2005, c. 341 (A.B.1529), § 4; Stats.2018, c. 659 (A.B.3249), § 101, eff. Jan. 1, 2019.)

West's Ann. Cal. Bus. & Prof. Code § 6140.55, CA BUS & PROF § 6140.55
Current with Ch. 1 of 2023-24 1st Ex.Sess., and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 20-17316, 08/28/2023, ID: 12782193, DktEntry: 115, Page 55 of 70

§ 6144.1. Net proceeds from sale or lease of real..., CA BUS & PROF §...

🟨 KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

West's Annotated California Codes
  Business and Professions Code (Refs & Annos)
    Division 3. Professions and Vocations Generally (Refs & Annos)
      Chapter 4. Attorneys (Refs & Annos)
        Article 8. Revenue (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 6144.1

## § 6144.1. Net proceeds from sale or lease of real property to be held by State Bar; net proceeds from sale of State Bar's San Francisco office building

Effective: September 18, 2022
Currentness

(a) The net proceeds from the sale of real property, after payment of obligations and encumbrances and reasonable costs of acquiring and relocating its facilities, if any, shall be held by the State Bar without expenditure or commitment for any purpose until approved by the Legislature by statute. The net proceeds from the lease of real property, after payment of obligations and encumbrances and reasonable costs of acquiring and relocating its facilities, if any, shall be used by the State Bar for the protection of the public.

(b) Notwithstanding subdivision (a), the net proceeds from the sale of the State Bar's San Francisco office building, after payment of obligations and encumbrances and the minimally reasonable costs of acquiring and relocating its facilities, if any, shall be held by the State Bar without expenditure or commitment for any purpose until approved by the Legislature by statute. However, up to 10 percent of the net proceeds may be used every fiscal year for improvement of the State Bar's discipline system. These moneys shall not supplant any funds that are already being spent on the discipline system or that have been planned in the prior fiscal year to spend on the discipline system.

**Credits**
(Added by Stats.2014, c. 429 (A.B.2746), § 5, eff. Jan. 1, 2015. Amended by Stats.2017, c. 422 (S.B.36), § 35, eff. Jan. 1, 2018; Stats.2022, c. 419 (A.B.2958), § 11, eff. Sept. 18, 2022.)

West's Ann. Cal. Bus. & Prof. Code § 6144.1, CA BUS & PROF § 6144.1
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Government Code (Refs & Annos)
    Title 2. Government of the State of California
      Division 3. Executive Department (Refs & Annos)
        Part 1. State Departments and Agencies (Refs & Annos)
          Chapter 1. State Agencies (Refs & Annos)
            Article 9. Meetings (Refs & Annos)

West's Ann.Cal.Gov.Code § 11121

§ 11121. "State body" defined

Effective: January 1, 2016
Currentness

As used in this article, "state body" means each of the following:

(a) Every state board, or commission, or similar multimember body of the state that is created by statute or required by law to conduct official meetings and every commission created by executive order.

(b) A board, commission, committee, or similar multimember body that exercises any authority of a state body delegated to it by that state body.

(c) An advisory board, advisory commission, advisory committee, advisory subcommittee, or similar multimember advisory body of a state body, if created by formal action of the state body or of any member of the state body, and if the advisory body so created consists of three or more persons.

(d) A board, commission, committee, or similar multimember body on which a member of a body that is a state body pursuant to this section serves in his or her official capacity as a representative of that state body and that is supported, in whole or in part, by funds provided by the state body, whether the multimember body is organized and operated by the state body or by a private corporation.

(e) Notwithstanding subdivision (a) of Section 11121.1, the State Bar of California, as described in Section 6001 of the Business and Professions Code. This subdivision shall become operative on April 1, 2016.

**Credits**

(Added by Stats.1967, c. 1656, p. 4026, § 122. Amended by Stats.1980, c. 515, § 1; Stats.1981, c. 968, p. 3683, § 5; Stats.1984, c. 193, § 38; Stats.1996, c. 1023 (S.B.1497), § 88, eff. Sept. 29, 1996; Stats.1996, c. 1064 (A.B.3351), § 783.1, operative July 1, 1997; Stats.2001, c. 243 (A.B.192), § 1; Stats.2003, c. 62 (S.B.600), § 117; Stats.2015, c. 537 (S.B.387), § 22, eff. Jan. 1, 2016.)

West's Ann. Cal. Gov. Code § 11121, CA GOVT § 11121

Current with Ch. 1 of 2023-24 1st Ex.Sess., and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                                                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 20-17316, 08/28/2023, ID: 12782193, DktEntry: 115, Page 58 of 70

West's Annotated California Codes
  Government Code (Refs & Annos)
    Title 9. Political Reform (Refs & Annos)
      Chapter 2. Definitions (Refs & Annos)

West's Ann.Cal.Gov.Code § 82011

# § 82011. Code reviewing body

Effective: January 1, 2022
Currentness

"Code reviewing body" means all of the following:

(a) The commission, with respect to the conflict of interest code of a state agency other than an agency in the judicial branch of government, or any local government agency with jurisdiction in more than one county.

(b) The board of supervisors, with respect to the conflict of interest code of any county agency other than the board of supervisors, or any agency of the judicial branch of government, and of any local government agency, other than a city agency, with jurisdiction wholly within the county.

(c) The city council, with respect to the conflict of interest code of any city agency other than the city council.

(d) The Attorney General, with respect to the conflict of interest code of the commission.

(e) The Chief Justice of California or the Chief Justice's designee, with respect to the conflict of interest code of the members of the Judicial Council, Commission on Judicial Performance, and Board of Governors of the State Bar of California.

(f) The Board of Governors of the State Bar of California with respect to the conflict of interest code of the State Bar of California.

(g) The Chief Justice of California, the administrative presiding judges of the courts of appeal, and the presiding judges of superior courts, or their designees, with respect to the conflict of interest code of any agency of the judicial branch of government subject to the immediate administrative supervision of that court.

(h) The Judicial Council of California, with respect to the conflict of interest code of any state agency within the judicial branch of government not included under subdivisions (e), (f), and (g).

**Credits**

(Added by Initiative Measure approved by the electors June 4, 1974, eff. Jan. 7, 1975. Amended by Stats.1980, c. 779, p. 2372, § 1; Stats.1984, c. 727, § 2, operative July 1, 1985; Stats.1985, c. 775, § 2.5; Stats.1995, c. 587 (A.B.1769), § 1; Stats.2002, c. 784 (S.B.1316), § 508; Stats.2003, c. 62 (S.B.600), § 176; Stats.2021, c. 50 (A.B.378), § 134, eff. Jan. 1, 2022.)

West's Ann. Cal. Gov. Code § 82011, CA GOVT § 82011

Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

---

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Government Code (Refs & Annos)
    Title 1. General
      Division 10. Access to Public Records (Refs & Annos)
        Part 1. General Provisions (Refs & Annos)
          Chapter 2. Definitions (Refs & Annos)

West's Ann.Cal.Gov.Code § 7920.510

§ 7920.510. Local agency

Effective: January 1, 2023
Currentness

As used in this division, "local agency" includes any of the following:

(a) A county.

(b) A city, whether general law or chartered.

(c) A city and county.

(d) A school district.

(e) A municipal corporation.

(f) A district.

(g) A political subdivision.

(h) Any board, commission, or agency of the foregoing.

(i) Another local public agency.

(j) An entity that is a legislative body of a local agency pursuant to subdivision (c) or (d) of Section 54952.

**Credits**
(Added by Stats.2021, c. 614 (A.B.473), § 2, eff. Jan. 1, 2022, operative Jan. 1, 2023.)

West's Ann. Cal. Gov. Code § 7920.510, CA GOVT § 7920.510

Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

---

West's Annotated California Codes
  Government Code (Refs & Annos)
    Title 1. General
      Division 10. Access to Public Records (Refs & Annos)
        Part 1. General Provisions (Refs & Annos)
          Chapter 2. Definitions (Refs & Annos)

West's Ann.Cal.Gov.Code § 7920.540

§ 7920.540. State agency

Effective: January 1, 2023
Currentness

(a) As used in this division, "state agency" means every state office, officer, department, division, bureau, board, and commission or other state body or agency, except those agencies provided for in Article IV (except Section 20 thereof) or Article VI of the California Constitution.

(b) Notwithstanding subdivision (a) or any other law, "state agency" also means the State Bar of California, as described in Section 6001 of the Business and Professions Code.

**Credits**
(Added by Stats.2021, c. 614 (A.B.473), § 2, eff. Jan. 1, 2022, operative Jan. 1, 2023.)

West's Ann. Cal. Gov. Code § 7920.540, CA GOVT § 7920.540
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

> United States Code Annotated
>    Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
>      Title IV. Parties

Federal Rules of Civil Procedure Rule 17

# Rule 17. Plaintiff and Defendant; Capacity; Public Officers

Currentness

**(a) Real Party in Interest.**

  **(1)** *Designation in General.* An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought:

    **(A)** an executor;

    **(B)** an administrator;

    **(C)** a guardian;

    **(D)** a bailee;

    **(E)** a trustee of an express trust;

    **(F)** a party with whom or in whose name a contract has been made for another's benefit; and

    **(G)** a party authorized by statute.

  **(2)** *Action in the Name of the United States for Another's Use or Benefit.* When a federal statute so provides, an action for another's use or benefit must be brought in the name of the United States.

  **(3)** *Joinder of the Real Party in Interest.* The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

**(b) Capacity to Sue or Be Sued.** Capacity to sue or be sued is determined as follows:

**(1)** for an individual who is not acting in a representative capacity, by the law of the individual's domicile;

**(2)** for a corporation, by the law under which it was organized; and

**(3)** for all other parties, by the law of the state where the court is located, except that:

**(A)** a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws; and

**(B)** 28 U.S.C. §§ 754 and 959(a) govern the capacity of a receiver appointed by a United States court to sue or be sued in a United States court.

**(c) Minor or Incompetent Person.**

**(1)** *With a Representative.* The following representatives may sue or defend on behalf of a minor or an incompetent person:

**(A)** a general guardian;

**(B)** a committee;

**(C)** a conservator; or

**(D)** a like fiduciary.

**(2)** *Without a Representative.* A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem--or issue another appropriate order-- to protect a minor or incompetent person who is unrepresented in an action.

**(d) Public Officer's Title and Name.** A public officer who sues or is sued in an official capacity may be designated by official title rather than by name, but the court may order that the officer's name be added.

**CREDIT(S)**

(Amended December 27, 1946, effective March 19, 1948; December 29, 1948, effective October 20, 1949; February 28, 1966, effective July 1, 1966; March 2, 1987, effective August 1, 1987; April 25, 1988, effective August 1, 1988; amended by Pub.L. 100-690, Title VII, § 7049, November 18, 1988, 102 Stat. 4401 (although amendment by Pub.L. 100-690 could not be executed due to prior amendment by Court order which made the same change effective August 1, 1988); April 30, 2007, effective December 1, 2007.)

Fed. Rules Civ. Proc. Rule 17, 28 U.S.C.A., FRCP Rule 17
Including Amendments Received Through 8-1-23

---

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 20-17316, 08/28/2023, ID: 12782193, DktEntry: 115, Page 66 of 70

Rule 9.2. Interim Special Regulatory Assessment for..., CA ST PRACTICE...

West's Annotated California Codes
California Rules of Court (Refs & Annos)
Title 9. Rules on Law Practice, Attorneys, and Judges (Refs & Annos)
Division 2. Attorney Admission and Disciplinary Proceedings and Review of State Bar Proceedings (Refs & Annos)
Chapter 1. General Provisions (Refs & Annos)

Cal.Rules of Court, Rule 9.2

Formerly cited as CA ST PRACTICE Rule 9.9

## Rule 9.2. Interim Special Regulatory Assessment for Attorney Discipline

Currentness

**(a)** This rule is adopted by the Supreme Court solely as an emergency interim measure to protect the public, the courts, and the legal profession from the harm that may be caused by the absence of an adequately functioning attorney disciplinary system. The Supreme Court contemplates that the rule may be modified or repealed once legislation designed to fund an adequate attorney disciplinary system is enacted and becomes effective.

**(b)**(1) Each active licensee shall pay a mandatory regulatory assessment of two hundred ninety-seven dollars ($297) to the State Bar of California. This assessment is calculated as the sum of the following amounts:

(A) Two hundred eighty-three dollars ($283) to support the following departments and activities:

Office of Chief Trial Counsel
Office of Probation
State Bar Court
Mandatory Fee Arbitration program
Office of Professional Competence
Office of General Counsel
Office of Licensee Records and Compliance
Licensee Billing
Office of Communications (support of discipline only)
California Young Lawyers Association (discipline-related only).

(B) Nine dollars ($9) to fund implementation of the workforce plan recommendations from the National Center for State Courts.

(C) Five dollars ($5) to make up for revenue the State Bar will forgo because of assessment scaling and assessment waivers, as provided for under this rule.

(2) The $297 assessment specifically excludes any funding for the State Bar's legislative lobbying, elimination of bias, and bar relations programs.

Case: 20-17316, 08/28/2023, ID: 12782193, DktEntry: 115, Page 67 of 70

Rule 9.2. Interim Special Regulatory Assessment for..., CA ST PRACTICE...

(3) Payment of this assessment is due by March 1, 2017. Late payment or nonpayment of the assessment shall subject a licensee to the same penalties and/or sanctions applicable to mandatory fees authorized by statute.

(4) The provisions regarding fee scaling, fee waivers, and penalty waivers contained in Business and Professions Code section 6141.1 and rules 2.15 and 2.16 of the Rules of the State Bar of California shall apply to requests for relief from payment of the assessment or any penalty under this rule. Applications for relief from payment shall be made to the State Bar, which may grant or deny waivers in conformance with its existing rules and regulations. The State Bar shall keep a record of all fee scaling and fee waivers approved and the amount of fees affected.

**(c)** A special master appointed by the Supreme Court shall establish the Special Master's Attorney Discipline Fund, into which all money collected pursuant to this rule shall be deposited. The special master shall oversee the disbursement and allocation of funds from the Special Master's Attorney Discipline Fund for the limited purpose of maintaining, operating, and supporting an attorney disciplinary system, including payment of the reasonable costs and expenses of the special master as ordered by the Supreme Court. The special master shall exercise authority pursuant to the charge of the Supreme Court and shall submit quarterly reports and recommendations to the Supreme Court regarding the supervision and use of these funds. The State Bar shall respond in timely and accurate fashion to the special master's requests for information and reports.

Should any funds collected pursuant to this rule not be used for the limited purpose set forth in the rule, the Supreme Court may order the refund of an appropriate amount to licensees or take any other action that it deems appropriate.

**Credits**

(Formerly Rule 9.9, adopted, eff. Nov. 16, 2016. Renumbered Rule 9.2, eff. Jan. 1, 2018. As amended, eff. Jan. 1, 2019.)

Cal. Rules of Court, Rule 9.2, CA ST PRACTICE Rule 9.2
Current with amendments received through August 1, 2023. Some rules may be more current, see credits for details.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
California Rules of Court (Refs & Annos)
Title 9. Rules on Law Practice, Attorneys, and Judges (Refs & Annos)
Division 2. Attorney Admission and Disciplinary Proceedings and Review of State Bar Proceedings (Refs & Annos)
Chapter 2. Attorney Admissions (Refs & Annos)

Cal.Rules of Court, Rule 9.6

Rule 9.6. Supreme Court approval of bar examination

Currentness

**(a) Bar examination**

The Committee of Bar Examiners, pursuant to the authority delegated to it by the Board of Trustees, is responsible for determining the bar examination's format, scope, topics, content, questions, and grading process, subject to review and approval by the Supreme Court. The Supreme Court must set the passing score of the examination.

**(b) Analysis of validity**

The State Bar must conduct an analysis of the validity of the bar examination at least once every seven years, or whenever directed by the Supreme Court. The State Bar must prepare and submit a report summarizing its findings and recommendations, if any, to the Supreme Court. Any recommendations proposing significant changes to the bar examination, and any recommended change to the passing score, must be submitted to the Supreme Court for its review and approval.

**(c) Report on examination**

The State Bar must provide the Supreme Court a report on each administration of the bar examination in a timely manner.

**Credits**

(Adopted, eff. Jan. 1, 2018. As amended, eff. Jan. 1, 2019.)

Cal. Rules of Court, Rule 9.6, CA ST PRACTICE Rule 9.6
Current with amendments received through August 1, 2023. Some rules may be more current, see credits for details.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Constitution of the State of California 1879 (Refs & Annos)
    Article VI. Judicial (Refs & Annos)

West's Ann.Cal.Const. Art. 6, § 1

## § 1. Judicial power; courts of record

Effective: November 6, 2002
Currentness

SEC. 1. The judicial power of this State is vested in the Supreme Court, courts of appeal, and superior courts, all of which are courts of record.

**Credits**

(Adopted Nov. 8, 1966. Amended Nov. 8, 1988, operative Jan. 1, 1990. Amended by Stats.1994, Res. c. 113 (S.C.A.7) (Prop. 191, approved Nov. 8, 1994, operative Jan. 1, 1995); Stats.1996, Res. c. 36 (S.C.A.4), (Prop. 220, approved June 2, 1998, eff. June 3, 1998); Stats.2002, Res. c. 88 (A.C.A.15), § 1 (Prop. 48, approved Nov. 5, 2002, eff. Nov. 6, 2002).)

West's Ann. Cal. Const. Art. 6, § 1, CA CONST Art. 6, § 1
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 20-17316

I am the attorney or self-represented party.

**This brief contains** | 7,955 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◉ complies with the length limit designated by court order dated | 8/4/2023 | .

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Brady R. Dewar | **Date** | 8/28/2023
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*