**No. 20-17316**
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

BENJAMIN KOHN,
*Plaintiff and Appellant*,

v.

STATE BAR OF CALIFORNIA, CALIFORNIA COMMITTEE OF BAR
EXAMINERS, and THEIR AGENTS IN THEIR OFFICIAL CAPACITY,
*Defendants and Appellees*.
_____

On Appeal from the Judgment of the United States
District Court for the Northern District of California
The Honorable Phyllis J. Hamilton
District Court Case Number: 4:20-cv-04827-PJH
_____

**PRO BONO**

**APPELLANT'S SUPPLEMENTAL EN BANC BRIEF
IN RESPONSE TO COURT'S AUGUST 4, 2023 ORDER**

MICHAEL YAMAMOTO LLP
Gregory R. Michael (SBN: 306814)
greg@my.law
Dorothy C. Yamamoto (SBN: 306817)
dorothy@my.law
1400 Shattuck Ave., #412
Berkeley, CA 94709
Phone: 510.296.5600
Fax: 510.296.5600

*Attorneys for Plaintiff-Appellant Benjamin Kohn*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... v

INTRODUCTION ................................................................................... 1

BACKGROUND RELEVANT TO THE ARM-OF-THE-STATE ANALYSIS ..... 2

ARGUMENT .......................................................................................... 5

I.   THE STATE SOVEREIGN IMMUNITY DOCTRINE AS ADDUCED
     BY THE SUPREME COURT ........................................................... 5

     A.   The Arm-of-the-State Test for State Sovereign Immunity .................. 8

     B.   This Court's Application of the *Mitchell* Framework
          Remains Consistent with Governing Precedent. ............................... 10

II.  THE STATE BAR OF CALIFORNIA IS NOT AN ARM OF THE
     STATE ENTITLED TO SOVEREIGN IMMUNITY. ................................. 13

     A.   State Sovereign Immunity Indicia Point Uniformly Against
          Being Treated as an Arm of the State. ........................................... 14

          1.   A monetary judgment against the State Bar would not run
               against the State treasury. ....................................................... 14

          2.   States do not traditionally administer bar exams or process
               disability accommodation requests. ......................................... 17

          3.   The State Bar operates independently of the State. ................. 19

     B.   Kohn's Claims Against the State Bar Do Not Implicate the
          Two Primary Purposes of State Sovereign Immunity: State
          Solvency and Dignity. ................................................................ 22

     C.   The Effects of this Court's Sovereign Immunity Decision on
          this Appeal: ............................................................................... 24

          1.   Kohn's Title II Claims ............................................................ 24

          2.   Rehabilitation Act Claims ....................................................... 26

iii

## TABLE OF CONTENTS (CONTINUED)

**Page**

3. California Unruh Act Claims ....................................................28

CONCLUSION ........................................................................29

CERTIFICATE OF COMPLIANCE ........................................................30

CERTIFICATE OF SERVICE ............................................................31

# TABLE OF AUTHORITIES

**Page(s)**

## CONSTITUTIONAL PROVISIONS

Cal. Const. Art. VI, Sec. 9. ..................................................................2

U.S. Const. Amend. XI. ......................................................................6

## CASES

*Alaska Cargo Trans., Inc. v. Alaska R. Corp.*,
    5 F.3d 378 (9th Cir. 1993) .............................................................15

*Alden v. Maine*,
    527 U.S. 706 (1999)......................................................................6, 7

*Auer v. Robbins*,
    519 U.S. 452 (1997).....................................................................9, 22

*Cent. Virginia Cmty. Coll. v. Katz*,
    546 U.S. 356 (2006).........................................................................7

*Chaney v. State Bar of Cal.*,
    386 F.2d 962 (9th Cir. 1967) ..........................................................21

*Chisholm v. Georgia*,
    2 U.S. 419 (1793).............................................................................6

*City of Boerne v. Flores*,
    521 U.S. 507 (1997).......................................................................25

*Crowe v. Oregon State Bar*,
    989 F.3d 714 (9th Cir. 2021) ..........................................................11

*Doe One v. CVS Pharmacy, Inc.*,
    No. 18-CV-01031-EMC, 2022 WL 3139516 (N.D. Cal. Aug. 5, 2022)............27

*Douglas v. Cal. Dep't of Youth Auth.*,
    271 F.3d 812 (9th Cir. 2001) ..........................................................26

*Edelman v. Jordan*,
    415 U.S. 651 (1974).........................................................................8

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.*,
    630 F.3d 1153 (9th Cir. 2011) ............................................................19

*Ex parte Young*,
    209 U.S. 123 (1908)......................................................................7, 23

*Fed. Mar. Comm'n v. S.C. State Ports Auth.*,
    535 U.S. 743 (2002)............................................................................23

*Flinders v. State Bar of California*,
    No. 22-CV-04072-VKD, 2022 WL 17419552 (N.D. Cal. Dec. 5, 2022) ..........21

*Giannini v. Comm. of Bar Examiners of State Bar of Cal.*,
    847 F.2d 1434 (9th Cir. 1988). ............................................. 5, 20, 21

*Hafer v. Melo*,
    502 U.S. 21 (1991)..............................................................................8

*Hans v. Louisiana*,
    134 U.S. 1 (1890)..........................................................................6, 23

*Hess v. Port Auth. Trans-Hudson Corp.*,
    513 U.S. 30 (1994)............................................................... passim

*Hill v. Blind Indus. & Servs. of Maryland*,
    179 F.3d 754 (9th Cir. 1999) ............................................................29

*Hutto v. S.C. Ret. Sys.*,
    773 F.3d 536 (4th Cir. 2014) ............................................................14

*In re Rose*,
    22 Cal. 4th 430 (2000). .......................................................................5

*ITSI T.V. Prods., Inc. v. Agric. Ass'ns*,
    3 F.3d 1289 (9th Cir. 1993) ..............................................................13

*Johnson v. Educ. Testing Serv.*,
    No. C-13-3660 SBA, 2013 WL 4711611 (N.D. Cal. Aug. 30, 2013)................19

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Kelson v. City of Springfield*,
   767 F.2d 651 (9th Cir. 1985) ...............................................................28

*Kohn v. State Bar of California*,
   497 F. Supp. 3d 526 (N.D. Cal. 2020)..................................................25

*Lake Country Ests., Inc. v. Tahoe Reg'l Planning Agency*,
   440 U.S. 391 (1979)....................................................... 7, 9, 10, 17

*Langston By and Through Langston v. ACT*,
   890 F.2d 380 (11th Cir. 1989) ...........................................................19

*Lewis v. Clarke*,
   581 U.S. 155 (2017)................................................................ passim

*Lincoln Cnty. v. Luning*,
   133 U.S. 529 (1890).............................................................................10

*Missouri v. Fiske*,
   290 U.S. 18 (1933)...............................................................................23

*Mitchell v. Los Angeles Cmty. Coll. Dist.*,
   861 F.2d 198 (9th Cir. 1988) ............................................................11

*Moor v. Alameda Cnty.*,
   411 U.S. 693 (1973)........................................................................9, 20

*Morrowatti v. State Bar of California*,
   No. B196392, 2007 WL 4532857 (Cal. Ct. App. Dec. 27, 2007) ........... 1, 13, 21

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
   429 U.S. 274 (1977)..............................................................................9

*N. Ins. Co. of New York v. Chatham Cnty., Ga.*,
   547 U.S. 189 (2006)...........................................................................17

*Obrien v. Jones*,
   23 Cal. 4th 40 (2000). .........................................................................5

vii

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Pell v. Nunez,*
  No. CV-22-3732-MWF (RAOx), 2023 WL 4155411 (C.D. Cal. Jan. 5, 2023) 21

*PennEast Pipeline Co., LLC v. New Jersey,*
  141 S. Ct. 2244 (2021) ........................................................................7

*Pennhurst State Sch. & Hosp. v. Halderman,*
  465 U.S. 89 (1984) ................................................................... 6, 8, 22

*Petty v. Tennessee–Missouri Bridge Comm'n,*
  359 U.S. 275 (1959) ...........................................................................23

*Phiffer v. Columbia River Corr. Inst.,*
  384 F.3d 791 (9th Cir. 2004) .............................................................25

*Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,*
  506 U.S. 139 (1993)............................................................................23

*Ramsay v. Nat'l Bd. of Med. Exam'rs,*
  968 F.3d 251 (3d Cir. 2020) ..............................................................19

*Ray v. Cnty. of Los Angeles,*
  935 F.3d 703 (9th Cir. 2019) ............................................... 11, 12, 17

*Regents of the Univ. of Cal. v. Doe,*
  519 U.S. 425 (1997)................................................................... passim

*Seminole Tribe of Fla. v. Fla.,*
  517 U.S. 44 (1996)..........................................................................6, 23

*Sharer v. Oregon,*
  584 F.3d 1176 (9th Cir. 2009) ...........................................................27

*Sheller v. Super. Court,*
  158 Cal. App. 4th 1697 (2008). ...........................................................5

*State of S. Dakota v. State of N. Carolina,*
  192 U.S. 286 (1904)..............................................................................7

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Tennessee v. Lane*,
  541 U.S. 509 (2004) ............................................................25

*Torres v. Texas Dep't of Pub. Safety*,
  142 S. Ct. 2455 (2022) ........................................................7

*U.S. v. Georgia*,
  546 U.S. 151 (2006) ............................................................25

*United States v. Texas*,
  143 U.S. 621 (1892) ............................................................7

*Virginia Off. for Prot. & Advoc. v. Stewart*,
  563 U.S. 247 (2011) ............................................................23

## STATUTES

42 U.S.C. § 12202 ................................................................25

42 U.S.C. § 2000d-7(a) ........................................................26

Cal. Bus. & Prof. Code § 6001. ............................... 2, 13, 15, 20

Cal. Bus. & Prof. Code § 6002 ...........................................2

Cal. Bus. & Prof. Code § 6008 .......................................4, 16

Cal. Bus. & Prof. Code § 6008.1. ............................ 2, 15, 20, 23

Cal. Bus. & Prof. Code § 6008.2. ......................................4

Cal. Bus. & Prof. Code § 6013.1 .......................................3

Cal. Bus. & Prof. Code § 6013.5 .......................................3

Cal. Bus. & Prof. Code § 6046 ................................... 3, 4, 20

Cal. Bus. & Prof. Code § 6063. ........................................2, 3

Cal. Bus. & Prof. Code § 6066 .........................................1

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

Cal. Bus. & Prof. Code § 6086.5 ...................................................................18

Cal. Bus. & Prof. Code § 6140. ....................................................... 2, 16, 20

Cal. Civ. Code § 1947.12 ...............................................................16

Cal. Pub. Cont. Code §§ 10295-10299 ...................................................21

## RULES

Cal. Rules of Ct., rule 9.13.......................................................... 3, 4, 20

Cal. State Bar Rules, rule 9.0. ...............................................................4

Cal. State Bar Rules, rule 9.16. ..............................................................3

Cal. State Bar Rules, rule 9.3. ...............................................................3

Cal. State Bar Rules, rule 9.30 ..............................................................4

Cal. State Bar Rules, rule 9.31 ..............................................................4

Cal. State Bar Rules, rule 9.4. ...............................................................3

Cal. State Bar Rules, rule 9.90..............................................................3

## REGULATIONS

45 C.F.R. § 84.3. ....................................................................................27

## SECONDARY SOURCES

Alex E. Rogers, *Clothing State Governmental Entities with Sovereign Immunity: Disarray in the Eleventh Amendment Arm-of-the-State Doctrine*, 92 Colum. L. Rev. 1243, 1284 (1992)...............................................13

Carol Rice Andrews, *Standards of Conduct for Lawyers: An 800-Year Evolution*, 57 SMU L. Rev. 1385 (2004). ...........................................................18

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

Derek Warden, *Four Pathways of Undermining Board of Trustees of the University of Alabama v. Garrett*,
42 U. Ark. Little Rock L. Rev. 555, 583-86 (2020). ..........................................26

Erwin Chemerinsky, *The Hypocrisy of Alden v. Maine: Judicial Review, Sovereign Immunity and the Rehnquist Court*,
33 Loy. L.A. L. Rev. 1283 (2000). ........................................................................6

Hon. Richard E. Welch III, *A Flickering Light in the Wilderness: Could the Recent "Plan of the Convention" Cases Correct and Simplify the Supreme Court's State Sovereignty Doctrine?*,
57 New Eng. L. Rev. 171 (2023). ..........................................................................6

Kelsey Joyce Dayton, *Tangled Arms: Modernizing and Unifying the Arm-of-the-State Doctrine*,
86 U. Chi. L. Rev. 1603 (2019). .....................................................................8, 17

## INTRODUCTION

Federal district courts constitute the only venue for mandatory judicial review of disability accommodation decisions rendered by Defendants-Appellees the State Bar of California, Committee of Bar Examiners, and their agents in their official capacities (collectively, the "State Bar") in relation to the California Bar Exam.[1] In practice, federal court is often the only available venue for judicial review whatsoever, due to the State Bar's inability to render its decisions in a manner to allow applicants to petition the California Supreme Court for discretionary review. ROB p.49.[2]

Neither the doctrine of State sovereign immunity, nor any other operation of state, federal, or constitutional law requires this Court to close the courthouse doors on Plaintiff-Appellant Benjamin Kohn's ("Kohn") claims under Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the

---

[1] *See Morrowatti v. State Bar of California*, No. B196392, 2007 WL 4532857, at *1 (Cal. Ct. App. Dec. 27, 2007) (holding that the California Supreme Court has exclusive state-court subject matter jurisdiction over claims arising out of attorney admissions) (citing Cal. Bus. & Prof. Code § 6066).

[2] The following abbreviations are used throughout this brief: "ROB" means Replacement Opening Brief (Dkt.36); "RAB" means Replacement Answering Brief (Dkt.66); "RRB" means Replacement Reply Brief (Dkt.81); "ASB" means Appellant's Supplemental Brief (Dkt.101); and "RSB" means Defendant-Appellee's (Respondents') Supplemental Brief (Dkt.99).

California Unruh Act. Accordingly, this Court should vacate the district court's judgment in favor of the State Bar, reverse its order dismissing Kohn's claims with prejudice, and direct the district court to allow Kohn to file an amended complaint.

## BACKGROUND RELEVANT TO THE ARM-OF-THE-STATE ANALYSIS

California law provides that all persons practicing law in the state shall be a member of the State Bar unless holding office as a judge. *See* Cal. Const. Art. VI, Sec. 9. As a "public corporation" independent of the State of California, Cal. Bus. & Prof. Code § 6001, the State Bar "may sue and be sued," Cal. Bus. & Prof. Code § 6001, and may "[o]wn, hold, use, manage and deal in and with real and personal property." Cal. Bus. & Prof. Code § 6001(c). The State Bar also maintains its own, separate treasury, Cal. Bus. & Prof. Code § 6063, and the State of California expressly disavows any responsibility for the State Bar's debts. Cal. Bus. & Prof. Code § 6008.1.

Designed to be self-sustaining, California law empowers the State Bar to collect annual fees from its members and "to raise…additional revenue by any lawful means." Cal. Bus. & Prof. Code §§ 6001, 6140.[3] The State Bar exercises this power by raising more than $200,000,000 annually through the collection of

---

[3] Since 2017, the statutes and rules governing the State Bar have referred to its members as "licensees." *See, e.g.*, Cal. Bus. & Prof. Code § 6002. The California Constitution, however, continues to refer to such persons as "members" of the State Bar. Cal. Const. Art. VI, Sec. 9.

mandatory bar fees, voluntary donations, exam fees, grants, and other revenue. 2-ER-104. Substantially all funds used by the State Bar for carrying out its various functions are derived from these non-State sources. *Id.* These funds are all paid into the "treasury of the State Bar," not the State of California's. Cal. Bus. & Prof. Code § 6063.

The State Bar is governed by a Board of Trustees comprised of thirteen individuals, of whom five are appointed by the California Supreme Court, four by the State Legislature, and four by the Governor. Cal. State Bar Rules, rule 9.90; Cal. Bus. & Prof. Code §§ 6013.1, 6013.5. The State Bar's Committee of Bar Examiners—a subunit of the State Bar responsible for administering the rigorous, multi-day California Bar Exam—is comprised of nineteen individuals, nine of whom are appointed by the Governor and Legislature, and the remainder by the California Supreme Court chosen from a pool of candidates put forth by the State Bar's Board of Trustees. Cal. Bus. & Prof. Code § 6046; Cal. State Bar Rules, rule 9.4.

The State Bar's primary functions include making recommendations to the California Supreme Court on matters of attorney admission, discipline, and rule promulgation. Cal. State Bar Rules, rules 9.3, 9.13(d), 9.16(b); 2-ER-106. Though not specifically required by State law, the State Bar administers the California Bar Exam as just one aspect of determining whether to recommend a bar applicants'

3

admission to the California Supreme Court. Cal. Bus. & Prof. Code § 6046 ("[t]he board *may* establish an examining committee…," emphasis added); SarkarLaw Amicus Brief [Dkt.52-2] p.11 (discussing Blue Ribbon Commission). Other aspects include, *inter alia*, the applicant's passage of the Multistate Professional Responsibility Exam administered by the National Conference of Bar Examiners, and a moral character determination.

While these and other functions of the State Bar are no doubt important and valuable to the State judiciary, Cal. Bus. & Prof. Code §§ 6008, 6008.2,[4] the California Supreme Court retains the ultimate authority to resolve all issues pertaining to attorney admission, discipline, and the State rules of professional conduct. Cal. State Bar Rules, rule 9.0(b); Cal. Rules of Ct., rule 9.13(d); *Giannini v. Comm. of Bar Examiners of State Bar of Cal.*, 847 F.2d 1434, 1435 (9th Cir. 1988) (holding that because the California Supreme Court has the sole authority to permit individuals to practice law in the State, the State Bar's refusal to recommend an applicant's admission does not sufficiently deprive that applicant of a federal right so as to support injunctive relief against the California Supreme

---

[4] Not unlike the American Bar Association, the State Bar oversees the accreditation of law schools, and it also audits the completion of continuing legal education requirements by practicing attorneys among other administrative duties. Cal. State Bar Rules, rule 9.30, 9.31.

Court, and that the *Feldman-Rooker* doctrine reserves for the U.S. Supreme Court federal jurisdiction to order the California Supreme Court to allow an applicant to practice law).[5] As such, the State Bar's essentially advisory role in relation to the California Supreme Court's admissions decisions resembles the businesslike attributes of a standardized testing vendor whose product is required or used by state actors. Just as State universities require that applicants take exams offered by particular private testing vendors, the California Supreme Court has designated passage of the State Bar's California Bar Exam and the National Conference of Bar Examiners' ("NCBE") Multistate Professional Responsibility Exam as credentials typically required before it grants admission. *See infra*, fn.14.

## ARGUMENT

### I. THE STATE SOVEREIGN IMMUNITY DOCTRINE AS ADDUCED BY THE SUPREME COURT

The Eleventh Amendment to the U.S. Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const.

---

[5] *See also Obrien v. Jones*, 23 Cal. 4th 40, 47 (2000); *In re Rose*, 22 Cal. 4th 430, 436 (2000); *Chaney v. State Bar of Cal.*, 386 F.2d 962, 966 (9th Cir. 1967); *Sheller v. Super. Court*, 158 Cal. App. 4th 1697, 1709 (2008); *infra*, fn.15.

5

Amend. XI. Ratified by the States in 1795, the purpose of the Eleventh Amendment was to overrule the United States Supreme Court's holding in *Chisholm v. Georgia*, 2 U.S. 419 (1793) that the States, by entering the Union, had relinquished sovereign immunity as to suits brought by citizens of other states in federal court. *See Hans v. Louisiana*, 134 U.S. 1 (1890).

Although the Eleventh Amendment is as a manifestation of State sovereign immunity, its literal text does not encompass the doctrine's full scope.[6] *E.g.*, *Hans*, 134 U.S. at 10 (holding that States have sovereign immunity from federal suits brought by their own citizens). Courts have developed a complex web of legal analyses aimed at identifying whether and to what extent the States, their officers,

---

[6] For nearly a century after its ratification, the Eleventh Amendment was interpreted as a restraint on federal suits premised on diversity jurisdiction, not a bar to federal claims asserted in federal court. That interpretation is consistent with both the text and historical impetus of the Eleventh Amendment. *See* Hon. Richard E. Welch III, *A Flickering Light in the Wilderness: Could the Recent "Plan of the Convention" Cases Correct and Simplify the Supreme Court's State Sovereignty Doctrine?*, 57 New Eng. L. Rev. 171, 174 (2023). The Supreme Court's expansive rendering of the State sovereign immunity doctrine following *Chisholm*, including vis-a-vis *Hans*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984), and *Alden*, has spurred sharp criticism on both legal and moral grounds. *See, e.g.*, *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 59 (1994) (Stevens, J., concurring); *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58 (1996) (Stevens, J., dissenting); Erwin Chemerinsky, *The Hypocrisy of Alden v. Maine: Judicial Review, Sovereign Immunity and the Rehnquist Court*, 33 Loy. L.A. L. Rev. 1283, 1284 (2000). While Kohn recognizes that this Court is bound by decisions of the Supreme Court, he hereby preserves for appeal the issue of whether *Hans*, *Pennhurst*, and *Seminole Tribe of Florida* were wrongly decided.

subdivisions, or creations, may claim immunity from suit. *E.g.*, *Alden*, 527 U.S. at 755-57 (extending sovereign immunity to suits filed in state courts); *Ex parte Young*, 209 U.S. 123 (1908) (allowing federal suits for prospective injunctive relief against state officers); *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 373 (2006) (holding that sovereign immunity is inapplicable to some types of federal claims where the States agreed in the "plan of the Convention" to surrender such immunity, including claims arising in bankruptcy).[7]

One important limitation to the doctrine of State sovereign immunity is that it bars suits against States but not "lesser entities." *Alden*, 527 U.S. at 756; *see also Lake Country Ests., Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979) (recognizing that the Supreme Court has "consistently refused to construe

---

[7] *See also Torres v. Texas Dep't of Pub. Safety*, 142 S. Ct. 2455, 2460 (2022) (further expanding the "plan of the Convention" limitation because the "States implicitly agreed that their sovereignty would yield to federal policy to build and keep a national military"); *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2252 (2021) (holding that States also "surrendered their immunity from the exercise of the federal eminent domain power when they ratified the Constitution"); *State of S. Dakota v. State of N. Carolina*, 192 U.S. 286, 318 (1904) (recognizing that States lack immunity as to suits filed by other States for the purpose of enforcing a property right); *United States v. Texas*, 143 U.S. 621, 646 (1892) (holding that States lack immunity as to suits by the Federal Government). In accordance with these cases, this Court should consider whether the "plan of the Convention" itself afforded Congress the authority to regulate State occupational restrictions that touch upon constitutionally-protected liberty interests, including in the context of claims asserted under Title II, by requiring the States to surrender sovereign immunity as to that class of claims.

the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities"). For this reason, a state-run or state-created entity may claim sovereign immunity only if it can show that it is an arm of the State such that the State is the "real party in interest" to the action. *Lewis v. Clarke*, 581 U.S. 155, 162 (2017) (*citing Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429–430 (1997)); *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101. The so-called "arm-of-the-State" test is used for this purpose.

### A.  The Arm-of-the-State Test for State Sovereign Immunity

The Supreme Court has not adopted any one formulation of the arm-of-the-State test and several different versions remain in use among the Circuits. *See, e.g.*, Kelsey Joyce Dayton, *Tangled Arms: Modernizing and Unifying the Arm-of-the-State Doctrine*, 86 U. Chi. L. Rev. 1603 (2019). The Supreme Court's decisions on this topic, however, have identified at least three broad categories of considerations that are often, but need not always be, relevant to an arm-of-the-State analysis, including:

- "whether any judgment *must* be paid out of the State's treasury," *Lewis*, 581 U.S. at 165 fn.4 (emphasis in original; internal quotations omitted); *Hess*, 513 U.S. at 51 (holding that a bistate railway was not cloaked with Eleventh Amendment immunity); *Edelman v. Jordan*, 415 U.S. 651, 665-71 (1974) (holding

8

that state sovereign immunity barred retroactive payments of withheld benefits because the judgment would effectively run against the State);

•  whether the function that motivated the entity's creation and led to the dispute in question had been traditionally performed by States, *e.g.*, *Lake Country Ests.*, 440 U.S. at 402 (observing that the defendant entity's participation in land use regulation was traditionally performed at the local, not State, level); *Hess*, 513 U.S. at 45 (noting that the defendant port authority's functions "are not readily classified as typically state or unquestionably local"); and

•  whether State law characterizes the defendant as independent from that of the State or instead as being subject to the State's unilateral direction or control when carrying out its affairs, *e.g.*, *Moor v. Alameda Cnty.*, 411 U.S. 693, 718 (1973) (holding that the "independent status occupied by California counties relative to the State of California" defeated the county's claim to be an arm-of-the-State);[8] *Auer v. Robbins*, 519 U.S. 452, 456 fn.1 (1997) (holding that a governor's appointment of four out of the five governing board members of a state entity was insufficient to confer State sovereign immunity); *Lake Country Ests.*, 440 U.S. at

_____

[8] Although the Supreme Court's holding in *Moor v. Alameda County* pertained to whether the county was an arm of the State for purposes of diversity jurisdiction, the Supreme Court has since repeatedly cited *Moor* in the State sovereign immunity context. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (citing *Moor*); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430 fn.6 (1997) (same).

402 (observing the defendant's history of being sued by the State as weighing against its claim for sovereign immunity); *Hess*, 513 U.S. at 42 (recognizing that bistate entities created by compact are "not subject to the unilateral control of any one of the States"); *Lincoln Cnty. v. Luning*, 133 U.S. 529, 531 (1890) (noting that a county is part of the state only in a "remote sense").

In assessing the relative weight given to these categories of indicia, the Supreme Court offers limited guidance: "[w]hen indicators of immunity point in different directions, the Eleventh Amendment's twin reasons for being remain our prime guide." *Hess*, 513 U.S. at 47. Those "twin reasons" are "the States' solvency and dignity." *Id.* at 52. The first general indicium of State sovereign immunity— whether a monetary judgment necessarily runs against the State treasury— therefore emerges as the "most salient" factor of this analysis. *Id.* at 48.

## B. This Court's Application of the *Mitchell* Framework Remains Consistent with Governing Precedent.

Each Circuit Court has developed its own arm-of-the-State test for assessing whether an entity may claim sovereign immunity as a "State." *See Hess*, 513 U.S. at 59 (O'Connor, J., dissenting). In this Circuit, the five-factor *Mitchell* framework is used for this purpose, consisting of the following:

> [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take

10

property in its own name or only the name of the state, and
[5] the corporate status of the entity.

*Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198 (9th Cir. 1988); *see also*
*Ray v. Cnty. of Los Angeles*, 935 F.3d 703, 708, 730 (9th Cir. 2019); *Crowe v.*
*Oregon State Bar*, 989 F.3d 714, 730 (9th Cir.), *cert. denied sub nom. Gruber v.*
*Oregon State Bar*, 142 S. Ct. 78 (2021), *and cert. denied*, 142 S. Ct. 79 (2021).

The Supreme Court has tweaked this Court's use of the *Mitchell* framework
on only one occasion: *Regents of the University of California v. Doe*, 519 U.S. at
428. In that case, this Court had held that the University of California—which
concededly acts as an arm of the State in at least some contexts—was not entitled
to sovereign immunity because the Federal Government had indemnified the
university as to the asserted liability. *Id.* at 426. The Supreme Court reversed,
holding that the primary focus of the State treasury factor should be the entity's
"legal liability," not the ultimate economic impact of such liability. *Id.* at 431. In so
doing, the Supreme Court rejected the plaintiff's contention that the Eleventh
Amendment does not apply merely because an award of damages would,
practically speaking, be paid by the Federal Government. *Id.* This Court continues
to use the *Mitchell* framework to this day, but it does so in a manner consistent
with the Supreme Court's guidance. *E.g.*, *Crowe*, 989 F.3d at 730.

This Court may, and perhaps should, rework the presentation of the *Mitchell*
framework to ensure that it accurately reflects the governing principles identified

11

above. Section I(A), *supra*. However, the State Bar's proposal to "harmonize" the *Mitchell* framework by altering the underlying analysis is fundamentally flawed and should be rejected. RAB pp.17-20; ARB pp.9-10. Specifically, the State Bar's implicit proposal to elevate the significance of State control by embedding it throughout the arm-of-the-State analysis, *see* RAB p.17, RSB pp.4, 9-14, and its explicit proposal to diminish the significance of the State treasury factor, RAB pp.17-20, are squarely foreclosed by *Hess*, 513 U.S. at 48.

In *Hess*, the Supreme Court endorsed the conclusion reached by the "vast majority of Circuits," *id.* at 49 (internal quotes omitted), that the State treasury factor is the "most important." *Id.* at 51-52 (internal quotes omitted). In that case, "[t]he Court dismisse[d] any consideration of control altogether." (O'Connor, J., dissenting); *see also id.* at 47-48. Because *Hess* remains good and binding law on this Court, the State Bar's proposed substantive revisions to the *Mitchell* analysis must fail.

The State Bar's proposal to focus the arm-of-the-State analysis on State control also fails for practical reasons. *See Ray*, 935 F.3d at 712-13 (rejecting a control-centered arm-of-the-State analysis). As the Supreme Court pointed out in *Hess*, "[g]auging actual control . . . can be a 'perilous inquiry,' [and] 'an uncertain and unreliable exercise.' " *Id.* (*quoting* Alex E. Rogers, *Clothing State Governmental Entities with Sovereign Immunity: Disarray in the Eleventh*

12

*Amendment Arm-of-the-State Doctrine*, 92 Colum. L. Rev. 1243, 1284 (1992)).

The States, by their very nature, exert control over plethora governmental and

nongovernmental entities. Not all such entities can be deemed a State of the Union

entitled to sovereign immunity. Treating State control as the linchpin of the

sovereign immunity analysis would stand in stark defiance of that reality. *See, e.g.*,

*Hess*, 513 U.S. at 47 (noting that "ultimate control of every state-created entity

resides with the State, for the State may destroy or reshape any unit it creates").

This Court should refrain from attempting to craft such an impossible analytical

framework here, from whole cloth.[9]

## II.     THE STATE BAR OF CALIFORNIA IS NOT AN ARM OF THE STATE ENTITLED TO SOVEREIGN IMMUNITY.

The State Bar is not a "State." *E.g.*, Cal. Bus. & Prof. Code § 6001. To

establish its entitlement to State sovereign immunity, the State Bar must prove that

the State of California is the real party in interest to this action. *See, e.g.*, *Lewis*,

581 U.S. at 162; *ITSI T.V. Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 1292 (9th Cir.

1993) (holding that a defendant bears the burden of establishing sovereign

---

[9] As explained in Kohn's Reply Brief, the State Bar fails to satisfy even its own, formulation of the arm-of-the-State test. RRB p.11. The State lacks effective means of overseeing the State Bar's disability accommodation decisions, including because the State Bar's dilatory processes effectively foreclose the possibility of obtaining review from the California Supreme Court, which is itself left up to that Court's sole discretion. *See Morrowatti*, No. B196392, 2007 WL 4532857, at *1.

immunity); *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014) (collecting cases). For reasons discussed below, the State Bar has failed to carry this burden.

**A.    State Sovereign Immunity Indicia Point Uniformly Against Being Treated as an Arm of the State.**

Each of the categories of indicia for State sovereign immunity as adduced by the Supreme Court weighs against the State Bar's claim of immunity.

**1.    A monetary judgment against the State Bar would not run against the State treasury.**

The most important indicator of State sovereign immunity—whether any judgment must be paid out of the State's treasury, *Lewis*, 581 U.S. at 165 fn.4—weighs decidedly against finding the State Bar an arm of the State. The focus of this inquiry is where "legal liability" will fall, not on who may ultimately pay. *E.g.*, *Regents of the Univ. of Cal.*, 519 U.S. at 428. As the Supreme Court has articulated: "[i]f the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise? When the answer is 'No'—both legally and practically—then the Eleventh Amendment's core concern is not implicated." *Hess*, 513 U.S. at 51.

Here, the State of California has explicitly disavowed any responsibility for the State Bar's debts. California law provides that "[n]o bond, note, debenture, evidence of indebtedness, mortgage, deed of trust, assignment, pledge, contract, lease, agreement, or other contractual obligation of the State Bar shall…create a

debt or other liability of the state…." Cal. Bus. & Prof. Code § 6008.1.[10] The State presumably decided as much with full knowledge of the State Bar's various functions and the degree to which those functions may or may not be essential to the State. *See* RSB pp.9-11 (arguing that the State Bar's services are "essential" to the State). It is not the place of this Court to second guess the State's assessment of its own creation, nor is it the place of this Court to suggest or require the State to ensure the State Bar's solvency.

The State Bar is also designed to be financially "self-sustaining." *See Hess*, 513 U.S. at 50. Despite receiving no appropriation from the State's General Fund, the State Bar raises more than $200,000,000 annually through the collection mandatory bar fees, voluntary donations, exam fees, grants, and other revenue. 2-ER-104; *see also* Cal. Bus. & Prof. Code § 6001 (empowering the State Bar "to raise…additional revenue by any lawful means"). As such, this Court's holding in *Alaska Cargo Transport, Inc. v. Alaska Railway Corp.*, 5 F.3d 378 (9th Cir. 1993) that a thinly capitalized entity whose existence was both essential to the state and dependent on a state-backed financial safety net constituted an arm of the State of Alaska, is inapposite as a matter of law. *Hess*, 513 U.S. at 50 (distinguishing

_____

[10] The Supreme Court has held that a sovereign's express indemnification of an entity is insufficient to extend sovereign immunity to it. *Regents of the Univ. of Cal.*, 519 U.S. at 428; *Lewis*, 581 U.S. at 165. It follows that the express *disavowal* of any such indemnification should tend to produce the same result.

15

*Alaska Cargo* on grounds that the port authority, unlike the Alaskan railroad, was designed to be self-sustaining).[11]

The State Bar argues that if an entity's assets are held for the State's benefit then this indicium weighs in favor of immunity even if a judgment against the entity could not be directly enforced against the State treasury. RSB pp.9 (citing Cal. Bus. & Prof. Code § 6008). The Supreme Court's decisions in *Lewis*, 581 U.S. at 165 fn.4, *Regents of the Univ. of Cal.*, 519 U.S. at 428, and *Hess*, 513 U.S. at 51, foreclose the State Bar's argument by directing courts to identify where "legal liability" may fall and whether the funds "must" be satisfied by the State treasury. Moreover, one of the twin purposes for the Eleventh Amendment is to protect the *solvency* of the States; judgments against discrete entities independent of any state pose no risk to the State solvency. Accordingly, the most important inquiry of the arm-of-the-State analysis weighs against the State Bar's claim of sovereign immunity.

––––––––––––––––––––

[11] That the State places limits on the mandatory bar fees the State Bar may collect, Cal. Bus. & Prof. Code § 6140, is neither relevant to this analysis, nor unique to the State Bar or arms of the State generally. *E.g.*, Cal. Civ. Code § 1947.12 (restricting rent increases by private landlords throughout the State).

**2.    States do not traditionally administer bar exams or process disability accommodation requests.**

The second general inquiry—whether the function that motivated the entity's creation and led to the dispute in question has been traditionally performed by States—also weighs against the State Bar's claim of sovereign immunity. *Lake Country Ests.*, 440 U.S. at 402; *Hess*, 513 U.S. at 45. The Supreme Court has not articulated a precise level of abstraction at which to analyze this indicium.[12] The inquiry is nevertheless guided by the Court's acknowledgment that a single entity may act as an arm of the state for some purposes but not others. *Regents of the Univ. of Cal.*, 519 U.S. at 427 fn.2 (reserving the question); *N. Ins. Co. of New York v. Chatham Cnty., Ga.*, 547 U.S. 189, 194 (2006) (holding that a County was not an arm of the state when "operating the drawbridge"); *see also Ray*, 935 F.3d at 708-709 (assuming without deciding that "a county might be entitled to Eleventh Amendment immunity if acting as an arm of the state").

Here, neither the State Bar's general function of providing non-binding recommendations to the California Supreme Court on matters of attorney admission, discipline, and rule promulgation, nor its specific function of

---

[12] "Is the question whether the entity's primary activities or purposes are state functions, whether most of the entity's activities are state functions, or whether the activity that gave rise to the suit is a state function?" Dayton, *Tangled Arms*, 86 U. Chi. L. Rev. at 1625.

administering the bar exam or resolving disability accommodation requests, are activities traditionally performed by the States. For centuries, it has been the collective body of practicing attorneys that holds the primary responsibility for ensuring the ethical and competent practice of law—not the States. *E.g.*, Carol Rice Andrews, *Standards of Conduct for Lawyers: An 800-Year Evolution*, 57 SMU L. Rev. 1385, 1401 (2004). Itself one of the first "unified" (i.e., mandatory membership) bar associations in the country, the State Bar did not come into existence until approximately 130 years after the Eleventh Amendment's ratification.[13] Even now, the State Bar, not the State of California, takes primary responsibility for investigating and disciplining California lawyers. Cal. Bus. & Prof. Code § 6086.5 (directing the State Bar to establish the "State Bar Court"). And it is the collective body of practicing California attorneys who pay for such services, not the State of California. 2-ER-106.

The State Bar's administration of the California Bar Exam and its resolution of disability accommodation requests in connection with the same is even further removed from traditional state activity. Both historically and presently, private entities have been responsible for the administration of standardized tests for the

---

[13] See https://www.calbar.ca.gov/Portals/0/documents/whowhat1.pdf?ver=2017-05-19-132105-670#:~:text=California%20was%20one%20of%20the,the%20country%20have%20unified%20bars.

18

purpose of evaluating prospective attorneys and other professionals. *E.g.*, *Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1156 (9th Cir. 2011) (ADA action arising from the NCBE's administration of Multistate Professional Responsibility Exam and the Multistate Bar Exam).[14] Indeed, the California Bar Exam is itself partially comprised of one such test, the Multistate Bar Exam, which is jointly administered by the State Bar and the NCBE. *Id;* 2-ER-316. As such, neither the State Bar's general functions, nor its specific activities giving rise to this dispute, weigh in favor of treating the State Bar as an arm of the State entitled to sovereign immunity.

### 3.    The State Bar operates independently of the State.

The third general indicium—whether State law characterizes the defendant entity as independent from that of the State or instead as being subject to the State's unilateral direction or control when carrying out its affairs—also weighs against a finding of sovereign immunity. California law identifies the State Bar as an independent corporate entity, capable of suing and being sued, of holding its

---

[14] *See also* RRB p.7, fn.10; SarkarLaw Amicus Brief [Dkt.52-2] p.11 (discussing Blue Ribbon Commission); *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251 (3d Cir. 2020) (ADA action regarding the National Board of Medical Examiners' administration of a medical licensing exam); *Langston By and Through Langston v. ACT*, 890 F.2d 380, 385 (11th Cir. 1989) (action regarding college admission's testing); *Johnson v. Educ. Testing Serv.*, No. C-13-3660 SBA, 2013 WL 4711611, at *14 (N.D. Cal. Aug. 30, 2013) (action against private testing services relating to high school Advanced Placement exams).

own property, raising its own money, and entering into its own contracts. Cal. Bus. & Prof. Code § 6001; *see also Moor*, 411 U.S. at 718 (relying on such criteria when holding that California counties independent relative to the State). The State Bar also maintains its own treasury and the State has disclaimed responsibility for all State Bar debts. Cal. Bus. & Prof. Code §§ 6008.1, 6140. Accordingly, the State Bar is an independent entity under California law.

The State does not assert direct control or oversight of the State Bar with respect to its disability accommodation decisions for the California Bar Exam. Unlike the actual admission of a bar applicant, over which the California Supreme Court retains full control, *see Giannini*, 847 F.2d at 1435, the State Bar's accommodation decisions—both practically and legally—are applied against the applicant unless the applicant timely petitions the California Supreme Court, and that Court, as a matter of its sole discretion, intervenes. *See* Cal. Rules of Ct., rule 9.13(d). Moreover, California law does not specifically require a bar examination, and it places statutory restrictions on the exam only if the State Bar determines it will administer one in the first place. *See* Cal. Bus. & Prof. Code § 6046; SarkarLaw Amicus Brief [Dkt.52-2] p.11.

To the extent the California Supreme Court's ability to alter the State Bar's accommodation decisions constitutes "control," it is neither the type, nor degree of control needed to transform an independent entity into an arm of the State. If it

20

were, then counties, cities, and even private public benefit corporations could claim sovereign immunity because the California Supreme Court may exercise its jurisdiction over each of them. These other entities are also subject to the jurisdiction of the California Superior Court and the California Court of Appeal, evincing an even greater degree of State "control" than that exercised over the State Bar. *Giannini*, 847 F.2d at 1435; *Morrowatti*, No. B196392, 2007 WL 4532857, at *1.[15] Indeed, some of these entities might even be contractually obligated to provide essential services to the State in the same manner the State Bar claims here, RSB pp.10-11. *See* Cal. Pub. Cont. Code §§ 10295-10299 (establishing process for approval of public contracts, including as may be

---

[15] In *Flinders v. State Bar of California*, No. 22-CV-04072-VKD, 2022 WL 17419552, at *5 (N.D. Cal. Dec. 5, 2022) and *Pell v. Nunez*, No. CV-22-3732-MWF (RAO), 2023 WL 4155411, at *3 (C.D. Cal. Jan. 5, 2023), presently on appeal, two district courts incorrectly held that bar applicants seeking review of an admissions decision or challenging the admission process must first petition the California Supreme Court before filing suit in federal court. App. Case Nos. 22-17014; 23-55188. Federal courts may review such matters provided that the underlying action seeks redress for something other than the ultimate question of whether the applicant may practice law, such as seeking damages arising from disability discrimination on the bar exam. Should this Court conclude that *Flinders* and *Pell*'s expansive reading of this Court's holdings in *Giannini*, 847 F.2d at 1435 and *Chaney v. State Bar of Cal.*, 386 F.2d 962, 966 (9th Cir. 1967) are correct (they are not, *see supra* p.4), then this Court should reexamine and narrow those holdings to ensure that bar applicants are ensured adequate means by which to seek judicial redress for their injuries. *See supra* p.1.

"necessary for the provision of essential services"). Yet, not every private contractor can be treated as a sovereign state.

While it is true that various facets of State government are responsible for appointing or confirming the State Bar's trustees and commissioners, the Supreme Court has already held that such attenuated degrees of control are insufficient to render an independent entity an arm of the State. *Hess*, 513 U.S. at 44 (holding that the defendant was not an arm of the state despite that "all commissioners are state appointees"); *Auer*, 519 U.S. at 456 fn.1 (noting that appointment of nearly all the governing board was insufficient to confer State sovereign immunity). As such, all three broad categories of indicia weigh against the State Bar's claim of State sovereign immunity.

### B. Kohn's Claims Against the State Bar Do Not Implicate the Two Primary Purposes of State Sovereign Immunity: State Solvency and Dignity.

Examination of the twin reasons for the State sovereign immunity doctrine—State solvency and dignity—confirms that the State Bar should not be treated as an arm of the State of California entitled to claim immunity from suit. *See Hess*, 513 U.S. at 47. As has been repeatedly recognized by courts, the adoption of the Eleventh Amendment responded most immediately to the States' fears that "federal courts would force them to pay their Revolutionary War debts, leading to their financial ruin." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 151

22

(Stevens, J., dissenting); *see also Petty v. Tennessee–Missouri Bridge Comm'n*, 359 U.S. 275, 276, n.1 (1959); *Missouri v. Fiske*, 290 U.S. 18, 27 (1933). Protecting State solvency is therefore of central to the sovereign immunity doctrine.

More recent jurisprudence also emphasizes the integrity retained by each State in our federal system. *See Hans*, 134 U.S. at 13; *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). The "specific indignity against which sovereign immunity protects," however, "is the insult *to a State* of being haled into court without its consent." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 257 (2011) (emphasis added). It is for this reason that individual state actors may still be sued for prospective equitable relief but States may not. *Seminole Tribe of Fla*, 517 U.S. at 58; *Ex parte Young*, 209 U.S. at 181; *see also Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002) (seeking to preserve State dignity by holding that State sovereign immunity applies in adjudicatory administrative proceedings).

Kohn's action against the State Bar do not implicate either of these purposes. The State's solvency is, by the State's own design, not at risk when the State Bar is sued in federal court. Cal. Bus. & Prof. Code § 6008.1 (disavowing responsibility for the State Bar's debts). The State purposefully insulated itself from any such debt. Likewise, the State's dignity is preserved when the State Bar is sued in

23

federal court because the State, again by its own design, established the State Bar as an independent entity capable of being sued. *Id.* Accordingly, Kohn's claims present no threat to the State's solvency or dignity, and the State Bar's claim of sovereign immunity fails.

### C. The Effects of this Court's Sovereign Immunity Decision on this Appeal:

The State Bar's failure to establish itself as an arm of the State does not by itself resolve all issues presented by this appeal. *See* ROB pp.1-2.

#### 1. Kohn's Title II Claims

If this Court holds that the State Bar is an arm of the State, or that it may attempt to prove as much upon remand, then this Court would then reach the question of whether Congress abrogated that immunity as to Kohn's Title II claims. ROB pp.25-33; RRB pp.11-17; ASB pp.8-13. The district court's holdings on abrogation constitute prejudicial errors that require redress from this Court in either of those two instances. If this Court concludes that the State Bar is categorically not an arm of the State as a matter of law, this Court should still as a matter of its discretion address abrogation.[16]

---

[16] Several district courts disagree whether Congress abrogated State immunity under Title II, and given the important protections Title II provides to a broad array of vulnerable individuals, this Court should exercise its discretion to reach this

In evaluating abrogation, this Court should apply the Supreme Court's three-part framework set forth in *U.S. v. Georgia*, 546 U.S. 151 (2006) by assessing the following: (1) the extent to which Kohn's complaint stated (or could be amended to state) Title II claims; (2) whether some or all of those claims are predicated on conduct violating the Fourteenth Amendment; and (3) for any such claims not predicated on Fourteenth Amendment violations, whether the State Bar has established that Congress exceeded its authority by abrogating sovereign immunity, *see* 42 U.S.C. § 12202.

Should this Court reach the third step of *Georgia* when engaging in this analysis, it would then need to apply the Supreme Court's three-factor framework for assessing prophylactic abrogation set forth in *City of Boerne v. Flores*, 521 U.S. 507 (1997); ASB pp.8-11. In applying the *Boerne*, this Court should hold that the Supreme Court in *Tennessee v. Lane*, 541 U.S. 509, 522-33 (2004) conclusively determined that the first two *Boerne* factors are satisfied as to the entire scope of Title II. ASB p.11, fn.6. This Court should then reaffirm its central holding in *Phiffer v. Columbia River Correctional Institute*, 384 F.3d 791 (9th Cir. 2004) that all of Title II's deterrence and remedial measures are congruent and proportional to

--------------------

issue even if not strictly necessary to resolve this appeal by remanding to the district court. Of particular concern, the district court's flawed analysis in its published opinion, *Kohn v. State Bar of California*, 497 F. Supp. 3d 526, 538 (N.D. Cal. 2020), continues to be relied upon by other courts, to the public's detriment.

25

the harm Congress sought to address, ASB pp.8-11, or that, at a minimum, the third *Boerne* factor is satisfied at least as to claims involving occupational licensing activities that restrict the liberty of individuals seeking entry into a chosen profession. ASB p.11 (noting that bar examinations sit at the intersection of education and access to the courts).[17]

Even if the issue of abrogation is not reached by this Court because the State Bar is not an arm of the State or otherwise, this Court should still hold that Kohn has, or by non-futile amendment may, adequately plead his Title II claims, ROB pp.25-33; RRB pp.17-21, and reject the State Bar's proposed elevated pleading requirements, ASB pp.11-14.

## 2. Rehabilitation Act Claims

Whether the State Bar is an arm of the State for purposes of sovereign immunity has no bearing on whether Kohn may assert his Section 504 claims against the State Bar. Indeed, by accepting federal financial assistance, the State of California waived sovereign immunity as to the entire State, pursuant to 42 U.S.C. § 2000d-7(a). *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 819 (9th Cir.), *amended*, 271 F.3d 910 (9th Cir. 2001). Rather, the questions presented here

---

[17] Derek Warden, *Four Pathways of Undermining Board of Trustees of the University of Alabama v. Garrett*, 42 U. Ark. Little Rock L. Rev. 555, 583-86 (2020).

26

pertain to statutory interpretation of the Rehabilitation Act's substantive requirements and how those requirements ought to be reviewed under the Federal Rules of Civil Procedure. ROB pp.33-35, RRB pp.21-25 (noting that even under Rule 12(b)(1), the State Bar failed to conclusively establish that it does not receive federal financial assistance).

Congress exercised the full extent of its authority when enacting the Rehabilitation Act. RRB p.23 fn.25; ASB pp.13-15 (urging this Court to discount the overly restrictive analysis set forth in *Sharer v. Oregon*, 584 F.3d 1176, 1178 (9th Cir. 2009)).[18] This Court should therefore hold that upon remand the State Bar's indirect receipt of federal financial assistance is established, *inter alia*, where Kohn proves the following: (1) the State of California directly receives federal financial assistance earmarked for use in certain types of programs or activities; (2) the State Bar engages in those types of programs or activities; and (3) the State of California extends funding to the State Bar.[19] The district court's confusion about

---

[18] *See also Doe One v. CVS Pharmacy, Inc.*, No. 18-CV-01031-EMC, 2022 WL 3139516, at *1 (N.D. Cal. Aug. 5, 2022) ("To permit the [entities denying FFA receipt] to escape responsibility as a result of the establishment of corporate structures which cabin their functions would exalt form over substance, and would be antithetical to the overarching purpose of the anti-discrimination provision of the [Act].").

[19] Of course, the State Bar's direct receipt of federal financial assistance can still be established by showing that it received federal funds, services rendered by or property received from federal agents, etc. *See* 45 C.F.R. § 84.3.

the governing standards and the prejudicial errors it produced ought to be fully corrected by this Court at this time and not left for further appellate review in several more years' time.

### 3. California Unruh Act Claims

The primary issue presented on appeal as to Kohn's California Unruh Act claims is one of statutory coverage—i.e., whether the Unruh Act applies to the State Bar as matter of law. ROB pp.50-59; RRB pp.26-28. The State Bar's new argument on appeal, that it is also entitled to sovereign immunity as to the Unruh Act, fails. Not only is the State Bar not an arm of the State, as discussed above, but the State Bar expressly disavowed raising sovereign immunity as to the Unruh Act at the district court. Dist. Ct. Dkt. 38, p.12 (in response to Kohn's arguing that the State Bar lacks sovereign immunity under the Unruh Act, the State Bar stated affirmatively that "Defendants have made no such argument" and proceeded to address the issue of statutory coverage, only).

The State Bar cannot raise the affirmative defense of sovereign immunity for the first time on an appeal from final judgment. *Kelson v. City of Springfield*, 767 F.2d 651, 657 (9th Cir. 1985) ("Failure to [raise] an affirmative defense below results in waiver, and the issue cannot be raised for the first time on appeal."). This is especially true where, as here, the State Bar not only failed to raise the defense below, but expressly disclaimed asserting it altogether. *See Hill v. Blind Indus. &*

28

*Servs. of Maryland*, 179 F.3d 754, 758 (9th Cir.), *opinion amended on denial of reh'g*, 201 F.3d 1186 (9th Cir. 1999). Accordingly, this Court should reverse the district court's dismissal of Kohn's state law claims regardless of whether the State Bar constitutes an arm of the State.

## CONCLUSION

For the foregoing reasons, Kohn respectfully requests that this Court reverse the decision of the district court dismissing Kohn's claims with prejudice, and remand with instructions that the district court permit Kohn to file an amended complaint.

Date: August 28, 2023,

Respectfully submitted,

*/s/ Gregory R. Michael*

Gregory R. Michael (SBN: 306814)
Dorothy C. Yamamoto (SBN: 306817)
MICHAEL YAMAMOTO LLP
1400 Shattuck Ave., #412
Berkeley, CA 94709
Phone: 510.296.5600
Fax: 510.296.5600

Attorneys for Plaintiff and Appellant
Benjamin Kohn

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Appellant's Supplemental En Banc Brief In Response To Court's August 4, 2023 Order complies with the requirements set forth in the August 4, 2023 Order, Doc. 112 ("[t]he supplemental briefs . . . shall be limited to 8,000 words"), F.R.A.P. 32(a), and Ninth Circuit Rule 32-1. The brief was prepared in Times New Roman 14-point font and the substantive portions are comprised of 7,196 words, as counted by Microsoft Word.

Date: August 28, 2023,

*/s/ Gregory R. Michael*
Gregory R. Michael

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2023, I filed the foregoing Appellant's Supplemental En Banc Brief In Response To Court's August 4, 2023 Order with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: August 28, 2023,

*/s/ Gregory R. Michael*
Gregory R. Michael