No. 20-17316

———————————————

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————————

BENJAMIN KOHN,
*Plaintiff and Appellant*,

v.

STATE BAR OF CALIFORNIA, CALIFORNIA COMMITTEE OF BAR
EXAMINERS, and THEIR AGENTS IN THEIR OFFICIAL CAPACITY,
*Defendants and Appellees.*

———————————————

On Appeal from the Judgment of the United States
District Court for the Northern District of California
The Honorable Phyllis J. Hamilton
District Court Case Number: 4:20-cv-04827-PJH

———————————————

**PRO BONO**

**APPELLANT'S REQUEST FOR JUDICIAL NOTICE
OF CALIFORNIA STATE BAR'S PROPOSED RULE CHANGES**

MICHAEL YAMAMOTO LLP
Gregory R. Michael (SBN: 306814)
greg@my.law
Dorothy C. Yamamoto (SBN: 306817)
dorothy@my.law
1400 Shattuck Ave., #412
Berkeley, CA 94709
Phone: 510.296.5600
Fax: 510.296.5600

*Attorneys for Plaintiff-Appellant Benjamin Kohn*

## REQUEST FOR JUDICIAL NOTICE

Appellant Benjamin Kohn hereby moves and requests that, pursuant to Federal Rule of Evidence 201 and the inherent authority of the Court, that this Court take judicial notice of (i) Appellee State Bar of California's June 18, 2024, Request that the Supreme Court of California Review and Approve Proposed Amendments to State Bar Rules 4.80-4.92, 4.62 (**Exhibit 1**), and (ii) the June 23, 2024, Brief of Respondent Shirleen Claiche in Response to Petition of Petitioner State Bar of California to Amend Rules (**Exhibit 2**), both of which have been filed with the California Supreme Court, Case No. S285541.[1] Counsel for Appellees the State Bar of California, Committee of Bar Examiners, and their agents in their official capacities (the "State Bar") have not indicated whether they intend to file an opposition to this request, but have indicated that they do not consent to judicial notice being taken of these materials.

## LEGAL ANALYSIS

Federal Rule of Evidence authorizes this Court to take judicial notice of public court filings because they are "not subject to reasonable dispute" and are "capable of accurate and ready determination by resort to sources whose accuracy

_____

[1] Appellant Benjamin Kohn is counsel of record for Ms. Shirleen Claiche.

cannot reasonably be questioned." Fed. Rule Evid. 201(b); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746, fn.6 (9th Cir. 2006).

The State Bar, in its September 12, 2022, Replacement Answering Brief in this appeal emphasized that it is "voluntarily pursuing reforms" in relation to its disability accommodations procedures. RAB [Dkt. 66] p.1. The State Bar's recent request to the California Supreme Court, and the associated criticisms levied by Ms. Shirleen Claiche and her counsel, Appellant Benjamin Kohn, provides details and context pertaining to the "reforms" the State Bar is pursuing. Accordingly, Appellant respectfully requests that this Court take judicial notice of the attached court filings and consider such materials, as appropriate, when rendering its decision in this appeal.

Date: June 25, 2024,                    Respectfully submitted,

                                        */s/ Gregory R. Michael*
                                        Gregory R. Michael (SBN: 306814)
                                        Dorothy C. Yamamoto (SBN: 306817)
                                        MICHAEL YAMAMOTO LLP
                                        1400 Shattuck Ave., #412
                                        Berkeley, CA 94709
                                        Phone: 510.296.5600
                                        Fax: 510.296.5600

                                        Attorneys for Plaintiff and Appellant
                                        Benjamin Kohn

**DECLARATION OF GREGORY R. MICHAEL IN SUPPORT OF
APPELLANT'S REQUEST FOR JUDICIAL NOTICE**

I, Gregory R. Michael, declare:

1.      I am an attorney duly licensed to practice before this Court. On
January 25, 2022, this Court issued an Order appointing myself and my law
partner, Dorothy Yamamoto, as pro bono counsel for Appellant Benjamin Kohn
for this appeal.

2.      Attached hereto as **Exhibit 1** is the California State Bar's June 18,
2024, filing in the California Supreme Court, Case No. S285541, entitled,
"Request that the Supreme Court of California Review and Approve Proposed
Amendments to State Bar Rules 4.80-4.92, 4.62."

3.      Attached hereto as **Exhibit 2** is the June 24, 2024, filing in the
California Supreme Court, Case No. S285541, entitled, "Brief of Respondent
Shirleen Claiche in Response to Petition of Petitioner State Bar of California to
Amend Rules" (dated and submitted for filing on June 23, 2024).

4.      On June 25, 2024, I sent an email to the State Bar's counsel of record,
Brady Richard Dewar, Jean Roche Krasilnikoff, and Rita Kathryn Himes,
informing them of Appellant's intention to request judicial notice of the attached
materials (Exhibits 1 & 2) and asking whether the State Bar would oppose the
request. That same day, Mr. Dewar responded by email stating, *inter alia*: "please
do not advise the Court that the request for judicial notice is unopposed."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: June 25, 2024,

/s/ Gregory R. Michael
Gregory R. Michael

Exhibit 1

Supreme Court of California
Jorge E. Navarrete, Clerk and Executive Officer of the Court
Electronically RECEIVED on 6/18/2024 2:53:11 PM

Supreme Court of California
Jorge E. Navarrete, Clerk and Executive Officer of the Court
Electronically FILED on 6/18/2024 by Robert Toy, Deputy Clerk

S285541

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

## REQUEST THAT THE SUPREME COURT OF CALIFORNIA REVIEW AND APPROVE PROPOSED AMENDMENTS TO STATE BAR RULES 4.80–4.92, 4.62



**PREPARED BY
THE STATE BAR OF CALIFORNIA**

**OFFICE OF GENERAL COUNSEL**
**Ellin Davtyan, State Bar Number 238608**
**Brady R. Dewar, State Bar Number 252776**

**180 Howard Street**
**San Francisco, CA 94105**
**Telephone: (415) 538-2369**

**845 South Figueroa Street**
**Los Angeles, CA 90017**
**Telephone: (213) 765-1000**

**Facsimile: (415) 538-2321**
**Email: OGC@calbar.ca.gov**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................6

II.    AUTHORITY REQUIRING SUPREME COURT
       REVIEW AND APPROVAL BEFORE THE
       PROPOSED RULE CHANGES MAY BE
       IMPLEMENTED ..................................................8

III.   BACKGROUND AND PROCEDURAL HISTORY ............ 12

       A.    State Bar Review of Admissions Rules..................... 12

       B.    Testing Accommodations Rules ................................ 13

       C.    Rule 4.62..................................................................... 17

IV.    PROPOSED AMENDED RULES ..................................... 18

       A.    Testing Accommodations Rules 4.80–4.92 .............. 18

             1.    Rule 4.80 Definitions ...................................... 22

             2.    Rule 4.81 Purpose of Testing
                   Accommodations ............................................... 29

             3.    Rule 4.82 Processing of Requests for
                   Testing Accommodation ................................... 30

             4.    Rule 4.83 Automatic Approval Process:
                   Approval of Previously Granted Testing
                   Accommodations on High Stakes Exams ....... 31

             5.    Rule 4.84 Request for Testing
                   Accommodations – Timing of Submission ...... 32

             6.    Rule 4.85 Request for Testing
                   Accommodations – Content of
                   Submissions...................................................... 33

             7.    Rule 4.86 State Bar Response to Request
                   for Testing Accommodations ........................... 34

             8.    Rule 4.87 Emergency Requests for
                   Testing Accommodations................................. 35

9.     Rule 4.88 Request for Review of Denial or Approval with Modifications ........................ 35

10.    Rule 4.89 Subsequent Request for Testing Accommodations ................................. 36

11.    Rule 4.90 Confidentiality of Requests for Testing Accommodations ................................. 36

12.    Rule 4.91 False or Misleading Information in Requests for Testing Accommodations ............................................... 37

13.    Rule 4.92 Committee of Bar Examiners Oversight ........................................................ 37

B.    Examinations Rule 4.62 ........................................... 37

V.    CONCLUSION.................................................................... 39

# TABLE OF AUTHORITIES

## Cases

*Brennon B. v. Super. Ct.,*
  13 Cal.5th 662 (2022)............................................................... 23

*In re Attorney Discipline System,*
  19 Cal.4th 582 (1998)............................................................... 10

*In re Rose,*
  22 Cal.4th 430 (2000)............................................................... 10

*Kohn v. State Bar,*
  87 F.4th 1021 (9th Cir. 2023) ................................................. 10

*Obrien v. Jones,*
  23 Cal.4th 40 (2000)................................................................ 10

## Statutes

42 U.S.C. § 12102..................................................................... 23, 24

Bus. & Prof. Code, § 6065....................................................... 17, 38

Gov. Code, § 12926................................................................. 23, 26

## Rules

Cal. Rules of Court, rule 9.3......................................................... 10

Cal. Rules of Court, rule 9.5.............................................. 8, 10, 12

Rules of the State Bar, rule 4.62...........................................passim

Rules of the State Bar, rule 4.80...........................................passim

Rules of the State Bar, rule 4.81.................................................. 29

Rules of the State Bar, rule 4.82............................................ 30, 34

Rules of the State Bar, rule 4.83............................................ 30, 31

Rules of the State Bar, rule 4.84............................................ 17, 32

Rules of the State Bar, rule 4.85 ................................ 17, 32, 33, 34

Rules of the State Bar, rule 4.86 ............................................ 17, 34

Rules of the State Bar, rule 4.87 ............................................ 17, 35

Rules of the State Bar, rule 4.88 ...................................... 10, 17, 35

Rules of the State Bar, rule 4.89 ................................................. 36

Rules of the State Bar, rule 4.90 ...................................... 10, 17, 36

Rules of the State Bar, rule 4.91 ...................................... 17, 36, 37

Rules of the State Bar, rule 4.92 ............................................... 37

Rules of the State Bar, rules 4.80–4.92 ................................. 7, 18

## Regulations

28 C.F.R. § 35.108 ...................................................... 23, 26

28 C.F.R. § 35.130 ........................................................... 29

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA


# REQUEST THAT THE SUPREME COURT OF CALIFORNIA REVIEW AND APPROVE PROPOSED AMENDMENTS TO STATE BAR RULES 4.62 AND 4.80–4.92

## I.     INTRODUCTION

The Board of Trustees ("Board") of the State Bar of California ("State Bar") respectfully requests that the Supreme Court of California review and approve proposed amended Rules of the State Bar of California ("State Bar Rules" or "Rules")[1] pertaining to Testing Accommodations and Examinations, as adopted by the Board on November 16, 2023.

This request comes before this Court following a comprehensive review and evaluation conducted by the State Bar of its Admissions Rules beginning in 2022. This review was performed to ensure the Rules are consistent with applicable law, clear to applicants, and applied consistently. The review was also intended to ensure that the State Bar Rules serve the State Bar's

---

[1] Unless expressly stated or context indicates otherwise, all rule references are to the Rules of the State Bar of California.

public protection mission without creating unnecessary barriers for applicants.

After that comprehensive review and evaluation, the Board proposed to substantively amend two Rule categories: State Bar Rules 4.80–4.92 (Testing Accommodations) and State Bar Rule 4.62 (Access to examination answers and scores).

The proposed amendments to State Bar Rules 4.80–4.92 (Testing Accommodations) seek to streamline the process for requesting testing accommodations on the California Bar Examination ("CBX" or "bar exam") or First-Year Law Students' Exam, including limiting the burden on disabled applicants to obtain and supply documentation supporting requests for accommodations, while maintaining and serving the bar exam's public protection function. The text of proposed amended State Bar Rules 4.80–4.92 is attached to the Appendix of Exhibits in Support of Request that the Supreme Court of California Review and Approve Proposed Amendments to State Bar Rules 4.80– 4.92, 4.62 filed herewith as Exhibit 1 (Redline) and Exhibit 2 (Clean).

The proposed amendments to State Bar Rule 4.62 ensure that applicants who did not pass the bar exam may review their

written answers electronically. The text of proposed amended State Bar Rule 4.62 is attached as Exhibit 3 (Redline and Clean).

The proposed amendments are the end result of a significant evaluative process, including repeated solicitation of public comment and circulation of multiple proposed revisions in response to that public comment. The proposed amendments comply with applicable law and continue to provide equal access to applicants. The State Bar therefore respectfully requests that the Court review and approve the proposed amended Rules. If the Court approves these proposed amended Rules, the State Bar respectfully requests that the amended Rules become effective sixty days after approval by the Court.

## II. AUTHORITY REQUIRING SUPREME COURT REVIEW AND APPROVAL BEFORE THE PROPOSED RULE CHANGES MAY BE IMPLEMENTED

California Rules of Court, rule 9.5, provides as follows: "All rules adopted by the State Bar Committee of Bar Examiners and approved by the State Bar Board of Trustees pertaining to the admission to practice law must be submitted to the Supreme Court for its review and approval."

Rule of Court 9.5 requires that the proposed Rules that are

the subject of this petition be reviewed and approved by this Court in order to become effective. The proposed Rules—which set forth procedures by which applicants to become admitted to the practice of law may request modifications to the testing required of all other applicants[2] as well as the standards on which such requests will be granted or denied—"pertain[] to the admission to practice law." Prior to submitting these proposed Rules for this Court's review and approval, they were first adopted by the State Bar Committee of Bar Examiners on October 13, 2023, and then approved by the State Bar Board of Trustees for submission to this Court on November 16, 2023. As such, they fall within the express class of rules which Rule of Court 9.5 requires to be reviewed and approved by the Supreme Court.

Supreme Court review and approval is also consistent with this Court's central and primary role in overseeing attorney admission as well with past practice. This Court has "inherent" and "primary" authority over attorney admissions. (*In re Attorney*

---

[2] As discussed below, the one proposed amended Rule presented in this petition that does not pertain to testing accommodations, Rule 4.62, also pertains to admission to practice law, and thus must be approved by this Court before going into effect.

*Discipline System,* 19 Cal.4th 582, 592 (1998); see also *Obrien v. Jones,* 23 Cal.4th 40, 48 (2000); *In re Rose*, 22 Cal.4th 430, 441–442 (2000); Cal. Rules of Court, rule 9.3.)[3] And when State Bar Rules 4.80–4.86, 4.88, and 4.90 were last amended in 2019, these amendments only took affect after the Supreme Court approved the Rules in an administrative order filed August 28, 2019 in Supreme Court Case No. S256076. (See Exhibit 4.)

Thus, while the State Bar administers admissions functions, it is the Court that must approve the Rules under which the State Bar carries out those functions, including the Rules at issue in this petition: Rules regarding testing accommodations and a Rule regarding the information provided to exam takers who do not pass the bar exam. Indeed, the testing accommodations presented by this petition for review and

---

[3] Notably, an *en banc* panel of the Ninth Circuit Court of Appeals discussed this Court's "significant control over the State Bar's functioning[]," specifically noting that, pursuant to Rule of Court 9.5, "[a]dmissions rules adopted by the State Bar are subject to California Supreme Court review and approval." (*Kohn v. State Bar,* 87 F.4th 1021, 1035 (9th Cir. 2023)) This close control by this Court over the State Bar's admissions functions supported the Ninth Circuit's holding in *Kohn* (a case involving a challenge to the State Bar's decisions regarding testing accommodations under the current Rules) that the State Bar is an arm of the State of California entitled to sovereign immunity in federal court. (*Ibid.*)

approval are particularly integral to the admission to the practice of law. For instance, proposed Rule 4.80(A) states that "[t]esting accommodations are provided to ensure that an applicant who has a disability can access the examination and is afforded an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others," and proposed Rule 4.80(I) makes clear that "reasonable testing accommodations" must not, among other things "fundamentally alter the nature of an examination or the [Committee of Bar Examiners]'s ability to assess through the examination whether the applicant: (a) possesses the knowledge, skills, and abilities tested on an examination; and (b) meets the essential eligibility requirements for admission." The proposed Rules regarding apparently procedural issues, such as applicable timelines, also involve substantive issues pertaining to the practice of law because the procedures must also ensure equal access to the admission to practice law. All of proposed Rules regarding testing accommodations are thus part of a comprehensive package that, taken together, aims to provide "an equal opportunity" to test takers while ensuring that the bar exam still provides the necessary assessment of the knowledge,

skills, and abilities required for admission to practice law.

One of the proposed Rules presented in this petition, proposed amended State Bar Rule 4.62, does not concern testing accommodations. Rather, it concerns the circumstances and procedures under which unsuccessful bar exam takers can receive and review copies of their answers to the written portion of the exam. Because this Rule concerns the information to be provided to certain applicants for their use in preparing for future bar exams so that they can be admitted to practice law, it also "pertain[s] to the admission to practice law," and therefore must be reviewed and approved by this Court under Rule of Court 9.5.

## III. BACKGROUND AND PROCEDURAL HISTORY

### A. State Bar Review of Admissions Rules

In 2022, State Bar staff began a comprehensive review of the State Bar Rules regarding admission to the practice of law to (1) ensure the State Bar Rules are consistent with applicable law, including the California Rules of Court and California Business and Professions Code, (2) clarify the State Bar Rules where ambiguity has been identified, and (3) eliminate any State Bar

Rules that do not advance the State Bar's mission or that serve as unnecessary barriers.

### B.    Testing Accommodations Rules

Title 4, Division 1, Chapter 7 of the State Bar Rules sets forth the procedures for requesting testing accommodations for the bar exam and the First-Year Law Students' Exam ("FYLSX").[4] These Rules are intended to ensure that individuals with disabilities have equal access to the FYLSX and bar exam. Equal access allows applicants to be evaluated on the knowledge, skills, and abilities the exams are designed to measure, and not on the effects of any disability.

The relevant Rules have been in place since 2008, with amendments, in part, in 2011 and 2019. Although the current Rules are compliant with applicable law, the State Bar has received criticism regarding the amount of documentation required to apply for testing accommodations, the cost and time required to secure that documentation, the reliance on State Bar

---

[4] Although these rules do not directly govern Legal Specialization Exams ("LSX"), the process adopted for evaluation of requests for testing accommodations for the bar exam and FYLSX is also applied to requests for testing accommodations from those sitting for the LSX.

consultants over the recommendations of applicants' health care professional(s), the processing time for testing accommodation requests, and differences between the State Bar's process and the United States Department of Justice's guidance on testing accommodations ("DOJ Guidance").[5]

To ensure that any Rule amendment proposals would be responsive to these and other concerns, the State Bar sought feedback from members of the public on its existing practices and Rules during a June 29, 2022 stakeholder meeting, with advance notice of the topics to be discussed during that meeting. Thereafter, the State Bar developed a new proposed framework for administering testing accommodations, which incorporated feedback from the June 29, 2022 stakeholder meeting as well as principles contained in the consent decree arising out of the *Law*

---

[5] The DOJ issued guidance on testing accommodations after the Law School Admissions Council, a private entity, entered into a consent decree with the Department of Fair Employment and Housing (now known as the California Civil Rights Division) regarding testing accommodations on examinations issued by private entities. (*The Department of Fair Employment and Housing v. Law School Admissions Council ("Law School Admissions Council").*) The guidance, available on the Department of Justice's website, "has no legally binding effect." (See ADA Requirements: Testing Accommodations, available at <https://www.ada.gov/resources/testing-accommodations/> [as of June 17, 2024].)

*School Admissions Council* litigation, and the resulting DOJ
Guidance. The State Bar sought feedback on that proposed
framework through a second stakeholder meeting on September
16, 2022.

On October 16, 2022—after the two stakeholder meetings
and revisions to the proposed Rules in response to the same—the
Committee of Bar Examiners ("CBE" or "Committee")
recommended that the Board circulate its proposed revisions to
the testing accommodations Rules for public comment. On
November 17, 2022, the Board granted the CBE's request, and
circulated, on its website and directly to stakeholders, the
proposed amendments to the testing accommodations Rules for
sixty days of public comment. That period closed on January 31,
2023. During the public comment period, the State Bar received
109 comments on the testing accommodations Rules proposal.
(The public comments with respect to the substantive changes
effected by the proposed Rules are discussed below; a full
summary of public comments received is set forth in Exhibit 5.)

In response to the public comments received, the CBE
proposed further substantial amendments to the proposed Rules.
On March 24, 2023, the CBE recommended that the Board

circulate the new testing accommodation Rule proposals for a 45-day public comment period. The Board did so on May 18, 2023, and the public comment period closed on July 31, 2023.

During the second round of public comment, the State Bar received 42 public comments. The CBE considered the comments received and on August 18, 2023, the CBE circulated modified Rules for public comment. The third public comment period closed on October 7, 2023. During that time, the State Bar received 33 public comments. The CBE evaluated the comments, but did not propose any further changes to the proposed Rules because the themes and concepts in the comments had already been considered in previous revisions.[6] On October 13, 2023, the CBE recommended that the Board adopt the proposed Rules and request that the Supreme Court approve the proposed Rules. The Board voted to adopt the proposed Rules and directed staff to transmit them to the Court for approval at its November 16, 2023 meeting.[7]

---

[6] More detail regarding the public comment and revision process is contained in Exhibit 5.

[7] The version of the proposed testing accommodations Rules submitted to this Court for review and approval contains several

## C.    Rule 4.62

Prior to January 1, 2024, Business and Professions Code section 6065 provided that within four months after the release of exam results, unsuccessful applicants had the "right to inspect their examination papers at the office of the examining committee located nearest to the place at which the applicant took the examination."

Effective January 1, 2024, Business and Professions Code section 6065 was amended to state:

> Any applicant for admission to practice who did not pass the California bar examination, for 30 days following the release of examination results, shall have electronic access to their answers to the written sessions of the bar examination, which shall include the ability to download, save, and print.

---

minor non-substantive changes from the version approved by the Board to correct grammatical errors and ensure internal consistency in capitalization, formatting, and terminology. These changes were: correcting the alphabetization of defined terms (proposed Rule 4.80); capitalizing "Request for Testing Accommodations" (proposed Rules 4.84 – 4.86, 4.88, 4.90, 4.91); removing surplus word "examination" from "final examination deadline" (proposed Rules 4.85, 4.87); changing "requests" to "request" (proposed Rule 4.87); changing "grant" and "granted" to "approve" and "approved," adding "thirty" to "thirty (30) days", and changing "filed" to "submitted" (proposed Rule 4.88); and correcting title capitalization (proposed Rule 4.91).

The State Bar had requested this statutory change to reflect what has been the practice of the State Bar since 2019. Specifically, since 2019, the State Bar provided electronic access to exam answers, though this was not required by existing statute. The electronic system allows applicants to view, print, and download their exam results, instead of requiring the State Bar to mail or otherwise provide access to the answers. While applicants only have 30 days to access and download their exam answers through the Applicant Portal at no cost, in the event an applicant later needs access to their answers to the most recently administered exam, they may do so by submitting a request and fee. The proposed amendments to Rule 4.62 thus reflect the process that is already in place. They were adopted and approved for submission to the Court by the Board at its November 16, 2023 meeting, along with the proposed testing accommodations Rules that are also the subject of this petition.

## IV. PROPOSED AMENDED RULES

### A. Testing Accommodations Rules 4.80–4.92

The proposed changes to the testing accommodation Rules are intended to ensure that State Bar exams are offered in a manner that continues to be accessible to persons with

disabilities and continues to comply with all applicable legal accommodation requirements. In revising the Rules, the State Bar solicited feedback from applicants, law schools, disability-rights advocacy groups, and members of the public, as described above and in Exhibit 5, and carefully reviewed relevant guidance including the consent decree that arose out of the *Law School Admission Council* litigation (LSAC Consent Decree), and as contained in the DOJ Guidance.

The recommended Rule and process revisions can be summarized as follows:

- **Changes to Definitions**: The proposed Rules include updated substantive definitions, most of which track definitions contained in the Americans with Disabilities Act ("ADA"). The substantive determinations made under the proposed testing accommodations procedures turn on these definitions, which include such central concepts as "disability," "high stakes exam," and "reasonable testing accommodation."

- **Automatic Approval of Accommodations Previously Granted for High Stakes Exams:** The proposed Rules add automatic approvals of testing

accommodations previously granted for high stakes exams with evidence of the prior accommodations and certification that the applicant has at least the same functional limitations as when the accommodations were previously granted.[8] Automatic approvals would apply to all accommodations as long as the prior grant was not for more than 100 percent extra time (i.e., more than double time) or for a private room. For those accommodations, the applicant must submit the required forms and relevant documentation.

- **Weight of Past Accommodations:** Under the proposed Rules, the State Bar will give considerable weight to past testing accommodations approved for college or law school timed exams. However, past testing accommodations for college or law school timed exams will not be included in the automatic approval process

---

[8] In certain circumstances, the State Bar will provide an accommodation equivalent to the previously granted accommodation rather than an identical accommodation. For instance, rather than providing "stop the clock" breaks as an accommodation to a test taker who needs additional breaks as an accommodation, the State Bar may provide extra testing time instead, but the clock would continue to run.

due to concerns about the consistency, rigor, and lack of uniformity in evaluating accommodation requests at different institutions.

- **Deference to Applicant's Qualified Professional:** Under the proposed Rules, the State Bar will defer to documentation from a qualified professional who has made an individualized assessment of the applicant that supports the need for the requested testing accommodations rather than the opinions of a disability accommodations expert who has not assessed the applicant for diagnosis and treatment.

- **Changes to Timelines:** The proposed Rules extend applicants' time to request review by the committee, following a denial or partial approval of a request for accommodations. Applicants who apply by the timely filing deadline will have 30 days to request review, as opposed to 10 days under the current Rule, of a denial or partial approval. Those requesting testing accommodations during the late filing period will have

14 days to request review unless the exam scheduling necessitates a shorter period.

- **Review by CBE:** The proposed Rules clarify that although applicants are limited to one request for review per exam cycle, applicants may seek review with respect to subsequent exam cycles. Additionally, in order to increase the speed of consideration and decision making and to ensure consistency, under the proposed Rule, a subcommittee will be delegated the authority to decide the requests for review, and an independent testing accommodations expert will provide a recommendation to the subcommittee for its consideration.

More details regarding these proposed revisions are provided below.

### 1. Rule 4.80 Definitions

Proposed Rule 4.80 includes revised definitions of terms that are specifically relevant to the testing accommodations process.

### a. Disability

The proposed Rules define "disability" as:

> a physical or mental impairment that limits one or
> more of an applicant's major life activities as
> compared to most people in the general population.

(Proposed Rule 4.80(A).) This definition aligns with, and is even broader than, the language set forth in the ADA and its implementing regulations. (See 42 U.S.C. § 12102(1)(A) ["a physical or mental impairment that substantially limits one or more major life activities of such individual"]; 28 C.F.R. § 35.108(d)(1)(v) ["An impairment is a disability within the meaning of this part if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."].) Some public commenters objected that the State Bar did not adopt the definition of "disability" under California law. (Gov. Code, § 12926, subds. (j), (m).) The State Bar aligned its definitions where practicable with Title II of the ADA. The California law proposed in such public comments is from the Unruh Act, insofar as it utilizes the definitions under the California Fair Employment and Housing Act ("FEHA"). The Unruh Act applies to actions by private "business establishments" and not to the State engaged in a non-business establishment activity. (See *Brennon B. v. Super. Ct.*, 13 Cal.5th 662, 677–678. (2022)) Further, the FEHA applies to

employment and housing, neither of which are at issue here. Therefore, it is not appropriate or required to adopt the California definition instead of the definition based on Title II of the ADA.

Even still, the proposed Rules' definition of disability is broader than and in line with California law in a significant way. The ADA definition of disability would allow the State Bar to restrict the disability determination to those whose impairments *substantially* limit a major life activity, but the State Bar included a less burdensome standard for the applicant in the proposed Rule. Under the proposed Rule, the applicant need only show that the impairment limits a major life activity rather than "substantially limit" a major life activity. This definition is *consistent* with the California Government Code (as compared to the ADA), which only requires that the impairment limit a major life activity. (Compare Gov. Code, § 12926, subd. (j)(1) & (m)(1) with 42 U.S.C. § 12102(1)(A).)

Additionally, some public commenters noted that a disability definition that compares the disabled applicant's limitations to the general public might adversely impact applicants who have achieved a high level of academic success.

However, this concern has already been addressed in the DOJ Guidance, which found that "someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in one or more of the major life activities of reading, writing, speaking, or learning, because of the additional time or effort he or she must spend to read, write, speak, or learn compared to most people in the general population." (See ADA Requirements: Testing Accommodations, available at <https://www.ada.gov/resources/testing-accommodations/> [as of June 17, 2024].) Therefore, a limitation as compared to the general public can exist alongside a high level of academic success and they are not mutually exclusive. In such a case, the applicant can meet the "disability" definition.

### b. Disability Accommodations Expert

The definition of "disability accommodations expert" set forth in the proposed Rule ensures that any consultant the State Bar utilizes to review testing accommodation requests has the requisite experience and knowledge.

### c. High Stakes Exam

Under the proposed Rules, an applicant who has previously received an accommodation on a high stakes exam can

receive certain automatic accommodation approvals through the State Bar. The term "high stakes exam" is broadly defined in the proposed Rules to include the bar exam, the FYLSX, the Multistate Professional Responsibility Exam, a bar exam in another U.S. jurisdiction, the LSAT, GRE, GMAT, MCAT, DAT, SAT I, SAT II, ACT, and GED. This is consistent with the examples set forth in the DOJ Guidance.

### d.    Mental Impairment

The definition of "mental impairment" is derived from the definition contained in the Title II ADA regulations regarding "mental impairment," including as it relates to and incorporates the definition of "physical impairment." (See 28 C.F.R. § 35.108 (b).) This definition is even broader than the definition contained in the Government Code. (See Gov. Code, § 12926, subd. (j).)

### e.    Permanent Disability/Physical Impairment

The definition of "physical impairment" is broad and closely aligned to the definition contained in the Title II ADA regulations regarding "physical impairment." (See 28 C.F.R. § 35.108 (b).) It also largely tracks the definition contained in the Government Code. (See Gov. Code, § 12926, subd. (m).) The proposed revisions

add illustrative examples to the definition of "physical impairment" as well as a definition of the phrase "permanent disability."

### f.      Qualified Professional

An applicant can use a qualified professional to conduct an individualized assessment of the applicant's limitations. The definition of "qualified professional" therefore appropriately requires an expert in the field for which the accommodation is being assessed. While some public commenters took issue with reviewers that the State Bar had utilized in the past, the qualified professional definition does not require the State Bar to continue utilizing the professionals it has previously used and allows flexibility in determining the appropriate individual— including the applicant's own health care provider—to assess the relevant limitation and proposed accommodation. This definition is also consistent with the DOJ Guidance as to a qualified professional.

### g.      Individualized Assessment

For those applicants whose requested accommodations do not qualify for automatic approval, the proposed defined term "individualized assessment" adopts the principle that each

applicant can and should have a qualified professional review their own personal situation to determine what limitations exist and whether accommodations are needed. This definition addresses public comments as to whether there would be assessments performed without regard to individual circumstances and ensures that an applicant can have an analysis performed based on their own disability and limitations.

### h.    Reasonable Testing Accommodation

The definition of "reasonable testing accommodation" addresses a number of competing concerns and incorporates the DOJ Guidance and principles in Title II of the ADA. First, the accommodation definition itself is broad in that it allows for modifications to various rules, policies, and procedures, and is therefore flexible to address individual accommodation needs. Second, the enumerated examples of what is not reasonable or required as an accommodation are intended to address the concept of equal access and ensuring that the examination maintains the purpose for which it is created, even with accommodations. The validity and integrity of the examination and its process must be maintained, even with accommodations. This requirement is in every applicant's best interest, including

the disabled applicant, in that each individual who takes and passes the examination should be able to state that the examination process and the examination itself was not compromised. Third, the accommodation should not impose an undue burden on the State Bar. This is consistent with accommodation jurisprudence of not requiring an accommodation where it would create an undue hardship. Finally, the accommodation must not fundamentally alter the nature of the examination, including the ability of the State Bar to assess the information tested as part of the examination and the essential eligibility requirements. This third requirement is consistent with the Title II regulations (28 C.F.R. § 35.130 (b)(7)(i)) as well as DOJ Guidance as to "What Testing Accommodations Must Be Provided?" (see ADA Requirements: Testing Accommodations available at <https://www.ada.gov/resources/testing-accommodations/> [as of June 17, 2024]).

## 2. Rule 4.81 Purpose of Testing Accommodations

This proposed Rule is intended to set forth the purpose of testing accommodations, which is to ensure that applicants with disabilities are afforded equal access to the exam and an equal

opportunity to obtain the same result as applicants who do not have disabilities as defined by the ADA. This purpose is consistent with Title II of the ADA.

### 3. Rule 4.82 Processing of Requests for Testing Accommodation

Consistent with the DOJ Guidance, the proposed Rule provides that the State Bar will render determinations on completed testing accommodation requests received by the final filing deadline, and will do so as far in advance of the exam as practicable. Under the current Rules, applicants are notified within 60 days after submitting a complete application if the request is approved, partially approved, denied, or if action is pending. While some public comments recommended that the State Bar adopt even stricter or shorter timeframes for evaluating testing accommodation requests, the State Bar believes it is premature to do so prior to an evaluation of how quickly requests are processed under the new proposed Rules. The State Bar anticipates that the automatic approval process set forth in proposed Rule 4.83 will free up State Bar resources to focus on processing requests for accommodations that do not

qualify for automatic approval, thus reducing the timeline for processing such requests.

   **4.**  **Rule 4.83 Automatic Approval Process: Approval of Previously Granted Testing Accommodations on High Stakes Exams**

  The existing Rules do not provide for any automatic approval of testing accommodation requests. Instead, each application is individually reviewed and assessed to determine what, if any, accommodations are granted. In order to create greater efficiency and quicker decisions for applicants, the proposed Rule adopts an automatic approval process for certain accommodation requests similar to that set forth in the LSAC Consent Decree. Under the proposed Rule, the State Bar will automatically approve requests for the same (or lesser) accommodations as the applicant was granted on another high stakes exam if the applicant has a permanent physical or mental disability and is continuing to experience at least the same functional limitations as they were at the time they received the prior accommodations. To limit the burden on applicants, in cases where an applicant is seeking approval under the automatic approval process, the applicant need only provide proof of the prior accommodation and certify that they still experience at

least the same functional limitations. The automatic approval

process will not apply where an applicant seeks more than double

time on the exam, or a private room.[9] However, this process

should nonetheless limit the burden on applicants and does not

prevent the applicant from seeking greater than double time or a

private room. For example, if an applicant was granted triple

time on the LSAT, assuming the applicant submitted proof of

prior accommodation and certified they continued to have at least

the same functional limitations, the applicant would receive

automatic approval of double time through the automatic

approval process. The applicant could then seek triple time by

submitting narrowly tailored documentation to substantiate the

request, which would be processed in accordance with proposed

Rule 4.85.

### 5. Rule 4.84 Request for Testing Accommodations – Timing of Submission

Applicants can and should apply for accommodations as

early as possible, and they may do so even before an application

to take a particular exam is available. The proposed Rules

---

[9] A semi-private room and/or distraction-free environment can be automatically provided under this process without the need for further documentation.

provide a deadline, approximately six weeks prior to the given exam, for the applicant to submit the accommodation request. However, for applications filed on the deadline, problems may arise if an application is deficient, as such an applicant would likely not have sufficient time to correct the errors. To avoid such a result, applicants may, and are encouraged to, apply well before the final filing deadline. Finally, the proposed Rules provide a timing exception for those with a temporary disability where consideration for the accommodation must be made closer to the actual examination date.

      **6.**    **Rule 4.85 Request for Testing Accommodations – Content of Submissions**

Under proposed Rule 4.85, applicants who are not eligible for the streamlined automatic approval process will need to submit a packet of information that includes a qualified professional's certification and "any supplemental documentation needed to determine the applicant's disability-related functional limitations, their specific access needs, and how those needs relate to the testing accommodations requested. Supporting documentation shall be limited to that which is reasonable, limited and narrowly tailored to the information needed."

(Proposed Rule 4.85(B).) The requirement to submit documentation is consistent with accommodation requirements in DOJ Guidance and ensures fairness in the process to substantiate, without excessive burden, the need for an accommodation. This proposed Rule specifically adopted public comments in only requiring "reasonable, limited and narrowly tailored" documentation.

### 7. Rule 4.86 State Bar Response to Request for Testing Accommodations

Under proposed Rule 4.86, the State Bar will notify an applicant whether additional information is needed to complete their request for accommodations within 30 days of receipt of the request. Additionally, the State Bar will notify an applicant whether a request is granted, denied, approved with modifications, or still pending within 60 days of the State Bar deeming the request complete. Subsection (C) of this proposed Rule provides that the State Bar will provide an explanation of the basis for decision if a request is denied or approved with modifications. While the State Bar will endeavor to provide a response sooner (see proposed Rule 4.82(B)), it cannot promise an earlier response because it cannot predict the number of

applications in any given testing cycle or the complexity of those applications for processing.

### 8. Rule 4.87 Emergency Requests for Testing Accommodations

The proposed changes to this Rule are mainly changes to the form of the Rule. Under both existing Rule and the proposed Rule, applicants who become disabled after the final examination application filing deadline may submit a request for testing accommodations between that deadline and ten days before the first day of the examination. The changes to the Rule include changing the term "petition" to "request" and also clarifying how such a request may be submitted.

### 9. Rule 4.88 Request for Review of Denial or Approval with Modifications

The prior version of this Rule required an appeal to be filed within 10 days of an applicant being denied an accommodation. The proposed Rule now allows more time for an appeal under a tiered approach. Those applicants who apply for an accommodation by the timely filing deadline have 30 days to appeal; all others have 14 days to request review unless examination timing necessitates otherwise. Finally, the decision on appeal is final for purposes of that review cycle.

### 10. Rule 4.89 Subsequent Request for Testing Accommodations

The proposed Rules provide a simplified process for requesting accommodations in subsequent examinations. Under this proposed Rule, an applicant will be automatically approved for a previously granted accommodation on a subsequent exam with a certification from the applicant that they have at least the same restrictions as when the original accommodation was approved. Those applicants that have more restrictions than when previous accommodations were granted can provide supplemental documentation to address those increased restrictions and associated accommodation requests, but they are automatically approved for the prior accommodations. Finally, an applicant with a temporary disability must submit a new request.

### 11. Rule 4.90 Confidentiality of Requests for Testing Accommodations

The only changes to this proposed Rule are that the term "petitions" has been changed to "requests" and the Rule has been renumbered from 4.91 to 4.90. Due to the nature of the information provided to request testing accommodations, including medical information, it is appropriate for the State Bar to continue to maintain such records confidentially.

### 12. Rule 4.91 False or Misleading Information in Requests for Testing Accommodations

The only changes to this proposed Rule are that the term "petition" has been changed to "requests," and it has been renumbered from 4.92 to 4.91.

### 13. Rule 4.92 Committee of Bar Examiners Oversight

This is a new Rule, meant to clarify that the CBE is charged with ensuring that the testing accommodations processes and standards are consistent, and with monitoring any trends in testing accommodations requests, processing, and decisions. This Rule is intended to create accountability and transparency in the administration of these Rules.

### B. Examinations Rule 4.62

Prior to 2019, the Office of Admissions mailed exam result letters to applicants through the United States Postal Service. Approximately 30 days later, the Office of Admissions mailed unsuccessful bar exam applicants (and all FYLSX takers) their written answers to the exams. After the launch of the Admissions Information Management System in 2019, the Office of Admissions transitioned from mailing exam answers to posting applicant answers electronically to the Applicant Portal

immediately upon the release of exam results. Once posted, applicants are able to view, print, and download their written exam answers immediately.

Due to data volume constraints, applicants cannot access their written exam answers through the Applicant Portal after 30 days from the date of posting. However, after the 30-day period, applicants may obtain their exam answers from the last administered exam by submitting the Document Copy Request Form and payment of a fee.

This practice of providing electronic results was codified in amended Business and Professions Code section 6065, effective January 1, 2024. That section provides that applicants who did not pass the bar exam may electronically access their answers to the written section of the exam for downloading, saving, and printing. The proposed changes to Rule 4.62 align the Rule with the amended statute and with the practice that has been in place since 2019. This electronic functionality provides significantly better access because the applicants have the ability to print or download their answers immediately upon the release of results rather than having to wait for mailed results.

## V. CONCLUSION

The Board of Trustees of the State Bar of California respectfully requests that the Supreme Court review and approve the proposed and amended State Bar Rules, as set forth in Exhibits 2 and 3, and that the Rules take effect 60 days after approval.

Dated: June 18, 2024

Respectfully submitted,

ELLIN DAVTYAN
BRADY R. DEWAR

By: */s/ Brady R. Dewar*
    BRADY R. DEWAR

Assistant General Counsel
Office of General Counsel
The State Bar of California

# Exhibit 2

Supreme Court of California
Jorge E. Navarrete, Clerk and Executive Officer of the Court
Electronically RECEIVED on 6/23/2024 3:45:07 AM

Supreme Court of California
Jorge E. Navarrete, Clerk and Executive Officer of the Court
Electronically FILED on 6/24/2024 by Florentino Jimenez, Deputy

**S285541**

# In the Supreme Court of the State of California

_____

## IN RE RULES OF THE STATE BAR OF CALIFORNIA

_____

Brief of Respondent Shirleen Claiche in Response to
Petition of Petitioner State Bar of California to Amend Rules.

_____

Notice Regarding Leave to File Responsive Brief Upon the State Bar's
Anticipated Petition Transmitted to Respondent's Counsel via Email by the
Clerk of this Court, Jorge Navarette, on November 29, 2023.

_____

Benjamin Kohn
CA SBN No. 335723
Kohn Law Office of California
1913 Fordham Way,
Mountain View, CA 94040
(650) 919-3584
Benjamin.s.Kohn@gmail.com

*Counsel of Record for Respondent, Shirleen Claiche.*

# Table of Contents:

Table of Contents… 2

Table of Authorities… 3-6

Introduction… 7-16

Summary of Argument… 17-24

Factual Background: Rules Revision History… 24-38

Factual Background: The Respondent… 38-44

Argument: … 45-63

    1.  The Proposed Rules Codify an Unlawful Policy to Never Offer –
or Individually Consider Requests for – Certain Disfavored
Accommodations That Neither Fundamentally Alter the Exam
nor Impose Undue Burden on the State Bar… 45-52

    2.  The Proposed Rules Maintain Administrative Review Timelines
for Testing Accommodation Requests That Facially Deprive
Disabled Applicants of Equal Opportunity to the Nondisabled,
and As-Applied Further Deprive Many Disabled Applicants of a
Meaningful (and sometimes any) Opportunity to be Heard via
State Bar Administrative-Appellate Remedies for the Next Exam
Administration, Let Alone to Timely Seek Judicial Review by
This (or any) Court… 53-60

    3.  Current and Proposed Rules Both Fail to Permit Disabled
Applicants a Live Hearing on Testing Accommodation Requests
or Appeals from Denials Thereof… 60-63

Conclusion and Prayer for Relief… 63-64

Certificate of Word Count Compliance… 65

Declaration of Service… 66

**Table of Authorities:**

<u>Federal Cases:</u>

*Auer v. Robbins*, (1997) 519 U.S. 452… 54-55

*Bragdon v. Abbott*, (1998) 524 U.S. 624, 626… 55

*Brewer v. State Bar*, Ninth Circuit No.24-2151… 13

*Chevron v. NRDC*, (1984) 467 U.S. 837, 844… 55

*Cohen v. Culver City*, (9th Cir. 2014) 754 F.3d 690, 695… 16

*Conn v. Gabbert*, (1999) 526 U.S. 286, 291-92… 15

*DFEH v. LSAC*, (N.D. Cal. May 29, 2014) No.12-cv-01830-JCS… 19

*Enyart v. NCBE*, (9th Cir. 2011) 630 F.3d 1153, 1163… 17, 35, 48-49, 52

*Gabbert v. Conn*, (9th Cir. 1997) 131 F.3d 793, 800… 15

*Guckenberger v. B.U.*, (D. Mass. 1997) 974 F.Supp. 106, 121, 134-144.. 16

*Kohn v. State Bar*, (9th Cir. 2023) (*en banc*), 87 F.4th 1021… 11

*Kohn v. State Bar*, 9th Cir. No.20-17316, Dkt.83… 11, 13

*Kohn v. State Bar*, (N.D. Cal.) 4:20-cv-04827-PJH, Dkt.21 att.1-2… 27

*Kisor v. Wilkie*, (2019) 139 S. Ct. 2400, 2416… 55

*Mathews v. Eldridge*, (1976) 424 U.S. 319… 24, 62

*McGary v. Portland*, (9th Cir. 2004) 386 F.3d 1259, 1261-65… 16

*Medical Board of California v. Hason*, (Apr.7, 2003) S. Ct. No.02-479.. 13

*Mogan v. State Bar*, Ninth Circuit No.24-3492… 13

*Murguia v. Langdon*, (9th Cir. 2023) 61 F.4th 1096… 41

*Payan v. L.A. Cmty. College Dist.*, (9th Cir. 2021) 11 F.4th 729, 738… 16

*Pell v. Nunez*, (9th Cir. 2024) 99 F.4[th] 1128… 11-13

*Schware v. N.M. Bd. of Bar Exam.*, (1957) 353 U.S. 232, 238… 15

*Townsend v. Quasim*, (9th Cir. 2003) 328 F.3d 511, 518 n.2… 16

*Wong v. Regents of Univ. of Cal.*, (9th Cir. 1999) 192 F.3d 807, 818… 17

California Cases:

*Brennon B. v. Sup. Ct.*, (2022) 13 Cal.5[th] 662… 8-9

*Hallinan v. CBE*, (1966) 65 Cal.2d 447, 452 n.3… 15

*In re Garcia*, (2014) 58 Cal.4th 440, 451… 10

*Morrowatti v. State Bar*, (2007) Ct. App. B196392, 2007 WL 4532857.. 10

Federal Statutes:

29 U.S.C. § 794 (Rehabilitation Act)… 8

42 U.S.C. §§ 12131, 12132, 12189, 12202, 12206(c) (ADA)… 8

42 U.S.C. § 12202… 8, 11

42 U.S.C. § 12206(c)… 8, 54

Federal Regulations:

28 C.F.R. § 35.130(b)… 8, 17, 21, 47-48, 54

28 C.F.R. § 35.160(b)… 8, 17, 45, 47-48

28 C.F.R. § 35.164… 8, 45, 47, 49

28 C.F.R. § 36.309(b)(1)… 8, 16, 18, 21, 50-51, 54

28 C.F.R. § 36.309(b)(1)(iv)… 51

28 C.F.R. § 36.309(b)(1)(v)… 50-51

28 C.F.R. § 36.309(b)(1)(vi)… 21, 54

28 C.F.R. § Pt.35 App. A… 8, 16, 18

28 C.F.R. § Pt.35 App. B at p.707… 8, 45-46

28 C.F.R. § Pt.36 App. A at pp.795-96… 8, 48

<u>California Constitutional Provisions:</u>

Cal. Const. Art. 1, § 7… 24, 62

<u>California Statutes:</u>

Cal. Bus. & Prof. Code § 6001… 8

Cal. Bus. & Prof. Code § 6001.1… 8

Cal. Bus. & Prof. Code § 6066… 10

Cal. Civ. Code §§ 51-52 (Unruh Act)… 9

Cal. Gov. Code §§ 11135, 12944… 8

<u>California Rules and Regulations:</u>

Cal. Rules Ct. 9.13(d)… 14

State Bar First-Iteration-Proposed Rule 4.84(B)… 32

State Bar Proposed Rule 4.82… 49-50

State Bar Proposed Rule 4.82(D)… 50

State Bar Proposed Rule 4.82(G)… 49

State Bar Proposed Rule 4.83… 37, 45, 48, 50-51

State Bar Proposed Rule 4.83(A)(6)… 45, 48

State Bar Proposed Rule 4.84(E)… 18, 20, 56

State Bar Proposed Rule 4.85(C)… 51

State Bar Proposed Rule 4.86(A)-(B)… 18, 20, 56

State Bar Proposed Rule 4.88(A)-(B)... 18-20, 35, 56

# INTRODUCTION

Petitioner State Bar of California ("Petitioner" or "State Bar") and Respondent Shirleen Claiche ("Respondent") both agree on the need to reform the State Bar's current rules concerning the procedures that govern its consideration of testing accommodation requests and administrative appeals from denials thereof ("current rules"). Their disagreement centers on the adequacy of the amendments proposed ("proposed rules") in the present petition for fulfilling that need, and on the original and eventual purpose of the present rule revision initiative intended by certain admissions staff involved with crafting the proposal, underlying both the genesis of this rule revision initiative and its precursor one, and ultimately the State Bar's rejection of voluminous, yet nearly unanimous public comments on their substance.

Said public comments that the State Bar rejected expressed similar disagreements with the proposed rules' adequacy, and were received from numerous public interest organizations; members of the California Legislature, Access to Justice Commission, and DFEH testing accommodations best practices panel; and health care experts, law school

deans, affected applicants, and a former Congressperson who'd co-authored the Americans with Disabilities Act ("ADA").[1]

At stake here is the accessibility of the California legal profession. The adequacy of the State Bar's accommodation procedures, for providing otherwise qualified applicants with disabilities meaningful and equal opportunities to qualify for entry to the profession as those enjoyed by nondisabled applicants, is mandated not only by *at least* federal law,[2] but is

---

[1] *See* the extensive, and judicially noticeable, public comment record collated in meeting agenda attachments posted on the State Bar's website: https://board.calbar.ca.gov/docs/agendaItem/Public/agendaitem1000030512.pdf (reproductions of public comments the State Bar received during the first public comment circulation on the present initiative's original iteration, the State Bar's purported summaries of the commenters' positions, some of which Respondent disputes the accuracy of, and the first amended iteration of the State Bar's proposed rules); https://board.calbar.ca.gov/docs/agendaItem/Public/agendaitem1000031502.pdf (reproductions of most public comments – at least those the State Bar concedes receiving – during the present initiative's second public comment circulation, the State Bar's purported statistical analysis of the commenters' positions on cherrypicked issues, and the second amended iteration of the State Bar's proposed rules); https://board.calbar.ca.gov/docs/agendaItem/Public/agendaitem1000031684.pdf (same for third public comment circulation).

[2] See, *i.e.*, 42 U.S.C. §§ 12131, 12132, 12189, 12202, 12206(c); 28 C.F.R. §§ 35.130(b), 35.160(b), 35.164, 36.309(b)(1), Pt.35 App. A, Pt.35 App. B at p.707, Pt.36 App. A at pp.795-96 (ADA), and to the extent the State Bar receives federal financial assistance, *see also* 29 U.S.C. § 794 (Rehabilitation Act). While Cal. Bus. & Prof. Code § 6001 may exempt the State Bar from Cal. Gov. Code §§ 11135 and 12944, those provisions (and Cal. Bus. & Prof. Code § 6001.1) are nonetheless instructive regarding the Legislature's view of California's public policies for handling accessibility of State occupational licensing to the disabled, which should guide this Court in promulgating the corresponding rules for law licensure. While Petitioner unpersuasively argues that, under *Brennon B. v. Sup. Ct.*, (2022)

also imperative to fulfilling California's anti-discrimination, access to justice, and related diversity, equity, and inclusion public policies. Due to a multiplicity of deficiencies examined in depth herein, current rules facially fail to comply with even the floor of federal disability law mandates, which the proposed rules fail to adequately rectify.

This Court is uniquely situated to remedy these deficiencies. Unlike most other contexts where the Court's function is wholly judicial, and its authority to grant relief is limited to what it determines the Legislature has authorized, in the context of promulgating the rules governing California's

---

13 Cal.5th 662, California's Unruh Act is inapplicable to them (*see* Petition, p.24), an issue they and the Undersigned have pending in the Ninth Circuit, the Unruh Act (Cal. Civ. Code §§ 51-52)'s applicability isn't at issue here, because it primarily enhances the *remedies* available for ADA violations, *not* materially the substantive requirements, and commenters' references to the definition of "disability" in California statutes is instructive regardless of whether those statutes directly control. Should this Court find otherwise, administering the bar exam is far more businesslike than Constitutionally-mandated gratuitous provision of public education. The regular exam registration fees applicants pay the State Bar, coupled with this Court's policymaking discretion over whether and how the State Bar uses the exam in its recommendations for this Court's attorney admission decisions – instead of a mandate enshrined in the California Constitution – distinguish the exam from public education. This Court's policy to typically only admit applicants who've passed the bar exam is identical to that for the NCBE's MPRE, and also analogous to how State universities require credentials from particular standardized test vendors to grant admission, and makes the State Bar's exam services just as businesslike as these vendors and especially like the NCBE, which in many jurisdictions performs *every* attorney-admission function the State Bar does for this Court. Regardless, the applicability of Unruh to the State Bar and bar exam is an important enough issue that this Court should allow further briefing and oral argument if it intends to decide it, including on the issue of whether *Brennon* was wrongly decided and should be overruled.

legal profession, the California Constitution accords this Court quasi-legislative powers.[3] Consequently, even to the extent this Court didn't accept Respondent's arguments that the State Bar's proposed rules are unlawful, it may (and should) still exercise its discretion to overrule the State Bar's policy judgments. As the proposed rules fail to remedy either the policy or compliance deficiencies, Respondent respectfully requests that the moved proposal be rejected and replaced with different reforms more in line with the detailed proposals crafted by subject matter experts contained in the public comments the State Bar received. See fn.1, *supra*.

The differences between the amendments sought by Petitioner and those sought by Respondent is an issue of exceptional importance, and worthy of this Court's careful consideration and intervention, particularly given the unique policymaking role and duties – as regulator of the legal profession – constitutionally entrusted to this Court alongside its original, plenary, and exclusive state-court subject matter jurisdiction over disputes with the State Bar relating to attorney admissions and discipline (see fn.3, *supra*). Particularly given the State Bar's position that this Court is the sole tribunal – State or Federal – authorized and competent to provide judicial review of any claims – State or Federal – against the State Bar that arose

---

[3] *In re Garcia*, (2014) 58 Cal.4th 440, 451 ("…[B]oth the Legislature and this court possess the authority to establish rules regulating admission to the State Bar… under the California Constitution this court bears the ultimate responsibility and authority [over attorney admissions].")

from its attorney admissions or discipline functions, this Court should closely supervise the State Bar's compliance with all applicable laws. *See Morrowatti v. State Bar*, (Dec.27, 2007) Cal. Ct. App. No.B196392, 2007 WL 4532857 (holding that [this Court] has exclusive state-court subject matter jurisdiction over disability discrimination claims relating to attorney admissions) (citing Cal. Bus. & Prof. Code § 6066); Petition, p.10 fn.3, citing *Kohn v. State Bar*, (Dec.6, 2023) 9th Cir. (*en banc*), 87 F.4th 1021, *cert. denied* (Apr.29, 2024) (affirming the State Bar's threshold entitlement to share California's Eleventh Amendment sovereign immunity to suit in federal court as an "arm-of-the-State," and remanding the remaining issues to the three-judge panel, *inter alia* including whether current rules facially violate the ADA and also the State Bar's Constitutional challenge to part of the ADA, 42 U.S.C. § 12202, through which Congress sought to abrogate State sovereign immunity for ADA claims); *id*, Ninth Circuit No.20-17316, Dkt.83 (certification of the aforementioned constitutional challenge to the U.S. Attorney General); *Pell v. Nunez*, (9th Cir. 2024) 99 F.4th 1128 (holding that where California law withholds original decision-making authority from the State Bar and instead reserves it to this Court, the State Bar's mere *recommendations* regarding whether to admit applicants, whether particular applicants have satisfied all or specific admission requirements, or whether to waive any general admission requirements imposed by statute or this Court – such as timely FYLSX passage for

admission eligibility based on education at unaccredited law schools after the first year – don't constitute justiciable decisions carrying redressable legal effect unless and until adopted by an entity that's legally authorized to have made those decisions and to provide the sought relief – *e.g.*, this Court – and until then federal constitutional right deprivations may not be premised on such unratified advice).

    *Pell*'s holding, combined with the Feldman-Rooker doctrine, effectively renders lower Federal Courts unavailable for certain challenges, just as California law renders lower State Courts unavailable, and thus often renders mandatory judicial review unavailable even where based on federal constitutional violations. <u>Such limitations on judicial review in attorney admissions underscores the need for this Court's increased supervision</u>, despite *Pell*'s holding not clearly applying to State Bar accommodation decisions in the same way that the State Bar's positions on sovereign immunity does if credited.[4]

---

[4] Accommodation decisions implicate both statutory and constitutional rights, and can have consequences beyond their impact on attaining admission, including bodily harm (see fns.19, 21, *infra*), which also reinforces their capacity to deprive applicants of federal rights independent of any impact on this Court's admissions decisions concerning such applicants. They also don't affect *legal eligibility* for admission to practice law or to register/apply for any exam or other admission requirement. Moreover, while subject to this Court's judicial review where that review can be timely requested (and it usually cannot be, due to the State Bar's administrative timelines), accommodation decisions aren't similarly *advisory*, as the State Bar is authorized to grant or deny them in the first

This Court's supervisory duties include, *inter alia*, ensuring the procedural rules that this Court permits the State Bar to enact and enforce are both legally compliant *and* sound policy. Its supervisory duties further include ensuring that the State Bar's positions on civil rights issues aligns with California's public policies as decided by the elected branches of California's government. For example, in *Medical Board of California v. Hason*, (Apr.7, 2003) U.S. S. Ct. No.02-479 (order granting voluntary dismissal of the California Medical Board's appeal), a California professional licensing agency had sought to invalidate 42 U.S.C. § 12202 as <u>unconstitutional</u> as applied to occupational licensing, the exact same challenge the State Bar now presses in *Kohn*, in *Brewer v. State Bar* (Ninth Circuit No.24-2151), and in *Mogan v. State Bar* (Ninth Circuit No.24-3492). However, <u>because California's Governor and Attorney General determined seeking that precedent to be against California's public policy</u>, the California Medical Board was ordered to drop that challenge and dismiss their appeal. *See* https://sfgate.com/bayarea/article/state-drops-disability-case-fearing-weaker-ada-2667259.php). While the State Bar apparently views its unique judicial-branch placement as an "administrative arm" of this Court to exempt them from that policy directive, and it

_____

instance and applies those decisions without first needing to seek approval from this Court, as it must to admit applicants or to wholly waive general admission requirements like those in *Pell*.

certainly impedes the Governor and California Attorney General from exercising the type of oversight they'd performed over the executive-branch medical board in *Hason*, when addressing the State Bar's systemic disregard for disability rights this Court should consider the State Bar's dubious choice to challenge this policy (and, ultimately, Title II's constitutionality), and should potentially issue a similar directive as its executive-branch counterparts to preserve California's public policy interests in the ADA and protect such rights in far broader contexts than this, as depended upon by Respondent and disabled individuals generally.

The State Bar's refusal to recognize any other entity as having such an oversight role over it further underscores the need for this Court to ensure aggrieved applicants have meaningful access to its judicial review of attorney-admission disability rights claims, including by amending Cal. Rules Ct. 9.13(d)'s briefing schedule to the effect that applicants can exhaust administrative remedies with the State Bar and still seek timely relief on testing accommodations denials for the next scheduled exam administration, and to make State Bar accommodation cases mandatory review in this Court (or else endorse the jurisdiction of another, mandatory review Court in such cases).

Great harms arise from the exam's procedural inaccessibility to applicants whose disabilities prevent them from safely attending, and/or accurately demonstrating their competency to practice law through, that

exam under its standard conditions. Similar harms arise where the admission process imposes unduly disproportionate burdens upon disabled applicants compared to nondisabled applicants. Both the current and proposed rules not only constitute discriminatory State occupational restrictions implicating disabled applicants' Constitutionally-protected liberty interest[5] to seek entry into their chosen profession, especially after having invested immense time and resources into their legal education reasonably relying on the existence of a fair and nondiscriminatory licensure process. They also undermine access to justice through California's legal system for underserved California legal services consumers (especially those with disabilities, by underrepresentation of the disabled in the legal profession and the judiciary), who're harmed by the attorney shortage resulting from the improper exclusion of otherwise qualified disabled law graduates just because accommodating their disabilities might cause inconvenience to staff. Disabled attorneys and judges have unique insights and perspectives that should be fairly represented among advocates and the judiciary alike to ensure a fairer legal

---

[5] *Hallinan v. CBE*, (1966) 65 Cal.2d 447, 452 n.3; *Schware v. N.M. Bd. of Bar Exam.*, (1957) 353 U.S. 232, 238; *Gabbert v. Conn*, (9th Cir. 1997) 131 F.3d 793, 800 (reversed on other grounds by *Conn v. Gabbert*, (1999) 526 U.S. 286, 291-92).

system and access to justice. Nor is the unlawful disparate impact[6] under current rules speculative. The State Bar admits that only 5-6% of California attorneys report having a disability, compared to ~23% of California's adult population.[7] Similarly, the Judicial Council of California has noted only about 2% of California judges so report.[8] The proposed rules won't remedy the discriminatory effects of current rules for many reasons explained *post*.

---

[6] *Payan v. L.A. Cmty. College Dist.*, (9th Cir. 2021) 11 F.4th 729, 738 (holding that, beyond proscribing disparate treatment of the disabled and failures to reasonably accommodate disabled individuals, Title II independently proscribes policies that adversely disparately impact the disabled as a class). Policies held to cause unlawful disparate impact under Title II include those that fail to provide "meaningful and equal access" to the disabled, *id*, policies that "tend to screen out" disabled persons, *id*; *Guckenberger v. Boston Univ.*, (D. Mass. 1997) 974 F. Supp. 106, 121, 134-144 (discussing the types of accommodation request/review procedures that are and aren't permissible under the ADA, applying the "tend to screen out" and "unduly burdensome" forms of disparate impact review, and concluding that even medical evaluations "costing hundreds of dollars" are impermissibly burdensome to require). Even facially-neutral policies that unduly burden disabled individuals' equal access to the subject program, service, or activity have been held to cause Title II-violative disparate impact, even when consistently enforced against disabled and nondisabled people alike. *McGary v. Portland*, (9th Cir. 2004) 386 F.3d 1259, 1261-65; *Townsend v. Quasim*, (9th Cir. 2003) 328 F.3d 511, 518 n.2; 28 C.F.R. § 36.309(b)(1) (applied to public entities by 28 C.F.R. Pt.35 App. A, approving the application of Title III testing standards to Title II testing situations). Nor are these anecdotes exhaustive: "A public entity may violate the ADA even if no regulation expressly proscribes its particular conduct." *Cohen v. Culver City*, (9th Cir. 2014) 754 F.3d 690, 695. Indeed, Title II utilizes "broad language" that brings "anything a public entity does" within its scope. *Id.*

[7] *See* https://publications.calbar.ca.gov/2022-diversity-report-card/diversity-2022-california-licensed-attorneys.

[8] *See* https://www.courts.ca.gov/documents/2022-JO-Demographic-Data.pdf.

# SUMMARY OF ARGUMENT

*First*, the proposed rules codify unlawful policies <u>to never offer – or</u> <u>individually consider requests for – certain disfavored accommodations that</u> <u>neither fundamentally alter the exam nor impose undue burden on the State</u> <u>Bar</u>; while for other disfavored accommodations, the proposed rules are implemented by mandatory evaluator forms that misdirect applicants' treating doctors that they must attest to a legally-incorrect "exceptional need" standard in order to recommend those accommodations, to provide the State Bar the pretext of the lack of a treating expert recommendation to deny requests for accommodations those applicants would've been entitled to applying the correct legal standard. Both of these policies facially violate 28 C.F.R. §§ 35.130(b), 35.160(b)(2); *see also Wong v. Regents of Univ. of Cal.*, (9th Cir. 1999) 192 F.3d 807, 818; *Enyart v. National Conference of Bar Examiners*, (9th Cir. 2011) 630 F.3d 1153, 1163.

Further, the exclusion of both sets of these disfavored accommodations from the proposed new summary-matched auto-approval procedures for accommodations previously granted for a permanent disability on a "high stakes" standardized test, as well as the failure to extend those streamlined procedures to *any* accommodations previously granted for college or law school exams – even where the school considered medical documentation – separately and collectively

undermines their intended burden-sparing effect. These exclusions

distinguish the proposed rules from the DFEH/LSAC consent decree and

testing accommodations best practices report that the State Bar purported

the present initiative to have been based on. See *DFEH v. LSAC*, (N.D. Cal.

May 29, 2014) No.12-cv-01830-JCS.

*Second*, Proposed Rules 4.84(E), 4.86(A)-(B), and 4.88(A)-(B)

maintain administrative review timelines for testing accommodation

requests that allocate nearly all of the months between administrations of

the semiannual bar exam to admissions staff to turnaround their side of the

process, to the effect of:

• All but foreclosing immediate repeater disabled applicants from: (a)

administratively appealing denials of expanded accommodations for exam

retakes at all – based on new or worsened impairments or errors in earlier

accommodation decisions, – let alone (b) have time for judicial review, or

to rely on the outcome for timely exam preparation enrollment and

resource-allocation decisions – as required by 28 C.F.R. § 36.309(b)(1)

(applied to public entities by 28 C.F.R. Pt.35 App. A, approving the

application of Title III testing standards to Title II testing situations) – even

if work on the petition is started as soon as the last taken exam concludes,

rather than upon exam results; and

• Immediate repeaters seeking to request such expanded accommodations

typically must invest substantial resources and efforts into obtaining and

preparing the required forms and documentation – including from their doctors – while the results of their last taken exam are still pending, even accepting a non-appealable *initial* decision right before the bar exam; and

• Even disabled applicants who're *not* immediate repeaters unlawfully being put to the Hobbesian choice of either:

(a) Surrendering their right under the ADA to a deadline for requesting accommodations on a particular administration of an exam <u>no earlier than</u> the final deadline for similarly situated (e.g., first-timer or immediate repeater respectively) nondisabled applicants to register for that exam – by filing their complete petition at least six to eight months *early* (both unduly burdensome and risks the disability impairments and accommodation needs becoming obsolete by the time of the exam without an adequate opportunity to amend or supplement);

or (b) suffering similar prejudice as do immediate repeaters, ranging from initial decisions too late to rely on for exam preparation decisions or to timely appeal (for complete submission, including responsive doctors' affidavits, not merely notice an appeal will be taken) and – even if the initial decision *is* made at least that long before the independent cutoff in Proposed Rule 4.88(B) so as not to foreclose the availability of an appeal entirely or further shorten the deadline – at best require the unreasonably short 14-day deadline in

Proposed Rule 4.88(A) to turnaround that complete appeal submission, because it didn't come 30+ days <u>before</u> the timely exam registration deadline, as Proposed Rule 4.88(A) requires to be permitted 30 days to appeal (e.g., to get 30 days the applicant must petition early enough to <u>receive their initial decision</u> by the beginning of March for July and beginning of October for February); *see also* Proposed Rules 4.84(E), 4.86(A)-(B).

Just as accommodations often go to not just disabled applicants' performance on the exam, but also to the health and safety propriety of attending and attempting it at all or burdens involved to physically access it, the procedural flaws (regarding timelines especially) often go to not just the risk of substantively-erroneous decisional outcomes (including by eliminating the opportunity to appeal or undermining its effectiveness), but also to whether even <u>fully granting *all requested accommodations*</u> can provide equal opportunity applying the above timelines. Even the State Bar concedes as much at Petition, p.11.

Where such decisions – even ones adequate to provide equal footing during the exam itself – come less than nine weeks before the exam, disabled applicants are unlawfully subjected to unequal opportunity to "timely register <u>and prepare for</u> the exam," in violation of the ADA, by yet another Hobbesian Choice:

(a) Committing to thousands of dollars and months of full-time study at-risk of wasting them on a potential examination attempt that they may not be properly accommodated for and/or be physically capable of safely attempting, where very little handicap is needed to vitiate any meaningful likelihood of success (as such efforts rarely remain adequately fresh for a retake 5-6+ months later without repetition); or (b) do less than competitive exam preparation methods for an exam that is graded on a curve and often fails the majority of examinees, despite the legal education requirements to sit for the exam, which even when all requested accommodations are eventually granted similarly vitiates any meaningful likelihood of success and certainly vitiates equal opportunity.

For all of these reasons, the timelines provided in the proposed rules unlawfully and facially deprive disabled applicants of equal opportunity to the nondisabled – thus disparately impacting them[9] – and, as applied, frequently lead to decisions that fail to reasonably accommodate disabled individuals and further deprive many disabled applicants of a meaningful (and sometimes any) opportunity to be heard via State Bar administrative-appeal remedies in time for the next exam administration, let alone timely to seek judicial review by this (or any) Court.

---

[9] See fn.6, *supra*; *see also* 28 C.F.R. §§ 35.130(b), 36.309(b)(1)(vi).

This Court should promulgate different rules that, as urged near-unanimously by commenters at each stage of the present initiative, <u>require the State Bar to decide testing accommodation requests within two weeks of submission, and that entitle applicants who submit such requests at least two months prior to the exam to a deadline of at least 30 days from receipt of the decision to turnaround an administrative appeal applicable to that exam administration.</u>[10]

Even when commencing work on their petitions promptly after their prior exam concludes, while results are still pending, for disabled immediate repeater applicants four months prior to the exam is the farthest in advance of the exam feasible to submit their petitions. Therefore, those who submit their petition at least four months prior to the exam should be guaranteed a decision on any timely administrative appeal approximately nine weeks before the start of the exam to facilitate reliance on at least a final administrative decision for exam preparation decisions. Further, this Court should establish procedures that allow for judicial review petitions filed in this Court within two weeks of the final administrative decision (as close as seven weeks to the start of the exam assuming concurrent adoption

---

[10] While deadlines for responsive doctor(s)' affidavits and completed appeal statements should be no sooner than 30 days from the decision for such applicants, a notice of appeal could fairly be required within 14 days.

of the above) to be fully adjudicated to a governing merits decision in time for implementation on that exam.

*Third*, although the State Bar's admission rules provide hearings to applicants at risk of being denied positive moral character determinations or accused of "chapter 6" exam rules violations, both current and proposed rules fail to provide disabled applicants administratively appealing whole or partial requested accommodation denials – whose appeal the State Bar doesn't grant on the papers – with a similar live hearing to permit the applicant to address and rebut the State Bar's reasons for denial in real-time, such that base factual misconceptions can be corrected iteratively and collaboratively timely for the *next* exam cycle.

Rather, current and proposed rules lack provisions for such hearing at any stage of the testing accommodation review process, which frequently results in the need for successive petitions and/or appeals over multiple exam retake cycles to accomplish the required iterations of communication to resolve such disputes effected by exchanging written correspondence 1-2 times per exam cycle at a pace of months per iteration. The resulting delays to licensure often produce irreparable harm to disabled applicants' careers plus years of lost income and professional development.

Given how disproportionately high the magnitude of the protected liberty interest at stake is for access to the legal profession compared to the costs of adequate procedures to the State Bar, coupled with the *per se* ADA

violations such procedural handling constitute yielding *certainty* of a legally-erroneous (*e.g.* ADA-violative) result even where all requested accommodations are granted (*see* fn.9, *supra*), plus undue risk of unlawful accommodation denials, the current and proposed rules also violate such applicants' rights to procedural due process under the U.S. and California Constitutions. *Mathews v. Eldridge*, (1976) 424 U.S. 319 (pronouncing balancing test for determining what procedural safeguards are due under the U.S. Constitution where, as here – fn.5, *supra* – a liberty or property interest is implicated, a floor that Article 1, § 7 of the California Constitution can only exceed).

# FACTUAL BACKGROUND:

The present petition is the culmination of two testing accommodation rules revision initiatives: the present rules revision initiative ("present initiative"), which the State Bar considered from October 2022 to November 2023 and spanned three iterations of the proposal and public comment circulations, and an unsuccessful precursor rules revision initiative ("precursor initiative"), which the State Bar considered from December 2020 to Spring 2021, and was abandoned upon return from its first and only public comment circulation.

While Respondent posits that the mismatch between the interests of admissions staff and disabled applicants reflected in current rules and the

two rule revision initiatives all shared the same animus by the instigating staff – reducing the administrative burden of reviewing accommodation requests and appeals to grant staff more leeway – the primary difference between the two initiatives that allowed the present initiative to succeed in proceeding to a petition to this Court where the precursor initiative had failed was the framing of the proposal's purpose used by the proponent staff members during the State Bar's internal rulemaking process: the precursor initiative had been openly pitched as relieving staff burden to grant them "more breathing room" even at the further expense of disabled applicants, while the present initiative pretextually purported to instead be for the purpose of reform responsive to the growing criticism of current rules from, *inter alia*, disabled applicants and attorneys, disability rights public interest organizations, the U.S. Department of Justice, and the California Legislature, and was pitched by staff with that framing.

Nonetheless, Respondent posits that the present initiative originated with the same intended purpose as the precursor initiative – relieving staff burden through downgrades to already discriminatory rules at the further expense of disabled applicants – until the degree of pushback in public comment moved staff to remove most of the downgrades and evolve the proposal to instead attempt salvaging a public relations victory by speciously claiming to have largely resolved the aforesaid criticisms, without actually rectifying the most egregious of the deficiencies on which

that criticism was based (*e.g.* including in their "reforms" those that might significantly add to their workload). Rather, the proposed rules implement the limited subset of largely beneficial or benign reforms – sprinkled with residual detrimental ones – that conveniently also *reduce* staff workload (e.g., limited summary-match auto-approval program and streamlined documentation requirements), while doing as little of the other reforms urged by commenters as staff felt they could get away with omitting.

The Precursor Initiative

Not satisfied by the extremely mismatched allocation of most of the burden of the State Bar's testing accommodations process to disabled applicants to minimize the burden on staff under current rules, at the December 2020 Committee of Bar Examiners ("CBE") meeting,[11] staff introduced the precursor initiative, which sought to: (1) shorten the already extremely short deadlines disabled applicants have to appeal denials; and (2) to textually – notwithstanding staff disclaiming such intended effect in their presentation to the CBE – impose a seemingly lifetime cap of one appeal per applicant, which seemed to preclude applicants from seeking expanded accommodations even for new circumstances on subsequent

---

[11] *See* https://youtu.be/sZns51V7ZrA?si=TqJHox_m7QXqIEri at 1:22:40 to 1:35:41.

exam administrations. This precursor initiative was spearheaded by then-

examinations program manager Lisa Cummins ("Ms. Cummins").[12]

_____

[12] Ms. Cummins, as examinations program manager, managed the testing accommodations program and was the principal initial decisionmaker and case manager on such petitions, and the person to determine how the requests were framed or summarized and what expert advice was sought. After the precursor initiative Ms. Cummins spearheaded failed, she was transitioned to a newly created position leading "examination development" with narrower job responsibilities not including testing accommodations, but public records indicate she continued to coach her successor – the *public* present initiative proponent, Christina Doell – and repeatedly advised Ms. Doell not to take concerns of disability advocates seriously, sometimes in a mocking tone. Ms. Cummins has made ableist comments at public meetings and in written records, and conveyed other indicia of discriminatory animus. In public email records, she commended the improper suppression of certain critics' "unflattering" public comments from the record. Moreover, she falsely testified that exhibits comprising most, but not all, of the administrative record for the Undersigned's testing accommodations comprised the complete record even though her exhibits omitted key treating doctor affidavits submitted on appeal for the February 2020 exam and for the October 2020 exam. *See Kohn v. State Bar*, (N.D. Cal.) 4:20-cv-04827-PJH, Dkt.21 attachments 1-2. Corroborating these observations, the Undersigned recalls other disabled applicants in 2020 reported that Ms. Cummins and subordinate admissions staff under her supervision stated-against-interest to them, on information and belief: that the ADA is unfair and disabled applicants who can't take and pass the exam under its standard conditions are *per se* unfit to practice law; that by requesting anything different than what was planned standard, disabled applicants were being "ungrateful" to staff for their efforts to make the exam available at all during the pandemic, and that to spare staff undue burden they shouldn't request certain accommodations if they felt they couldn't safely test in-person, or else should "show gratitude" by deferring the exam until the pandemic was over. These statements responded to inquiries about the difficulties with requesting accommodations caused by the unknown standard conditions for the October 2020 exam (until four days after the then-effective deadline to petition for accommodations and four days before the final such deadline), and also about uncertainties regarding the State Bar's plan to require certain disabled applicants (whose accommodations staff found too burdensome to implement remotely) to test in-person (see fn.21, *infra*).

In support of her proposal, Ms. Cummins posited that she and other admissions staff felt even current rules were intolerably burdensome, and so urged the CBE – and then the Board of Trustees ("Board") – to instigate the precursor initiative "to give staff more breathing room." Along with the one appeal-per-applicant cap, Ms. Cummins proposed shortening the deadlines under current rules to appeal denials – the sooner of ten days after the decision or the first business day of the exam month – to make the latter 35 days before the exam, about two weeks sooner. The latter deadline – independent of when the initial decision is rendered, or whether it would foreclose any opportunity to appeal at all – is routinely abused by staff to stall petitions that aren't made months early – yet staff intend to at least partially deny – until right after this cutoff, to prevent such applicants from timely appealing. Likewise, staff frequently abuse the former deadline by rendering initial decisions on petitions for the February exam that *were* made months early on the decision-making staff members' way out the door to their December holidays, such that the ten-day deadline runs over those same holidays and not only limits those applicants to the responsive doctor affidavits accessible in those circumstances, but unduly burdens them with the task of turning around time-intensive appeals in mere days over those holidays. This sometimes forces the applicant to skip annual gatherings with their family and friends to timely appeal, just to facilitate months of turnaround at both ends for staff. Such dynamics were

exacerbated prior to the July 2019 exam rollout of AIMS, when the State Bar only sent decisions by regular mail and simultaneously required receipt of the appeal by that deadline in paper form at the State Bar's offices, eroding the ten-day window to almost nothing from both ends.[13]

The CBE and Board both indulged her, and the precursor initiative was circulated for public comment, where – like the present initiative – it

---

[13] For example, the Undersigned received his decision for the July 2018 exam eight days after it was made, while juggling law school finals and preparations to undergo jaw surgery during winter break, forcing him to pull an all-nighter to turnaround an abridged appeal by the next day and pay for overnight shipping, which time constraints prevented from addressing all denials. Similarly, for the February 2019 exam he needed to skip holiday gatherings to timely turnaround an appeal, without adequate responsive doctor support, and personally deliver it to the State Bar's offices on the deadline. He was again forced to skip holiday gatherings to timely turnaround his appeal for the February 2020 exam, upon which the State Bar explained (for the first time) that it hadn't been considering his PCP's affidavits as they concerned his autism, because that doctor had interpreted, applied, and supplemented – but had not personally performed – the 20+ hours of neuropsychological testing performed by the Undersigned's prior psychologist evaluator, who'd died at the end of 2017 and was unavailable to elaborate. In effect, to continue pursuing expanded accommodations relying on autism-related rationale not already attested by the deceased psychologist, he was subjected to extraordinarily burdensome retesting during 2020 pandemic conditions. The unavailability of any new evaluator during shelter-in-place restrictions prevented him from submitting any reevaluation until 6/4/2020, by which time his initial petition remained pending after 77 days and still over six weeks before the deadline for new petitions, with an addendum to his March 2020 petition addressing changes to accommodation needs for forecasted changes in standard conditions (and Covid). The State Bar responded to this good faith production of that new documentation and submission prior to appeal by insisting any *initial* decision for the then-September 2020 exam couldn't be made until the end of August (it was communicated 8/27/2020, after the deadline to appeal any denials). The 8/27/2020 decision also confirmed the forced, nonstandard in-person testing for the first time.

received overwhelming opposition from the public. While the precursor initiative didn't proceed on return from public comment, staffs' ambition to downgrade the already-discriminatory current rules persisted, so they conceived a multi-stage Trojan Horse strategy for pitching their even more expansive wish list of rule downgrades, veneered with pretextual purposes and led with a sooner-published "policy changes framework" independent of rule amendments. Said framework proposed only superficial and woefully inadequate improvements to documentation requirements and evidentiary standards, to obfuscate the detrimental impact the planned rule amendments themselves would bring. On information and belief to provide cover and pre-framing for this intent, staff held two "stakeholder public input forums" in June and September 2022.

<u>The 2022 "Stakeholder Public Input Forums"</u>

On 6/29/2022 – a date Chief of Programs Donna Hershkowitz requested for the express purpose of timing the input forum (and its implicitly-anticipated unflattering comments) after a Senate Judiciary Committee hearing on the State Bar's "fee bill," – the State Bar received nearly six hours of near-unanimous negative feedback on current rules and related practices, which public comments underscore the systemic extent of the State Bar's abuses. *See* https://youtu.be/vSakD1D4Q6c. Then, at a second such forum held on 9/16/2022, the State Bar solicited feedback on their purported responsive proposal – the non-rule-amendment, alterable-at-

will policy changes "framework" regarding documentation requirements, a streamlined procedure for matched-accommodation requests of particular, limited accommodations if they'd been recently and unanimously approved by all prior "high stakes" standardized test vendors and licensing exam agencies – and while the State Bar received even more negative feedback on current rules and the inadequacies of the scope of improvements proposed, the State Bar didn't receive the type or degree of visceral opposition it would've had it circulated the rule amendments staff would seek to initiate at the October 2022 CBE meeting. See

https://youtu.be/cw5RXgejlTs?si=P8g-Thsx6k05FEPB.

<u>The Present Initiative</u>

Following the precursor initiative's failure and the growing scrutiny over current rules, staff conceived and implemented their new Trojan Horse strategy, cleverly pre-framed as reforms for the benefit of disabled applicants by leading its introduction with the aforementioned stakeholder forums purported to be for guiding remedial reforms responsive to the criticism; and by circulating for feedback at the second such forum only the non-detrimental framework of changeable-at-will, non-admission-rules policy changes to elicit the CBE's perception of less opposition to their proposal from critics – to exploit upon introduction of the actual proposal – compared to what would've been voiced at the September 2022 forum if staff had solicited feedback thereat on the *actual*, detrimental rule

amendments proposal that they planned to introduce at the October 2022 CBE meeting. Indeed, at that meeting, <u>the "policy-change framework" that comments made at the September 2022 forum had been responsive to was merely footnoted as an aside not requiring CBE action</u>.

The result was the first iteration[14] of the present initiative, which aside from including no beneficial amendments to the rules themselves (in contrast to the documentation policies "framework" in this iteration kept separate from the rule amendments) provided the following downgrades from current rules, *inter alia*:

• Applicants who fail to petition at least six months before their targeted exam – inherently including every immediate repeater seeking expanded accommodations – would risk not merely an initial decision too late to appeal or to timely rely on for exam registration and preparation decisions, but <u>rather risk no decision by the next exam administration at all</u>. Rather – without committing to any particular staffing level or pace of review – First-Iteration-Proposed Rule 4.84(B) provided that applicants' petitions would be processed "in the order received," but applicants should apply "at least six months early," as "… it is possible that processing will not be completed… prior to administration of the examination."

---

[14] See present initiative first-iteration proposal (prior to amendment upon public comment) at:
https://board.calbar.ca.gov/Agenda.aspx?id=16831&tid=0&show=100034380.

• Administrative appeals of denials <u>would no longer be considered by the CBE in the event the admissions director denied them</u> and instead stop at director review – as already occurred as a first-stage matter under current rules, and which existing practices already would include the director's review being informed by reconsidered input from the reviewing expert consultant (something staff framed as a "new," "replacement" safeguard).

• Revival of the proposal from the precursor initiative to cap each applicant to one appeal, retaining the same verbiage that had been extensively criticized during the precursor initiative for <u>seeming to apply on a lifetime basis and preclude the availability of any administrative remedies to seek expanded accommodations on subsequent exam administrations</u>, and despite that criticism having provided ample notice that clearer language should be used if that was not the intended effect.

• Where current rules entitle applicants who provide timely notice each exam cycle to automatic renewals of accommodations previously approved by the State Bar on a prior California bar examination for a permanent disability – if approved or renewed within the last five years – the present initiative first iteration limited this entitlement to the scope of like auto-approvals on other "high stakes" exams.

These objections were raised at the October 2022 CBE and November 2022 Board meetings by commenters, including the attorney-

director of a leading disability rights organization, a psychologist and inactive-attorney dual-subject matter expert, and the Undersigned. Commenters further urged those bodies to resist the temptation to tolerate flaws in the proposal merely because the action before them was approval to circulate for public comment that could excavate the contours of the flaws better, and instead rectify both these inappropriate downgrades and its failure to remedy the deficiencies with current rules (all *known* flaws), *before* proceeding to circulate any proposal for public comment, as rectifying the deficiencies with current rules carries great urgency, and State Bar rulemaking procedures dictate that every time substantive changes are made to the proposal, at least one further iteration of public comment and consideration by the CBE and Board must occur before it can be approved for motion to this Court (adding several months to the process each time). Thus, the commenters pressed that changes after return from public comment should be reserved only for improvements (if any) revealed for the first time during public comment.

Both the CBE and Board rejected this advice and advanced the first iteration proposal to its first public comment circulation, which spanned December 2022 to January 2023 and returned overwhelming opposition that cohesively opined the proposal would make already discriminatory rules even worse. *See* fn.1, *supra*. These comments persuaded staff to change plans: abandoning their initial goal of downgrading the rules to

pursue self-serving workload and budgetary concerns, they switched gears to salvaging from their twice-failed attempts a public relations victory instead; namely, to project the specious perception that they meaningfully addressed the criticism about current rules while instead making as little reforms to the most intractable and prejudicial defects as they felt they could get away with omitting, by focusing on comparatively superficial areas where improvements would also reduce staff burden or at least not significantly increase it.

Pursuing this new strategy, staff amended their proposal to remove many – if not all[15] – of the downgrades; "folded" the improvements to documentation requirements and evidentiary standards into the rule-amendments themselves and expanded them (e.g., to remove the recency and unanimity requirements for prior "high stakes" approvals to be eligible for limited summary-match auto-approval procedures); and slightly extended the part of the deadline to appeal denials measured in days from the initial decision –now Proposed Rule 4.88(A)– from 10 days to 14 days.

---

[15] The one-appeal-per-applicant cap, not provided under current rules, was retained, but clarified as applying per exam cycle, not on a lifetime basis. The narrowing of automatic approvals for same-accommodations from prior California bar exam attempts was also carried over into the present initiative's second iteration, and the enumeration into the rules of the existing policy never to offer certain accommodations (and into the evaluator forms the policy to hold a further swath to a higher standard than allowed by *Enyart*) was also retained.

From those changes emerged the present initiative's second iteration, introduced for the March 2023 CBE meeting. While commenters at that meeting and at the May 2023 Board meeting recognized that the proposal now moved in the correct direction, they maintained that it failed to remedy current rules, and renewed the concern that proceeding with known fatal flaws protracted any process that could lead to adequate results despite the severity of the ongoing harms the current rules inflict. Their concerns were again dismissed by both bodies, which approved public comment of this second iteration.

Despite some dubious handling of its collection,[16] public comment on the second iteration spanned from June to July 2023, and yielded a similarly overwhelming, near-unanimous response. *See* fn.1, *supra*. The commenters could scarcely have been more clear or more unified as to what further reforms the present initiative should add.

---

[16] *I.e.*, the updated proposal on return from the second comment period was posted publicly mere hours before the written comment deadline for the meeting at which it would be advanced; the "formsite" vendor supplying the public comment submission portal was inaccessible to some commenters with visual disabilities, and demonstrably failed to record all known submissions; the State Bar delayed production of certain public records requested in May under the CPRA to inform comments for the second comment period until after the 7/31 deadline for that comment period, producing them the day before the August CBE meeting, despite the State Bar's indication that the responsive records were identified and compiled in early June and originally forecasted for production by July 21, seemingly so their contents wouldn't come to the CBE's attention before it acted.

Yet, largely unperturbed – but perhaps holding residual doubts about the optics of wholly rejecting such a comment record – staff nonetheless made two incremental concessions to their proposal, resulting in the present initiative's third – and operative – iteration and triggering the requirement for another public comment period.[17] This time, however, staff concluded Board input and approval was unnecessary for a third comment period, and to ensure the present initiative would be ready for adoption at the November 2023 Board meeting, the CBE authorized a comment period unilaterally – and over considerable commenter objections to the new amendments' sufficiency – during the August 2023 CBE meeting.

This third comment period closed on 10/7/2023, and despite the new and notable addition of compelling comments by Assemblymember Marc Berman,[18] the CBE rejected those and many other comments, and summarily reapproved the third iteration for adoption at its October 2023 meeting. The Board did likewise at its November 2023 meeting, and following a curious seven-month delay seemingly precipitated by this

---

[17] The two concessions in the third iteration consisted of: (1) the set of accommodations eligible for the summary-matched auto-approval process in Proposed Rule 4.83 – and not requiring the "exceptional need" treating expert attestation when requested under ordinary procedures – was expanded from 50% extra time to double time; and (2) the same-accommodations renewal policy under current rules for the State Bar's own prior approvals on earlier bar exams was reinstated.

[18] Albeit, Assemblymember Berman's comment was initially inadvertently omitted due to "staff oversight" before – to staffs' credit – they promptly corrected the record upon the Undersigned raising the omission.

Court's favorable reception to the Undersigned's November 2023 inquiries to it about response procedures, the State Bar filed the instant petition on 6/18/2024 and thus the matter is now properly before this Court.

## THE RESPONDENT:

Respondent is a current J.D. graduate seeking admission to the State Bar, who has been diagnosed with multiple physical and learning disabilities, including, *inter alia*, ADHD, dyslexia, hyper-mobility joint syndrome, progressive osteoarthritis in most joints, peripheral neuropathy, cervical and lumbar impinged nerves, rheumatic conditions, and immunodeficiencies.

Respondent registered for the July 2016, February 2017, February 2018, July 2021, February 2022, July 2022, July 2023, and February 2024 California bar exam administrations. Respondent voluntarily withdrew from the February 2017 exam, and she was effectively involuntarily withdrawn from the July 2021 exam due to the State Bar's operational errors, but she presented to attempt the exam on all other aforementioned administrations to date. Respondent was deterred from seeking important expanded accommodations from the State Bar for many of the above exams as a result of the excessively burdensome documentation requirements and unworkable timelines of current rules, which in July 2023 resulted in her experiencing severe physical pain during the exam from lack of sufficient

accommodations that current rules made procedurally inaccessible to her. While Respondent did petition for expanded accommodations for the February 2024 exam, those expanded requests were substantially denied shortly before that exam without any explanation or any opportunity to appeal, and she was further burdened and prejudiced by those same procedural deficiencies in her pursuit of those expanded accommodations for that exam.

The problems with the State Bar's administration of Respondent's past exams doesn't stop there. Not only was Respondent's July 2021 exam registration effectively cancelled by the State Bar the week before the exam due to no fault of her own, on some of the subsequent exams Respondent's performance was compromised due to other operational errors by the State Bar, especially for the February 2022 exam.

Respondent has also generally been subjected to disparate treatment due to her testing accommodations by State Bar policies to adversely alter standard conditions for disabled applicants granted such accommodations in ways neither necessary to implement those accommodations, nor requested, in order to implement them with less burden. The gravest example may be the forced in-person policy during administrations offered standard remotely – fn.21, *infra*, – but Respondent has suffered through several other examples. While it may be necessary for exam security to prohibit accommodated applicants from leaving a secured area or having

access to study materials during mid-test session breaks resulting from accommodations even though nondisabled applicants may do so during their breaks, the State Bar should have to allow accommodated applicants the same freedom as others at least for breaks that fall between – rather than in the middle of – test sessions, and should ensure in all secured break areas the restrictions and amenities available to disabled applicants during breaks aren't unduly unequal to nondisabled applicants. For example, while standard applicants have been allowed to obtain fresh food or receive food deliveries during breaks, nap, study, socialize, etc., accommodated applicants during all of their breaks are sequestered in uncomfortable rooms where they're prohibited from doing all those same activities regardless of whether they have seen any test questions they could return to after, and are unfairly limited to packed, cold meals that meet strict guidelines. Another example is that accommodated applicants receive their confirmed test center location and test schedule assignments too late to enjoy the group hotel rates the State Bar negotiates for nondisabled applicants, or to make travel arrangements without unequal burdens to nondisabled applicants. The State Bar also sometimes schedules extra time and breaks to lengthen the standard test day instead of being scheduled over proportionately more days, unless an independent accommodation is granted not to. At various times, the State Bar had provided – or proposed providing – fewer and less local test center locations to applicants needing accommodations than to

nondisabled applicants. And while Respondent luckily didn't test at the "Cow Palace" test site in February 2024, where the extreme temperatures that standard applicants so assigned endured was extensively covered by legal news media, Respondent nonetheless observes that State Bar incident report records reflect that other disabled applicants at that site were required to test in even more extreme – and outright dangerous – conditions than reported in the media or than nondisabled applicants did, which for some disabled applicants reportedly led to needing emergency medical care.[19]

Respondent highlights below examples of the issues that have stymied her efforts to pass the bar exam and enter the legal profession:

---

[19] Notably, the Cow Palace section for disabled applicants – unlike the enclosed indoor portions afforded to nondisabled applicants – reportedly had been an open barn frequented by stinging insects and bats, and with hyper-allergenic conditions, and at least one disabled applicant who'd reportedly notified their proctor of being allergic to bee stings was forced to test while repeatedly "buzzed" by bees. Such conditions, coupled with the extreme temperatures, reportedly led to multiple applicants needing emergency hospitalization, further illustrating the need for this Court to supervise the State Bar's policies and practices to protect disabled applicants from disparate treatment and disparate impact independent of the formal accommodation decisions, especially where that disparate treatment amounts to unconstitutional state-created danger. *Murguia v. Langdon*, (9th Cir. 2023) 61 F.4th 1096 (reciting legal standard for "state-created danger" substantive due process claims under the Fourteenth Amendment); fn.5, *supra* (threshold protected liberty interest implicated by State occupational restrictions, such that they must comply with procedural and substantive due process).

<u>July 2021 Exam:</u>

In July 2021, Respondent was forced to withdraw after State Bar staff failed to correctly process her timely requests to renew her accommodations, such that the week before the exam the State Bar repudiated her approved accommodations and informed her that it couldn't correct her assigned test schedule – that didn't conform to her approved accommodations – and consequently couldn't honor those approvals. The State Bar refused to even refund Respondent's exam fees. This catastrophic error was the culmination of staff mistakenly having for months failed to locate or acknowledge approvals contained in Respondent's physical paper file from pre-AIMS exam cycles, closed out various support tickets Respondent initiated in her applicant portal without resolution (in the process having failed to honor promised callbacks or take or return phone calls, and assigned inadequately trained and constantly rotating staff members, to each portal communication iteration).

<u>February 2022 Exam:</u>

Then, for the February 2022 exam, Respondent – who is immunocompromised, and receives a masking accommodation based on that disability – was assigned to a proctor who was displaying obvious Covid symptoms throughout the exam, including a persistent cough and frequent throat-clearing. Not only did the State Bar act recklessly as to Respondent's health and safety by permitting this proctor to proceed with

such symptoms, but particularly in that context – and further aggravated by the proctor constantly standing very close to Respondent and loudly ruffling papers – the situation was very distracting to Respondent, whose disabilities are known to cause increased distractibility in the first place, and which further prejudiced her performance on the February 2022 exam. Moreover, when Respondent first petitioned to renew her previously approved accommodations for the February 2022 exam, staff incorrectly interpreted current rules to claim that Respondent's prior approvals had expired and couldn't be renewed. This required escalation to the admissions director to resolve and resulted in considerable distress, distraction from exam preparation, and the need to maintain preparations at risk during a significant period of uncertainty regarding whether similar errors as those the State Bar had already conceded making for July 2021 were about to recur for February 2022.

July 2023 and February 2024 Exams:

Due to the procedural inaccessibility effected by current rules, for the July 2023 exam Respondent was improperly deterred from requesting that the State Bar provide her with certain equipment at the test site as auxiliary aids for her physical disabilities, which, *inter alia*, cause her severe chronic pain when she is forced to sit for extended periods using a non-ergonomic chair and desk. During the July 2023 exam, the standard workstation provided wasn't ergonomic, which caused Respondent such

pain that worsened as the multi-day exam progressed and eventually needed sedating pain medicine during the exam. Both the direct effects of the pain and sedative side effects of the medicine impaired Respondent's performance on the exam.

While Respondent requested expanded accommodations on the February 2024 exam, those requests were denied insomuch as the State Bar substituted the requested provision of non-portable ergonomic equipment as auxiliary aids for mere permission to bring that equipment if Respondent transported her own furniture to and from the test center on each of the four exam days. The State Bar's decision didn't provide any meaningful explanation for partially denying Respondent's requests, and the phrasing of even the permissions the State Bar did grant was confusing (i.e., the approvals omitted even permission to bring an ergonomic desk, and didn't specify whether Respondent would be permitted access to certain medical aids during her lunch break as the permission implied it would only be allowed in the exam room, not the lunch room). The State Bar issued this decision for the February 2024 exam on 2/9/2024, about two weeks before the start of the exam, and past the deadline for Respondent to appeal the denials. Current rules also forced Respondent to assume excessive burdens to obtain the requisite documentation. The timeline deficiencies and related financial hardships prevented Respondent from accessing the same degree of exam preparation as if she'd had prompt confirmation of equal footing.

# ARGUMENT:

1. <u>The Proposed Rules Codify an Unlawful Policy to Never Offer –
   or Individually Consider Requests for – Certain Disfavored
   Accommodations That Neither Fundamentally Alter the Exam
   nor Impose Undue Burden on the State Bar:</u>

*First*, <u>though *enumerated* in the context of exclusions to a</u>

<u>streamlined automatic matched-grant procedure</u> for accommodations

previously approved to the applicant on certain "high stakes" exams,

Proposed Rule 4.83(A)(6) recognizes for all contexts of accommodation

requests <u>(including those supported by the ordinary treating expert</u>

<u>recommendation and documentation requirements)</u> a policy designating

certain accommodations as <u>"not offered by the State Bar,"</u> without any

requirement that this category of banned accommodations be limited to the

sole permitted exclusions from the mandates of ADA Title II (*see* 28 C.F.R.

§§ 35.160(b), 35.164; Pt.35 App. B at p.707): accommodations that the

State Bar has sufficiently demonstrated by the time of denial to constitute

fundamental alteration (e.g. inherently render the exam incapable of

measuring the intended skills or knowledge) or to impose undue burden

(e.g. impose administrative or financial burdens grossly disproportionate to

the applicants' interest in having an opportunity to qualify to practice

law).[20]

Indeed, two notable examples of accommodations commonly

provided by testing agencies, and yet which the State Bar has designated as

subject to this categorical "not offered" policy – off-clock breaks and

remote testing[21] – cannot plausibly meet the high standards for either such

exception under Title II regulations and case law.

---

[20] *See* 28 C.F.R. Pt.35 App. B at p.707 (noting that "Congress intended the 'undue burden' standard in Title II to be significantly higher than the 'readily achievable' standard in Title III.").

[21] The State Bar's recent policies concerning remote testing were quite invidious and unlawful. For three administrations from October 2020 to July 2021, this Court ordered remote testing as the exam's standard condition, yet the State Bar required disabled applicants with certain accommodations to test in-person instead, even for accommodations that could've been implemented remotely had the State Bar customized its remote-exam security methods, such as by utilizing bodycams, to provide equivalent assurances against cheating for implementing those accommodations remotely (rejected as too burdensome on staff) or tolerated slightly less anti-cheating security ("forced in-person policy"). Despite applicants' screening for candor via the moral character process and longstanding requirements they execute sworn affidavits not to use accommodations to cheat, the State Bar enforced this policy even against applicants whose disabilities made them higher risk for Covid than the general population, and for whom remote testing would've been a reasonable accommodation even had that modality *not* been a *standard condition*. Then, from February 2022 to present, where the State Bar finds conditions to only warrant providing remote testing for some disabled applicants, rather than the nondisabled too, the State Bar has refused to consider providing remote testing to anyone. Instead, it published "FAQs" instructing disabled applicants that no such testing accommodation request would be considered, even as the State Bar consistently maintained that remote testing remained a viable contingency should public health or State Bar budgetary conditions warrant its returned use for the nondisabled too,

Absent a sufficiently founded and articulated written demonstration that either or both of the fundamental alteration and/or undue burden exceptions apply, 28 C.F.R. § 35.164, ADA regulations prohibit the State Bar from refusing individualized consideration of the requested accommodation, 28 C.F.R. § 35.160(b)(2).

Rather, absent that showing, Title II mandates that the State Bar grant all accommodations requested by an otherwise qualified disabled

---

such that it resumes as a standard condition. *See* the judicially noticeable "FAQs" posted on the State Bar's website: https://www.calbar.ca.gov/Portals/0/documents/admissions/Examinations/Feb-2022-Bar-Exam-FAQs.pdf (February 2022 exam); https://www.calbar.ca.gov/Portals/0/documents/admissions/Examinations/July-2022-Bar-Exam-FAQs.pdf (July 2022 exam); https://www.calbar.ca.gov/Portals/0/documents/admissions/Examinations/February-2023-Bar-Exam-FAQs.pdf (February 2023 exam); https://www.calbar.ca.gov/Portals/0/documents/admissions/Examinations/July-2023-Bar-Exam-FAQs.pdf (July 2023 exam); https://www.calbar.ca.gov/Portals/0/documents/admissions/Examinations/February-2024-Bar-Exam-FAQs.pdf (February 2024 exam); https://www.calbar.ca.gov/Portals/0/documents/admissions/Examinations/July-2024-Bar-Exam-FAQs.pdf (July 2024 exam). These concessions demonstrate remote testing isn't a fundamental alteration or undue burden, but that the State Bar has considered only the needs of the nondisabled important enough to allow its use on any scale. Any State Bar argument that the NCBE's alleged MBE-licensing terms justifies this policy – in any event disputed by the NCBE's position that they only prohibit remote-MBE testing as a standard condition, not as an accommodation (and which excuse is inapplicable to the exam's written portion) – fails as a matter of federal law under any version of the facts. *See* 28 C.F.R. § 35.130(b) (prohibiting public entities from forming "contractual or licensing arrangements" with third parties on such terms, and effecting vicarious liability of public entities for such third-party discrimination, which includes policies causing either disparate treatment or disparate impact, not just failures to reasonably accommodate – *see* fn.6, *supra*).

applicant that would "best ensure a level playing field" to nondisabled applicants, which is the threshold legal standard for determining whether requested accommodations are presumed "reasonable" under the ADA. See *Enyart,* 630 F.3d at 1163.

Consequently, at least as applied to ordinary accommodation review, if not eligibility for the matched-grant auto-approval procedure, Proposed Rule 4.83(A)(6)'s provision for a State Bar policy to <u>never consider</u> such requests, and/or not apply this *Enyart* standard to the individual circumstances and medical evidence supplied by the applicant, facially violates Title II. 28 C.F.R. §§ 35.130(b), 35.160(b). [22]

---

[22] When applying *Enyart* and determining whether the disabled applicant's requested accommodations "best ensure a level playing field [to nondisabled applicants]," 28 C.F.R. Pt.36 App. A at 795-96 requires that the State Bar accord substantially greater weight to – and resolve ordinary credibility contests in favor of – factual assertions and recommendations made by treating experts, as compared to those provided by reviewing expert consultants, because the treating experts are the ones who've had the opportunity to personally evaluate the applicant and conduct the requisite assessments for diagnosis and treatment. While the State Bar may not be *bound* by the treating experts' factual premises, an applicant's submission of treating expert opinions and recommendations attested under penalty of perjury (as the State Bar's evaluator forms require) to be what best ensures a level playing field to nondisabled examinees for the applicant, based on physical and/or mental impairment(s) that substantially limit at least one major life activity, <u>is</u> *prima facie* sufficient as a matter of law, and shifts the burden to the State Bar to rebut the resulting *presumption*. Further, giving effect to 28 C.F.R. Pt.36 App. A at 795-96 mandates that the State Bar's burden for attempting to rebut these threshold factual premises requires a far greater showing than the *mere disagreement* of a reviewing expert consultant therewith, especially where the reviewing expert opinion(s) nitpicks the treating expert(s) for *clerical concerns* like minor omissions or

Moreover, given the *Enyart* standard – fn.22, *supra,* – and the State Bar's duty to either satisfy it or only deny accommodation requests recommended by treating experts where it satisfies the requirements of 28 C.F.R. § 35.164 to establish fundamental alteration or undue burden and further demonstrates it granted "the maximum extent possible" that wouldn't constitute such, <u>this Court should also rephrase Proposed Rule 4.82(G), which mistakenly implies a *necessary* condition of denying an accommodation request (review and recommendation by an expert) to also be a *sufficient* condition to do so.</u>

Even if the "not offered" blanket non-consideration policy *were* limited to only an exclusion to the auto-approval procedure, merely constituting accommodations that must be supported by treating expert recommendations and otherwise be reviewed as if the applicant requested them from the State Bar in the first instance (which might render it *lawful*),

_____

ambiguities of little or no relevance, or else clearly relies on incorrect legal standards, instead of founding their conclusions on independent, well-articulated clinical reasoning. Rather, a faithful rendering of the burden the State Bar must satisfy to rely on reviewing consultants to rebut treating experts should require multiple reviewing experts of the same medical specialty as the treating expert to attest <u>no reasonable expert in the field</u> *could* have reached the treating expert(s)' opinion – an analogous standard of review to that appellate courts apply to lower courts' fact-findings – and support that conclusion with credible and compelling reasoning. Otherwise, the State Bar may only deny accommodation requests recommended by treating experts where it satisfies the requirements of 28 C.F.R. § 35.164 to establish fundamental alteration or undue burden, and still must further demonstrate it granted "the maximum extent possible" that wouldn't constitute such. *Id.*

excluding accommodations not demonstrated to constitute fundamental alteration or impose undue burden undermines the burden-sparing policy goals served by offering more streamlined procedures to applicants who request accommodations that other testing entities had previously approved them for a permanent disability, which in any event federal regulations at bottom requires must be given great evidentiary weight. *See* 28 C.F.R. § 36.309(b)(1)(v).

Similarly, Proposed Rule 4.82(D) undermines those same burden-sparing policy goals by excluding accommodations approved in college or law school from the streamlined procedures in Proposed Rule 4.83, even where further limited to approvals for which the school had required – and premised its decision on – medical documentation, rather than applicable for approvals by schools that may not have scrutinized such requests. While some degree of medical documentation requirements may be appropriate where applicants ask the State Bar to grant accommodations in the first instance, applicants who've demonstrably already had to shoulder that burden with their school shouldn't have to expend significant resources obtaining medical documentation customized to the State Bar to seek accommodations they've already fairly relied on getting. This is particularly true where the school's approvals were premised on such documentation, as there excluding that approval from eligibility for matching only serves to permit the State Bar to second guess the school's

credibility determinations, rather than serve any interest in weeding out approvals made by schools that rubberstamp every request without requiring documentation.

Extending the summary-match auto-approval program to college and law school accommodations is important to maintaining documentation requirements that aren't "excessive" within the meaning of 28 C.F.R. § 36.309(b)(1)(iv) and the "tend to screen out" disparate impact standard, or that fail to give the deference to such accommodations history required by 28 C.F.R. § 36.309(b)(1)(v).

The intended burden-sparing effect of Proposed Rule 4.83 is similarly undermined by Proposed Rule 4.85(C), by excluding private rooms and certain quantities of extra time from accommodations eligible for automatic matched approvals even if previously approved on another "high stakes" standardized test or licensing exam. Moreover, for ordinary accommodation review (not just matched approvals), the State Bar's newly revised mandatory evaluator forms to implement that rule – to be completed by treating experts – unlawfully requires the applicants' experts to attest "exceptional need" if they recommend certain accommodations (*e.g.*, private room or extra time exceeding double time).[23]

---

[23] *See* Section 5, Question 5 on the mandatory form at:
https://www.calbar.ca.gov/Portals/0/documents/admissions/Qualified-Professional-Certification-Form.pdf.

<u>This Court shouldn't permit this attempt to circumvent the</u>

<u>controlling *Enyart* standard and elicit a pretext to deny due</u>

<u>accommodations for lack of treating expert recommendation by the State</u>

<u>Bar misdirecting applicants' doctors to refrain from recommending</u>

<u>accommodations they may believe best ensures their patient receives a level</u>

<u>playing field, but not to such an "exceptional" degree of inability to</u>

<u>surmount any handicap</u>, despite the applicant's entitlement to the

accommodation under the correct legal standard.[24] Rather, it should act to

ensure the State Bar applies *Enyart* faithfully to all accommodation

requests it hasn't demonstrated to constitute fundamental alteration or

impose undue burden.

---

[24] Problems with the evaluator forms don't stop there. Even the updated evaluator forms continue to require excessively burdensome evaluations and expert opinion witness-like reporting far beyond traditional "doctor notes" to make procedurally reviewable recommendations, which treating doctors usually aren't familiar with, and often lack the capacity to provide or charge vast sums out of pocket for. The forms also improperly steer the treating doctors' recommendations in more subtle ways, including by striking certain less favored common accommodations (like enlarged font size, important for Respondent's ADHD and dyslexia) from the checkbox suggestion list.

2. <u>The Proposed Rules Maintain Administrative Review Timelines for Testing Accommodation Requests That Facially Deprive Disabled Applicants of Equal Opportunity to the Nondisabled, and As-Applied Further Deprive Many Disabled Applicants of a Meaningful (and sometimes any) Opportunity to be Heard via State Bar Administrative-Appellate Remedies for the Next Exam Administration, Let Alone to Timely Seek Judicial Review by This (or any) Court:</u>

*Second*, the months-long, non-collaborative administrative review timeline – self-servingly created by admissions staff to maintain their desired workload and margin for slippage – consumes nearly all the time between exam administrations and is inherently incapable of providing disabled applicants equal opportunity, both as to its effects on the timely availability and effectiveness of – and burdens imposed to exercise – the administrative appellate remedies and judicial review from any adverse decision, and on the magnitude of financial and scheduling risks the applicant must take to timely enroll in competitive exam prep arrangements to avoid suffering the handicap of unequal opportunities to prepare for the exam even should all requested accommodations eventually be granted.[25]

_____

[25] Equal opportunity to timely participate in traditional bar exam preparation methods is critical to exam accessibility for an exam that is graded on a curve to fail as large a portion of applicants as does the California bar exam, especially with eligibility to take that exam in the first place limited to those who meet the applicable legal education qualifications. In that context, with many such applicants studying full-time for at least nine weeks prior to the exam, frequently with the aid of expensive courses, simulators, and tutoring services, *even an accommodations decision granting all requested accommodations* would leave disabled applicants at a significant handicap if uncertainty over if and

Per *Auer*-deference-entitled guidelines from the U.S. Department of

Justice, the ADA mandates that testing entities set deadlines to request

testing accommodations on a particular exam administration no sooner than

that entity's final deadline for nondisabled applicants to register for that

exam administration, and further mandates that testing entities respond to

_____

when they would receive a safe and accessible attempt at the exam –
providing them the equal footing to demonstrate the tested skills and
knowledge without instead reflecting the effects of their disabilities, to
which they're legally entitled – had persisted until it was too late to rely on
that confirmation for decisions on the extent of the applicant's resources to
commit to such arrangements for the next exam administration. Such
investments comprise vast resources for most new law graduates, and likely
wouldn't remain adequately fresh without repetition for examination
retakes 5-6+ months later. Most disabled applicants can't afford to
repeatedly expend such resources, prior to licensure, which leaves the effect
of the waste this uncertainty causes as nothing less than outright exclusion
from the profession following law school by rendering competitive bar
preparation financially inaccessible for future exam attempts should
multiple iterations of communication with the State Bar be required to
resolve disputes over adequate accommodations before a meaningful
attempt could be made. Even for those who do possess the means and
resiliency to keep persisting, any requirement for disabled applicants to
shoulder that disproportionate burden would still constitute unlawful
disparate impact. Moreover, even putting aside the lost income potential
directly stemming from the delay, the far-reaching adverse effects to future
employment prospects and professional development opportunities of the
resulting gap between law school graduation and licensure is frequently
severe. The Hobbesian choice between committing exam preparation
resources at-risk or else foregoing that extent or type of exam preparation *is*
discriminatory. And, as the U.S. Department of Justice ("DOJ") has opined
in its *Auer*-deference-entitled interpretations of its own regulations –
including 28 C.F.R. §§ 35.130(b), 36.309(b)(1)(vi) – even putting disabled
applicants to that choice destroys equal opportunity, and disparately
impacts them. *See* https://www.ada.gov/resources/testing-accommodations/
(DOJ guidelines); fn.6, *supra*; 42 U.S.C. § 12206(c) (authorizing the DOJ
to promulgate binding regulations and provide technical guidance
interpreting those regulations).

testing accommodation requests <u>quickly enough for disabled examinees</u> to register with their nondisabled peers, respond to any requests for additional information, and complete any review procedures needed, *timely* <u>to take the exam in the same testing cycle, and with equal opportunity to prepare for the exam</u>. That the DOJ guidelines are disclaimed as "nonbinding [beyond the effect of the regulations it interprets]," Petition p.14 fn.5, doesn't diminish how the State Bar and Courts consequently must interpret the regulations that are binding under *Auer* unless the DOJ's interpretation is arbitrary or capricious.[26] *See* fn.25, *supra*; *Kisor v. Wilkie*, (2019) 139 S. Ct. 2400, 2416 (applying *Auer v. Robbins*, (1997) 519 U.S. 452); *Bragdon v. Abbott*, (1998) 524 U.S. 624, 626 (applying *Chevron v. NRDC*, (1984) 467 U.S. 837, 844).

    With about seven weeks between the registration deadline and the bar exam, <u>an initial decision from State Bar staff within two weeks of receipt is necessary to accomplish this</u>. A two-week response window leaves five weeks between the initial decision and the bar exam for applicants who petition on or around the State Bar's deadline, a period which is necessary for the applicant to complete further steps, such as communications with State Bar staff, collection of any additional

---

[26] Even if the ADA didn't require what the DOJ guidelines opine, this Court should still find those guidelines persuasive on their policy merits regarding how it exercises its plenary, quasi-legislative powers over attorney admissions.

information, and the filing and processing of any appeal. Such amendment to Proposed Rules 4.86(A)-(B) – combined with the effect of Proposed Rule 4.88(B) – would facilitate both striking Proposed Rule 4.84(E), and also the feasibility of amending Proposed Rule 4.88(A) to provide for thirty days instead of the insufficient fourteen days, and would thus enable the State Bar to permit at least those disabled applicants who petition at least two months before the start of the exam to receive at least 30 days from the decision to appeal. That difference is critical for disabled applicants to obtain responsive medical documentation from treating doctors and for allowing them a *meaningful* opportunity to be heard in their appeal.

A two-week response window also would allow applicants who request their accommodations early (weeks or months before the registration deadline) an opportunity to exhaust all administrative review options and confirm their final approved accommodations prior to embarking on exam preparation, typically an eight-to-ten-week endeavor, and to do so even if they're an immediate repeater seeking expanded accommodations on the next exam cycle as long as they begin working on their petition as soon as their last taken exam has been administered. This knowledge allows candidates to make informed plans about exam preparation, which might include taking time off from work, hiring a tutor, enrolling in preparation courses, and taking timed practice exams.

Immediate repeaters inherently cannot request accommodations for the next exam early enough to achieve these results under current or proposed rules, and other disabled applicants are disparately impacted and unduly burdened if required to either petition that early or face the nested Hobbesian choice articulated above, especially as doing so would risk their requests becoming obsolete relative to their functional impairments by the time of the exam without adequate time to amend or supplement.

Consequently, current and proposed rules' timelines for the initial processing of testing accommodation requests – apportioning staff nearly all the available time between exam cycles for their side of the process while simultaneously requiring disabled applicants to, at best, scramble in order to assemble in days what staff insist requires months to evaluate – causes extreme undue burden at best, and more typically renders due testing accommodations procedurally inaccessible entirely. It leaves disabled immediate repeater applicants (inherently) without – and first-timer applicants without a meaningful – opportunity to administratively appeal denials, let alone to seek judicial review or know whether they'll be adequately accommodated on the next exam offering available to nondisabled applicants when deciding among exam prep options.

This Court shouldn't allow the State Bar to shift to disabled applicants the burdens of its claimed struggle to sustain the economic feasibility of the bar exam as the method of assessing minimum

competency – at least continuing the generous compensation and absence of overtime expectations to which admissions staff have become accustomed, and without the political scrutiny of increasing exam fees or seeking a governmental subsidy – simply because the disabled are a minority group that can be excluded to evade making those choices with the least pushback; especially as admissions staff handle their end of the process as part of their full-time job duties, whereas disabled applicants face the laborious task of drafting – and seeking from third parties – extensive documentation, and assembling those materials into "complete" petitions (and then, for many, appeals) on their own time and coordinated around all other life responsibilities and typically substantial medical needs. Given the importance of making these timeline reforms urged by public commenters *even if* doing so would require expanding staff capacity, the State Bar's excuse for not tackling the timeline reforms in the present initiative (*see* Petition, pp.30-31) – that it needs to wait until the other reforms in the present initiative have been in effect for at least two exam cycles so that staff can assess how much those changes freed up existing staff capacity to determine what extent the processing timelines can be shortened using some of that offset – is wholesale inapposite. The merits and outright necessity of timelines reforms simply doesn't depend on the results of that experiment, and given the notice-and-comment processes that would require repetition once the information is collected, the proposed

delay would unduly burden the rights of several classes of disabled applicants.[27]

This Court should promulgate different rules that <u>require the State Bar to decide testing accommodation requests within two weeks of submission, and that entitle applicants who submit such requests at least two months prior to the exam to a deadline of at least 30 days from receipt of the decision to turnaround an administrative appeal applicable to that exam administration.</u>[28]

Moreover, disabled applicants who submit their accommodation requests at least four months prior to the exam – the farthest in advance feasible to immediate repeaters even when commencing work on their petitions promptly after their prior exam concludes, while results are still pending – should be guaranteed a decision on any timely administrative appeal at least nine weeks before the start of the exam to facilitate reliance

---

[27] This Court should, however, consider the measures the State Bar may be resorting to in order to manufacture sustainable feasibility for the traditional bar exam as it reviews the recommendations of its Blue-Ribbon Commission, and "portfolio bar exam" proposals. It should similarly consider replacing its incumbent appointees to the State Bar's Board and CBE – with the exceptions of Alex Chan and Ashley Silva-Guzman, among the incumbents on those bodies who *it* appointed – with candidates vetted as appropriately knowledgeable of, and sensitive to, disability rights.

[28] While deadlines for responsive doctor(s)' affidavits and completed appeal statements should be no sooner than 30 days from the decision for such applicants, a notice of appeal could fairly be required within 14 days.

on at least a final administrative decision for exam preparation decisions, and allow time for potential judicial review by this Court or otherwise. Finally, this Court should establish procedures that allow for judicial review petitions filed therein within fifteen days of the final administrative decision to be fully adjudicated in time for implementation on that exam.

3. <u>Current and Proposed Rules Both Fail to Permit Disabled Applicants a Live Hearing on Testing Accommodation Requests or Appeals from Denials Thereof:</u>

Although the State Bar's admission rules provide hearings to applicants at risk of being denied a positive moral character determination or accused of "chapter 6" exam rules violations, both current and proposed rules fail to provide disabled applicants administratively appealing whole or partial denials of their requested testing accommodations – whose appeal the State Bar doesn't grant on the papers – with a similar live hearing at which the applicant and potentially their doctors and/or legal counsel can address the State Bar's reasons for denial and perceived omissions from the applicants' documentary submissions in real-time, so base factual misconceptions can be corrected collaboratively in time for the *next* exam cycle. Rather, current and proposed rules lack provisions for such hearing at *any* stage of the accommodation review process, which frequently results in the need for successive petitions and appeals over multiple exam retake cycles to accomplish the required iterations of communication to resolve such disputes effected by exchanging written correspondence 1-2 times per

exam cycle at a pace of months per iteration. The resulting delays to licensure often produce irreparable harm to disabled applicants' careers plus years of lost income and professional development.

The lack of a formal hearing process is further exacerbated by the similar absence of informal iterative collaboration by admissions staff where they perceive omissions, ambiguities, or other reasons to predicate denials upon. Staff rarely discuss their substantive concerns with applicants by phone – prior to issuing a written decision that often doesn't explain the reasons for denial in enough detail to provide applicants fair notice of any prejudicial errors, and is either subject to the strict time restraints of the appeal process or has already become final for the next exam administration. Even for procedural and technical questions, staff are difficult to reach by phone and – below the examinations program manager and sometimes even if below the admissions director – often lack the information or authority to be able to provide reliable guidance or resolutions.

Disabled applicants have just as strong an interest in the timely and correct resolution of their testing accommodation requests – that similarly control access to the legal profession for them – as other applicants possess in their moral character determinations or Chapter 6 violation allegations. This disparate treatment conveys the appearance that the State Bar sees disabled applicants' inclusion in the legal profession as less worthy of its

resources than nondisabled applicants' inclusion, by offering greater procedural protections to largely-dispositive determinations on access to the profession where those determinations are needed by nondisabled applicants too, but claiming that "resource constraints" require far more abridged procedural protections for similarly controlling determinations on access to the profession for disabled applicants.

Given how disproportionately high the magnitude of the Constitutionally-protected liberty interest at stake – fn.5, *supra* – is for access to the profession compared to the costs of adequate procedures to the State Bar, coupled with the *per se* ADA violations such procedural handling constitute yielding *certainty* of a legally-erroneous (*e.g.* ADA-violative) result even where all requested accommodations are granted (fn.9, *supra*), the current and proposed rules also violate such applicants' procedural due process rights under the U.S. and California Constitutions. *Mathews*, 424 U.S. at 319 (pronouncing balancing test for determining what procedural safeguards are due under the U.S. Constitution where, as here – fn.5, *supra* – a liberty or property interest is implicated, a floor that Cal. Const. Article 1, § 7 can only exceed). Even if this Court didn't find this lack of a hearing or disparate treatment to be unconstitutional or a Title II violation, it should still exercise its plenary powers over attorney admissions to determine the need for such hearing based on the associated

policy concerns, and to facilitate development of the factual record to benefit its potential review of the State Bar's accommodation decisions.

## CONCLUSION AND PRAYER FOR RELIEF

For the above reasons, Respondent respectfully requests that this Court deny the State Bar's petition and instead order different reforms more in line with the proposals submitted to the State Bar in public comment, Respondent's proposed iteration of which is attached hereto, and further amend the briefing schedule in Cal. Rules Ct. 9.13(d) to ensure applicants aren't procedurally foreclosed from obtaining timely relief from this Court for the next exam administration, and also to ensure applicants are afforded mandatory judicial review in at least the first instance (in this Court or by consent to another forum); and to grant such other relief as is just and proper in the circumstances, including potentially the formation of an independent Commission on testing accommodations to do investigative fact-finding, formulate proposed reforms, and make recommendations directly to this Court. Respondent also respectfully requests a waiver or award of any filing fee and costs associated with submitting this responsive brief. Should this Court find any contested assertions of fact herein determinative, but not judicially noticeable, Respondent respectfully

requests that this Court hold an evidentiary hearing or provide her leave to

offer evidence and testimony on such points of disputed material fact.[29]

Dated: June 22, 2024.

Respectfully Submitted,
/s/ Benjamin Kohn
Benjamin Kohn, CA SBN 335723
Email: Benjamin.s.Kohn@gmail.com
Phone: (650) 919-3584
1913 Fordham Way
Mountain View, CA 94040
Attorney for Respondent, Shirleen Claiche.

---

[29] Due to the novel administrative and quasi-legislative function this Court is performing in this matter, Respondent is unclear on the procedures applicable to this Court's fact-finding and the extent to which it wishes to entertain evidence. Respondent therefore supports this response with the accompanying requests for judicial notice and declarations from herself and the Undersigned generally verifying the facts asserted herein. Respondent would produce documentary exhibits from material personal and public records should the Court request such on any particular disputed fact, but doesn't deem it appropriate to do so in this context without leave of the Court, especially without clarity on which factual assertions (if any) Petitioner may dispute. Similarly, Respondent and the Undersigned are both competent and willing to testify as witnesses in this matter should this Court so call upon them.

## Certificate of Word Count Pursuant to Rule 8.204

The text of this brief contains 13,989 words as counted by the

Microsoft Word program used to generate this brief, excluding exempted

portions.

Dated: June 23, 2024

Respectfully Submitted,
/s/ Benjamin Kohn
Benjamin Kohn, CA SBN 335723
Email: Benjamin.s.Kohn@gmail.com
Phone: (650) 919-3584
1913 Fordham Way
Mountain View, CA 94040
Attorney for Respondent, Shirleen Claiche.

**Declaration of Service:**

STATE OF CALIFORNIA, County of Santa Clara:

BENJAMIN KOHN states: I am an attorney duly licensed to practice law in this State, and represent Respondent in this matter. I'm an adult over the age of eighteen years, am not a party to this action, and reside in Santa Clara County, California, at 1913 Fordham Way, Mountain View, CA, 94040.

On December 27, 2023, I received via email from Jean Krasilnikoff, an attorney employed in the State Bar's Office of General Counsel, the State Bar's consent to email service "of any opposition or responsive filing that you make on Ms. Claiche's behalf in relation to the State Bar's petition to the Supreme Court regarding the testing accommodation rules revision."

On June 23, 2024, I emailed a copy of this response brief and all attachments thereto to Ms. Krasilnikoff; and Brady Dewar, Petitioner's counsel of record on the petition; and Jenny Batdorj, the State Bar's senior paralegal who served me with the present petition. I also intend to e-file this document via TrueFiling, and thereby serve all individuals identified on the service list for this matter.

I, Benjamin Kohn, declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

/s/ Benjamin Kohn

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2024, I filed the foregoing Appellant's

Request for Judicial Notice of California State Bar's Proposed Rule Changes with

the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit

by using the appellate CM/ECF system. I certify that all participants in the case are

registered CM/ECF users and that service will be accomplished by the appellate

CM/ECF system.

Date: June 25, 2024,

*/s/ Gregory R. Michael*　　　　　　　
Gregory R. Michael
