No. 20-17316

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

BENJAMIN KOHN,
*Plaintiff and Appellant*,

v.

STATE BAR OF CALIFORNIA, CALIFORNIA COMMITTEE OF BAR
EXAMINERS, and THEIR AGENTS IN THEIR OFFICIAL CAPACITY,
*Defendants and Appellees*.

_____

On Appeal from the Judgment of the United States
District Court for the Northern District of California
The Honorable Phyllis J. Hamilton
District Court Case Number: 4:20-cv-04827-PJH

_____

**PRO BONO**

**APPELLANT'S MOTION FOR JUDICIAL NOTICE
IN SUPPORT OF PETITION FOR REHEARING**

MICHAEL YAMAMOTO LLP
Gregory R. Michael (SBN: 306814)
greg@my.law
Dorothy C. Yamamoto (SBN: 306817)
dorothy@my.law
1400 Shattuck Ave., #412
Berkeley, CA 94709
Phone: 510.296.5600
Fax: 510.296.5600

*Attorneys for Plaintiff-Appellant Benjamin Kohn*

# MOTION FOR JUDICIAL NOTICE

Appellant Benjamin Kohn hereby moves and requests, pursuant to Federal Rule of Evidence 201 and the inherent authority of the Court, that this Court take judicial notice of (i) Appellee State Bar of California's April 8, 2024, supplemental response to Kohn's California Public Record Act request for documents concerning federal funding received by the State Bar's Legal Services Trust Fund Commission (**Exhibit 1**); (ii) a March 29, 2023, State Bar, Rules Committee, Legal Services Trust Fund Commission document regarding an agenda item for an open meeting of the Legal Services Trust Fund Commission (**Exhibit 2**); (iii) a video recording of the December 2, 2022, meeting of the Committee of Bar Examiners (timestamp: 2:49:50–2:54:43)[1] (referred to herein as **Exhibit 3**); and (iv) the State Bar's October 22, 2024, Rule 28(j) filing in the matter of *Brewer v. State Bar of California, et al.*, No. 24-2151, pending before this Court (**Exhibit 4**). Counsel for Appellees have not indicated whether they intend to file an opposition to this Motion but have agreed that Exhibit 4 is relevant to one or more issues pending before this Court.

---

[1] The video is available on YouTube at the following url: https://www.youtube.com/watch?v=DlXA8GIZnGw.

# LEGAL ANALYSIS

Federal Rule of Evidence 201 authorizes this Court to take judicial notice of records and reports of administrative bodies, *Interstate Nat. Gas Co. v. S. California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953), and public court filings, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746, fn.6 (9th Cir. 2006), because such records are "not subject to reasonable dispute" and are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. Rule Evid. 201(b).

**Exhibits 1, 2, & 3**. Judicial notice of these exbibits is appropriate because they constitute public records created by the State Bar and obtained from the State Bar or its YouTube channel. These materials are relevant to Appellant's Petition for Rehearing because they indicate, contrary to the State Bar's CFO's representations to the District Court, 2-ER-97, that the State Bar received or administered grants involving federal funds in 2020, and it received federal financial assistance for in-person swearing-in ceremonies in the form of donated personnel time and venue. Ex. 1, p.2 ("To the extent the Legal Services Trust Fund received federal funding in 2020, the State Bar received a Homeless Prevention 3 grant…[and] also received funds through the California Housing Finance Administration."); Ex. 2, p.14 fn.5 ("Pursuant to the Code of Federal Regulations, Title 2, Part 200, the State Bar is required to assess applicants for federal funding

to aid in selecting grant recipients…."); Ex. 3 (~2:52:00: CBE member Robert

Brody shares that, historically, the central district federal court volunteered time or

donated space in partnership with the State Bar to hold in-person swearing-in

ceremonies for new bar members). Accordingly, this information should be

considered by this Court in reviewing Kohn's rehearing petition regarding the

dismissal with prejudice of his Rehabilitation Act claims under Rule 12(b)(1)

based on the State Bar's purported non-receipt of federal financial assistance. *See*

Petition for Rehearing, fn.1; 45 C.F.R. § 84.10 (defining "Federal financial

assistance" as including "Services of Federal personnel" and "Real and personal

property or any interest in or use of such property….").[2]

**Exhibit 4**. Judicial notice of Exhibit 4 is appropriate because it is a public

court filing made by the State Bar in another matter. This document is relevant to

Kohn's Petition for Rehearing because it contains a representation made by the

State Bar to this Court that the ADA Title II prophylactic abrogation analysis in the

bar exam context (which was not reached in the Panel's decision) constitutes an

---

[2] These materials illustrate that the State Bar did, in fact, receive federal financial assistance in 2020. They are not, however, the exhaustive list of information supporting that assertion. Dkt.81, pp.28-29 (adducing additional facts that may be plead upon remand). Moreover, the State Bar's CPRA responses confirm the possibility that federal employees volunteered for the State Bar in various functions related to the scope of their federal employment duties, but have claimed producing such records would cause undue burden.

"important and recurring question" for which "there is no fact finding to be done," rendering rehearing or rehearing en banc on that issue amply appropriate.

For the foregoing reasons, Appellant respectfully requests that this Court take judicial notice of the attached Exhibits 1 through 4 when considering Appellant's concurrently filed Petition for Rehearing and Rehearing *En Banc*.

Date: November 26, 2024,  Respectfully submitted,

*/s/ Gregory R. Michael*
Gregory R. Michael (SBN: 306814)
Dorothy C. Yamamoto (SBN: 306817)
MICHAEL YAMAMOTO LLP
1400 Shattuck Ave., #412
Berkeley, CA 94709
Phone: 510.296.5600
Fax: 510.296.5600

Attorneys for Plaintiff and Appellant
Benjamin Kohn

**DECLARATION OF BENJAMIN KOHN IN SUPPORT OF
APPELLANT'S MOTION FOR JUDICIAL NOTICE**

I, Benjamin Kohn, declare:

1.      I am Appellant Benjamin Kohn. I make this declaration in support of this motion for judicial notice, which is made in support of a petition for rehearing and rehearing *en banc*.

2.      On January 12, 2024, I requested records from the State Bar of California pursuant to the California Public Records Act, Cal. Gov. Code, § 7920.000, *et seq.*, seeking, *inter alia*, documents concerning funding sources for the State Bar's Legal Services Trust Fund Commission in 2020.

3.      On April 8, 2024, I received an email from the State Bar's Public Records Coordinator attaching a three-page supplemental response to my records requests. A true and correct copy of the State Bar's supplemental response is attached as **Exhibit 1** at the end of this document, following the declaration of my counsel, Gregory Michael.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: November 26, 2024,

                                        */s/ Benjamin Kohn*
                                        Benjamin Kohn

**DECLARATION OF GREGORY R. MICHAEL IN SUPPORT OF APPELLANT'S MOTION FOR JUDICIAL NOTICE**

I, Gregory R. Michael, declare:

1. I am an attorney duly licensed to practice before this Court. On January 25, 2022, this Court issued an Order appointing myself and my law partner, Dorothy Yamamoto, as pro bono counsel for Appellant Benjamin Kohn for this appeal.

2. Attached hereto as **Exhibit 1** is a true and correct copy of the State Bar of California's April 8, 2024, supplemental response to Kohn's California Public Records Act request regarding federal funding received by the State Bar's Legal Services Trust Fund Commission in 2020. Kohn has separately attested to the authenticity of this document in his declaration above. I received authorization to apply Kohn's electronic signature to that declaration.

3. Attached hereto as **Exhibit 2** is a true and correct copy of a State Bar, Rules Committee, Legal Services Trust Fund Commission document dated March 29, 2023, discussing an agenda item for an open meeting of the Rules Committee, Legal Services Trust Fund Commission, with the following subject line description: "Codification of Grant Administration Practices: Review Process for Competitive Discretionary Grants." I obtained this document from the State Bar's website; it was attached to a larger (642 page) document available at the following url:

https://www.calbar.ca.gov/Portals/0/documents/publicComment/2023/Proposed-Amendments-to-State-Bar-Rules-3.670-3.673-3.680-and-Proposed-New-State-Bar-Rule-3.683.pdf.

4. At the time of this declaration, a video recording of the December 2, 2022, meeting of the Committee of Bar Examiners, referred to herein as **Exhibit 3**, is available at the following url:

https://www.youtube.com/watch?v=DlXA8GIZnGw. The relevant portion of this meeting begins at 2:49:50 and continues through 3:00:10, however the portion of most significance (regarding personnel time and venue space donated by a federal district court acting in partnership with the State Bar to carry out in-person swearing-in ceremonies) begins at approximately 2:52:08.

5. Attached hereto as **Exhibit 4** is a true and correct copy of the October 22, 2024, Rule 28(j) filing by the State Bar of California in the matter of *Brewer v. State Bar of California, et al.*, No. 24-2151, pending before this Court.

6. At approximately 9:55a.m. on November 25, 2024, I sent an email to the State Bar's counsel of record, Brady Richard Dewar, Joan Randolph, and Jean Roche Krasilnikoff, informing them of Appellant's intention to request judicial notice of the attached materials (Exhibits 1–4) and asking whether the State Bar would oppose the request. I received an email from Ms. Krasilnikoff that same day, requesting that, "[w]ith the exception of Exhibit 4," I "do not advise the Court

7

that the request for judicial notice is unopposed." Her response did not indicate whether Appellees would file an opposition.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: November 26, 2024,

/s/ Gregory R. Michael
Gregory R. Michael

# Exhibit 1


April 8, 2024

VIA EMAIL

Benjamin Kohn
Benjamin.s.kohn@gmail.com

Dear Benjamin Kohn:

I am writing on behalf of the State Bar of California, in regard to your January 12, 2024, public records Request No. 1 seeking "All funding sources for the State Bar's Legal Services Trust Fund Commission in 2020" as well as your public records request dated February 22, 2024, and received February 23, 2024, seeking "records concerning the revenue sources and all revenue transactions from 2017-2020 for the Justice Gap Fund." The State Bar previously completed its responses to Requests Nos. 2-8.

On January 22, 2024, the State Bar responded that it required a 14-day extension to respond to your requests pursuant to California Government Code section 7922.535(c)(2) and indicated that it would provide a further response on or before February 5, 2024.

On February 5, 2024, the State Bar responded and indicated that it was continuing to determine whether it has any nonexempt records responsive to Request No. 1, and anticipated producing any nonexempt records, if any, on or before February 20, 2024. The State Bar reserved the right to assert any applicable exemptions.

On February 20, 2024, the State Bar responded and stated that it needed a clarification in order to appropriately respond to Request No. 1. The State Bar advised that the Legal Services Trust Fund Commission administers grant programs that fund nonprofit civil legal aid organization. We asked you to please clarify whether you are seeking records regarding the sources for the grant funds distributed by the Legal Services Trust Fund Commission in 2020 or whether you are seeking records pertaining to sources of funding that contributed to the operation of the Legal Services Trust Fund Commission itself in 2020.

On February 20, 2024, you clarified that you are requesting "…the records for all funding received, regardless of whether the purpose of the that funding was to be extended to another party or retained to pay for internal operations."
On February 22, 2024, we responded by providing a report responsive to your clarification entitled "2020 Annual Legal Services Trust Fund Program Report" and asked you to identify

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 South Figueroa Street
Los Angeles, CA 90017

which specific funding sources for the 2020 Legal Services Trust Fund identified on page two of the report you are requesting.

On February 23, 2024, we received your clarification, dated February 22, 2023, after you reviewed the "2020 Annual Legal Services Trust Fund Program Report" in which you narrowed the request and excluded the following three categories: 1) Fee Statement Donations; 2) Investment Income and 3) Tax-Intercept Fund. You agreed to limit the request to records responsive to Trust Account Revenues and Transfers from Justice Gap Fund. You indicated responsive records should include all revenue transactions and the identify of all entities who have paid or donated funding to the Trust/Commission during the relevant 2017-2020 period.

Your February 22, 2024, clarification, received February 23, 2024, also included the following additional request:

> I'd also like to make an additional request for records concerning the revenue sources and all revenue transactions from 2017-2020 for the Justice Gap Fund too.

On March 4, 2024, the State Bar informed you that it was continuing to determine whether it had any nonexempt documents responsive to your January 12, 2024, Request No. 1, as clarified and narrowed in subsequent communications, as well as your new request dated February 22, 2024, and received February 23, 2024. Additional time was needed to respond to these requests and the State Bar anticipates providing a further response on or before March 18, 2024. The State Bar reserved the right to assert all applicable exemptions.

On March 18, 2024, the State Bar informed you that it was still continuing to determine whether it had any nonexempt documents responsive to your January 12, 2024, Request No. 1, as clarified and narrowed in subsequent communications, as well as your request dated February 22, 2024, and received February 23, 2024. Additional time was needed to respond to these requests and the State Bar anticipated providing a further response on or before April 8, 2024. The State Bar reserved the right to assert all applicable exemptions.

**Response to Request No.1**:
To the extent the Legal Services Trust Fund received federal funding in 2020, the State Bar received a Homeless Prevention 3 grant. Those funds are reflected in the Judicial Council contracts that the State Bar previously produced to you on August 25, 2023. The Legal Services Trust Fund also received funds though the California Housing Finance Administration.

With respect to your request for records demonstrating 2020 trust account revenue for the Legal Services Trust Fund, it is not clear if records in the State Bar's possession will provide you any usable information. The State Bar receives "trust account revenue" in the form of interest on IOLTA accounts. Over 140 banks remit those funds on a bi-monthly or quarterly basis, most of which goes through Wells Fargo. Wells Fargo then processes it and sends to the State Bar. Wells Fargo sends at least one bank statement for each business day reflecting total revenue

remitted from the bank. There is a Lockbox that collects all the proceeds, some in the form of electronic remittance, as well as actual live checks. As such, while the State Bar could provide you daily summary reports from Wells Fargo, it will just have sums of money in them without indicating the source of the funds. Please advise if you would like us to produce these daily reports.

The State Bar also maintains an electronic IOLTA portal that financial institutions utilize as a reporting mechanism for individual IOLTA account revenue information. This IOLTA portal contains information pertaining to individual IOLTA accounts such as account balances and other information that is protected and private. The IOLTA portal contains tens of thousands of individual data points. Not only is this portal not a document that the State Bar would be able to produce, but the information contained in the portal is confidential pursuant to California Government Code section 7927.700.

The State Bar has no additional records demonstrating the sources of trust account revenue.

With respect to your request for records demonstrating funding for the Justice Gap Fund (encompassed in your original request as well as your expanded request from 2017-2020), this fund consists of several different revenue streams. Contributions are collected through the license fee statement in which licenses are able to donate by checking a box on the statement, and attorneys and the general public donate directly through a link on the State Bar web site. The State Bar does not have a record it can produce containing this information.

The State Bar also collects random donations to the Justice Gap Fund by way of cash and checks in the mail. The Justice Gap Fund receives funds though cy pres awards. Lastly, the Justice Gap Fund receives thousands of donations throughout the year. These donations are recorded as voluntary fees/donation revenue for the Justice Gap Fund.

For years 2017-2020 there are only papers records maintained in the State Bar offices. It will be challenging to pull those records as staff only goes into the office once per week. Moreover, as described above, the State Bar would be providing copies of largely individual checks and payment. In light of this, please let us know if you want us to pull these records. Once we hear back from you, we will provide you an estimated date of production.

Pursuant to Government Code section 7922.540(b), the name and position of the person responsible for the denial of any of these requests is Teresa Ruano, Program Director, Office of Strategic Communications & Stakeholder Engagement.

Sincerely,

Public Records Coordinator
State Bar of California

# Exhibit 2



**OPEN SESSION**
**AGENDA ITEM**
**4.2 MARCH 2023**
**LEGAL SERVICES TRUST FUND COMMISSION RULES COMMITTEE**

DATE:  **March 29, 2023**

TO:  **Rules Committee, Legal Services Trust Fund Commission**

FROM:  **Amin Al-Sarraf, Working Group Member**
**James Meeker, Working Group Member**
**Eric Isken, Working Group Member**

SUBJECT:  **Codification of Grant Administration Practices: Review Process for Competitive Discretionary Grants**

## EXECUTIVE SUMMARY

The Legal Services Trust Fund Commission Rules Committee (Rules Committee) is working to gather, codify, and revise, as necessary and appropriate, all of the decision points and considerations related to the grant administration process. The purpose of the codification process is to ensure transparency, ease administration, and provide clarity for grantee applicants, the Legal Services Trust Fund Commission (LSTFC), and staff.

This memo presents the recommendations of the Rules Committee's working group for the discretionary grant process on the following issues regarding the review process for competitive discretionary grants:

- Whether a standard scoring rubric approach should be utilized for all future competitive discretionary grants;
- Whether overlapping and scoring categories should be streamlined; and
- Whether a standard application review process should be adopted for all competitive discretionary grants.

The codification topic was first previewed by the Rules Committee on July 13, 2021, and proposed recommendations with legal aid community support were discussed on August 24, 2021. Since this time, the State Bar has administered additional discretionary grants and the

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

46

working group has reconvened to revisit these recommendations. This memo seeks to provide updates regarding those additional grants and revisions to the earlier recommendations.

The working group requested feedback regarding the updated proposed recommendations from the legal aid community through the Legal Aid Association of California (LAAC) on February 15, 2023. There were no comments received and LAAC indicated that it generally supports the review process for discretionary grants, as proposed, as it appears to standardize and streamline in positive ways. The working group will present its recommendations to the full Rules Committee on March 29, 2023.

## BACKGROUND

### CODIFICATION PROCESS

Interest on Lawyers' Trust Accounts (IOLTA) and Equal Access Fund (EAF) grants are awarded to approximately 100 nonprofit legal services organizations each year to provide free civil legal aid in California to indigent persons and support services such as legal training, legal technical assistance, and advocacy support. In 2019, at the recommendation of the Board of Trustees (Board), the LSTFC determined that it would engage in a multi-phase process to review and codify all decision points employed in the grant-making process for IOLTA and EAF grants. The LSTFC established the Rules Committee to lead this effort, with the overall goal to ensure transparency and efficiencies, in support of the IOLTA statute, which is intended is "to expand the availability and improve the quality of existing free legal services in civil matters to indigent persons, and to initiate new programs that will provide free services to them."

The Rules Committee adopted a work plan outlining the codification process and issues to be addressed:

1. Preview issues at Rules Committee meeting for initial feedback
2. Staff and working group draft memo with preliminary recommendations
3. Send memo to LAAC for community feedback
4. Rules Committee meets to discuss and approve recommendations to the LSTFC
5. LSTFC meets to approve Committee's recommendations
6. Send proposed rules to Board for consideration
7. Board circulates proposed rules for 45-day formal comment period
8. Board votes to approve rule change

### GOVERNING AUTHORITIES

Grantee applicants must comply with criteria set forth in Business & Professions Code sections 6210-6228, State Bar Rules and Appendices, Eligibility Guidelines for Legal Services Projects and Support Centers, General Grant Provisions, and Standards for Financial Management Systems and Audits.

Applicants that qualify for IOLTA and EAF funds may also be eligible to apply for competitive discretionary grants administered by the LSTFC. These grants have varying authorities enabling the funding opportunities and different eligibility requirements.

**CODIFICATION ISSUE**

Unlike formula grants where awards are allocated based on a statutory formula, discretionary grant awards are based on recommendations from committees tasked with reviewing the grant applications.

Although most of the currently administered grants are competitive discretionary grants, a majority of total grant funding is distributed through formula grants:

**Table 1.1 State Bar-Administered Grants**
**Formula vs. Discretionary Grants (2021-2023)** [1]

|  | 2021 | | | 2022 | | | 2023 | | |
|---|---|---|---|---|---|---|---|---|---|
|  | Amount Distributed | % of Distribution | # Grants | Amount Distributed | % of Distribution | # of Grants | Amount Distributed | % of Distribution | # of Grants |
| **Formula** | $52.49M | 87% | 3 | $120.51M | 85% | 4 | $109.07M | 75% | 4 |
| **Discretionary** | $7.33M | 13% | 4 | $22.02M | 15% | 8 | $37.16M | 25% | 7 |
| **TOTAL** | $60.32M | 100% | 7 | $142.53M | 100% | 12 | $146.23M | 100% | 11 |

As new funding opportunities become available, based on recent trends, it is anticipated that the State Bar will continue to administer additional competitive discretionary grants.

In 2021, the Rules Committee discussed whether a standardized scoring rubric and streamlined review processes should be adopted to enhance efficiencies with the overall goals of providing transparency to applicants, ensuring equitable review of all competitive discretionary grants, and providing guidance to the committees. Since the August 2021 Rules Committee meeting, scoring rubrics have been consistently used by all committees to review competitive discretionary grant applications. In August and December 2022, staff met with various LSTFC members to gather feedback about their respective review processes and scoring rubrics used to inform the working group's updated recommendations.

Whereas the working group's previous recommendations focused on whether a scoring rubric approach should be utilized at all, because scoring rubrics are now standard for discretionary grant review processes, the working group now offers recommendations regarding streamlined categories and a general scoring rubric framework for future discretionary grants.

---

[1] Formula grants include IOLTA (Interest on Lawyers' Trust Accounts), Equal Access Fund (EAF), Homelessness Prevention (HP) 2 Formula, and HP 3 Formula. Discretionary grants include Partnership Grants, Bank Grants, HP 2 RFP, HP 3 RFP, HP 4 RFP, CalHFA, Consumer Debt, Provisionally Licensed Lawyers (PLL), and Community Assistance, Recovery and Empowerment (CARE) Court Planning grants. The discretionary Law School Summer Fellowship Grants will also be distributed in 2023, but that amount is currently pending and is not included in the total for 2023.

## DISCUSSION

**SCORING RUBRIC FRAMEWORKS**

The purpose of a scoring rubric is to provide transparency for applicants and to aim for equitable and consistent review of applications. Additionally, scoring rubrics enhance applicants' understanding of grant requirements and helps applicants develop applications that are more responsive to criteria deemed important by the relevant committee and requirements sent forth by authorizing statue. Utilizing a scoring rubric also provides a numeric baseline for the committee to compare applications and to help guide committee discussions.

In 2021, the working group also reviewed the discretionary grant frameworks from other large funders supporting legal aid, including the Legal Services Corporation and other government agencies. In 2022 and 2023, the working group reviewed all of the State Bar's current discretionary grant review processes. In instances when a grant was administered over multiple cycles, the working group reviewed only the most recent cycle.

**Bank Grants**

Bank Grants fund projects to provide foreclosure prevention legal assistance and community redevelopment legal assistance. The Bank Grants Committee (BG Committee) is delegated authority for reviewing applications and determining funding recommendations for the LSTFC's approval. To date, the BG Committee has administered five rounds of grants from 2016-2022 and plans to administer a final round of funding in 2024. In the most recent round, 35 organizations applied, and 13 grants were awarded.

Bank Grants were the first of the competitive discretionary grants to use an informal scoring rubric approach for application review. The BG Committee identified five criteria for funding: 1) Demonstrated Need of the Target Population, 2) Impact of Services, 3) Deliverables within Grant Period, 4) Partnerships and Collaboration, 5) Leverage and Sustainability, and 6) Organizational Excellence.

During its most recent application review process in 2019, the BG Committee divided into three review teams[2], each consisting of two committee members and a staff member that reviewed a subset of 11-12 applications. While no formal points-based scoring rubric was implemented at the time, an informal guide based on the criteria above was developed. Using the guide, each working group discussed each proposal's strengths and weaknesses and rated the overall application as High, Medium, or Low. These ratings and potential funding recommendations were discussed at the November 5, 2019, BG Committee meeting (Attachment A).

---

[2]For purposes of this memo, the term "Review Team" is used to describe the team tasked with reviewing and scoring applications. This is inclusive of other terms such as working groups and scoring team.

**Partnership Grants**

Ten percent of the Equal Access Fund is designated for Partnership Grants to fund joint court and legal services provider projects to provide civil legal services to indigent pro per litigants. The Partnership Grants Committee (PG Committee) is delegated authority for reviewing applications and determining funding recommendations for the LSTFC and Judicial Council of California's approval. About 30-35 applications are submitted annually, and in most years, all eligible projects receive funding.

The PG Committee first used a scoring rubric for the 2021 Partnership Grants. In anticipation of the LSTFC's approval of the Rules Committee's recommendations, the PG Committee adopted some of the proposed streamlined category definitions for its 2022 Partnership Grants, PG 2.0 grants, and 2023 Partnership Grants. For the 2024 Partnership Grants, whose grants administration cycle begins in 2023, the PG Committee updated its rubric to clarify expectations for applicants and to update its overall funding priorities. These proposed updates were approved by the LSTFC at its November 16, 2022, meeting and is reflected in the 2024 Request for Proposal (Attachment B).

The 2024 Partnership Grants scoring rubric is divided into four main sections: 1) Eligibility Requirements (not scored), 2) Selection Criteria (85 points), 3) Funding Priorities (15 points), and 4) an optional Innovation category (up to 5 points). Selection Criteria has 6 subcategories of 1) Court Involvement, 2) Project Impact, 3) Administration, 4), Continuity Planning, and 5) Evaluation. Based on responses in the application, each subcategory is rated as Exceeds Expectation, Meets Expectation and Below Expectation. The PG Committee has discretion to award 0-20 points for subcategories 1 and 2 and 0-15 points for subcategories 3 to 6. For Funding Priorities, the PG Committee rates an application as 1, 2 or 3, which is then multiplied by 5. Optional bonus points between 0-5 are awarded for Innovation. Based on this rubric, the highest number of points an applicant can score is 105 points.

While the application review process for Partnership Grants has varied across grant years, it has always involved participation from both committee members and staff. For the 2023 Partnership Grants, the PG Committee and staff each scored the same sample of applications and had an initial calibration session during a publicly noticed meeting. Each PG Committee member then participated in 1-2 subsequent calibration sessions to review a subset of the remaining applications with the staff team.

Whereas each PG Committee member reviewed a subset of 4-6 applications, each of three to five staff members reviewed all applications to ensure continuity during application review. This allowed staff to offer its insight and ensure consistent scoring. During these sessions, rubric scores were compared and calibrated within the review team. When consensus was not reached on a particular category, the review team took the average of all individual scores. If needed, staff followed up with applicants to get additional information. Although some grantees received follow up questions, no scoring adjustments were made. Following the calibration sessions, staff compiled all rubric scores and presented the proposed funding recommendations to the PG Committee. The PG Committee discussed and adjusted the

recommended amounts based on available funding and other relevant factors, including geographic spread and overall impact. All funding recommendations were approved by both the LSTFC and the Judicial Council.

**Homelessness Prevention Grants**

Homelessness Prevention (HP) Grant funds are used to provide homelessness prevention legal services, such as eviction defense, other tenant defense assistance in landlord-tenant rental disputes, or services to prevent foreclosure for homeowners. The Homelessness Prevention Committee (HP Committee) is delegated authority for developing the scoring rubric, reviewing applications and determining funding recommendations for the LSTFC's approval. To date, the HP Committee has administered four cycles of discretionary HP grants – HP 1, HP 2, HP 3, and HP 4; the HP Committee plans to administer an HP 4 Supplemental grant in 2023. Unlike HP 1, HP 2, and HP 3, which were highly competitive, for HP 4, all 46 organizations that applied were fully funded.

The HP Committee has used a scoring rubric since HP 1's administration and has updated it each time a new HP grant was administered to better reflect the grant requirements and priorities. The HP 4 scoring rubric is comprised of six selection criteria categories: 1) Project Impact and Strategies, 2) Administration, 3) Serves Rural Populations, 4) Serves Underserved Populations, 5) Project Evaluation, and 6) Partnerships. Based on responses in the application, each category is rated as Exceeds Expectation, Meets Expectation, Below Expectation, and Not Addressed. The HP Committee had discretion to award 0-25 points for category 1 and 0-15 points for categories 2 to 6. The highest an applicant could score is 100 points.

The application review process for HP has also varied across grant cycles. For HP 4, the HP Committee first discussed a cross-section of four applications at its October 20, 2022, meeting. Following that meeting, the review team comprised of two HP Committee members and three staff members reviewed the rest of the submitted applications. This five-member team arrived at unified scores and funding recommendation amounts for each application. For Project Impact, instead of reaching a consensus, the review team averaged individual scores to determine the category score.

Final scores and recommendations were approved at the LSTFC's December 13, 2022, meeting (Attachment C).

**CalHFA Grants**

CalHFA Grants is a one-time funding opportunity intended to provide legal services related to foreclosure prevention or displacement to eligible households. This includes providing outreach and education on financial assistance and reviewing loan documents and counseling regarding the viability of loan modifications. Due to its condensed grants administration timeline, the LSTFC delegated authority to the LSTFC Executive Committee (ExCom) to review, score and determine funding recommendations for the CalHFA Grants. In total, 22 applications were submitted and only 11 projects were funded for a grant period of July 1, 2022, to June 30, 2025.

In developing a scoring rubric, ExCom leveraged the existing HP 3 scoring rubric and made updates appropriate to its requirements and priorities. CalHFA's scoring rubric is comprised of six categories: 1) Project Impact and Strategies, 2) Administration, 3) Serves Rural Populations, 4) Serves Underserved Populations, 5) Project Evaluation, and 6) Special Considerations. Based on responses in the application, each category is rated as Exceeds Expectation, Meets Expectation, Below Expectation, and Not Addressed. The ExCom had discretion to award 0-30 points for category 1, 0-20 points for category 2, 0-15 points for categories 3 to 5, and 0-5 points for category 6. The highest an applicant could score is 100 points.

The CalHFA review team was comprised of two ExCom Committee members and staff. Because majority of the ExCom members were already on the review team, there was no initial calibration process. During the scoring sessions, the review team compared their individual scores and aimed to for consensus for most rubric categories with the exception of the Special Considerations category, where there was a greater point variance. For this category, the review team opted to take the average of all individual scores. After scoring all applications, the ExCom met on June 13, 2022, and finalized funding recommendation amounts for the selected projects (Attachment D).

**Consumer Debt Grants**

Consumer Debt Grants is a one-time funding opportunity intended to provide civil legal services for indigent persons related to consumer debt matters affected by the COVID-19 pandemic. Because Consumer Debts were similarly situated as the CalHFA grants, the LSTFC delegated authority to the ExCom to review and score applications in lieu of creating a new committee. In total 30 applications were received, and 20 were funded for a grant period of January 1, 2023, and end on December 31, 2025.

In developing a scoring rubric, ExCom leveraged the HP 4 scoring rubric and made necessary updates to scoring values and category definitions. The Consumer Debt scoring rubric is comprised of six categories: 1) Project Impact and Strategies, 2) Administration, 3) Serves Rural Populations, 4) Serves Underserved Populations, 5) Project Evaluation, and 6) Special Considerations. Based on responses in the application, each category is rated as Exceeds Expectation, Meets Expectation, Below Expectation, and Not Addressed. The ExCom had discretion to award 0-25 points for category 1, 0-20 points for category 2, and 0-15 points for categories 3 to 5, and 0-10 points for category 6. Therefore, the highest an applicant could score is 100 points.

The Consumer Debt review team was comprised of two commission members and staff. Unlike other discretionary grants administered, both commission members were new to reviewing discretionary grants. The review team held an initial calibration session to discuss the scoring rubric, scoring guide, and the approach for scoring categories. Subsequent calibration sessions were held to discuss a subset of applications. After the review team compared individual scores, they aimed to reach a consensus for rubric categories with fixed values. For categories allowing for a range of points, if no consensus was reached, the average score was taken.

Scores and funding recommendations were presented and approved at the December 13, 2023, LSTFC meeting (Attachment E).

**Provisionally Licensed Lawyers Grants**

The Provisionally Licensed Lawyers (PLL) grants was a one-time funding opportunity for Qualified Legal Services Providers and Support Centers to hire law school graduates with a temporary provisional licensed issued by the State Bar. In consideration of the limited time available to administer the grant, in lieu of creating a new committee, the LSTFC delegated responsibility to staff to score all applications and delegated authority to ExCom to determine recommendation amounts. Out of 32 applications submitted, 21 were funded for a grant period of January 1, 2021, to June 1, 2022.

The PLL scoring rubric was comprised of five categories: 1) Impact, 2) Support, 3) Safeguards, 4) Recruitment, and 5) Special Consideration. Based on responses in the application, each category is rated as Exceeds Expectation, Meets Expectation, Below Expectation, and Not Addressed. In categories 1-4, Exceeds Expectations was scored 25 points, Meets Expectations at 20 points, Below Expectations at 15 points, and Not Addressed at 0 points. The committee had discretion to award 0-10 points for category 5, Special Considerations. Therefore, the highest an applicant could score is 110 points.

The review team was comprised of three staff members, who reviewed and scored applications during an initial and subsequent calibrations session. Scores and recommendations were presented on at the May 12, 2021, ExCom meeting (Attachment F).

**Law School Fellowship Grants**

The Law School Fellowship Grants is a funding opportunity intended to support the pipeline of legal aid professionals by providing summer fellowships to law students. The LSTFC delegated responsibility to the Law School Fellowship Grant (LSFG) Committee to approve rubric, review applications, and make award recommendations. Unlike the other LSTFC committees, because the LSFG Committee is comprised of members from the LSTFC and the Council on Access and Fairness, which is another State Bar sub-entity, the LSTFC will approve final grant awards. This grant cycle's administration began January 2023 (Attachment G), and grants will be awarded for a grant period of May 15, 2023, to September 30, 2023.

The LSFG Committee used the PLL scoring rubric as a starting point when developing its own scoring rubric. The LSFG scoring rubric is comprised of two main categories: 1) Selection Criteria (up to 88 points) and 2) Funding Preferences (up to 12 points). Selection Criteria is further divided into Impact, Supervision, Support, and Recruitment. Based on responses in the application, each individual category is then rated as Exceeds Expectations, Meets Expectations and Below Expectations, and scored a corresponding multiplier value. Funding Preferences is divided into serves rural populations, serves underserved populations, and serves clients regardless of immigration or citizenship status. The highest an applicant could score is 100 points.

Following the March 10, 2023, application deadline, the LSFG committee will form two review teams comprised of committee members and staff. Consistent with other discretionary grants, the LSFG Committee plans to have an initial calibration session at a publicly noticed meeting before reviewing all applications.

**COMPARISON ACROSS GRANTS**

After reviewing each individual discretionary grants review process, the working group compared various characteristics across the grants.

First, the working group confirmed that all discretionary grants were overseen by LSTFC committees that are delegated responsibility to review, score, and determine funding (with the LSFG Committee making funding recommendations to the LSTFC, rather than final decisions).

**Table 2.1 LSTFC Committees and Grant Purpose**

| Grant | Purpose | Delegated Committee | Number of Committee Members |
|---|---|---|---|
| 2020-2022 Bank Grants | Provide foreclosure prevention legal assistance and community redevelopment legal assistance | LSTFC Bank Grant Committee | 5 |
| 2023 Partnership Grants | Fund joint court and legal services provider projects to provide civil legal services to indigent pro per litigants | LSTFC Partnership Grants Committee | 7 |
| 2023-2024 Homelessness Prevention Grants (HP 4) | Provide homelessness prevention legal services, such as eviction defense, other tenant defense assistance in landlord-tenant rental disputes, or services to prevent foreclosure for homeowners | LSTFC Homelessness Prevention Committee | 5 |
| 2022-2025 CalHFA Foreclosure Grants | Provide legal services to eligible households eligible with matters related to foreclosure prevention or displacement | LSTFC Executive Committee | 3 |
| 2023-2025 Consumer Debt Grants | Provide civil legal services for indigent persons related to consumer debt matters affected by the COVID-19 pandemic. | LSTFC Executive Committee | 3 |
| 2021-2022 Provisionally Licensed Lawyer Grants | Qualified Legal Services Providers and Support Centers to hire law school graduates with a temporary provisional licensed issued by the State Bar | LSTFC Executive Committee | 3 |
| Law School Fellowship Grants | Support the pipeline of legal aid professionals by providing summer fellowships to law students | Law School Fellowship Grants Committee | 4 |

The working group also compared the number of applications received with those funded, as well as the total amount requested with the total funding available.

**Table 2.2 Percentage of Successful Applicants[3]**

| Grant | # Applications Received | # Funded | % of Successful Applicants | Total Amount Requested | Total Funding Available | Total Awarded |
|---|---|---|---|---|---|---|
| 2020-2022 Bank Grants | 35 | 13 | 37% | $27.6M | $6.5M | $6.5M |
| 2023 Partnership Grants | 31 | 30 | 97% | $2.9M | $3.5M | $2.77M |
| 2023-2024 HP 4 Grants | 46 | 46 | 100% | $25.8M | $28.5M | $25.8M |
| 2022-2025 CalHFA Grants | 22 | 11 | 50% | $26.3M | $11.04M | $11.04M |
| 2023-2025 Consumer Debt Grants | 30 | 20 | 67% | $22.5M | $14.25M | $14.25M |
| 2021-2022 PLL | 32 | 20 | 62% | $2.38M | $1.36M | $1.36M |

With the exception of the PLL grants, the LSFTC committees opted to have a review team comprised of both committee members and staff.

**Table 2.3 Review Team Overview**

| Grant | Review Team Description | Initial Calibration |
|---|---|---|
| 2020-2022 Bank Grants | 3 review teams, each comprised of 2 committee members and 1 staff | No |
| 2023 Partnership Grants | 1 review team comprised of 4 staff and alternating committee members | Yes |
| 2023-2024 HP 4 Grants | 1 review team comprised of 2 committee members and 3 staff | Yes |
| 2022-2025 CalHFA Grants | 1 review team comprised of 2 committee members and 2 staff | No |
| 2023-2025 Consumer Debt Grants | 1 review team comprised of 2 committee members and 2 staff | Yes |
| 2021-2022 PLL | 1 review team comprised of 3 staff | Yes |
| Law School Fellowship Grants | 2 review teams, each comprised of 2 committee members and 1 staff | Yes |

Finally, the working group consolidated and compared the selection criteria category from the most recent discretionary grants. This comparison highlighted similarities and differences in subcategories.

---

[3] The Law School Fellowship Grants is in its first administration cycle, so information regarding successful applicants is not yet available.

**Table 2.4 Scoring Rubric Categories and Point Allocations (2020-2024)**

| | Bank (2020) | Partnership (2023) | Homelessness Prevention (2023) | CalHFA (2022) | Consumer Debt (2023) | PLL (2021) | Law School Fellowship (2024) |
|---|---|---|---|---|---|---|---|
| Impact | ✓ | ✓ (20pts) | ✓ (25pts) | ✓ (30pts) | ✓ (25pts) | ✓ (25pts) | ✓ (22pts) |
| Organizational Excellence | ✓ | | | | | | |
| Demonstrated Need | ✓ | | | | | | |
| Leverage and Sustainability | ✓ | | | | | | |
| Diversity of Projects | ✓ | | | | | | |
| Grant Deliverables | ✓ | | | | | | |
| Rural | ✓ | | ✓ (15pts) | | ✓ (15pts) | | ✓ (4pts) |
| Partnerships | ✓ | | ✓ (15pts) | | | | |
| Administration | | ✓ (10pts) | ✓ (15pts) | ✓ (20pts) | ✓ (20pts) | | |
| Evaluation | | ✓ (10pts) | ✓ (15pts) | ✓ (15pts) | ✓ (15pts) | | |
| Court Involvement | | ✓ (20pts) | | | | | |
| Budget | | ✓ (10pts) | | | | | |
| Continuity Planning | | ✓ (10pts) | | | | | |
| Funding Priorities | | ✓ (20pts) | | | | | |
| Innovation (Optional) | | ✓ (10pts) | | | | | |
| Underserved | | | ✓ (15pts) | | ✓ (15pts) | | ✓ (4pts) |
| Outreach Strategy | | | | ✓ (15pts) | | | |
| Socially disadvantaged | | | | ✓ (15pts) | | | |
| Special Considerations | | | | ✓ (5pts) | ✓ (10pts) | ✓ (10pts) | |
| Support | | | | | | ✓ (25pts) | ✓ (22pts) |
| Safeguards | | | | | | ✓ (25pts) | |
| Recruitment | | | | | | ✓ (25pts) | ✓ (22pts) |
| Supervision | | | | | | | ✓ (22pts) |
| Immigration/ Citizenship Status | | | | | | | ✓ (4pts) |
| **TOTAL POINTS** | N/A | 110pts | 100pts | 100pts | 100pts | 110pts | 100pts |

[4] While some category names are different, there may be overlap in the criteria evaluated. The 2024 Partnership Grants are currently being administered and has an updated scoring rubric that omits the budget subcategory and reallocates points across various categories for a total of 105 points.

**CODIFYING OFFICE PRACTICE**

In efforts to provide continuity across grants, the working group recommends that the Rules Committee codify the use of a scoring rubric for all competitive discretionary grants with the suggested selection criteria categories of Impact, Administration, and Evaluation, which have been consistently used in the grants administered to date.

The working group also discussed whether specific points should be allocated to these categories to reinforce consistency. However, without the ability to foresee future grant requirements and acknowledging that fixed point allocations could be unintentionally restrictive, the working group recommends that the committees maintain discretion to recommend point designations, based on specific grant requirements and objectives. The working group further recommends that all rubrics and distribution plans be subject to LSTFC approval before implementation.

The proposed changes would be reflected in State Bar Rule 3.680, under new section, (F):

> Article 3. Applications and distributions
> Rule 3.680 Application for Trust Fund Program grants
>
> To be considered for a Trust Fund Program grant, a qualified legal services project or qualified support center seeking a Trust Fund Program grant must submit a timely and complete application for funding in the manner prescribed by the Commission. The applicant must agree to use any grant in accordance with grant terms and legal requirements.
>
> …
>
> > (F) Qualified legal services projects and support centers may apply for competitive discretionary grants if they meet threshold eligibility requirements for those funding opportunities. A scoring rubric will be utilized to aid in the review and evaluation of competitive discretionary grant applications. The scoring rubric may consist of general selection criteria such as Impact, Administration, and Evaluation as well as other grant-specific considerations. Selection criteria, point allocations, and implementation of the scoring rubric will be at the discretion of the Legal Services Trust Fund Commission.

**RECOMMENDED SCORING RUBRIC FRAMEWORK**

The working group further offers a general scoring rubric framework for future discretionary grants, based on what was successful in past grant administrations. This framework is only recommended, and committees would maintain discretion when developing their own framework.

**Utilize streamlined category definitions**

First, the working group offers streamlined category definitions for Impact, Administration, and Evaluation, in an effort to provide continuity for applicants and commissioners. These definitions would be subject to modification by the respective committees as needed in consideration of volume of applications submitted, timeline limitations, grant requirements, and other factors.

- **Impact**: A successful proposal will clearly describe the needs of the targeted population and how anticipated outcomes of the proposed activity(ies) will have a meaningful impact on this population. Outcomes may include the number of people served, nature of the impact, and other project deliverables that will be achieved with this grant funding during the grant period.

- **Administration:** A successful proposal will demonstrate the ability and capacity to implement and manage the proposed activity(ies). Strong administration includes adequate staffing, leadership, and oversight of project monitoring, outreach, and resource development. An applicant's historical demonstration of its ability to meet goals from prior grants and timely reporting of results/outcomes will also be considered under this category.

- **Evaluation**: A successful proposal will incorporate meaningful evaluation plans and metrics that effectively demonstrate whether and how the project's planned goals are being achieved. This may include a clear statement of the project goals, strategies to be used to achieve those goals, evaluation methods to be used to make any mid-course adjustments to the delivery model, and evaluation methods to gauge the success of the project. Returning organizations applying for the same funding opportunity will also need to address prior evaluation outcomes and metrics.

**Create a review team comprised of committee and staff**

Since LSTFC committees are typically delegated authority to make funding recommendations for discretionary grants, it is important to have committee members involved in the review process. Staff also offers valuable perspective based on their knowledge and experience working with the grantees. Therefore, the working group recommends that a review team be comprised of both committee members and staff to offer a balance of perspectives and experiences. If appropriate, the working group also recommends that training and resources be available to help new review team members understand the discretionary grants review process.

**Implement a calibration structure to guide scoring process**

Based on the most recent discretionary grants administered, the working group recognizes the value in the calibration process as it offers an opportunity for the committee to discuss the scoring rubric in the context of the applications submitted. Calibration helps align expectations

and interpretations of rubric categories within the committee. Subsequent calibration sessions further refine this scoring process since a subset of applications are discussed in-depth. By the time all final scores are presented after a calibration process, there generally are few to no questions regarding the integrity of the scoring process from either committee members or applicants, which has the added benefit of a more efficient review process.

**Refine the scoring rubric to best adapt to the funding landscape for continuing grants**

If a funding opportunity is ongoing, it is important that the scoring rubric is refined to best adapt to the current funding landscape and the competitiveness of a grant. The committee may want to consider reviewing its current categories, definitions, and point allocations to confirm that the successful applicants and projects align with the intent of funding opportunity. The committees should also discuss and be clear on the parameters for application review, such as whether it will take additional information into consideration, such as results from the Grants Management Assessment[5] or a grantee's previously submitted evaluation reports.

**Other considerations**

In efforts to ensure equitable funding of grant awards, the working group also recommends that committees should consider evaluating the diversity of applicants as part of the review process, including applicant's geographical distribution throughout California, experience level, and size.

## WORKING GROUP RECOMMENDATIONS

Should the Rules Committee concur in the proposed action, passage of the following resolution is recommended:

**RESOLVED**, that the Rules Committee of the Legal Services Trust Fund Commission approves the following working group recommendation related to the competitive discretionary grant review process:

> Adopt new State Bar Rule 3.680(E) as set forth in Attachment H to codify the use of a scoring rubric to aid in the review and evaluation of competitive discretionary grant applications. The scoring rubric may consist of general selection criteria such as Impact, Administration, and Evaluation as well as other grant-specific considerations. Selection criteria, point allocations, and implementation of the scoring rubric will be at the discretion of the Legal Services Trust Fund Commission.

Once the Rules Committee makes its final recommendations, these recommendations will be reviewed subsequently by both the LSTFC and, ultimately, the State Bar's Board of Trustees.

---

[5] Pursuant to the Code of Federal Regulations, Title 2, Part 200, the State Bar is required to assess applicants for federal funding to aid in selecting grant recipients most likely to be successful in meeting the goals of the grant opportunity. Currently, HP 3 Formula, HP 3 RFP, and CalHFA are subject to this requirement.

# Exhibit 3

(Video Recording of December 2, 2022, Meeting of Committee of Bar
Examiners available at:
https://www.youtube.com/watch?v=DlXA8GIZnGw.)

# Exhibit 4



**OFFICE OF GENERAL COUNSEL**

845 South Figueroa Street, Los Angeles, CA 90017

jennifer.ko@calbar.ca.gov
(213) 765-1269

October 22, 2024

**Via ACMS**

Molly Dwyer, Clerk of Court
Office of the Clerk
United States Court of Appeals for the Ninth Circuit
P.O. Box 193939
San Francisco, CA 94119-3939

**RE:** ***Brewer v. State Bar of California, et al.*, Case No. 24-2151**
**Defendant-Appellant State Bar of California's Rule 28(j)**
**Letter Regarding Supplemental Authority**

Dear Ms. Dwyer:

The State Bar of California ("State Bar") submits this letter to

direct the Court to the October 21, 2024, published decision of this

Court in *Kohn v. State Bar of California, et al.*, Case No. 20-17316

(attached hereto as **Exhibit 1**).

In *Kohn*—a related case raising claims under Title II of the

Americans with Disabilities Act ("ADA") against the State Bar in the

professional licensing context—this Court held that under *United States*

*v. Georgia*, 546 U.S. 151 (2006), courts must analyze whether Title II

validly abrogates state sovereign immunity as to the specific class of

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 South Figueroa Street
Los Angeles, CA 90017

*Brewer v. State Bar of California, et al.*, Case No. 24-2151
State Bar's Rule 28(j) Letter
Page 2

conduct at issue on a claim-by-claim basis. Slip Op. at 5–10. In so ruling, this Court held that *Georgia* is intervening Supreme Court precedent that overrules prior Circuit precedent holding that Title II categorically abrogates state sovereign immunity. *Id.*

*Kohn* squarely addressed the first of the two questions raised in this case—namely, whether prior Circuit law is overruled by *Georgia*. *See* Dkt. 13.1 at 1–5, 15–51; Dkt. 31.1 at 2–4, 7–33. *Kohn* definitively resolves that courts are required to undertake the three-step, claim-by-claim inquiry set forth in *Georgia*. As argued by the State Bar in its briefing here, the district court erred by relying on outdated Circuit authority rather than following *Georgia* and conducting a claim-by-claim analysis. *See* Dkt. 13.1 at 21–32; Dkt. 31.1 at 7–16.

As to the second question at issue in this case—whether, when applying the *Georgia* inquiry, Title II validly abrogates the State Bar's Eleventh Amendment immunity with respect to testing accommodations—this Court should proceed to address this question. As illustrated by *Kohn* and this case, challenges to accommodations in the professional licensing context is a frequent subject of litigation. *See* Dkt. 13.1 at 31–32; Dkt. 31.1 at 31–32. Because there is no fact finding

*Brewer v. State Bar of California, et al.*, Case No. 24-2151
State Bar's Rule 28(j) Letter
Page 3

to be done to apply *Georgia*'s claim-by-claim inquiry, this Court should

reach the merits and provide much needed guidance to district courts

on this important and recurring question.

Sincerely,

*/s/ Jennifer Ko*

Jennifer Ko
Assistant General Counsel
The State Bar of California

Attachment

# EXHIBIT 1

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| BENJAMIN KOHN, | No. 20-17316 |
| *Plaintiff-Appellant,* | D.C. No. 4:20-cv-04827-PJH |
| v. | |
| STATE BAR OF CALIFORNIA; CALIFORNIA COMMITTEE OF BAR EXAMINERS, and Their Agents in Their Official Capacity, | OPINION |
| *Defendants-Appellees.* | |

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Submitted October 15, 2024[*]
San Francisco, California

Filed October 21, 2024

Before: Kim McLane Wardlaw, Consuelo M. Callahan,
and Jacqueline H. Nguyen, Circuit Judges

Opinion by Judge Wardlaw

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

2          KOHN V. STATE BAR OF CALIFORNIA

**SUMMARY**[\*\*]

**Eleventh Amendment Immunity**

On remand from the en banc court, the panel vacated the district court's dismissal of Benjamin Kohn's claims that the State Bar of California's refusal to provide him certain test-taking accommodations violated Title II of the Americans with Disabilities Act, and remanded to the district court for further proceedings.

The district court dismissed Kohn's Title II claims on Eleventh Amendment immunity grounds. The en banc court reaffirmed that the California State Bar enjoys Eleventh Amendment immunity in federal court. On remand to the three-judge panel, Kohn asserted that under *Phiffer v. Columbia River Correctional Institute*, 384 F.3d 791 (9th Cir. 2004), Title II validly abrogates the State Bar's Eleventh Amendment immunity as to his claims. The panel held that intervening Supreme Court precedent in *United States v. Georgia*, 546 U.S. 151 (2006), overruled *Phiffer* and requires courts to analyze on a claim-by-claim basis whether Title II validly abrogates state sovereign immunity as to the specific class of conduct at issue. The panel concluded that the district court properly recognized the need to engage in the case-specific analysis outlined by *Georgia*, but the district court misapplied the *Georgia* inquiry. The panel therefore vacated the district court's abrogation analysis and remanded for further consideration.

---

[\*\*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

KOHN V. STATE BAR OF CALIFORNIA                    3

The panel addressed additional issues in a concurrently filed memorandum disposition.

---

**COUNSEL**

Gregory R. Michael (argued) and Dorothy C. Yamamoto, Michael Yamamoto LLP, Berkeley, California, for Plaintiff-Appellant.

Brady R. Dewar (argued), Rita K. Himes, Robert G. Retana, Ellin Davtyan, and Jean R. Krasilnikoff, Office of the General Counsel, State Bar of California, San Francisco, California; Kirsten Galler, Office of the General Counsel, State Bar of California, Los Angeles, California; for Defendants-Appellees.

Jinny Kim and Claudia Center, Disability Rights Advocates, Berkeley, California; Laura A. Scalia, Legal Aid at Work, San Francisco; for Amici Curiae Disability Rights Education and Defense Fund, Legal Aid at Work, et al..

Julian Sarkar, SarkarLaw, San Francsico, California, for Amicus Curiae SarkarLaw.

## OPINION

WARDLAW, Circuit Judge:

Benjamin Kohn, a licensed attorney, brings a civil rights lawsuit against the State Bar of California contending that the State Bar's refusal to provide him certain test-taking accommodations violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; sections of the California Government Code, Cal. Gov't Code §§ 11135 et seq., 12944 et seq.; and California's Unruh Civil Rights Act, Cal. Civ. Code § 51(f).[1]  The district court dismissed Kohn's Title II claims on Eleventh Amendment immunity grounds.  *See Kohn v. State Bar of California*, 497 F. Supp. 3d 526 (N.D. Cal. 2020) ("*Kohn I*").  On appeal, Kohn initially contended that the State Bar is not an "arm of the state," and thus can be sued without restriction.  We took up this question en banc, and reaffirmed that the California State Bar enjoys Eleventh Amendment immunity in federal court.  *See Kohn v. State Bar of California*, 87 F.4th 1021, 1037–38 (9th Cir. 2023) (en banc) ("*Kohn II*").

The en banc court remanded the remaining questions presented in Kohn's appeal to our three-judge panel.  *See id.* at 1038.  We now consider Kohn's alternative contention that Title II of the ADA validly abrogates the State Bar's Eleventh Amendment immunity as to his claims.  Relying on our decision in *Phiffer v. Columbia River Correctional Institute*, 384 F.3d 791 (9th Cir. 2004), Kohn asserts that

---

[1] We resolve Kohn's Title II claims here and address the remaining issues presented in Kohn's appeal in a concurrently filed memorandum disposition.

Case: 24-2151, 10/22/2024, DktEntry: 38.1, Page 9 of 18
Case: 20-17316, 10/21/2024, ID: 12911619, DktEntry: 144-1, Page 5 of 13

KOHN V. STATE BAR OF CALIFORNIA                5

Title II validly abrogates the State Bar's immunity. However, we hold that the Supreme Court's decision in *United States v. Georgia*, 546 U.S. 151 (2006), abrogated *Phiffer* and requires courts to analyze on a claim-by-claim basis whether Title II validly abrogates state sovereign immunity as to the specific class of conduct at issue. We have jurisdiction under 28 U.S.C. § 1291, and for the reasons explained below, we vacate the dismissal of Kohn's Title II claims and remand for further proceedings.

## I.  STANDARD OF REVIEW

"We review de novo a dismissal on the basis of sovereign immunity." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016).

## II.  DISCUSSION

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  "Longstanding Supreme Court precedent has interpreted this Amendment to immunize states from suit in federal court by citizens and noncitizens alike." *Kohn II*, 87 F.4th at 1025.  However, Congress can abrogate this immunity if it (1) "makes its intention to abrogate unmistakably clear in the language of the statute" and (2) "acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003).  Kohn contends that Title II of the ADA meets these criteria.

Title II meets the first criterion.  Title II provides that "no qualified individual with a disability shall, by reason of such

6          KOHN V. STATE BAR OF CALIFORNIA

disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In enacting the statute, Congress unequivocally expressed an intent to abrogate state sovereign immunity. *See* 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."); *Georgia*, 546 U.S. at 154 (describing § 12202 as an "unequivocal expression of Congress's intent to abrogate state sovereign immunity").

The second, more complex inquiry is whether Congress enacted Title II "pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." *Hibbs*, 538 U.S. at 726. Congress may abrogate state sovereign immunity for both "actual violations of the rights guaranteed" in the Fourteenth Amendment as well as for "'a somewhat broader swath of conduct,' including acts constitutional in themselves" in order to deter unconstitutional conduct. *Allen v. Cooper*, 589 U.S. 248, 260 (2020) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 81 (2000)). For legislation that targets this "broader swath of conduct" to fall within Congress's Section 5 authority "'[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Id.* at 260–61 (quoting *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997)).

## A.

Citing our decision in *Phiffer*, Kohn argues that "this Court has held that Congress validly abrogated state sovereign immunity as to claims arising properly under Title

II." In *Phiffer*, we considered Title II as a whole and held that our precedent "clearly commands the conclusion that the State is not entitled to Eleventh Amendment immunity under Title II of the ADA." 384 F.3d at 792. Indeed, we had previously and repeatedly held that Title II "was a congruent and proportional exercise of Congress's enforcement powers under § 5 of the Fourteenth Amendment that abrogated Eleventh Amendment immunity." *Dare v. California*, 191 F.3d 1167, 1175 (9th Cir. 1999); *Clark v. State of Cal.*, 123 F.3d 1267, 1269 (9th Cir. 1997) (describing Title II's abrogation of state sovereign immunity as "valid exercises of Congress's power under Section 5 of the Fourteenth Amendment").

In *Phiffer*, we also observed that our court had repeatedly rejected the argument that "the Supreme Court's decision in *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), requires us to revisit our precedent" holding that Title II validly abrogates state sovereign immunity. 384 F.3d at 792 (citing *Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1171, *reh'g en banc denied* 294 F.3d 1166 (9th Cir. 2002), *and cert. dismissed* 538 U.S. 958 (2003); *Thomas v. Nakatani*, 309 F.3d 1203, 1209 (9th Cir. 2002); *Lovell v. Chandler*, 303 F.3d 1039, 1050–51 (9th Cir. 2002)). *Garrett* held that the Eleventh Amendment barred claims for money damages against the states under Title I of the ADA, which addresses disability discrimination in employment. *See* 531 U.S. at 368 (explaining that "Congress' § 5 authority is appropriately exercised only in response to state transgressions" and finding that "[t]he legislative record of the ADA . . . fails to show that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled."). Because "[t]he *Garrett* Court expressly declined to decide whether

Congress validly abrogated state sovereign immunity in enacting Title II of the ADA," however, we held in *Hason* that "*Garrett* does not overrule either *Clark* or *Dare*." 279 F.3d at 1171. *See also Thomas*, 309 F.3d at 1209 (declining to revisit *Hason*); *Lovell*, 303 F.3d at 1050 (reiterating that "*Clark* and *Dare* are still good law" after *Garrett*).

After *Phiffer*, the Supreme Court decided *Georgia*, a case which raised the question of "whether a disabled inmate in a state prison may sue the State for money damages under Title II." 546 U.S. at 153. The Eleventh Circuit had dismissed the inmate's claims on Eleventh Amendment immunity grounds. *See id.* at 156. After granting certiorari to determine "whether Title II of the ADA validly abrogates state sovereign immunity with respect to the claims at issue," *id.*, the Supreme Court held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159. Finding that "it is not clear precisely what conduct [the inmate] intended to allege in support of his Title II claims," and "it is likewise unclear to what extent the conduct underlying [his] constitutional claims also violated Title II," the Court declined to resolve "the scope of Congress's 'prophylactic' enforcement powers under § 5 of the Fourteenth Amendment." *Id.* at 158–59. The Court observed that some of the allegations at issue were "quite far afield from actual constitutional violations . . . or even Title II violations," and remanded to permit the plaintiff to amend the complaint. *Id.* at 159. The Court instructed that "[o]nce [the plaintiff's] complaint is amended, the lower courts will

KOHN V. STATE BAR OF CALIFORNIA                    9

be best situated to determine in the first instance, on a claim-by-claim basis," the following:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.*

Many of our sister circuits have read *Georgia* to establish a blueprint for the abrogation analysis: a three-part inquiry to be undertaken with respect to a specific "class of conduct" on a "claim-by-claim" basis. *See, e.g., Buchanan v. Maine*, 469 F.3d 158, 172 (1st Cir. 2006); *T.W. v. New York State Bd. of L. Examiners*, No. 22-1661, 2024 WL 3463499 at *5–6 (2d Cir. July 19, 2024); *Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263, 270 (3d Cir. 2020); *Block v. Texas Bd. of L. Examiners*, 952 F.3d 613, 617–18 (5th Cir. 2020); *Babcock v. Michigan*, 812 F.3d 531, 534–35 (6th Cir. 2016); *Klingler v. Dir., Dep't of Revenue, State of Mo.*, 455 F.3d 888, 893 (8th Cir. 2006); *Brooks v. Colorado Dep't of Corr.*, 12 F.4th 1160, 1168 (10th Cir. 2021); *Miller v. King*, 449 F.3d 1149, 1150–51 (11th Cir. 2006). This is in significant tension with our blanket holding in *Phiffer* that Title II validly abrogates state sovereign immunity in all of its applications.

Some district courts in our circuit have, in the wake of *Georgia*, "engaged in a case-by-case analysis to determine

whether a fundamental right is at issue and whether Title II validly abrogates state sovereign immunity." *Kohn I*, 497 F. Supp. 3d at 535 (collecting cases). Others, however, continue to apply *Phiffer* for the proposition that "[i]n the Ninth Circuit, state agencies are not entitled to Eleventh Amendment sovereign immunity from suit under Title II of the ADA." *See, e.g., Ellington v. California Dep't of Corr. & Reh.*, No. 20-cv-9116, 2021 WL 8875769 at \*7 n.4 (C.D. Cal. Oct. 6, 2021). We have never explicitly addressed the status of *Phiffer* post-*Georgia*, though some members of our court have questioned *Phiffer*'s categorical holding both before and after *Georgia* was decided. *See Phiffer*, 384 F.3d at 793 (O'Scannlain, J., concurring) (reading *Tennessee v. Lane*, 541 U.S. 509 (2004) to require a "nuanced, case-by-case analysis"); *J.C. ex rel. W.P. v. Cambrian Sch. Dist.*, 648 F. App'x 652, 655 (9th Cir. 2016) (Wardlaw, J., concurring in part) (explaining that while "the ADA claim is not barred by Eleventh Amendment immunity under existing law," she would "remand for further consideration" in light of *Georgia*).

In our court, a three-judge panel may recognize prior precedent as overruled only when an intervening precedent of higher authority is "clearly irreconcilable" with the precedent. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). We find that *Georgia*'s claim-by-claim analysis is "clearly irreconcilable" with *Phiffer*'s categorical holding. We therefore conclude that *Phiffer* has been overruled by intervening Supreme Court precedent. Going forward, district courts must undertake the analysis set forth in *Georgia* to determine whether, in enacting Title II, Congress validly abrogated state sovereign immunity as to the specific class of conduct at issue.

**B.**

Here, the district court properly recognized the need to engage in the case-specific analysis outlined by *Georgia*. However, because we conclude that the district court misapplied the *Georgia* inquiry, we vacate the district court's abrogation analysis and remand for further consideration.

The *Georgia* inquiry first asks courts to determine "which aspects of the State's alleged conduct violated Title II." 546 U.S. at 159. Here, the district court identified the conduct at issue, observing that "plaintiff alleges that the misconduct that violated Title II included excessively burdensome procedures to seek testing accommodations, delay in responding to his accommodation requests, and deliberate indifference by failing to provide reasonable accommodations for all of his prior sittings of the California Bar Exam." *Kohn I*, 497 F. Supp. 3d at 535–36. But the district court did not evaluate which aspects of the alleged conduct, if any, violated Title II. The district court then proceeded to the second part of the *Georgia* analysis and concluded that the alleged conduct did not violate the Fourteenth Amendment. *Id.* at 538. Finally, the district court concluded that the third part of *Georgia* was not satisfied either, explaining that "plaintiff has cited no authority demonstrating that, insofar as such misconduct violated only Title II, that Congress's purported abrogation of sovereign immunity is nevertheless valid." *Id.*

The district court did not answer the question of which, if any, of Kohn's allegations state a Title II claim. It also did not provide any reasoning supporting its conclusion that Congress did not prophylactically abrogate sovereign immunity as to Kohn's claims. The district court's *Georgia*

12          KOHN V. STATE BAR OF CALIFORNIA

analysis thus focused only on the second part of the *Georgia* test, but this part of the *Georgia* test cannot stand alone as a reason to dismiss a claim on sovereign immunity grounds. Stated differently, it is not enough for the district court to hold that the complaint does not allege a constitutional violation and end there.  Even if the complaint does not allege a constitutional violation, "we must determine whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *See Klingler v. Director, Dept. of Revenue*, 455 F.3d 888, 894 (8th Cir. 2006) (quotation marks and citation omitted). The district court thus erred when it failed to determine "which aspects of the State's alleged conduct violated Title II." *Georgia*, 546 U.S. at 159.

We hold that while the district court is not bound to analyze the *Georgia* inquiry in any particular order, it cannot begin and end its analysis with the second part of the *Georgia* test.  Of course, if a plaintiff fails to state a claim under Title II, dismissal is appropriate.  The same is true if there is neither an alleged Fourteenth Amendment violation nor a prophylactic abrogation of state sovereign immunity for the "class of conduct" that violated Title II.[2]  The prophylactic abrogation analysis is fact-intensive, requiring a review of whether there is "congruence and proportionality

---

[2] In holding that courts may choose to conduct the *Georgia* analysis in any order it so chooses, we slightly differ from the approach of some of our sister circuits.  The First, Third, Fifth, and Tenth Circuits require courts to begin with the first part of *Georgia*'s test before proceeding to the second and third parts.  *Toledo v. Sanchez*, 454 F.3d 24, 31 (1st Cir. 2006); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 (3d Cir. 2007); *Block v. Texas Bd. of Law Examiners*, 952 F.3d 613, 617, 618 n.12 (5th Cir. 2020); *Guttman v. Khalsa*, 446 F.3d 1027, 1036 (10th Cir. 2006).

KOHN V. STATE BAR OF CALIFORNIA                    13

between the injury to be prevented or remedied and the means adopted to that end." *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997), but the district court did not engage in this analysis, leaving us to guess which of Kohn's allegations, if any, were being considered for this "congruence and proportionality" inquiry.

We thus vacate the district court's dismissal of Kohn's Title II claims and remand for reconsideration consistent with this opinion. Moreover, the district court shall provide Kohn with the opportunity to amend his complaint before proceeding.

## III.  CONCLUSION

The district court's dismissal of Kohn's Title II claims is vacated.  We remand the suit for further proceedings.[3]

---

[3] The parties shall bear their own costs on appeal.

## CERTIFICATE OF SERVICE FOR ELECTRONIC FILING

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**
[X] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

Terrence Brewer
4748 Whitney Avenue
Carmichael, CA 95608
Terrence.Brewer87@yahoo.com
Pro Per

**Description of Document(s)** *(required for all documents)***:**

Defendant-Appellant State Bar of California's Rule 28(j) Letter Regarding Supplemental Authority

**Signature** ___*/s/ Ryan Sullivan*__ **Date** __October 22, 2024_____

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2024, I filed the foregoing Appellant's Motion for Judicial In Support of Petition for Rehearing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: November 26, 2024,

*/s/ Gregory R. Michael*
Gregory R. Michael